IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEVA BRANDED PHARMACEUTICAL PRODUCTS R&D, INC., TEVA RESPIRATORY, LLC, NORTON (WATERFORD) LIMITED, and NORTON HEALTHCARE LIMITED, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | C.A. No. 12-1101-GMS |
| PERRIGO PHARMACEUTICALS CO., PERRIGO CO., and CATALENT PHARMA SOLUTIONS, LLC, | ) ) ) ) ) | |
| Defendants. | ) | |

## JOINT CLAIM CONSTRUCTION CHART

Pursuant to the Scheduling Order entered in this case (D.I. 17 at ¶ 3), attached as Exhibits A and B hereto are the Final Joint Claim Construction Charts for U.S. Patent Nos. 7,105,152 and 7,566,445, respectively.

/s/ Stephanie E. O'Byrne
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Stephanie E. O'Byrne (No. 4446)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
sobyrne@shawkeller.com

OF COUNSEL:
David M. Hashmall
Ira J. Levy
Brian J. Prew

/s/ John C. Phillips
John C. Phillips, Jr. (No. 110)
Megan C. Haney (No. 5016)
PHILLIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgslaw.com
mch@pgslaw.com

OF COUNSEL:
William A. Rakoczy
Joseph T. Jaros

Andrew E. Riley
GOODWIN PROCTER LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
(212) 813-8800

Daryl L. Wiesen
Nicholas K. Mitrokostas
Daniel B. Reagan
GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, MA 02109
(617) 570-1000

*Attorneys for Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc., Teva Respiratory, LLC, Norton Healthcare Limited, and Norton (Waterford) Limited*

Dated: September 6, 2013

William F. Ward
Yixin H. Tang
Matthew T. Lord
Brian P. Murray
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-6304

*Attorneys for Defendants Perrigo Pharmaceuticals Co., Perrigo Co. and Catalent Pharma Solutions, LLC*

**EXHIBIT A**
**Final Joint Claim Chart for U.S. Patent No. 7,105,152 ("the '152 patent")**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No. 12-1101-GMS)**

**Agreed-Upon Constructions**

| Term [applicable claims] | Joint Proposed Construction |
|---|---|
| "pharmaceutical suspension aerosol formulation" [1, 2, 4, 8, 9] | Proposed Construction<br>A drug formulation in which the drug is in particulate form and is substantially insoluble in the propellant.<br><br>Intrinsic Evidence<br>*See, e.g.*, Col. 3 at 30-32 ("The term 'suspension aerosol formulation' as used herein refers to a formulation in which the drug is in particulate form and is substantially insoluble in the propellant"). |
| "micronized" [2] | Proposed Construction<br>micronized, i.e., about 90 percent or more of the particles have a diameter of less than about 10 microns<br><br>Intrinsic Evidence<br>*See, e.g.*, Col. 3 at 58-63 ("Particularly in formulations of the invention intended for oral inhalation into the lungs, the drug is preferably micronized, i.e., about 90 percent or more of the particles have a diameter or less than about 10 microns, in order to assure that the particles can be inhaled into the lungs."). |

**Disputed Constructions**

| Term [applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "no surfactant" [1] | Proposed Construction<br>No added surface active agent<br><br>Intrinsic Evidence | Proposed Construction<br>Ordinary and customary meaning<br><br>Intrinsic Evidence |

| | |
|---|---|
| *See* Col. 2 at 46 – Col. 3 at 22 ("This invention also provides an aerosol canister containing a formulation as described above in an amount sufficient to provide a plurality of therapeutically effective doses of the drug. Also provided is a method of preparing a formulation as described above, comprising the steps of: (i) combining an amount of the drug sufficient to provide a plurality of therapeutically effective doses and a propellant selected from the group consisting of HFC 134a, HFC 227, and a mixture thereof, in an amount sufficient to propel from an aerosol canister a plurality of therapeutically effective doses of the drug; and (ii) dispersing the drug in the propellant. This invention further provides a method of treating a mammal having a condition capable of treatment by inhalation, comprising the step of administering by inhalation a formulation as described above to the mammal.<br><br>In another aspect, this invention provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate and HFC 227 as substantially the only propellant. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate, from about 0.1 to about 15 percent by weight of ethanol, and HFC 227 as substantially the only propellant. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate, from about 5 to 15 percent by weight of ethanol, from about 0.05 to about 0.5 percent by weight of a surfactant selected from the group consisting of oleic acid and sorbitan trioleate, and HFC 227 as substantially the only propellant.<br><br>In another aspect this invention provides suspension aerosol formulations comprising a therapeutically effective amount of micronized pirbuterol acetate and a propellant comprising HFC 227, the formulation being further characterized in that it is substantially free of perfluorinated surfactant. This invention also provides suspension aerosol formulations | '152 patent<br>(*See, e.g.*, Abstract, col.1 ll.38-44, 51-55, 64-67; col.2 ll.1-9, 13-18, 26-32, 36-67; col.3 ll.1-22, 36-43, 64-67; col.4 ll.1-67; col.5 ll.1-67; col.6 ll.1-52; Examples 1-16 and Comparative Example, read together and as a whole, including without limitation col.8 ll.16-17, 23-24.)<br><br>**'152 Patent History:  Application No. 07/809,791**<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.7 ll.1, 14-16 [PER(Albu) 007808].<br>• *See, e.g.*, May 15, 1992 Office Action, at p.2 [PER(Albu) 007821<br>• *See, e.g.*, May 15, 1992 Office Action, at p. 3 [PER(Albu) 012823].<br><br>**'152 Patent History:  Application No. 07/810,401**<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.2, ll.24-26 [PER(Albu) 007858].<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.9, ll.7-9 [PER(Albu) 007865].<br><br>**'152 Patent History:  Application No. 07/878,039**<br>• *See, e.g.*, May 4, 1992 Application, at p.6 ll.1-4 [PER(Albu) 012879].<br>• *See, e.g.*, Apr. 16, 1993 Office Action [PER(Albu) 012956].<br>• *See, e.g.*, July 16, 1993 Amendment, Response, and Petition Under C.F.R. 1.48(b), at p.4 [PER(Albu) 012966].<br>• *See, e.g.*, July 16, 1993 Amendment, Response, and Petition Under C.F.R. 1.48(b), at pp.6-7 [PER(Albu) 012966-67].<br>• *See, e.g.*, Oct. 25, 1993 Office Action, at p.2 [PER(Albu) 012974].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.1 [PER(Albu) 012977].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.2 [PER(Albu) 012978].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.2 [PER(Albu) 012978].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at |

| | |
|---|---|
| comprising a therapeutically effective amount of micronized pirbuterol acetate, about 0.1 to about 12 percent by weight of ethanol, and a propellant comprising HFC 227. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized pirbuterol acetate, about 5 to about 12 percent by weight of ethanol, about 0.05 to about 0.5 percent by weight of oleic acid, and a propellant comprising HFC 227."). *See* Col. 3 at 36-43 ("The formulations of the invention that consist essentially of drug and a propellant contain drug and propellant in relative amounts such that a formulation suitable for aerosol administration is obtained without the need for additional components. Such formulations preferably contain less than an effective stabilizing amount of surfactant and more preferably are substantially free of surfactant and other components."). *See* Col. 5 at 60 – Col. 6 at 20 ("Generally the formulations of the invention can be prepared by combining (i) the drug in an amount sufficient to provide a plurality of therapeutically effective doses; and (ii) the propellant in an amount sufficient to propel a plurality of doses from an aerosol canister; and dispersing the drug in the propellant. The drug can be dispersed using a conventional mixer or homogenizer, by shaking, or by ultrasonic energy. Bulk formulation can be transferred to smaller individual aerosol vials by using valve to valve transfer methods or by using conventional cold-fill methods. The pirbuterol acetate suspension aerosol formulations of this invention can be prepared by combining the pirbuterol acetate and the propellant and then dispersing the pirbuterol acetate in the propellant using a conventional mixer or homogenizer. Pirbuterol acetate, however, is somewhat soluble in ethanol alone. Accordingly, when oleic acid and/or ethanol are included in the formulation, it is preferred that the pirbuterol acetate be first placed in an aerosol vial. A mixture of the propellant, oleic acid and/or ethanol can then | pp.2-3 [PER(Albu) 012978-79].<br>• *See, e.g.,* Jan. 25, 1994 Amendment After Final Rejection, at p.4 [PER(Albu) 012980].<br>• *See, e.g.,* Feb. 7, 1994 Office Action, at p.2 [PER(Albu) 012983].<br>• *See, e.g.,* Feb. 7, 1994 Office Action, at p.3 [PER(Albu) 012984].<br>• *See, e.g.,* Feb. 7, 1994 Office Action, at p.4 [PER(Albu) 012985].<br>• *See, e.g.,* May 9, 1994 Amendment, at p.4 [PER(Albu) 013003].<br>• *See, e.g.,* May 9, 1994 Amendment, at p.5 [PER(Albu) 013004].<br>• *See, e.g.,* May 9, 1994 Amendment, at p.6 [PER(Albu) 013005].<br>• *See, e.g.,* May 9, 1994 Amendment, at p.7 [PER(Albu) 013006].<br>• *See, e.g.,* Nov. 10, 1994 Request for Reconsideration, at p.2 [PER(Albu) 013015].<br>• *See, e.g.,* Jan. 17, 1995 Brief on Appeal, at p.1 [PER(Albu) 013020].<br>• *See, e.g.,* Jan. 17, 1995 Brief on Appeal, at p.4 [PER(Albu) 013022].<br>• *See, e.g.,* Jan. 17, 1995 Brief on Appeal, at p.5 [PER(Albu) 013023].<br>• *See, e.g.,* Jan. 17, 1995 Brief on Appeal, at p.6 [PER(Albu) 013024].<br>• *See, e.g.,* Jan. 17, 1995 Brief on Appeal, at p.7 [PER(Albu) 013025].<br>• *See, e.g.,* Feb. 14, 1995 Examiner's Answer, at p.4 [PER(Albu) 013034].<br>• *See, e.g.,* Feb. 14, 1995 Examiner's Answer, at p.5 [PER(Albu) 013035].<br>• *See, e.g.,* Feb. 14, 1995 Examiner's Answer, at pp.6-7 [PER(Albu) 013036-37].<br><br>**'152 Patent Prosecution History:  Application No. 08/455,490** |

| | | |
|---|---|---|
| | be added, and the pirbuterol acetate dispersed in the mixture.<br><br>The albuterol sulfate suspension aerosol formulations of this invention can be prepared by combining the albuterol sulfate and the propellant and dispersing the albuterol sulfate in the propellant using a conventional mixer or homogenizer. When a surfactant and/or ethanol are included in the formulation, they can be added to the propellant along with the albuterol sulfate.").<br><br>*See* Examples 1-16, Col 7 at 1 – Col. 16 at 13.<br><br>*See* 08/455,490 File History - Applicant Arguments/Remarks Made in an Amendment dated November 10, 1998 ("Applicants' new claims 78-83 are directed to a pharmaceutical suspension formulation, and a canister containing the formulation, consisting essentially of particulate drug, 1, 1, 1, 2- tetrafluoroethane as propellant, and ethanol, wherein the formulation contains no surfactant. None of the references cited above, whether considered separately or in combination, disclose or suggest all of these features. For example, both Weil and Schultz are fatally flawed as anticipatory references in two ways: both teach the use of surfactant but neither discloses the use of ethanol. Accordingly, any potential anticipation rejection is overcome with respect to Weil and Schultz.<br><br>New claims 78-83 also are not obvious to one skilled in the art under 35 U.S.C. § 103(a) in view of the applied references. The Examiner has previously rejected applicants' claims as being (1) obvious over Schultz or Weil in combination with Byron ('097), and (2) obvious over Schultz or Weil in combination with Kamiya and Byron ('097). See Office Action of 11/5/97. Neither Weil nor Schultz, however, teach or suggest a drug suspension formulation including ethanol and excluding surfactant. Moreover, Schultz, Weil, and Byron '097 were all considered in the granted U.S. '124 and '293 patents noted | <ul><li>*See, e.g.*, May 24, 1995 Divisional Application, at p.1 [PER(Albu) 008057-58].</li><li>*See, e.g.*, May 24, 1995 Divisional Application, at p.5 [PER(Albu) 008059].</li><li>*See, e.g.*, May 24, 1995 Divisional Application, at p.6 [PER(Albu) 008060].<br>*See, e.g.*, May 24, 1995 Divisional Application, at p.11 [PER(Albu) 008065].</li><li>*See, e.g.*, July 5, 1996 Office Action pp.4-5 [PER(Albu) 008312-13].</li><li>*See, e.g.*, Jan. 30, 1997 Office Action, at p.3 [PER(Albu) 008334].</li><li>*See, e.g.*, July 30, 1997 Response to Office Action, at p.3 [PER(Albu) 008340].</li><li>*See, e.g.*, July 30, 1997 Response to Office Action, at p.4 [PER(Albu) 008341].</li><li>*See, e.g.*, Amended Claims with Mark-up [PER(Albu) 008343].</li><li>*See, e.g.*, Nov. 5, 1997 Office Action, at p.1 [PER(Albu) 008447].</li><li>*See, e.g.*, Nov. 5, 1997 Office Action, at p.3 [PER(Albu) 008448].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.3 [PER(Albu) 008476].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.4 [PER(Albu) 008477].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.5 [PER(Albu) 008478].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.6 [PER(Albu) 008479].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.7 [PER(Albu) 008480].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.9 [PER(Albu) 008482].</li><li>*See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.10 [PER(Albu) 008483; *see also* PER(Albu) 008484].</li><li>*See, e.g.*, Exhibit D [PER(Albu) 008493 & PER(Albu) 008494].</li></ul> |

| | |
|---|---|
| above.<br><br>Schultz requires the presence of propellant 134a or 227 or mixtures thereof, medicament, and surfactant with a lower concentration limit of 0.001% by weight. Schultz prefers that the amount of surfactant used be approximately the minimum needed to provide a suitable suspension (pg. 5, lines 27-29). Contrary to the Examiner's argument, however, this in no way suggests the complete absence of surfactant. All working examples and claims in Schultz require the use of a surfactant. Indeed, the lower concentration limit of 0.001% disclosed in Schultz clearly suggests the importance of having surfactant present. Schultz in no way suggests eliminating surfactant. Applicants' discovery that suitable aerosol suspension formulations for inhalation drug delivery could be obtained without surfactant confirms the completely unexpected nature of applicants' invention given that persons skilled in the art of MDI formulations such as Byron and Schultz regarded surfactant as a necessary component for a suitable aerosol formulation.<br><br>Likewise, Weil fails to teach or suggest suspension formulations of drug excluding surfactant. Moreover, the Weil formulations are directed to a different propellant (1,1,1,2,3,3,3-heptafluoropropane) than the present claims and, as noted by the Examiner, Weil does not teach the inclusion of ethanol.<br><br>The Examiner has cited the secondary reference Kamiya for the proposition that it would have been obvious to one of ordinary skill in the art to include ethanol in the formulations of Weil and/or Schultz to arrive at the claimed formulation. Applicants respectfully disagree. Applicants' new claims require ethanol but exclude surfactant. One skilled in the art would have to impermissibly ignore the disclosure of surfactant in Schultz and Weil and then go a step further and add the alleged teachings of ethanol in Kamiya to arrive at the claimed invention. The combination of the above references, assuming for the sake of argument that it is | - *See, e.g.*, Draft Claims with Mark-ups [PER(Albu) 008493 & PER(Albu) 008496].<br>- *See, e.g.*, Mar. 9, 1999 Office Action, at p.2 [PER(Albu) 008502].<br>- *See, e.g.*, Mar. 9, 1999 Office Action, at p.3 [PER(Albu) 008503].<br>- *See, e.g.*, May 31, 1995 Examiner Interview Summary Record [PER(Albu) 008507].<br>- *See, e.g.*, Mar. 21, 2005 Office Action, at p.2 [PER(Albu) 009207].<br>- *See, e.g.*, Jan. 23, 2006 Brief on Appeal, at p.3 [PER(Albu) 009347].<br>- *See, e.g.*, Apr. 17, 2006 Notice of Allowability, at p.3 [PER(Albu) 009368].<br>- *See, e.g.*, Claims Appendix with Mark-ups, at p.6 [PER(Albu) 009378].<br>- *See, e.g.*, Aug. 10, 1995 Letter from P.A. Bowman to European Patent Office, at p.1 [PER(Albu) 008609-10].<br>- *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 008571-84].<br>- *See, e.g.*, July 28, 1998 Judgment, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 (High Court of Justice, Chancery Div., Patents Court) (Pumfrey, J.) [PER(Albu) 008570-607].<br>- *See, e.g.*, May 27, 1998 Expert Report of Ian Smith, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 (High Court of Justice, Chancery Div., Patents Court) [PER(Albu) 008635-70].<br>- *See, e.g.*, Expert Report of Dr. John J. Sciarra, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 [PER(Albu) 008611-34]. |

permissible, would at best result in a formulation containing drug, propellant, ethanol, and surfactant.

Byron '097 was applied for its teaching of oleic acid as a dispersion agent in aerosol formulations. As the pending claims are now explicitly limited to formulations that are free of any surfactant, applicants submit that Byron '097 is no longer applicable.

Byron himself explicitly suggested in a 1990 co-authored article that surfactant was regarded as a necessary component of an aerosol formulation for a metered dose inhaler. See Byron, Dalby, et al., "CFC Propellant Substitution: P-134a as a Potential Replacement for P-12 in MDIs," Pharmaceutical Technology, March 1990 (attached as Exhibit A). According to the article, one of the critical tests to be passed by any replacement propellant is its ability to dissolve the surfactants used in such formulations. Page 4, lines 9-10.").

*See* 08/455,490 File History – Applicant Arguments/Remarks Made in an Amendment dated March 29, 1999 ("Applicants' claims 78-83 are directed to a pharmaceutical suspension formulation consisting essentially of particulate drug, 1, 1, 1, 2-tetrafluoroethane as propellant, and ethanol, wherein the formulation contains no surfactant, and to a canister containing the formulation. None of the references cited above, whether considered separately or in combination, disclose or suggest all of these features. For example, both Weil and Schultz are fatally flawed as anticipatory references in two ways: both teach the use of surfactant but neither discloses the use of ethanol. Accordingly, any potential anticipation rejection is overcome with respect to Weil and Schultz.

Claims 78-83 are not obvious to one skilled in the art under 35 U.S. C. § 103(a) in view of the applied references. The Examiner has previously rejected applicants' claims as being (1) obvious over Schultz or Weil in combination with Byron

A-6

('097), and (2) obvious over Schultz or Weil in combination with Kamiya and Byron ('097). Neither Weil nor Schultz, however, teach or suggest a drug suspension formulation both including ethanol and excluding surfactant. Moreover, Schultz, Weil, and Byron '097 were all considered in the granted U.S. '124 and '293 patents as noted above.

Schultz requires the presence of propellant 134a or 227 or mixtures thereof, medicament, and surfactant with a lower concentration limit of 0.001% by weight. Schultz prefers that the amount of surfactant used be approximately the minimum needed to provide a suitable suspension (pg. 5, lines 27-29). Contrary to the Examiner's argument, however, this in no way suggests the complete absence of surfactant. All working examples and claims in Schultz require the use of a surfactant. Indeed, the lower concentration limit of 0.001% disclosed in Schultz clearly suggests the importance of having surfactant present. Schultz in no way suggests eliminating surfactant. Applicants' discovery that suitable aerosol suspension formulations for inhalation drug delivery could be obtained without surfactant confirms the completely unexpected nature of applicants' invention given that persons skilled in the art of MDI formulations such as Byron and Schultz regarded surfactant as a necessary component for a suitable aerosol formulation.

Likewise, Weil fails to teach or suggest suspension formulations of drug excluding surfactant. Moreover, the Weil formulations are directed to a different propellant than the present claims (1, 1, 1, 2, 3, 3, 3-heptafluoropropane) and, as noted by the Examiner, Weil does not teach the inclusion of ethanol.

The Examiner has cited the secondary reference Kamiya for the proposition that it would have been obvious to one of ordinary skill in the art to include ethanol in the formulations of Weil and/or Schultz to arrive at the claimed formulation. Applicants respectfully disagree. Applicants' new claims require ethanol but exclude surfactant. One skilled in the art

A-7

| | would have to impermissibly ignore the disclosure of surfactant in Schultz and Weil and then go a step further and add the alleged teachings of ethanol in Kamiya to arrive at the claimed invention. The combination of the above references, assuming for the sake of argument that it is permissible, would at best result in a formulation containing drug, propellant, ethanol, and surfactant.<br><br>Byron '097 was applied for its teaching of oleic acid as a dispersion agent in aerosol formulations. As the pending claims are now explicitly limited to formulations that are free of any surfactant, applicants submit that Byron '097 is no longer applicable.<br><br>Byron himself explicitly suggested in a 1990 co-authored article that surfactant was regarded as a necessary component of an aerosol formulation for a metered dose inhaler. See Byron, Dalby, et al., "CFC Propellant Substitution: P-134a as a Potential Replacement for P-12 in MDIs," Pharmaceutical Technology, March 1990 (attached as Exhibit A). According to the article, one of the critical tests to be passed by any replacement propellant is its ability to dissolve the surfactants used in such formulations. Page 4, lines 9-10.").<br><br>*See* 08/455,490 File History – Notice of Allowability dated April 24, 2006 ("The primary reasons for allowance are that the prior art does not disclose nor teach or fairly suggest a pharmaceutical suspension aerosol formulation as instantly claimed that consists essentially of a combination of the following ingredients: (i) particulate drug; (ii) 1, 1, 1, 2-tetrafluoroethane as propellant; and (iii) ethanol in amounts of 5 to about 15% by weight, without the presence of any surfactant. The prior art fails to disclose or teach a pharmaceutical suspension aerosol formulation comprising ethanol in the amounts claimed (5 to about 15% by weight) and fails to disclose or teach the exclusion of surfactant from aerosol formulations. | |

|  | In contrast prior art formulations utilize distinct amounts of ethanol and additionally include the presence of surfactants in their suspension aerosol formulations.<br><br>The instant invention demonstrates an improvement over prior art formulations because it provides for a formulation that exhibits substantially no growth in particle size or change in crystal morphology of the drug over a prolonged period and is readily redispersible and does not flocculate so quickly as to prevent reproducible dosing of the drug. The instant formulation also avoids the incorporation of additional components, such as surfactant.").<br><br>*See* 08/955,603 (file wrapper continuation of 07/878,039) File History – Amendment dated May 9, 1994 ("Claims 1, 4-13, 15-19, 26-29, and 61-63 have been rejected under 35 USC §103 as being unpatentable over Schultz et al. The reference discloses formulations that contain propellant, drug, and a perfluorinated surfactant. The Examiner correctly points out that the reference refers to amounts of surfactant as low as 0.001% and prefers that the amount of surfactant used be the minimum amount required to provide a suitable suspension. Manipulation of the relative amount of surfactant in the reference formulations is taught by Schultz. However, Schultz relates to the use of a particular class of surfactant and requires the use of such a surfactant. Any manipulation of the surfactant amount in Schultz would be carried out only within the range of effective amounts. The Schultz teaching that the surfactant amount can be varied does not even remotely suggest that the surfactant can be used in less than an effective amount (as required by the pending claims). For the reasons set forth above Schultz et al. therefore does not render the claimed formulations unpatentable under 35 USC §103. The rejection should be withdrawn.").<br><br>*See* 08/955,603 (file wrapper continuation of 07/878,039) File History – Amendment, Remarks, and Petition Under 37 CFR 1.48(b) dated July 16, 1993 ("Claims 1, 4-13, 15-19, |  |

| | |
|---|---|
| | and 26-29 have been rejected under 35 USC 103 as being unpatentable over Schultz et al. The reference discloses formulations that contain propellant, drug, and a perfluorinated surfactant. The Examiner correctly points out that the reference refers to amounts of surfactant as low as 0.001% and prefers that the amount of surfactant used be the minimum amount required to provide a suitable suspension. However, the Examiner contends that this disclosure renders it obvious to use no surfactant. This cannot be supported. Manipulating the relative amount of surfactant in the reference formulations might be taught or suggested. However, this does not even remotely suggest the complete elimination of the surfactant. In fact Schultz requires the use of a surfactant. It simply cannot be said to be obvious to remove from a reference formulation an element disclosed as essential to the utility of the formulation. To remove the surfactant from the Schultz et al. formulations would therefore be directly contrary to the teachings of the reference. Schultz et al. does not render the claimed formulations unpatentable under 35 USC 103. The rejection should be withdrawn."). | |

A-10

**EXHIBIT B**
**Final Joint Claim Chart for U.S. Patent No. 7,566,445**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No. 12-1101-GMS)**

| Term [applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "pharmaceutical suspension aerosol formulation" [1, 2, 11, 16] | Proposed Construction<br>A drug formulation in which the drug is in particulate form and substantially insoluble in the propellant<br><br>Intrinsic Evidence<br>*See* Col. 1 at 51-55 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6%-25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant.").<br><br>*See* Col. 1 at 66 – Col. 2 at 2 (a pharmaceutical aerosol formulation which comprises particulate medicament, a propellant consisting all or part of fluorocarbon and 6% to 25% of a polar co-solvent, which is substantially free of surfactant.").<br><br>*See* Col. 2 at 42-51 ("In all cases of the present invention the medicament consists of a particle size suitable for inhalation into the lung and will this be less than 100 microns, desirably less than 20 microns and preferably in the range of 1-10 microns, normally with a mean particle size of 5-10 microns.<br><br>Medicaments which may be administered in aerosol formulations according to the invention include any drug useful in inhalation therapy which may be present in a form which is substantially completely insoluble in the selected | Proposed Construction<br>Ordinary and customary meaning<br><br>Intrinsic Evidence<br>**'445 patent**<br>   ('445 patent, read as a whole; col.1 ll.17-21, 26-44; col.2 ll.3-11; col.3 ll.22-27; Example.)<br><br>**'445 Patent Prosecution History: Application No. 08/999,752**<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010592; *see also* PER(Albu) 010607; PER(Albu) 011189; PER(Albu) 012333].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.4 [PER(Albu) 010593; *see also* PER(Albu) 010608; PER(Albu) 011190; PER(Albu) 012334].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at pp.7-8 [PER(Albu) 010596-97; *see also* PER(Albu) 010611-12; PER(Albu) 011193-94; PER(Albu) 012337-38].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at pp.9 [PER(Albu) 010598; *see also* PER(Albu) 010613; PER(Albu) 012338].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment with Mark-ups, at p.9 [PER(Albu) 010614].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |

propellant.").

*See* Col. 3 at 2-12 ("It will be clear to a person skilled in the art that, where appropriate, the medicaments may be used in the form of salts (e.g. as alkali metal or amine salts or as acid addition salts) or as esters (e.g. lower alkyl esters) or as solvates (e.g. hydrates) to optimise the activity and/or stability of the medicament and/or to minimize the solubility of the medicament in the propellant.

Preferred are those compounds which are also substantially insoluble in the co-solvent. Particularly preferred as a medicament is salbutamol either as a base or as a salt and especially salbutamol sulfate.").

*See* Col. 3 at 22-27 ("The product is preferentially produced by weighing the active medicament and suspending it in the co-solvent. The appropriate amount of suspension is then dosed into the can, followed by a second dose of propellant or propellant mix. However, a one shot fill or any other equivalent method may be employed.").

*See* Example, Col. 3 at 39-59.

*See* 08/999,752 File History – Amendment/Request for Reconsideration After Non-Final Rejection dated November 28, 2008 ("Thus, the diameters of the orifices taught in Schultz '201 for delivering a suspension aerosol formulation are outside, and much greater (e.g., about 2 to 5 times greater) than the range of 100 to 300 microns as recited in the independent claims. As such, Schultz '201 in fact teaches away from the claimed invention. To further highlight this distinction, Claim 23 recites that the bronchodilator is 'substantially completely insoluble' in the propellant. In addition to this recitation, the three new independent claims 39, 46 and 47 also recite that the aerosol formulation is a 'suspension' aerosol formulation (support for which is found in bottom of page 5, for example). Thus, the present claims now clearly point out that the aerosol formulation is in the

| | | |
|---|---|---|
| | form of a suspension as opposed to a solution."). | |
| "substantially free of surfactant" [1, 2, 11, 16] | Proposed Construction<br>Any surface active agent, if present, is not present in an amount sufficient to have an effect on the physical properties of the formulation<br><br>Intrinsic Evidence<br>See Col. 1 at 30-36 ("However, historically medicinal suspension aerosols have contained a surfactant e.g. U.S. Patent No. 3,014,844, as it was considered that the use of a surfactant was necessary to prevent agglomeration of particles, to prevent adhesion to the sides of the canister, and to aid valve lubrication and prevent valve sticking.").<br><br>See Col. 1 at 51-55 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6%-25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant.").<br><br>See Col. 1 at 66 – Col. 2 at 2 (a pharmaceutical aerosol formulation which comprises particulate medicament, a propellant consisting all or part of fluorocarbon and 6% to 25% of a polar co-solvent, which is substantially free of surfactant.").<br><br>See Example, Col. 3 at 39-59.<br><br>See 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment, dated August 30, 1999 ("Claims 1-22 stand rejected under 35 U.S.C. 102(b) as being anticipated by Purewal, et al., U.S. Patent No. 5,225,183. The invention of claims 1-22 differ from Purewal by virtue of their requirement that the formulation be substantially free of surfactant. In fact, Purewal (column 3, lines 5-9) indicates that the presence of increased amounts of solubilized surfactant allows the preparation of stable, | Proposed Construction<br>Ordinary and customary meaning<br><br>Intrinsic Evidence<br>'445 patent<br>   ('445 patent, read as a whole; Abstract; col.1 ll.51-55, 61-67; col.2 ll.1-2; Example.)<br><br>'445 Patent Prosecution History: Application No. 08/999,752,<br>- See, e.g., June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010591; see also PER(Albu) 010607; PER(Albu) 011188; PER(Albu) 012332].<br>- See, e.g., June 4, 1997 Preliminary Amendment, at pp.7-8 [PER(Albu) 010596-97; see also PER(Albu) 010611-12; PER(Albu) 011193-94; PER(Albu) 012336-37].<br>- See, e.g., June 4, 1997 Preliminary Amendment, at p.9 [PER(Albu) 010598; see also PER(Albu) 010613; PER(Albu) 012338].<br>- See, e.g., Apr. 14, 1999 Office Action, at pp.3-4 [PER(Albu) 010757-58].<br>- See, e.g., Aug. 27, 1999 Amendment, at p.6 [PER(Albu) 010774].<br>- See, e.g., Dec, 2, 1999 Office Action, at p.2 [PER(Albu) 010799].<br>- See, e.g., Interview Summary, at p.1 [PER(Albu) 010801].<br>- See, e.g., Exhibit to July 18, 2000 Petition Under 37 C.F.R. 1.181 Requesting Withdrawal of Holding of Abandonment – Feb. 25, 2000 Memorandum [PER(Albu) 010811].<br>- See, e.g., Exhibit to July 18, 2000 Petition Under 37 C.F.R. 1.181 Requesting Withdrawal of Holding of Abandonment – Apr. 6, 2000 Letter [PER(Albu) 010817-18].<br>- See, e.g., Aug. 30, 2001 Office Action, at pp.3-4 [PER(Albu) 010823-24].<br>- See, e.g., Feb. 28, 2002 Response to Official Action, at p.2 [PER(Albu) 010842].<br>- See, e.g., Feb. 28, 2002 Response to Official Action, at p.4 |

| | | |
|---|---|---|
| | homogenous suspensions of drug particles and assists in obtaining stable solution formulations of certain drugs. In addition, during the litigation Re European Patent Nos. 0372,777, 0499,344, and 0553,298 before the Chancery Division (copy attached), an expert for 3M, the patentee, indicated that he would have understood from the statements in EP 0372,777 (the European patent corresponding with U.S. Patent No. 5,225,183) that the authors of that document had found surfactant to be a necessary component in the aerosol formulation. (See e.g. page 18). Therefore, the requirement that the formulation be substantially free of surfactant is neither disclosed nor suggested by Purewal."). *See also* Col. 3 at 22-27 ("The product is preferentially produced by weighing the active medicament and suspending it in the co-solvent. The appropriate amount of suspension is then dosed into the can, followed by a second dose of propellant or propellant mix. However, a one shot fill or any other equivalent method may be employed."). *See also* 08/999,752 File History – Office Action dated December 2, 1999 ("Note that 'substantially free of surfactant' does not exclude the presence of a surfactant in the formulation."). | [PER(Albu) 010847]. • *See, e.g.*, Sept. 15, 2003 Preliminary Amendment Under 37 C.F.R. 1.115, at p.2 [PER(Albu) 010880]. • *See generally* '445 Patent Prosecution History: Application No. 08/999,752, WO 93/11743 [PER(Albu) 010649]. • *See generally* '445 Patent Prosecution History: Application No. 08/999,752, WO 94/03153 [PER(Albu) 010706]. • *See generally* '445 Patent Prosecution History: Application No. 08/999,752, WO 93/11744 [PER(Albu) 010859]. • *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| "substantially completely insoluble" [1, 2, 11, 16] | Proposed Construction Plain and ordinary meaning  Intrinsic Evidence *See* Col. 2 at 47 – Col. 3 at 8 ("Medicaments which may be | Proposed Construction No plain, ordinary or customary meaning/Indefinite[1]  Intrinsic Evidence **'445 patent** |

---

[1] Claims 1, 2, 11, and 16 of U.S. Patent No. 7,566,445 ("the '445 patent") include the term "substantially completely insoluble." Because this term does not have a plain, ordinary or customary meaning to those skilled in the art, Defendants maintain that it is indefinite, and renders the asserted claims invalid. It is Defendants' understanding that the Court typically does not consider the ultimate question of indefiniteness and resulting invalidity during the claim construction phase. Accordingly, Defendants respectfully reserve their rights to demonstrate, at the appropriate time, that the term "substantially completely insoluble" is indefinite, and renders the claims invalid as a matter of law.

B-4

| | | |
|---|---|---|
| | administered in aerosol formulations according to the invention include any drug useful in inhalation therapy which may be presented in a form which is substantially completely insoluble in the selected propellant. Appropriate medicaments may thus be selected from, for example, … salbutamol, . . . . It will be clear to a person skilled in the art that, where appropriate, the medicaments may be used in the form of salts (e.g. as alkali metal or amine salts or as acid addition salts) or as esters (e.g. lower alkyl esters) or as solvates (e.g. hydrates) to optimize [sic] the activity and/or stability of the medicament and/or to minimize [sic] the solubility of the medicament in the propellant.").<br><br>*See* 08/999,752 File History – Amendment/Request for Reconsideration After Non-Final Rejection dated November 28, 2008 ("Thus, the diameters of the orifices taught in Schultz '201 for delivering a suspension aerosol formulation are outside, and much greater (e.g., about 2 to 5 times greater) than the range of 100 to 300 microns as recited in the independent claims. As such, Schultz '201 in fact teaches away from the claimed invention. To further highlight this distinction, Claim 23 recites that the bronchodilator is 'substantially completely insoluble' in the propellant. In addition to this recitation, the three new independent claims 39, 46 and 47 also recite that the aerosol formulation is a 'suspension' aerosol formulation (support for which is found in bottom of page 5, for example). Thus, the present claims now clearly point out that the aerosol formulation is in the form of a suspension as opposed to a solution.").<br><br>*See* 08/999,752 File History – Notice of Allowability dated May 29, 2009 ("The present invention requires that the aerosol formulation is a suspension not a solution."). | ('445 patent, read as a whole; col.2 ll.47-51.)<br><br>**'445 Patent Prosecution History: Application No. 08/999,752**<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010592; *see also* PER(Albu) 010607; PER(Albu) 011189; PER(Albu) 012333].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.4 [PER(Albu) 010593; *see also* PER(Albu) 010608; PER(Albu) 011190; PER(Albu) 012334].<br>• *See, e.g.*, Nov. 5, 2008 Amendment [PER(Albu) 010945-48; *see also* PER(Albu) 012322-25].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Nov. 25, 2008 Amendment, at p.10 [PER(Albu) 010953].<br>• *See, e.g.*, Feb. 25, 2009 Office Action, at p.4 [PER(Albu) 012306].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012344-45].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| "in the amount of 11.4% w/w"<br>[3, 6, 7, 10, 12, 15, 17, 20] | Proposed Construction<br>Present in an amount equal to approximately 11.4%, by weight, of the formulation<br><br>Intrinsic Evidence | Proposed Construction<br>In the amount of 11.4% w/w<br><br>Intrinsic Evidence<br>'445 patent |

| | |
|---|---|
| *See* Example, Col. 3 at 39-59.<br><br>*See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42-44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments.").<br><br>*See also* Col. 1 at 50-60 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6% to 25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant.<br><br>According to a second aspect of the present invention there is provided a medicinal aerosol formulation, comprising one or more particulate medicaments, one or more fluorocarbon or hydrocarbon or aliphatic gas propellants and 6% to 25% w/w of a polar co-solvent.").<br><br>*See also* Col. 2 at 3-7 ("It has now been surprisingly found that higher levels of alcohol have beneficial results. Levels of 6% or more of ethanol produce satisfactory suspensions, which do not agglomerate on standing, and on reshaking produce finely dispersed medicament.").<br><br>*See also* Col. 3 at 13-17 ("Co-solvents may be selected from polar alcohols and polyols, particularly C2-C6 aliphatic alcohols and polyols, such as propylene glycol, and preferably ethanol. Levels of co-solvent will be between 6% | (Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.)<br><br>**'445 Patent Prosecution History: Application No. 08/999,752**,<br>- *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu) 010941-42].<br>- *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu)_010947-48].<br>- *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>- *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012343-46]<br>- *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>- *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |

| | | |
|---|---|---|
| | and 25% w/w of the total canister content, preferably between 10-15% w/w of canister content."). *See also* Col. 3 at 35-38 ("A particularly preferred embodiment of the invention is a combination of a level of 10-15% co-solvent (normally ethanol) with a stem aperture of 150-250 microns."). | |
| "in the amount of 0.4% w/w" [4, 6, 8, 10, 13, 15, 18, 20] | Proposed Construction<br>Present in an amount equal to approximately 0.4%, by weight, of the formulation<br><br>Intrinsic Evidence<br>*See* Example, Col. 3 at 39-59.<br><br>*See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42-44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments."). | Proposed Construction<br>In the amount of 0.4% w/w<br><br>Intrinsic Evidence<br>**'445 patent**<br>   (Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**,<br>• *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu) 010941-42].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu)_010947-48].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012343-46].<br>• *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| "in the amount of 88.2% w/w" [5, 6, 9, 10, 14, 15, 19, 20] | Proposed Construction<br>Present in an amount equal to approximately 88.2%, by weight, of the formulation<br><br>Intrinsic Evidence<br>*See* Example, Col. 3 at 39-59.<br><br>*See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42- | Proposed Construction<br>In the amount of 88.2% w/w<br><br>Intrinsic Evidence<br>**'445 patent**<br>   (Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**,<br>• *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu) 010941-42]. |

| | | |
|---|---|---|
| | 44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments."). | • *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu)_010947-48].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012343-46].<br>• *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |