# EXHIBIT A

**EXHIBIT A**
**Final Joint Claim Chart for U.S. Patent No. 7,105,152 ("the '152 patent")**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No.  12-1101-GMS) (Consolidated)**

**Agreed-Upon Constructions**

| Term [applicable claims] | Joint Proposed Construction |
|---|---|
| "pharmaceutical suspension aerosol formulation" [1, 2, 4, 8, 9] | Proposed Construction: A drug formulation in which the drug is in particulate form and is substantially insoluble in the propellant. <br><br> Intrinsic Evidence: *See, e.g.*, Col. 3 at 30-32 ("The term 'suspension aerosol formulation' as used herein refers to a formulation in which the drug is in particulate form and is substantially insoluble in the propellant"). |
| "micronized" [2] | Proposed Construction: micronized, i.e., about 90 percent or more of the particles have a diameter of less than about 10 microns <br><br> Intrinsic Evidence: *See, e.g.*, Col. 3 at 58-63 ("Particularly in formulations of the invention intended for oral inhalation into the lungs, the drug is preferably micronized, i.e., about 90 percent or more of the particles have a diameter or less than about 10 microns, in order to assure that the particles can be inhaled into the lungs."). |

**Disputed Constructions**

| Term [applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "no surfactant" [1] | Proposed Construction: No added surface active agent <br><br> Intrinsic Evidence: | Proposed Construction: Ordinary and customary meaning <br><br> Intrinsic Evidence: |

| | |
|---|---|
| *See* Col. 2 at 46 – Col. 3 at 22 ("This invention also provides an aerosol canister containing a formulation as described above in an amount sufficient to provide a plurality of therapeutically effective doses of the drug. Also provided is a method of preparing a formulation as described above, comprising the steps of: (i) combining an amount of the drug sufficient to provide a plurality of therapeutically effective doses and a propellant selected from the group consisting of HFC 134a, HFC 227, and a mixture thereof, in an amount sufficient to propel from an aerosol canister a plurality of therapeutically effective doses of the drug; and (ii) dispersing the drug in the propellant. This invention further provides a method of treating a mammal having a condition capable of treatment by inhalation, comprising the step of administering by inhalation a formulation as described above to the mammal.<br><br>In another aspect, this invention provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate and HFC 227 as substantially the only propellant. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate, from about 0.1 to about 15 percent by weight of ethanol, and HFC 227 as substantially the only propellant. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized albuterol sulfate, from about 5 to 15 percent by weight of ethanol, from about 0.05 to about 0.5 percent by weight of a surfactant selected from the group consisting of oleic acid and sorbitan trioleate, and HFC 227 as substantially the only propellant.<br><br>In another aspect this invention provides suspension aerosol formulations comprising a therapeutically effective amount of micronized pirbuterol acetate and a propellant comprising HFC 227, the formulation being further characterized in that it is substantially free of perfluorinated surfactant. This invention also provides suspension aerosol formulations | **'152 patent**<br>(*See, e.g.*, Abstract, col.1 ll.38-44, 51-55, 64-67; col.2 ll.1-9, 13-18, 26-32, 36-67; col.3 ll.1-22, 36-43, 64-67; col.4 ll.1-67; col.5 ll.1-67; col.6 ll.1-52; Examples 1-16 and Comparative Example, read together and as a whole, including without limitation col.8 ll.16-17, 23-24.)<br><br>**'152 Patent History:  Application No. 07/809,791**<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.7 ll.1, 14-16 [PER(Albu) 007808].<br>• *See, e.g.*, May 15, 1992 Office Action, at p.2 [PER(Albu) 007821]<br>• *See, e.g.*, May 15, 1992 Office Action, at p. 3 [PER(Albu) 012823].<br><br>**'152 Patent History:  Application No. 07/810,401**<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.2, ll.24-26 [PER(Albu) 007858].<br>• *See, e.g.*, Dec. 18, 1991 Application, at p.9, ll.7-9 [PER(Albu) 007865].<br><br>**'152 Patent History:  Application No. 07/878,039**<br>• *See, e.g.*, May 4, 1992 Application, at p.6 ll.1-4 [PER(Albu) 012879].<br>• *See, e.g.*, Apr. 16, 1993 Office Action [PER(Albu) 012956].<br>• *See, e.g.*, July 16, 1993 Amendment, Response, and Petition Under C.F.R. 1.48(b), at p.4 [PER(Albu) 012966].<br>• *See, e.g.*, July 16, 1993 Amendment, Response, and Petition Under C.F.R. 1.48(b), at pp.6-7 [PER(Albu) 012966-67].<br>• *See, e.g.*, Oct. 25, 1993 Office Action, at p.2 [PER(Albu) 012974].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.1 [PER(Albu) 012977].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.2 [PER(Albu) 012978].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.2 [PER(Albu) 012978].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at |

| | |
|---|---|
| comprising a therapeutically effective amount of micronized pirbuterol acetate, about 0.1 to about 12 percent by weight of ethanol, and a propellant comprising HFC 227. This invention also provides suspension aerosol formulations comprising a therapeutically effective amount of micronized pirbuterol acetate, about 5 to about 12 percent by weight of ethanol, and about 0.05 to about 0.5 percent by weight of oleic acid, and a propellant comprising HFC 227.").<br><br>See Col. 3 at 36-43 ("The formulations of the invention that consist essentially of drug and a propellant contain drug and propellant in relative amounts such that a formulation suitable for aerosol administration is obtained without the need for additional components. Such formulations preferably contain less than an effective stabilizing amount of surfactant and more preferably are substantially free of surfactant and other components.").<br><br>See Col. 5 at 60 – Col. 6 at 20 ("Generally the formulations of the invention can be prepared by combining (i) the drug in an amount sufficient to provide a plurality of therapeutically effective doses; and (ii) the propellant in an amount sufficient to propel a plurality of doses from an aerosol canister; and dispersing the drug in the propellant. The drug can be dispersed using a conventional mixer or homogenizer, by shaking, or by ultrasonic energy. Bulk formulation can be transferred to smaller individual aerosol vials by using valve to valve transfer methods or by using conventional cold-fill methods.<br><br>The pirbuterol acetate suspension aerosol formulations of this invention can be prepared by combining the pirbuterol acetate and the propellant and then dispersing the pirbuterol acetate in the propellant using a conventional mixer or homogenizer. Pirbuterol acetate, however, is somewhat soluble in ethanol alone. Accordingly, when oleic acid and/or ethanol are included in the formulation, it is preferred that the pirbuterol acetate be first placed in an aerosol vial. A mixture of the propellant, oleic acid and/or ethanol can then | pp.2-3 [PER(Albu) 012978-79].<br>• *See, e.g.*, Jan. 25, 1994 Amendment After Final Rejection, at p.4 [PER(Albu) 012980].<br>• *See, e.g.*, Feb. 7, 1994 Office Action, at p.2 [PER(Albu) 012983].<br>• *See, e.g.*, Feb. 7, 1994 Office Action, at p.3 [PER(Albu) 012984].<br>• *See, e.g.*, Feb. 7, 1994 Office Action, at p.4 [PER(Albu) 012985].<br>• *See, e.g.*, May 9, 1994 Amendment, at p.4 [PER(Albu) 013003].<br>• *See, e.g.*, May 9, 1994 Amendment, at p.5 [PER(Albu) 013004].<br>• *See, e.g.*, May 9, 1994 Amendment, at p.6 [PER(Albu) 013005].<br>• *See, e.g.*, May 9, 1994 Amendment, at p.7 [PER(Albu) 013006].<br>• *See, e.g.*, Nov. 10, 1994 Request for Reconsideration, at p.2 [PER(Albu) 013015].<br>• *See, e.g.*, Jan. 17, 1995 Brief on Appeal, at p.1 [PER(Albu) 013020].<br>• *See, e.g.*, Jan. 17, 1995 Brief on Appeal, at p.4 [PER(Albu) 013022].<br>• *See, e.g.*, Jan. 17, 1995 Brief on Appeal, at p.5 [PER(Albu) 013023].<br>• *See, e.g.*, Jan. 17, 1995 Brief on Appeal, at p.6 [PER(Albu) 013024].<br>• *See, e.g.*, Jan. 17, 1995 Brief on Appeal, at p.7 [PER(Albu) 013025].<br>• *See, e.g.*, Feb. 14, 1995 Examiner's Answer, at p.4 [PER(Albu) 013034].<br>• *See, e.g.*, Feb. 14, 1995 Examiner's Answer, at p.5 [PER(Albu) 013035].<br>• *See, e.g.*, Feb. 14, 1995 Examiner's Answer, at pp.6-7 [PER(Albu) 013036-37].<br><br>**'152 Patent Prosecution History: Application No. 08/455,490** |

| | |
|---|---|
| be added, and the pirbuterol acetate dispersed in the mixture.<br><br>The albuterol sulfate suspension aerosol formulations of this invention can be prepared by combining the albuterol sulfate and the propellant and dispersing the albuterol sulfate in the propellant using a conventional mixer or homogenizer. When a surfactant and/or ethanol are included in the formulation, they can be added to the propellant along with the albuterol sulfate.").<br><br>*See* Examples 1-16, Col 7 at 1 – Col. 16 at 13.<br><br>*See* 08/455,490 File History - Applicant Arguments/Remarks Made in an Amendment dated November 10, 1998 ("Applicants' new claims 78-83 are directed to a pharmaceutical suspension formulation, and a canister containing the formulation, consisting essentially of particulate drug, 1, 1, 1, 2- tetrafluoroethane as propellant, and ethanol, wherein the formulation contains no surfactant. None of the references cited above, whether considered separately or in combination, disclose or suggest all of these features. For example, both Weil and Schultz are fatally flawed as anticipatory references in two ways: both teach the use of surfactant but neither discloses the use of ethanol. Accordingly, any potential anticipation rejection is overcome with respect to Weil and Schultz.<br><br>New claims 78-83 also are not obvious to one skilled in the art under 35 U.S.C. § 103(a) in view of the applied references. The Examiner has previously rejected applicants' claims as being (1) obvious over Schultz or Weil in combination with Byron ('097), and (2) obvious over Schultz or Weil in combination with Kamiya and Byron ('097). See Office Action of 11/5/97. Neither Weil nor Schultz, however, teach or suggest a drug suspension formulation including ethanol and excluding surfactant. Moreover, Schultz, Weil, and Byron '097 were all considered in the granted U.S. '124 and '293 patents noted | • *See, e.g.*, May 24, 1995 Divisional Application, at p.1 [PER(Albu) 008057-58].<br>• *See, e.g.*, May 24, 1995 Divisional Application, at p.5 [PER(Albu) 008059].<br>• *See, e.g.*, May 24, 1995 Divisional Application, at p.6 [PER(Albu) 008060].<br>  *See, e.g.*, May 24, 1995 Divisional Application, at p.11 [PER(Albu) 008065].<br>• *See, e.g.*, July 5, 1996 Office Action pp.4-5 [PER(Albu) 008312-13].<br>• *See, e.g.*, Jan. 30, 1997 Office Action, at p.3 [PER(Albu) 008334].<br>• *See, e.g.*, July 30, 1997 Response to Office Action, at p.3 [PER(Albu) 008340].<br>• *See, e.g.*, July 30, 1997 Response to Office Action, at p.4 [PER(Albu) 008341].<br>• *See, e.g.*, Amended Claims with Mark-up [PER(Albu) 008343].<br>• *See, e.g.*, Nov. 5, 1997 Office Action, at p.1 [PER(Albu) 008447].<br>• *See, e.g.*, Nov. 5, 1997 Office Action, at p.3 [PER(Albu) 008448].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.3 [PER(Albu) 008476].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.4 [PER(Albu) 008477].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.5 [PER(Albu) 008478].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.6 [PER(Albu) 008479].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.7 [PER(Albu) 008480].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.9 [PER(Albu) 008482].<br>• *See, e.g.*, Nov. 4, 1998 Response to Office Action, at p.10 [PER(Albu) 008483; *see also* PER(Albu) 008484].<br>• *See, e.g.*, Exhibit D [PER(Albu) 008493 & PER(Albu) 008494]. |

| | |
|---|---|
| above.<br><br>Schultz requires the presence of propellant 134a or 227 or mixtures thereof, medicament, and surfactant with a lower concentration limit of 0.001% by weight. Schultz prefers that the amount of surfactant used be approximately the minimum needed to provide a suitable suspension (pg. 5, lines 27-29). Contrary to the Examiner's argument, however, this in no way suggests the complete absence of surfactant. All working examples and claims in Schultz require the use of a surfactant. Indeed, the lower concentration limit of 0.001% disclosed in Schultz clearly suggests the importance of having surfactant present. Schultz in no way suggests eliminating surfactant. Applicants' discovery that suitable aerosol suspension formulations for inhalation drug delivery could be obtained without surfactant confirms the completely unexpected nature of applicants' invention given that persons skilled in the art of MDI formulations such as Byron and Schultz regarded surfactant as a necessary component for a suitable aerosol formulation.<br><br>Likewise, Weil fails to teach or suggest suspension formulations of drug excluding surfactant. Moreover, the Weil formulations are directed to a different propellant (1,1,1,2,3,3,3-heptafluoropropane) than the present claims and, as noted by the Examiner, Weil does not teach the inclusion of ethanol.<br><br>The Examiner has cited the secondary reference Kamiya for the proposition that it would have been obvious to one of ordinary skill in the art to include ethanol in the formulations of Weil and/or Schultz to arrive at the claimed formulation. Applicants respectfully disagree. Applicants' new claims require ethanol but exclude surfactant. One skilled in the art would have to impermissibly ignore the disclosure of surfactant in Schultz and Weil and then go a step further and add the alleged teachings of ethanol in Kamiya to arrive at the claimed invention. The combination of the above references, assuming for the sake of argument that it is | • *See, e.g.*, Draft Claims with Mark-ups [PER(Albu) 008493 & PER(Albu) 008496].<br>• *See, e.g.*, Mar. 9, 1999 Office Action, at p.2 [PER(Albu) 008502].<br>• *See, e.g.*, Mar. 9, 1999 Office Action, at p.3 [PER(Albu) 008503].<br>• *See, e.g.*, May 31, 1995 Examiner Interview Summary Record [PER(Albu) 008507].<br>• *See, e.g.*, Mar. 21, 2005 Office Action, at p.2 [PER(Albu) 009207].<br>• *See, e.g.*, Jan. 23, 2006 Brief on Appeal, at p.3 [PER(Albu) 009347].<br>• *See, e.g.*, Apr. 17, 2006 Notice of Allowability, at p.3 [PER(Albu) 009368].<br>• *See, e.g.*, Claims Appendix with Mark-ups, at p.6 [PER(Albu) 009378].<br>• *See, e.g.*, Aug. 10, 1995 Letter from P.A. Bowman to European Patent Office, at p.1 [PER(Albu) 008609-10].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 008571-84].<br>• *See, e.g.*, July 28, 1998 Judgment, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 (High Court of Justice, Chancery Div., Patents Court) (Pumfrey, J.) [PER(Albu) 008570-607].<br>• *See, e.g.*, May 27, 1998 Expert Report of Ian Smith, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 (High Court of Justice, Chancery Div., Patents Court) [PER(Albu) 008635-70].<br>• *See, e.g.*, Expert Report of Dr. John J. Sciarra, *Norton Healthcare Limited v. Minnesota Mining Manufacturing Company*, CH 1997 M No. 3766 & CH 1997 M No. 3722 [PER(Albu) 008611-34]. |

permissible, would at best result in a formulation containing drug, propellant, ethanol, and surfactant.

Byron '097 was applied for its teaching of oleic acid as a dispersion agent in aerosol formulations. As the pending claims are now explicitly limited to formulations that are free of any surfactant, applicants submit that Byron '097 is no longer applicable.

Byron himself explicitly suggested in a 1990 co-authored article that surfactant was regarded as a necessary component of an aerosol formulation for a metered dose inhaler. See Byron, Dalby, et al., "CFC Propellant Substitution: P-134a as a Potential Replacement for P-12 in MDIs," Pharmaceutical Technology, March 1990 (attached as Exhibit A). According to the article, one of the critical tests to be passed by any replacement propellant is its ability to dissolve the surfactants used in such formulations. Page 4, lines 9-10.").

*See* 08/455,490 File History – Applicant Arguments/Remarks Made in an Amendment dated March 29, 1999 ("Applicants' claims 78-83 are directed to a pharmaceutical suspension formulation consisting essentially of particulate drug, 1, 1, 1, 2-tetrafluoroethane as propellant, and ethanol, wherein the formulation contains no surfactant, and to a canister containing the formulation. None of the references cited above, whether considered separately or in combination, disclose or suggest all of these features. For example, both Weil and Schultz are fatally flawed as anticipatory references in two ways: both teach the use of surfactant but neither discloses the use of ethanol. Accordingly, any potential anticipation rejection is overcome with respect to Weil and Schultz.

Claims 78-83 are not obvious to one skilled in the art under 35 U. S. C. § 103(a) in view of the applied references. The Examiner has previously rejected applicants' claims as being (1) obvious over Schultz or Weil in combination with Byron

('097), and (2) obvious over Schultz or Weil in combination with Kamiya and Byron ('097). Neither Weil nor Schultz, however, teach or suggest a drug suspension formulation both including ethanol and excluding surfactant. Moreover, Schultz, Weil, and Byron '097 were all considered in the granted U.S. '124 and '293 patents as noted above.

Schultz requires the presence of propellant 134a or 227 or mixtures thereof, medicament, and surfactant with a lower concentration limit of 0.001% by weight. Schultz prefers that the amount of surfactant used be approximately the minimum needed to provide a suitable suspension (pg. 5, lines 27-29). Contrary to the Examiner's argument, however, this in no way suggests the complete absence of surfactant. All working examples and claims in Schultz require the use of a surfactant. Indeed, the lower concentration limit of 0.001% disclosed in Schultz clearly suggests the importance of having surfactant present. Schultz in no way suggests eliminating surfactant. Applicants' discovery that suitable aerosol suspension formulations for inhalation drug delivery could be obtained without surfactant confirms the completely unexpected nature of applicants' invention given that persons skilled in the art of MDI formulations such as Byron and Schultz regarded surfactant as a necessary component for a suitable aerosol formulation.

Likewise, Weil fails to teach or suggest suspension formulations of drug excluding surfactant. Moreover, the Weil formulations are directed to a different propellant than the present claims (1, 1, 1, 2, 3, 3, 3-heptafluoropropane) and, as noted by the Examiner, Weil does not teach the inclusion of ethanol.

The Examiner has cited the secondary reference Kamiya for the proposition that it would have been obvious to one of ordinary skill in the art to include ethanol in the formulations of Weil and/or Schultz to arrive at the claimed formulation. Applicants respectfully disagree. Applicants' new claims require ethanol but exclude surfactant. One skilled in the art

would have to impermissibly ignore the disclosure of surfactant in Schultz and Weil and then go a step further and add the alleged teachings of ethanol in Kamiya to arrive at the claimed invention. The combination of the above references, assuming for the sake of argument that it is permissible, would at best result in a formulation containing drug, propellant, ethanol, and surfactant.

Byron '097 was applied for its teaching of oleic acid as a dispersion agent in aerosol formulations. As the pending claims are now explicitly limited to formulations that are free of any surfactant, applicants submit that Byron '097 is no longer applicable.

Byron himself explicitly suggested in a 1990 co-authored article that surfactant was regarded as a necessary component of an aerosol formulation for a metered dose inhaler. See Byron, Dalby, et al., "CFC Propellant Substitution: P-134a as a Potential Replacement for P-12 in MDIs," Pharmaceutical Technology, March 1990 (attached as Exhibit A). According to the article, one of the critical tests to be passed by any replacement propellant is its ability to dissolve the surfactants used in such formulations. Page 4, lines 9-10.").

*See* 08/455,490 File History – Notice of Allowability dated April 24, 2006 ("The primary reasons for allowance are that the prior art does not disclose nor teach or fairly suggest a pharmaceutical suspension aerosol formulation as instantly claimed that consists essentially of a combination of the following ingredients: (i) particulate drug; (ii) 1, 1, 1, 2-tetrafluoroethane as propellant; and (iii) ethanol in amounts of 5 to about 15% by weight, without the presence of any surfactant. The prior art fails to disclose or teach a pharmaceutical suspension aerosol formulation comprising ethanol in the amounts claimed (5 to about 15% by weight) and fails to disclose or teach the exclusion of surfactant from aerosol formulations.

A-8

In contrast prior art formulations utilize distinct amounts of ethanol and additionally include the presence of surfactants in their suspension aerosol formulations.

The instant invention demonstrates an improvement over prior art formulations because it provides for a formulation that exhibits substantially no growth in particle size or change in crystal morphology of the drug over a prolonged period and is readily redispersible and does not flocculate so quickly as to prevent reproducible dosing of the drug. The instant formulation also avoids the incorporation of additional components, such as surfactant.").

*See* 08/955,603 (file wrapper continuation of 07/878,039) File History – Amendment dated May 9, 1994 ("Claims 1, 4-13, 15-19, 26-29, and 61-63 have been rejected under 35 USC §103 as being unpatentable over Schultz et al. The reference discloses formulations that contain propellant, drug, and a perfluorinated surfactant. The Examiner correctly points out that the reference refers to amounts of surfactant as low as 0.001% and prefers that the amount of surfactant used be the minimum amount required to provide a suitable suspension. Manipulation of the relative amount of surfactant in the reference formulations is taught by Schultz. However, Schultz relates to the use of a particular class of surfactant and requires the use of such a surfactant. Any manipulation of the surfactant amount in Schultz would be carried out only within the range of effective amounts. The Schultz teaching that the surfactant amount can be varied does not even remotely suggest that the surfactant can be used in less than an effective amount (as required by the pending claims). For the reasons set forth above Schultz et al. therefore does not render the claimed formulations unpatentable under 35 USC §103. The rejection should be withdrawn.").

*See* 08/955,603 (file wrapper continuation of 07/878,039) File History – Amendment, Remarks, and Petition Under 37 CFR 1.48(b) dated July 16, 1993 ("Claims 1, 4-13, 15-19,

|  | and 26-29 have been rejected under 35 USC 103 as being unpatentable over Schultz et al. The reference discloses formulations that contain propellant, drug, and a perfluorinated surfactant. The Examiner correctly points out that the reference refers to amounts of surfactant as low as 0.001% and prefers that the amount of surfactant used be the minimum amount required to provide a suitable suspension. However, the Examiner contends that this disclosure renders it obvious to use no surfactant. This cannot be supported. Manipulating the relative amount of surfactant in the reference formulations might be taught or suggested. However, this does not even remotely suggest the complete elimination of the surfactant. In fact Schultz requires the use of a surfactant. It simply cannot be said to be obvious to remove from a reference formulation an element disclosed as essential to the utility of the formulation. To remove the surfactant from the Schultz et al. formulations would therefore be directly contrary to the teachings of the reference. Schultz et al. does not render the claimed formulations unpatentable under 35 USC 103. The rejection should be withdrawn."). |  |
|---|---|---|

# EXHIBIT B

**EXHIBIT B**
**Final Joint Claim Chart for U.S. Patent No. 7,566,445**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No. 12-1101-GMS) (Consolidated)**

| Term [applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "pharmaceutical suspension aerosol formulation" [1, 2, 11, 16] | Proposed Construction: A drug formulation in which the drug is in particulate form and substantially insoluble in the propellant<br><br>Intrinsic Evidence: *See* Col. 1 at 51-55 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6%-25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant.").<br><br>*See* Col. 1 at 66 – Col. 2 at 2 (a pharmaceutical aerosol formulation which comprises particulate medicament, a propellant consisting all or part of fluorocarbon and 6% to 25% of a polar co-solvent, which is substantially free of surfactant.").<br><br>*See* Col. 2 at 42-51 ("In all cases of the present invention the medicament consists of a particle size suitable for inhalation into the lung and will this be less than 100 microns, desirably less than 20 microns and preferably in the range of 1-10 microns, normally with a mean particle size of 5-10 microns.<br><br>Medicaments which may be administered in aerosol formulations according to the invention include any drug useful in inhalation therapy which may be present in a form which is substantially completely insoluble in the selected | Proposed Construction: Ordinary and customary meaning<br><br>Intrinsic Evidence: **'445 patent** ('445 patent, read as a whole; col.1 ll.17-21, 26-44; col.2 ll.3-11; col.3 ll.22-27; Example.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010592; *see also* PER(Albu) 010607; PER(Albu) 011189; PER(Albu) 012333].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.4 [PER(Albu) 010593; *see also* PER(Albu) 010608; PER(Albu) 011190; PER(Albu) 012334].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at pp.7-8 [PER(Albu) 010596-97; *see also* PER(Albu) 010611-12; PER(Albu) 011193-94; PER(Albu) 012337-38].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at pp.9 [PER(Albu) 010598; *see also* PER(Albu) 010613; PER(Albu) 012338].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment with Mark-ups, at p.9 [PER(Albu) 010614].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |

propellant.").

*See* Col. 3 at 2-12 ("It will be clear to a person skilled in the art that, where appropriate, the medicaments may be used in the form of salts (e.g. as alkali metal or amine salts or as acid addition salts) or as esters (e.g. lower alkyl esters) or as solvates (e.g. hydrates) to optimise the activity and/or stability of the medicament and/or to minimize the solubility of the medicament in the propellant.

Preferred are those compounds which are also substantially insoluble in the co-solvent.  Particularly preferred as a medicament is salbutamol either as a base or as a salt and especially salbutamol sulfate.").

*See* Col. 3 at 22-27 ("The product is preferentially produced by weighing the active medicament and suspending it in the co-solvent.  The appropriate amount of suspension is then dosed into the can, followed by a second dose of propellant or propellant mix.  However, a one shot fill or any other equivalent method may be employed.").

*See* Example, Col. 3 at 39-59.

*See* 08/999,752 File History – Amendment/Request for Reconsideration After Non-Final Rejection dated November 28, 2008 ("Thus, the diameters of the orifices taught in Schultz '201 for delivering a suspension aerosol formulation are outside, and much greater (e.g., about 2 to 5 times greater) than the range of 100 to 300 microns as recited in the independent claims. As such, Schultz '201 in fact teaches away from the claimed invention. To further highlight this distinction, Claim 23 recites that the bronchodilator is 'substantially completely insoluble' in the propellant. In addition to this recitation, the three new independent claims 39, 46 and 47 also recite that the aerosol formulation is a 'suspension' aerosol formulation (support for which is found in bottom of page 5, for example). Thus, the present claims now clearly point out that the aerosol formulation is in the

| | | |
|---|---|---|
| | form of a suspension as opposed to a solution."). | |
| "substantially free of surfactant" [1, 2, 11, 16] | Proposed Construction: <br> Any surface active agent, if present, is not present in an amount sufficient to have an effect on the physical properties of the formulation <br><br> Intrinsic Evidence: <br> *See* Col. 1 at 30-36 ("However, historically medicinal suspension aerosols have contained a surfactant e.g. U.S. Patent No. 3,014,844, as it was considered that the use of a surfactant was necessary to prevent agglomeration of particles, to prevent adhesion to the sides of the canister, and to aid valve lubrication and prevent valve sticking."). <br><br> *See* Col. 1 at 51-55 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6%-25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant."). <br><br> *See* Col. 1 at 66 – Col. 2 at 2 (a pharmaceutical aerosol formulation which comprises particulate medicament, a propellant consisting all or part of fluorocarbon and 6% to 25% of a polar co-solvent, which is substantially free of surfactant."). <br><br> *See* Example, Col. 3 at 39-59. <br><br> *See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment, dated August 30, 1999 ("Claims 1-22 stand rejected under 35 U.S.C. 102(b) as being anticipated by Purewal, et al., U.S. Patent No. 5,225,183. The invention of claims 1-22 differ from Purewal by virtue of their requirement that the formulation be substantially free of surfactant. In fact, Purewal (column 3, lines 5-9) indicates that the presence of increased amounts of solubilized surfactant allows the preparation of stable, | Proposed Construction: <br> Ordinary and customary meaning <br><br> Intrinsic Evidence: <br> **'445 patent** <br> ('445 patent, read as a whole; Abstract; col.1 ll.51-55, 61-67; col.2 ll.1-2; Example.) <br><br> **'445 Patent Prosecution History:  Application No. 08/999,752**, <br> • *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010591; *see also* PER(Albu) 010607; PER(Albu) 011188; PER(Albu) 012332]. <br> • *See, e.g.*, June 4, 1997 Preliminary Amendment, at pp.7-8 [PER(Albu) 010596-97; *see also* PER(Albu) 010611-12; PER(Albu) 011193-94; PER(Albu) 012336-37]. <br> • *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.9 [PER(Albu) 010598; *see also* PER(Albu) 010613; PER(Albu) 012338]. <br> • *See, e.g.*, Apr. 14, 1999 Office Action, at pp.3-4 [PER(Albu) 010757-58]. <br> • *See, e.g.*, Aug. 27, 1999 Amendment, at p.6 [PER(Albu) 010774]. <br> • *See, e.g.*, Dec, 2, 1999 Office Action, at p.2 [PER(Albu) 010799]. <br> • *See, e.g.*, Interview Summary, at p.1 [PER(Albu) 010801]. <br> • *See, e.g.*, Exhibit to July 18, 2000 Petition Under 37 C.F.R. 1.181 Requesting Withdrawal of Holding of Abandonment – Feb. 25, 2000 Memorandum [PER(Albu) 010811]. <br> • *See, e.g.*, Exhibit to July 18, 2000 Petition Under 37 C.F.R. 1.181 Requesting Withdrawal of Holding of Abandonment – Apr. 6, 2000 Letter [PER(Albu) 010817-18]. <br> • *See, e.g.*, Aug. 30, 2001 Office Action, at pp.3-4 [PER(Albu) 010823-24]. <br> • *See, e.g.*, Feb. 28, 2002 Response to Official Action, at p.2 [PER(Albu) 010842]. <br> • *See, e.g.*, Feb. 28, 2002 Response to Official Action, at p.4 |

B-3

| | | |
|---|---|---|
| | homogenous suspensions of drug particles and assists in obtaining stable solution formulations of certain drugs. In addition, during the litigation Re European Patent Nos. 0372,777, 0499,344, and 0553,298 before the Chancery Division (copy attached), an expert for 3M, the patentee, indicated that he would have understood from the statements in EP 0372,777 (the European patent corresponding with U.S. Patent No. 5,225,183) that the authors of that document had found surfactant to be a necessary component in the aerosol formulation. (See e.g. page 18). Therefore, the requirement that the formulation be substantially free of surfactant is neither disclosed nor suggested by Purewal."). <br><br> *See also* Col. 3 at 22-27 ("The product is preferentially produced by weighing the active medicament and suspending it in the co-solvent. The appropriate amount of suspension is then dosed into the can, followed by a second dose of propellant or propellant mix. However, a one shot fill or any other equivalent method may be employed."). <br><br> *See also* 08/999,752 File History – Office Action dated December 2, 1999 ("Note that 'substantially free of surfactant' does not exclude the presence of a surfactant in the formulation."). | [PER(Albu) 010847]. <br> • *See, e.g.*, Sept. 15, 2003 Preliminary Amendment Under 37 C.F.R. 1.115, at p.2 [PER(Albu) 010880]. <br> • *See generally* '445 Patent Prosecution History:  Application No. 08/999,752, WO 93/11743 [PER(Albu) 010649]. <br> • *See generally* '445 Patent Prosecution History:  Application No. 08/999,752, WO 94/03153 [PER(Albu) 010706]. <br> • *See generally* '445 Patent Prosecution History:  Application No. 08/999,752, WO 93/11744 [PER(Albu) 010859]. <br> • *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| "substantially completely insoluble" [1, 2, 11, 16] | Proposed Construction: <br> Plain and ordinary meaning <br><br> Intrinsic Evidence: <br> *See* Col. 2 at 47 – Col. 3 at 8 ("Medicaments which may be | Proposed Construction: <br> No plain, ordinary or customary meaning/Indefinite[2] <br><br> Intrinsic Evidence: <br> **'445 patent** |

---

[2] Claims 1, 2, 11, and 16 of U.S. Patent No. 7,566,445 ("the '445 patent") include the term "substantially completely insoluble."  Because this term does not have a plain, ordinary or customary meaning to those skilled in the art, Defendants maintain that it is indefinite, and renders the asserted claims invalid.  It is Defendants' understanding that the Court typically does not consider the ultimate question of indefiniteness and resulting invalidity during the claim construction phase.  Accordingly, Defendants respectfully reserve their rights to demonstrate, at the appropriate time, that the term "substantially completely insoluble" is indefinite, and renders the claims invalid as a matter of law.

| | administered in aerosol formulations according to the invention include any drug useful in inhalation therapy which may be presented in a form which is substantially completely insoluble in the selected propellant. Appropriate medicaments may thus be selected from, for example, … salbutamol, . . . .  It will be clear to a person skilled in the art that, where appropriate, the medicaments may be used in the form of salts (e.g. as alkali metal or amine salts or as acid addition salts) or as esters (e.g. lower alkyl esters) or as solvates (e.g. hydrates) to optimize [sic] the activity and/or stability of the medicament and/or to minimize [sic] the solubility of the medicament in the propellant."). | ('445 patent, read as a whole; col.2 ll.47-51.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.2 [PER(Albu) 010592; *see also* PER(Albu) 010607; PER(Albu) 011189; PER(Albu) 012333].<br>• *See, e.g.*, June 4, 1997 Preliminary Amendment, at p.4 [PER(Albu) 010593; *see also* PER(Albu) 010608; PER(Albu) 011190; PER(Albu) 012334].<br>• *See, e.g.*, Nov. 5, 2008 Amendment [PER(Albu) 010945-48; *see also* PER(Albu) 012322-25].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Nov. 25, 2008 Amendment, at p.10 [PER(Albu) 010953].<br>• *See, e.g.*, Feb. 25, 2009 Office Action, at p.4 [PER(Albu) 012306].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012344-45].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| | *See* 08/999,752 File History – Amendment/Request for Reconsideration After Non-Final Rejection dated November 28, 2008 ("Thus, the diameters of the orifices taught in Schultz '201 for delivering a suspension aerosol formulation are outside, and much greater (e.g., about 2 to 5 times greater) than the range of 100 to 300 microns as recited in the independent claims. As such, Schultz '201 in fact teaches away from the claimed invention. To further highlight this distinction, Claim 23 recites that the bronchodilator is 'substantially completely insoluble' in the propellant. In addition to this recitation, the three new independent claims 39, 46 and 47 also recite that the aerosol formulation is a 'suspension' aerosol formulation (support for which is found in bottom of page 5, for example). Thus, the present claims now clearly point out that the aerosol formulation is in the form of a suspension as opposed to a solution."). | |
| | *See* 08/999,752 File History – Notice of Allowability dated May 29, 2009 ("The present invention requires that the aerosol formulation is a suspension not a solution."). | |
| "in the amount of 11.4% w/w" [3, 6, 7, 10, 12, 15, 17, 20] | <u>Proposed Construction:</u><br>Present in an amount equal to approximately 11.4%, by weight, of the formulation<br><br><u>Intrinsic Evidence:</u> | <u>Proposed Construction:</u><br>In the amount of 11.4% w/w<br><br><u>Intrinsic Evidence:</u><br>**'445 patent** |

| | |
|---|---|
| *See* Example, Col. 3 at 39-59. | (Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.) |
| *See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42-44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments."). | **'445 Patent Prosecution History:  Application No. 08/999,752,**<br>• *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu 010941-42].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu_010947-48].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012343-46].<br>• *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| *See also* Col. 1 at 50-60 ("According to a first aspect of the present invention there is provided a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6% to 25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant. | |
| According to a second aspect of the present invention there is provided a medicinal aerosol formulation, comprising one or more particulate medicaments, one or more fluorocarbon or hydrocarbon or aliphatic gas propellants and 6% to 25% w/w of a polar co-solvent."). | |
| *See also* Col. 2 at 3-7 ("It has now been surprisingly found that higher levels of alcohol have beneficial results. Levels of 6% or more of ethanol produce satisfactory suspensions, which do not agglomerate on standing, and on reshaking produce finely dispersed medicament."). | |
| *See also* Col. 3 at 13-17 ("Co-solvents may be selected from polar alcohols and polyols, particularly C2-C6 aliphatic alcohols and polyols, such as propylene glycol, and preferably ethanol. Levels of co-solvent will be between 6% | |

| | | |
|---|---|---|
| | and 25% w/w of the total canister content, preferably between 10-15% w/w of canister content."). *See also* Col. 3 at 35-38 ("A particularly preferred embodiment of the invention is a combination of a level of 10-15% co-solvent (normally ethanol) with a stem aperture of 150-250 microns."). | |
| "in the amount of 0.4% w/w" [4, 6, 8, 10, 13, 15, 18, 20] | Proposed Construction: Present in an amount equal to approximately 0.4%, by weight, of the formulation<br><br>Intrinsic Evidence: *See* Example, Col. 3 at 39-59.<br><br>*See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42-44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments."). | Proposed Construction: In the amount of 0.4% w/w<br><br>Intrinsic Evidence: '445 patent<br>(Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**,<br>• *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu) 010941-42].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu)_010947-48].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012348-50].<br>• *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |
| "in the amount of 88.2% w/w" [5, 6, 9, 10, 14, 15, 19, 20] | Proposed Construction: Present in an amount equal to approximately 88.2%, by weight, of the formulation<br><br>Intrinsic Evidence: *See* Example, Col. 3 at 39-59.<br><br>*See* 08/999,752 File History – Applicant Arguments/Remarks Made in an Amendment dated November 28, 2008 ("With regards to new claims 40 and 42- | Proposed Construction: In the amount of 88.2% w/w<br><br>Intrinsic Evidence: '445 patent<br>(Abstract; col.1 ll.45-47, 51-60; col.2 ll.1-11, 42-46; col.3 ll.13-17, 28-38, 51-53; claims 1-2, 11, 16.)<br><br>**'445 Patent Prosecution History:  Application No. 08/999,752**,<br>• *See, e.g.*, Nov. 1, 2008 Facsimile [PER(Albu) 010941-42]. |

| | | |
|---|---|---|
| | 44, the percent amounts of concentration in mixture by weight (w/w) were calculated using the weights of the ingredients in the example in p. 5 and rounding to the nearest tenth for consistency. For example the recitation in claim 40 of '0.4%' salbutamol sulfate was derived by dividing the weight of salbutamol sulfate (0.03g) by the total weight of the ingredients, i.e., 0.03g/(0.03g + 0.97g + 7.5g) to arrive at 0.35%, which was rounded to 0.4%. Accordingly, no new matter has been added by these amendments. Applicant respectfully requests entry of these amendments."). | • *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu)_010947-48].<br>• *See, e.g.*, Nov. 8, 2008 Amendment [PER(Albu) 010949].<br>• *See, e.g.*, Apr, 13, 2009 [Proposed] Examiner's Amendment [PER(Albu) 012343-46].<br>• *See, e.g.*, Draft Claims [PER(Albu) 012348-50].<br>• *See, e.g.*, June 30, 1997 Judgment, *Norton Healthcare Limited v. Riker Labs. Inc. and Minnesota Mining Manufacturing Company*, CH 1996 M No. 3771 & CH 1996 M No. 3771 (High Court of Justice, Chancery Div., Patents Court) (Jacob, J.) [PER(Albu) 010775-92]. |

# EXHIBIT C

**EXHIBIT C**
**Final Joint Claim Chart for U.S. Patent No. 6,446,627 ("the '627 patent")**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No. 12-1101-GMS) (Consolidated)**

**Agreed-Upon Construction**

| Term<br>[applicable claims] | Joint Proposed Construction |
|---|---|
| "a control surface to regulate a position of engagement and disengagement between said drive means and said wheel"<br>[1] | Proposed Construction:<br>Plain and ordinary meaning/Ordinary and customary meaning.<br><br>Intrinsic Evidence Identified By Plaintiffs:<br>*See* Figure 3 at 371.<br><br>*See* Figure 5 at 571.<br><br>*See* Col. 4 at 6-25 ("In a first aspect, the invention is a dose counter for a metered dose inhaler, the counter comprising: actuator means; drive means for driving rotary gear means in step-wise fashion in response to displacement of said actuator means, said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery; means to prevent reverse rotation of said rotary gear means; display means coupled to the rotary motion of said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear means; characterised [sic] in that said dose counter further comprises a control surface to regulate the position of engagement and disengagement between said drive means and said wheel.").<br><br>*See* Col. 5 at 13-23 ("The control surface overcomes this problem by regulating the point of engagement as well as the point of disengagement between the toothed wheel and the drive element. It then becomes possible to use a small circular rack to obtain precise increments. By extending the control surface beyond the circular rack in both directions, it is possible to provide a precise rotational increment from linear valve travel even when the linear motion far exceeds that required for the rotational increment. Using this invention, the maximum precision of incrementation [sic] is obtained without the possibility of double counting or sensitivity to variation in linear travel.").<br><br>*See* Col. 8 at 55 – Col. 9 at 5 ("Also shown in this view is a control surface 371 which is depicted here as a see-through element so that the workings of the invention may be more clearly understood. Control surface 371 extends parallel to the direction of |

travel of the actuator 341 and is located adjacent the ratchet-toothed wheel 360 at a position which marks a chordal projection across one of the wheel faces. One of the support arms 352 of the drive means 350 is in sliding contact with control surface 371. This sliding contact serves to inhibit the natural tendency of the drive means 350 to flex radially inwardly towards the axis of rotation of the ratchet-toothed wheel 360. By preventing such radially inward flexure, the control surface 371 restricts the engagement and disengagement of the drive 350 with the ratchet-toothed wheel 360 so that the distance by which the ratchet-toothed wheel 360 rotates is limited to one tooth pitch. This condition is observed regardless of the extent of linear travel, or stroke, of the actuator 341.").

*See* Col. 9 at 33-35 ("Equally, the control surface 571 forces the drive pawl hook element 551 to disengage from the ratchet tooth 561 at a fixed point during its downward path.").

*See* Col. 9 at 37-42 ("View (b) shows a similar arrangement in which a drive pawl 550 acts in a pushing sense in the direction of arrow B to rotate the ratchet-toothed wheel 560 in a clockwise sense. Again, the natural tendency of the drive pawl tip 551 to follow a ratchet tooth 561 around its curved path is prevented by the control surface 571").

Intrinsic Evidence Identified By Defendants:
'627 patent
(*See, e.g.*, Abstract; col. 4, ll. 37-39; col. 5, ll. 14-26; col. 7, ll. 11-13; col. 8, ln. 55 – col. 9, ln.3; col. 9, ll. 29-42; Figs. 3 and 5.)

**Disputed Constructions**

| Term [applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "actuator means" [1] | Proposed Construction: Plain and ordinary meaning.<br><br>Intrinsic Evidence: *See* Figure 1 at 41.<br><br>*See* Figure 2 at 41.<br><br>*See* Figure 3 at 341, 342.<br><br>*See* Col. 1 at 12-14 ("Metered dose inhalers typically consist of a medicament containing vessel and an actuator body having a drug delivery outlet.").<br><br>*See* Col 1 at 24-27 ("The metering valve assembly is provided with a protruding valve stem which, in use, is inserted as a tight push fit into a so-called 'stem block' in the actuator body.").<br><br>*See* Col. 2 at 21-27 ("To this end, various counters have been proposed in recent times which aid the management of metered dosage. Such counters vary in complexity and sophistication, but they all have in common the feature that they detect relative movement between the medicament-containing vessel and the actuator body and increment in response to such movement.").<br><br>*See* Col. 3 at 38-59 ("One of the drawbacks of these known counters is that they rely on mechanical interaction between parts attached to the medicament-containing vessel and parts provided on the actuator body. In other words, they are | Proposed Construction: A mechanical device for moving or controlling the drive means.<br><br>Intrinsic Evidence: **'627 patent**<br>    (*See, e.g.*, Abstract, col. 1, ll. 12-14, 24-27, 28-30, 35-38, 49-50; col. 2, ll. 23-27; col. 3, ll. 38-59; col. 4, ll. 26-36; col. 6, ll. 10-20; col. 7, ll. 5-8, 25-28, 33-34, 50-56; col. 8, ll. 33-40; col. 9, ll. 4-5, 66-67; claims 1, 5, 7, 10, 12, 14, 18, 20, 24, 26, 29, 32; Figs. 1-3.) |

displacement triggered. Such counters are difficult to manufacture with satisfactory tolerances because of the variation in length of typical aerosol canisters which is attributable in part to the crimping operation used to connect the valve-carrying lid  portion to the main cup portion. Another variable is the length of stroke of the metering valve. Although the technology involved is not especially demanding, it has been found that the amount of travel effective to actuate the metering valve of a typical medicament-containing aerosol canister may fall in a tolerance band as small as 0.5 mm. Thus it is difficult to provide a generic counter which increments accurately in response to every actuation. This may be true even when the counter, the aerosol canister and the inhaler housing have been specifically designed for use together. The problem is therefore likely to be worse in circumstances where different manufacturers' aerosol canisters, inhaler housings and displacement-triggered counters are used in combination.").

*See* Col. 4 at 11 ("actuator means").

*See* Col. 4 at 26-36 ("Preferably, the actuator means are operable by linear displacement from a first position to a second position and back to said first position and the count index occurs during the forward stroke of the actuator means from said first position to said second position. For example, the actuator means may comprise a spring-loaded plunger adapted to engage the rim of a medicament reservoir and being depressible against the return force of the spring loading when the medicament reservoir is translated to deliver a dose of medicament through its metering valve. The actuator means may be integrally formed with the drive means.").

*See* Col. 5 at 57 ("actuator means").

*See* Col. 6 at 9-20 ("The actuator means may be operable by linear displacement from a first position to a second position and back to said first position, the count index occurring

during the forward stroke of the actuator means from said first position to said second position. For example, the actuator means  may comprise a spring-loaded plunger adapted to engage the rim of a medicament reservoir and being depressible against the return force of the spring loading when the medicament reservoir is translated to deliver a dose of medicament through its metering valve. The actuator means may be integrally formed with the drive means.").

*See* Col. 6 at 45 ("actuator means").

*See* Col. 7 at 25-47 ("Referring now to FIGS. 1 and 2, the lower portion of a metered dose inhaler is shown, comprising an actuator body 20 having a drug delivery outlet 25. An aerosol canister 30 extends into the lower portion of the actuator body 20. The aerosol canister 30 is formed from a deep drawn aluminium [sic] cup section 31 to which a lid portion 32 is attached by crimping. The lid portion 32 carries a metering valve assembly having a protruding valve stem 33, the end of which is received as a tight push fit in a stem block 21 of the actuator body 20. Stem block 21 has a nozzle 22 communicating with the drug delivery outlet 25 so that, upon actuation of the metering valve assembly, a charge of the drug is emitted through the nozzle 22 into the drug delivery outlet 25. Actuation of the metering valve assembly is effected by causing downward movement of the aerosol canister 30 relative to the actuator body 20. This may be achieved through manual pressure exerted by the user against the upturned base (not shown) of the aerosol canister 30 or by automatic depression of the aerosol canister 30 in response to user inhalation in inhalers of the breath-actuated type. The mechanism of breath actuation does not form part of the present invention and will not be described in greater detail in this specification.").

*See* Col. 7 at 50-56 ("A counter mechanism generally designated by the reference numeral 40 includes an actuator plunger 41 moulded [sic] from a plastics material such as

<table>
<tr>
<td></td>
<td>
nylon, the plunger 41 having a boss portion 42 integrally formed at its base. The underside of boss portion 42 is formed with a blind hole which receives a compression spring 43 mounted on an upstanding spigot 44 formed on a lower element of the counter chassis.").

*See* Col. 8 at 33-40 ("The counter mechanism is generally designated by the reference numeral 340 and consists of an actuator 341 having a boss portion 342 integrally formed therewith and drive means 350 joined to the boss portion 342. The underside of boss portion 342 is provided with a blind hole which receives a compression spring 343 that serves to return the actuator 341 to its rest position after depression thereof during actuation of the inhaler apparatus (not shown).").

*See* Col. 8 at 43-46 ("The web is connected to the boss portion 342 of the actuator 341 and a combined actuator and drive means assembly may be integrally formed from a plastics material such as nylon.")

*See* Col. 10 at 47-51 ("Although the invention has been particularly described above with reference to specific embodiments, it will be understood by persons skilled in the art that these are merely illustrative and that variations are possible without departing from the scope of the claims which follow.").
</td>
<td></td>
</tr>
<tr>
<td>
"rotary gear means having a wheel mounted on a spindle, said wheel having a plurality of ratchet teeth around a periphery of said wheel"
[1]
</td>
<td>
<u>Proposed Construction:</u>
Plain and ordinary meaning.

<u>Intrinsic Evidence:</u>
*See* Figure 1 at 60.

*See* Figure 2 at 61.

*See* Figure 3 at 360, 363.

*See* Figure 4 at 460, 461, 461a, 461b.
</td>
<td>
<u>Proposed Construction:</u>
A wheel mounted on a spindle, the wheel having a plurality of ratchet teeth around its periphery.

<u>Intrinsic Evidence:</u>
**'627 Patent**
(*See, e.g.,* Abstract; col. 4, ll. 9-13, 36-37, col. 5, ll. 27-32, 35-40, 50-52, 58-62; col. 6, ll. 4-9, 23-29, 38-40, 46-50; col. 7, ll. 57-58, 63-67; col. 8, ll. 18-21, 48-51, 59-60, 65; col. 9, ll. 1-2, 8-24, 27-35, 39-41, 47-60; col. 10, ll. 1-4, 7-8, 10, 18, 22-24, 30-31, 40; claims 1, 3, 5, 8, 10, 12, 18, 23, 24, 25, 29, 30, 33; Figs. 2-7.)
</td>
</tr>
</table>

C-6

| | | |
|---|---|---|
| | *See* Figure 5 at 560, 561.<br><br>*See* Figure 6(a) at 660.<br><br>*See* Figure 6(b) at 660.<br><br>*See* Figure 7 at 760, 761.<br><br>*See* Col. 4 at 12-14 ("said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery").<br><br>*See* Col. 6 at 47-49 ("said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery").<br><br>*See* Col. 7 at 66 – Col. 8 at 1 ("Ratchet wheel 60 is integrally moulded [sic] with a first hollow axle 63 which is rotatably supported on a first spindle 73 that projects transversely from a chassis sub-element 70.").<br><br>*See* Col. 10 at 47-51 ("Although the invention has been particularly described above with reference to specific embodiments, it will be understood by persons skilled in the art that these are merely illustrative and that variations are possible without departing from the scope of the claims which follow."). | |
| "drive means for driving said rotary gear means in step-wise fashion in response to displacement of said actuator means"<br>[1] | <u>Proposed Construction:</u><br>Plain and ordinary meaning.<br><br><u>Intrinsic Evidence:</u><br>*See* Figure 2 at 50.<br><br>*See* Figure 3 at 351, 353.<br><br>*See* Figure 4 at 451.<br><br>*See* Figure 5 at 550, 551. | <u>Proposed Construction:</u><br>This term is a means-plus-function term under 35 U.S.C. §112 ¶6.<br><br>The function is "for driving said rotary gear means in step-wise fashion in response to displacement of said actuator means."<br><br>The structures in the specification linked to this function are:<br><br>1) "a transverse hook element … mounted between two arms 52, 53 … the bases of which are conjoined to the boss portion 42 ... [t]he transverse hook element [being] dimensioned and |

*See* Figure 6(a) at 650.

*See* Figure 6(b) at 650.

*See* Figure 7 at 751.

*See* Col. 4 at 9-14 ("drive means for driving rotary gear means in step-wise fashion in response to displacement of said actuator means, said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery").

*See* Col. 4 at 35-36 ("The actuator means may be integrally formed with the drive means.").

*See* Col. 4 at 60 – Col. 5 at 2 ("IN [sic] known ratchet indexing mechanisms, a drive element is used to engage a one-direction tooth form of a rack. The rack may be linear or it may be turned upon itself to form a toothed wheel. The drive element engages in the first rack tooth and moves the whole rack a distance greater than one tooth pitch. The rack must then remain in the new position while the drive element disengages from the first tooth and engages the next. The temporary holding of the rack is commonly achieved by a fixed element or pawl that engages a tooth form on the rack and prevents reverse motion.").

*See* Col. 5 at 33-41 ("Advantageously, the drive means for driving the rotary gear means comprises a ratchet drive pawl in the form of a straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms. The gap between the support arms is dimensioned to accommodate the thickness of the wheel therebetween, so that the depth of engagement between the drive pawl and the ratchet teeth of the wheel is unhindered by the drive means support.").

*See* Col. 5 at 58-62 ("drive means for driving rotary gear means in step-wise fashion in response to displacement of

oriented to engage with ratchet teeth 61 formed around the periphery of ratchet wheel 60 to rotate it in a forward direction";

2) "a transverse hook element 351 mounted between a pair of arms 352, 353 which are joined at their bases by a web … [t]he web [being] connected to the boss portion 342 of the actuator 341";

3) "the ratchet tooth engaging element is supported at both ends by a support arm 752, 753";

4) "drive pawl 451";

5) "drive pawl hook element 551";

6) "drive pawl 550";

7) "drive pawl 650"; and/or

8) "drive pawl 751".

Intrinsic Evidence:
**'627 patent**
(*See, e.g.*, Abstract, Figs. 2-7, col. 4, ll. 60-65; col. 5, ll. 33-41; col. 6, ll. 21-29, 56-67; col. 7, ll. 1-2, 14-24, 57-65; col. 8, ll. 41-48, 61-67; col. 9, ll. 1-3, 6-10, 16-19, 23-48, , 54-55, 62-67; col. 10, ll. 1-46; claims 1, 3, 5, 8, 10, 12, 18, 23, 24, 29, 33.)

said actuator means, said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery").

*See* Col. 6 at 18-19 ("The actuator means may be integrally formed with the drive means.").

*See* Col. 6 at 20-28 ("The drive means for driving the rotary gear means may be a ratchet drive pawl in the form of a straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms. The gap between the support arms is preferably dimensioned to accommodate the thickness of the wheel there between, so that the depth of engagement between the ratchet drive pawl and the ratchet teeth of the wheel is unhindered by the drive means support.").

*See* Col. 6 at 46-50 ("drive means for driving rotary gear means in step-wise fashion in response to displacement of said actuator means, said rotary gear means comprising a wheel mounted on a spindle and said wheel having a plurality of ratchet teeth around its periphery").

*See* Col. 7 at 1-2 ("The drive pawl may be used either to pull the ratchet teeth or to push them.").

*See* Col. 7 at 57-65 ("Drive means 50, for driving a rotary gear means in the form of a ratchet-toothed wheel 60, is integrally moulded [sic] with boss portion 42 of the actuator and comprises a transverse hook element (not shown) mounted between two arms 52, 53 (only one visible in FIG. 2), the bases of which are conjoined to the boss portion 42. The transverse hook element is dimensioned and oriented to engage with ratchet teeth 61 formed around the periphery of ratchet wheel 60 to rotate it in a forward direction.").

*See* Col. 8 at 33-36 ("The counter mechanism is generally designated by the reference numeral 340 and consists of an actuator 341 having a boss portion 342 integrally formed

C-9

therewith and drive means 350 joined to the boss portion 342.").

*See* Col. 8 at 41-46 ("The drive means 350 comprises a transverse hook element 351 mounted between a pair of arms 352, 353 which are joined at their bases by a web. The web is connected to the boss portion 342 of the actuator 341 and a combined actuator and drive means assembly may be integrally formed from a plastics material such as nylon.").

*See* Col. 8 at 61 – Col. 9 at 5 ("One of the support arms 352 of the drive means 350 is in sliding contact with control surface 371. This sliding contact serves to inhibit the natural tendency of the drive means 350 to flex radially inwardly towards the axis of rotation of the ratchet-toothed wheel 360. By preventing such radially inward flexure, the control surface 371 restricts the engagement and disengagement of the drive 350 with the ratchet-toothed wheel 360 so that the distance by which the ratchet-toothed wheel 360 rotates is limited to one tooth pitch. This condition is observed regardless of the extent of linear travel, or stroke, of the actuator 341.").

*See* Col. 9 at 6-15 ("FIG. 4 shows a schematic view of a conventional ratchet gear and drive pawl arrangement which uses a reciprocating drive element 451 acting in a pulling sense to rotate a ratchet-toothed wheel 460 in the direction shown by the arrows A. A fixed pawl 454 acts to prevent reverse rotation of the ratchet-toothed wheel 460 by engagement against the trailing slope 461b of a ratchet tooth 461. However, on forward rotation of the ratchet-toothed wheel 460 in the sense of arrows A, the fixed pawl 454 is capable of radially outward deformation, urged by the leading slope 461a of a ratchet-tooth 461.").

*See* Col. 9 at 16-22 ("In this arrangement, if the ratchet-toothed wheel 460 is rotated by more than a single tooth pitch but by less than two tooth pitches for each reciprocating movement of the drive pawl 451, there is a

degree of reverse rotation until the fixed pawl 454 becomes engaged by the trailing slope 461b of a ratchet tooth 461. Thus, the rotation of the ratchet-toothed wheel 460 may be said to be 'stepped'.").

*See* Col. 9 at 26-29 ("View (a) shows a drive pawl hook element 551 acting in the sense of arrow B to pull the ratchet teeth 561 of a ratchet-toothed wheel 560 downwards and effect clockwise rotation of the ratchet-toothed wheel 560.").

*See* Col. 9 at 37-42 ("View (b) shows a similar arrangement in which a drive pawl 550 acts in a pushing sense in the direction of arrow B to rotate the ratchet-toothed wheel 560 in a clockwise sense. Again, the natural tendency of the drive pawl tip 551 to follow a ratchet tooth 561 around its curved path is prevented by the control surface 571.").

*See* Col. 9 at 43-50 ("FIG. 6(a) shows a similar arrangement to the conventional ratchet gear and drive pawl mechanism depicted in FIG. 4 and described above. In this particular arrangement, however, the drive pawl 650 is acting in a pushing sense in the direction of arrow B to drive the ratchet-toothed wheel 660 clockwise. Fixed pawl 654 acts to prevent reverse rotation of the ratchet-toothed wheel 660, but its action is not continuous and the restraint is said to be 'stepped'.").

*See* Col. 9 at 54-58 ("The coils of the spring 664 are oriented such that forward actuation of the drive pawl 650 in the sense of arrow B acts to unwind the coiling slightly, allowing free rotation of the spindle, and hence the ratchet-toothed wheel 660, in the clockwise sense.").

*See* Col. 9 at 62-65 ("Referring now to FIG. 7, here is a series of schematic views showing two arrangements of a conventional ratchet drive and two arrangements of a straddle drive in accordance with a third aspect of the invention.").

*See* Col. 9 at 66 – Col. 10 at 2 ("View (a) shows a conventional pushing arrangement where a drive pawl 751 actuated in the direction of arrow B engages a ratchet tooth 761 of ratchet-toothed wheel 760 to rotate it in a clockwise sense.").

*See* Col. 10 at 2-9 ("In order to achieve effective engagement between the tip of the drive pawl 751 and the valley in between neighbouring [sic] ratchet teeth 761, the tip of the drive pawl 751 must be quite slender. This means that it is susceptible to bending and, whilst the bending moment aids engagement of the drive pawl tip with the ratchet teeth 761, the bending moment reduces the effective travel. In a counter, this could affect counting precision.").

*See* Col. 10 at 10-12 ("View (b) shows a ratchet-toothed wheel 760 rotated in a clockwise sense by a straddle form of drive pawl 751 actuated in the pushing sense represented by arrow B.").

*See* Col. 10 at 19-24 ("View (c) is similar to the arrangement shown in view (a) but relates to the case in which the drive pawl 751 acts in the pulling sense. In this arrangement, the tip of the drive pawl 751 is fashioned in the form of a hook engageable behind the trailing slopes 761b of the ratchet teeth 761 to pull the ratchet-toothed wheel 760 around in the clockwise direction.").

*See* Col. 10 at 34-35 ("View (d) shows a straddle form of drive pawl 751 acting in the pulling sense.").

*See* Col. 10 at 47-51 ("Although the invention has been particularly described above with reference to specific embodiments, it will be understood by persons skilled in the art that these are merely illustrative and that variations are possible without departing from the scope of the claims which follow.").

*See also* 09/319,947 File History – Office Action dated May

C-12

| | | |
|---|---|---|
| | 22, 2001 ("Rand discloses an MDI having dose counter including an actuator, drive means 11, a preventing means 15, display means 116 (page 2 lines 127-130) incrementing in single integers, and a control surface (cavities and walls housing element 11 as shown in fig. 2).<br><br>…<br><br>Marelli discloses an MDI having a dose counter including in fig. 5 the drive and preventing means for the display means 17. Any surface touching or guiding element 9 would be the control surface.<br><br>….<br><br>Klein discloses an MDI having a dose counter including a drive means 52, preventing means 46, display means 12 and control surface (port in wall 60 through which 40 extends)."). | |
| "reverse rotation prevention means to prevent reverse rotation of said rotary gear means…wherein the reverse rotation prevention means is a friction clutch" [1] | <u>Proposed Construction:</u><br>Plain and ordinary meaning.<br><br><u>Intrinsic Evidence:</u><br>*See* Figure 3 at 364.<br><br>*See* Figure 6(a) at 654.<br><br>*See* Figure 6(b) at 664.<br><br>*See* Col. 4 at 15-16 ("means to prevent reverse rotation of said rotary gear means;").<br><br>*See* Col. 5 at 24-32 ("In an especially preferred variant, the means to prevent reverse rotation of the rotary gear means is a friction clutch such as a wrap-spring clutch. The advantage of a wrap spring clutch is that it operates on the spindle mounting the ratchet wheel and braces the spindle against reverse rotation relative to the counter chassis. Absence of side forces acting on the ratchet wheel means that | <u>Proposed Construction:</u><br>This term is a means-plus-function term under 35 U.S.C. §112 ¶6.<br><br>The function is to prevent reverse rotation of said rotary gear means.<br><br>The structures in the specification linked to this function are:<br><br>1) "wrap-spring clutch 64 surrounding the hollow axle 63 at one end thereof remote from ratchet toothed wheel 60";<br><br>2) friction clutch 364 [at the end of hollow axle 363]"; and/or<br><br>3) "coil spring 664".<br><br><u>Intrinsic Evidence:</u><br>**'627 patent**<br>(*See, e.g.*, Abstract, Figs. 3 and 6, col. 4, ll. 14-15, 65-67, col. 5, ll. 1-2, 25-30, col. 6, ll. 1-7; col. 7, ll. 19-21, col. 8, ll. 18- |

| | |
|---|---|
| mechanical operation of the counter is simplified."). | 30, 50-54; col. 9, ll. 6-23, 43-61; claims 1, 2, 5, 12, 15, 16, 18, 21, 22, 24, 25, 29, 30.) |

*See* Col. 6 at 1-3 ("characterised [sic] in that said dose counter further comprises stepless restraint means to prevent reverse rotation of said rotary gear means").

*See* Col. 6 at 4-9 ("Preferably, the stepless restraint means is a wrap-spring clutch operating on the spindle on which the ratchet wheel is mounted and bracing the spindle against reverse rotation relative to the counter chassis. Absence of side forces acting on the ratchet wheel means that mechanical operation of the counter is simplified.")

*See* Col. 8 at 18-30 ("The ratchet-toothed wheel 60 and integrally formed first hollow axle 63 are restrained from reverse rotation by a wrap-spring clutch 64 surrounding the hollow axle 63 at the end thereof remote from ratchet-toothed wheel 60. One end (not shown) of the wrap-spring clutch 64 is braced against the counter chassis. The windings of the wrap-spring clutch 64 are oriented such that rotation of the first hollow axle 63 in a forward sense is not resisted by the spring coils. However, reverse rotation of the hollow axle 63 acts so as to tighten the spring coils around it, thereby causing the first hollow axle 63 to be gripped by the internal surface of the wrap-spring clutch 64 and hence restraint from reverse rotation.").

*See* Col. 8 at 50-54 ("At the end of the hollow axle 363 remote from the ratchet-toothed wheel 360 is a friction clutch 364 which serves to restrain the axle 363 against reverse rotation and hence prevents reverse travel of the counter tape 368.")

*See* Col. 9 at 9-11 ("A fixed pawl 454 acts to prevent reverse rotation of the ratchet-toothed wheel 460 by engagement against the trailing slope 461b of a ratchet tooth 461.").

*See* Col. 9 at 48-50 ("Fixed pawl 654 acts to prevent reverse rotation of the ratchet-toothed wheel 660, but its action is not

|  |  |  |
|---|---|---|
|  | continuous and the restraint is said to be 'stepped'."). | |
|  | *See* Col. 9 at 54-60 ("The coils of the spring 664 are oriented such that forward actuation of the drive pawl 650 in the sense of arrow B acts to unwind the coiling slightly, allowing free rotation of the spindle, and hence the ratchet-toothed wheel 660, in the clockwise sense. Reverse rotation of the spindle acts to tighten the coiling of the spring 664 slightly so that it grips the spindle and restrains it against reverse rotation."). | |
|  | *See* Col. 10 at 47-51 ("Although the invention has been particularly described above with reference to specific embodiments, it will be understood by persons skilled in the art that these are merely illustrative and that variations are possible without departing from the scope of the claims which follow."). | |
|  | *See also* 09/319,947 File History – Office Action dated May 22, 2001 ("Rand discloses an MDI having dose counter including an actuator, drive means 11, a preventing means 15, display means 116 (page 2 lines 127-130) incrementing in single integers, and a control surface (cavities and walls housing element 11 as shown in fig. 2). | |
|  | … | |
|  | Marelli discloses an MDI having a dose counter including in fig. 5 the drive and preventing means for the display means 17. Any surface touching or guiding element 9 would be the control surface. | |
|  | …. | |
|  | Klein discloses an MDI having a dose counter including a drive means 52, preventing means 46, display means 12 and control surface (port in wall 60 through which 40 extends)."). | |
| "display means coupled | Proposed Construction: | Proposed Construction: |

C-15

| | | |
|---|---|---|
| to said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise motion of the rotary gear means" [1] | Plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>*See* Figure 3 at 363.<br><br>*See* Col. 2 at 49-53 ("International Patent Application No. WO 92/09324 discloses the use of a rotatable display means incorporating a rack of teeth which is driven by a ratchet during the dispensing of a medicament dose.").<br><br>*See* Col. 3 at 15-20 ("In U.S. Pat. No. 5,437,270 for a multi-dose powder device, a number of display means are disclosed, including a tape system. The system is described as a tape wound up into a roll and which is freely rotatable, the leading edge of the tape being secured to a drum coupled to the rotation of the metering member.").<br><br>*See* Col. 4 at 17-21 ("display means coupled to the rotary motion of said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear means").<br><br>*See* Col. 4 at 39-43 ("For maximum reliability and accuracy, the counter must only index after the metering valve has delivered its dose from the inhaler.").<br><br>*See* Col. 5 at 42-54 ("Preferably, the display means is an elongate flexible web such as a paper or plastics tape on which the dose amount is printed, say as a descending sequence of numbers from e.g. 200. The advantage of a tape display is that different print styles or representations can be easily incorporated to emphasise [sic] significant events to the inhaler user, such as approaching exhaustion of the medicament reservoir. The tape is dispensed from a supply spool which is arranged in parallel with a take-up spool. The take-up spool may share the same spindle as that on which the ratchet wheel is mounted. The tape extends between the two spools and passes behind a window in the inhaler | This term is a means-plus-function term under 35 U.S.C. §112 ¶6.<br><br>The function is for displaying a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise motion of the rotary gear means.<br><br>The structures in the specification linked to this function are:<br><br>1) "a flexible tape 68 wound around the second hollow axle 67 which serves as a supply spool and passes to the first hollow axle 63 which serves as a take up spool … [t]he surface of the tape 68 is marked with a progression of descending numbers which denotes the number of doses remaining in the aerosol canister"; and/or<br><br>2) "flexible tape display 368".<br><br>Intrinsic Evidence:<br>**'627 patent**<br>(*See, e.g.*, Abstract, Figs. 1-3, col. 3, ll. 15-17, col. 4, ln. 3; col. 5, ll. 42-54; col. 6, ll. 30-42; col. 7, ll. 5-10; col. 8, ll. 4-17, 47-50, claims 1, 4, 5, 9, 10, 12, 17, 18, 24, 28, 29.) |

apparatus through which one of the printed figures is visible to the user.").

*See* Col. 5 at 63-67 ("display means coupled to the rotary motion of said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear means").

*See* Col. 6 at 29-42 ("Preferably, the display means is an elongate flexible web of paper or plastics material on which the dose count is printed, for example as a descending sequence of numbers from e.g. 200. The advantage of a tape display is that different print styles or representations can be easily incorporated to emphasise [sic] significant events to the inhaler user, such as approaching exhaustion of the medicament reservoir. The tape is dispensed from a supply stool which is arranged in parallel with a take-up spool. The take-up spool may share the same spindle as that on which the ratchet wheel is mounted. The tape extends between the two spools and passes behind a window in the inhaler apparatus through which one of the printed figures is visible to the user.").

*See* Col. 6 at 51-55 ("display means coupled to the rotary motion of said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear means").

*See* Col. 10 at 47-51 ("Although the invention has been particularly described above with reference to specific embodiments, it will be understood by persons skilled in the art that these are merely illustrative and that variations are possible without departing from the scope of the claims which follow.").

*See also* 09/319,947 File History – Office Action dated May 22, 2001 ("Rand discloses an MDI having dose counter

including an actuator, drive means 11, a preventing means 15, display means 116 (page 2 lines 127-130) incrementing in single integers, and a control surface (cavities and walls housing element 11 as shown in fig. 2).

…

Marelli discloses an MDI having a dose counter including in fig. 5 the drive and preventing means for the display means 17. Any surface touching or guiding element 9 would be the control surface.

….

Klein discloses an MDI having a dose counter including a drive means 52, preventing means 46, display means 12 and control surface (port in wall 60 through which 40 extends).")

# EXHIBIT D

**EXHIBIT D**
**Final Joint Claim Chart for U.S. Patent No. 8,132,712 ("the '712 patent")**
*Teva Pharmaceutical Products R&D, Inc. et al. v. Perrigo Pharmaceuticals Co. et al.*
**(C.A. No. 12-1101-GMS) (Consolidated)**

**Agreed-Upon Constructions**

| Term [applicable claims] | Joint Proposed Construction |
|---|---|
| "a control surface to regulate a position of engagement and disengagement between said drive means and said wheel" [5] | Proposed Construction: Plain and ordinary meaning/Ordinary and customary meaning.<br><br>Intrinsic Evidence Identified By Plaintiffs:<br>*See* Figure 3 at 58.<br><br>*See* Col. 4 at 3-18 ("A control surface 58 is depicted here as a see-through element so that the workings of the dose counter may be more clearly seen. The control surface 58 extends parallel to the direction of travel of the actuator 20 and is located adjacent the ratchet-toothed wheel 30 at a position which marks a chordal . projection across one of the wheel faces. One of the support arms 56 of the driver 28 is in sliding contact with control surface 58. This sliding contact serves to inhibit the natural tendency of the driver 28 to flex radially inwardly towards the axis of rotation of the ratchet-toothed wheel 30. By preventing such radially inward flexure, the control surface 58 restricts the engagement and disengagement of the drive 28 with the ratchet-toothed wheel 30 so that the distance by which the ratchet-toothed wheel 30 rotates is limited to one tooth pitch. This condition is observed regardless of the extent of linear travel, or stroke, of the actuator 20.").<br><br>*See* Col. 5 at 55-63 ("As in the dose counter 18 of WO 98/28033, the dose counter 18 of the present invention preferably further comprises a control surface to regulate the position of engagement and disengagement between the driver 28 and the wheel 30. In addition, the driver 28 comprises a ratchet drive pawl and preferably the ratchet drive pawl is in the form of a straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms.").<br><br>Intrinsic Evidence Identified By Defendants:<br>**'712 patent**<br>    (*See, e.g.*, col. 3, ll. 49-50; col. 4, ll. 3-21; col. 5, ll. 31-34, 55-58; Fig. 3, claim 5.)<br><br>**'712 Patent Prosecution History:  Application No. 12/532,762**,<br>    (*See, e.g.*, June 10, 2011 Office Action [PER(Albu) 033488].) |

| | |
|---|---|
| | **'627 patent**<br>(*See, e.g.*, Face of '627 patent, item (86) ("PCT Pub. No.: WO98/28033"); Abstract; col. 4, ll. 37-39; col. 5, ll. 14-26; col. 7, ll. 11-13; col. 8, ln. 55 – col. 9, ln.3; col. 9, ll. 29-42; Figs. 3 and 5.) |

## Disputed Constructions

| Term<br>[applicable claims] | Plaintiffs' Constructions and Intrinsic Evidence | Defendants' Constructions and Intrinsic Evidence |
|---|---|---|
| "actuator"<br>[1, 18, 19] | Proposed Construction:<br>Plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>*See* Figure 1 at 20.<br><br>*See* Figure 2 at 20.<br><br>*See* Figure 3 at 22, 26.<br><br>*See* Figure 5 at 2.<br><br>*See* Col. 1 at 16-30 ("This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of | Proposed Construction:<br>Same construction as "actuator means" in the '627 patent, i.e., "a mechanical device for moving or controlling the driver."<br><br>Intrinsic Evidence:<br>**'712 patent**<br>(*See, e.g.*, Abstract, Figs. 1-3, 5, 9; col. 1, ll. 16-20, 34-38, 43-46; col. 2, ll. 44-60; col. 3, ll. 3-8, 35-36, 49-62; col. 4, ll. 17-18, 38-49; col. 5, ll. 13-27, 31-39; col. 6, ll. 19-40, 54-59, 63-66; col. 7, ll. 2-6, 31-35; col. 8, ll. 35-42; col. 9, ll. 8-11; claims 1, 6, 7, 12, 16, 17, 18, 19.)<br><br>**'712 Patent Prosecution History:  App. No. 12/532,762**,<br>(*See, e.g.*, Jun. 10, 2011 Office Action [PER(Albu) 033486-89].)<br><br>**'627 patent**<br>(*See, e.g.*, Face of '627 patent, item (86) ("PCT Pub. No.: WO98/28033"); Abstract, col. 1, ll. 12-14, 24-27, 28-30, 35-38, 49-50; col. 2, ll. 23-27; col. 3, ll. 38-59; col. 4, ll. 26-36; col. 6, ll. 10-20; col. 7, ll. 5-8, 25-28, 33-34, 50-56; col. 8, ll. 33-40; col. 9, ll. 4-5, 66-67; Claims 1, 5, 7, 10, 12, 14, 18, 20, 24, 26, 29, 32. |

the wheel following each step of the step-wise rotary motion of the rotary gear.").

*See* Col. 1 at 34-38 ("Metered-dose inhalers include pressurised [sic] metered-dose inhalers (of both manually operable and breath-actuated types) and dry-powder inhalers. Such metered-dose inhalers typically comprise a medicament-containing vessel and an actuator body having a drug delivery outlet.").

*See* Col. 1 at 43-46 ("The metering valve assembly is provided with a protruding valve stem which, in use, is inserted as a tight push fit into a so-called 'stem block' in the actuator body.").

*See* Col. 2 at 45-49 ("FIGS.1 and 2 reproduced herein from WO 98/28033 show the lower portion of a metered-dose inhaler. The inhaler comprises an actuator body 2 having a drug delivery outlet 4. An aerosol canister 6 extends into the lower portion of the actuator 2.").

*See* Col. 2 at 52-59 ("The lid 10 carries a metering-valve assembly having a protruding valve stem 12, the end of which is received as a tight push fit in a stem block 14 of the actuator body 2. Stem block 14 has a nozzle 16 communicating with the drug delivery outlet 4 so that, upon actuation of the metering-valve assembly, a charge of the drug is emitted through the nozzle 16 into the drug delivery outlet 4. Actuation of the metering valve assembly is effected by causing downward movement of the aerosol canister 6 relative to the actuator body 2.").

*See* Col. 3 at 3-5 ("A counter mechanism 18 includes an actuator 20 moulded [sic] from a plastics material, such as nylon, the actuator 20 having a boss 22 integrally formed at its base.").

*See* Col. 3 at 9-13 ("A driver 28 for driving a rotary gear in the form of a ratchet-toothed wheel 30 is integrally moulded

D-3

[sic] with boss 22 of the actuator 20 and comprises a transverse hook element (not shown) mounted between two arms (only one visible in FIG. 2), the bases of which are conjoined to the boss 22.").

*See* Col. 3 at 49-56 ("FIG. 3 shows a preferred embodiment of the invention set out in WO 98/28033. The dose counter 18 comprises an actuator 20 having a boss 22 integrally formed therewith and driver 28 joined to the boss 22. The underside of boss 22 is provided with a blind hole which receives a compression spring 24 that serves to return the actuator 20 to its rest position after depression thereof during actuation of the inhaler apparatus (not shown).").

*See* Col. 3 at 57-62 ("The driver 28 comprises a transverse hook 52 mounted between a pair of arms 54,56 which are joined at their bases by a web (not shown). The web is connected to the boss 22 of the actuator 20. A combined actuator and driver assembly may be integrally formed, such as from a plastics material, e.g. as nylon.").

*See* Col. 4 at 46-49 ("Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising: an actuator").

*See* Col. 4 at 51-52 ("a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator").

*See* Col. 5 at 31-36 ("The dose counter of the present invention is based on that set out in FIGS. 3 and 4 described hereinabove except that the pawl 60 has been modified. Modification of the pawl followed an in-depth study of all of the components of the inhaler. Thus, as shown in FIG. 5, the dose counter 18 of the present invention comprises an actuator 20").

*See* Col. 6 at 20-35 ("The user depresses the aerosol canister 6 which causes displacement of the actuator 20. In this

embodiment, the actuator 20 is adapted to engage with the rim of the medicament canister 6. The actuator 20 is operable by linear displacement from a first position to a second position and back to the first position and movement of the rotary gear occurs either during the displacement of the actuator from the first position to the second position or during the displacement of the actuator from the second position to the first position. In the embodiment shown in FIG. 5, the movement of the rotary gear occurs during the displacement of the actuator from the first position to the second position. In the embodiment shown, the actuator 20 comprises a spring-loaded plunger 22, 24, the plunger being depressible against the return force of the spring loading when the actuator is caused to deliver a dose of medicament.").

*See* Col. 6 at 36-40 ("During the movement from the first position to the second position, the actuator 20 causes the driver 28 to engage the trailing edge 62 of the ratchet tooth 32 of the wheel 30. As the actuator 20 and driver 28 move down the ratchet-toothed wheel 30 rotates.").

*See* Col. 6 at 55-59 ("The compression spring 24 pushes the actuator 20 to follow the canister. The driver 28 on the actuator 20 flexes to pass over the teeth of the ratchet-toothed wheel 30 as the actuator 20 moves from the first to the second position.").

*See* Col. 6 at 63-66 ("The counter mechanism of the type described with reference to WO 98/28033 and in accordance with the present 65 invention must rotate the wheel 30 of the rotary gear by exactly one tooth spacing each time the actuator is depressed.").

*See* Col. 7 at 2-4 ("The stroke available for indexing the rotary gear is equal to the full stroke of the actuator 2.").

*See* Col. 8 at 35-48 ("The present invention further provides a metered dose inhaler 72 as shown in FIG. 9. The inhaler

|  | comprises a medicament canister 6, an actuator body 74 for receiving the canister 6 and having a medicament delivery outlet, and the dose counter as described herein. The inhaler has a window 76 for viewing the integers on the tape 44. In a preferred embodiment the actuator body 74 comprises a sump and preferably a smooth rounded sump. Typically, a rounded sump is understood to have a substantially cylindrical upper portion and a substantially hemi-spherical lower portion. Typically, smooth is understood to mean that the surface is sufficiently free of surface protrusions to the extent that during normal use medicament will not substantially adhere thereto."). |  |
|--|--|--|
|  | *See* Col. 9 at 8-18 ("In a preferred embodiment the counter comprises an actuator 20; a rotary gear; a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle 36 which wheel 30 having a plurality of ratchet teeth 32 around its periphery; and a display 44 coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear. Preferably, the pawl 60 prevents reverse rotation of the rotary gear."). |  |
|  | *See* Col. 9 at 18-25 ("Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims."). |  |
| "a rotary gear ... comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth | <u>Proposed Construction:</u><br>Plain and ordinary meaning.<br><br><u>Intrinsic Evidence:</u><br>*See* Figure 2 at 32. | <u>Proposed Construction:</u><br>Same construction as "rotary gear means having a wheel mounted on a spindle, said wheel having a plurality of ratchet teeth around a periphery of said wheel" in the '627 patent, i.e.," a wheel mounted on a spindle, the wheel having a plurality of |

| | | |
|---|---|---|
| around its periphery" [1, 18, 19] | *See* Figure 3 at 30, 34.<br><br>*See* Figure 4 at 30, 32, 62, 63.<br><br>*See* Figure 5 at 30, 32.<br><br>*See* Figure 6 at 30, 70.<br><br>*See* Figure 8 at 30, 32a.<br><br>*See* Col. 1 at 16-30 ("This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.").<br><br>*See* Col. 3 at 9-17 ("A driver 28 for driving a rotary gear in the form of a ratchet-toothed wheel 30 is integrally moulded [sic] with boss 22 of the actuator 20 and comprises a transverse hook element (not shown) mounted between two arms (only one visible in FIG. 2), the bases of which are conjoined to the boss 22. The transverse hook is dimensioned and oriented to engage with ratchet teeth 32 formed around the periphery of the ratchet toothed wheel 30 to rotate it in a forward direction.").<br><br>*See* Col. 3 at 18-21 ("The ratchet-toothed wheel 30 is | ratchet teeth around its periphery."<br><br>Intrinsic Evidence:<br>**'712 patent**<br>  (*See, e.g.*, Abstract; Figs. 1-6, 8; col. 1, ll. 16-30; col. 3, ll. 9-26, 37-50, 63-67; col. 4, ll. 1-2, 6-17, 19-29, 37-67; col. 5, ll. 1-7, 13-25, 31-54, 67; col. 6, ll. 1-5, 19, 36-46, 53-67; col. 7, ll. 1-2, 57-67; col. 8, ll. 1-2, 26-29; col. 9, ll. 8-18; claims 1, 5, 8, 9, 13, 14, 15, 18, 19.)<br><br>**'712 Patent Prosecution History: App. No. 12/532,762**,<br>  (*See, e.g.*, Jun. 10, 2011 Office Action [PER(Albu) 033486-89].)<br><br>**'627 Patent**<br>  (*See, e.g.*, Face of '627 patent, item (86) ("PCT Pub. No.: WO98/28033"); Abstract; col. 4, ll. 9-13, 36-37, col. 5, ll. 27-32, 35-40, 50-52, 58-62; col. 6, ll. 4-9, 23-29, 38-40, 46-50; col. 7, ll. 57-58, 63-67; col. 8, ll. 18-21, 48-51, 59-60, 65; col. 9, ll. 1-2, 8-24, 27-35, 39-41, 47-60; col. 10, ll. 1-4, 7-8, 10, 18, 22-24, 30-31, 40; claims 1, 3, 5, 8, 10, 12, 18, 23, 24, 25, 29, 30, 33; Figs. 2-7.) |

integrally moulded [sic] with a first hollow axle 34 which is rotatably supported on a first spindle 36 that projects transversely from a chassis sub-element 38.").

*See* Col. 4 at 46-51 ("Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.").

*See* Col. 4 at 64 – Col. 5 at 1 ("The counter of the present invention thus provides a pawl having at least two teeth in which one and the same tooth engages with successive ratchet teeth of the wheel during the step-wise rotary motion of the wheel to prevent reverse rotation of the wheel (and hence the rotary gear).").

*See* Col. 5 at 35-46 ("Thus, as shown in FIG. 5, the dose counter 18 of the present invention comprises an actuator 20; a rotary gear (not shown in full in FIG. 5); a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle (not shown), the wheel 30 having a plurality of ratchet teeth 32 around its periphery; a pawl 60 to prevent reverse rotation of the rotary gear; and a display (not shown) coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step

D-8

of the step-wise rotary motion of the rotary gear.").

*See* Col. 6 at 23-31 ("The actuator 20 is operable by linear displacement from a first position to a second position and back to the first position and movement of the rotary gear occurs either during the displacement of the actuator from the first position to the second position or during the displacement of the actuator from the second position to the first position. In the embodiment shown in FIG. 5, the movement of the rotary gear occurs during the displacement of the actuator from the first position to the second position.").

*See* Col. 6 at 41-44 ("The spindle of the rotary gear moves the counter tape 44 revealing the next integer. The counter tape 44 is held taut by the action of the split hub 70 on which is mounted the stock bobbin 68.").

*See* Col. 6 at 60-62 ("The tooth of the at least two teeth 64, 66 which has engaged tooth 32 of the wheel30 prevents the rotary gear from rotating backwards.").

*See* Col. 6 at 63-66 ("The counter mechanism of the type described with reference to WO 98/28033 and in accordance with the present invention must rotate the wheel 30 of the rotary gear by exactly one tooth spacing each time the actuator is depressed.").

*See* Col. 7 at 2-4 ("The stroke available for indexing the rotary gear is equal to the full stroke of the actuator 2.").

*See* Col. 7 at 40-45 ("Thus, since the start gap is 0.85±0.47 mm the maximum start gap (mean plus 3 standard deviations) is 1.32 mm (0.85±0.47). When such a start gap occurs, a short-stroking canister (for example, 2.79 mm) will not rotate the wheel 30 of the rotary gear by a full tooth spacing. This will lead to failure of the dose counter.").

*See* Col. 7 at 52-56 ("The step-wise rotation of the wheel 30

D-9

then continues with all subsequent actuations starting and finishing with the ratchet teeth 32 of the wheel 30 of the rotary gear engaged with the second tooth 66 of the pawl 60.").

*See* Col. 7 at 57 – Col. 8 at 2 ("FIG. 8 shows a more detailed view of the wheel 30 of the rotary gear, the driver 28 and the pawl 60 to prevent reverse rotation of the rotary gear. In FIG. 8(a) the ratchet tooth 32a of the wheel 30 is engaged with the first ratchet tooth 64 of the pawl. In FIG. 8(b) the same tooth 32a of the wheel 30 is engaged with the second ratchet tooth 66 of the pawl 60. It may be seen that the start gap is reduced in the arrangement shown in FIG. 8(b) in comparison with the same distance in FIG. 8(a). The second tooth 66 of the pawl 60 therefore allows the first distance S of the start gap (the between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30) to be reduced thereby accommodating a greater tolerance in the canister stroke.").

*See* Col. 8 at 3-7 ("As explained hereinabove, the first and second teeth 64, 66 provide different starting positions for the wheel 30 of the rotary gear to accommodate different tolerance levels in the components of the inhaler.").

*See* Col. 9 at 8-18 ("In a preferred embodiment the counter comprises an actuator 20; a rotary gear; a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle 36 which wheel 30 having a plurality of ratchet teeth 32 around its periphery; and a display 44 coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear. Preferably, the pawl 60 prevents reverse rotation of the rotary gear.").

*See* Col. 9 at 18-25 ("Although the invention herein has been described with reference to particular embodiments, it is to

| | | |
|---|---|---|
| | be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims."). | |
| "a driver for driving said rotary gear in step-wise fashion in response to displacement of the actuator" [1, 18, 19] | Proposed Construction: Plain and ordinary meaning.<br><br>Intrinsic Evidence: *See* Figure 2 at 28.<br><br>*See* Figure 3 at 52, 54.<br><br>*See* Figure 4 at 28.<br><br>*See* Figure 5 at 28.<br><br>*See* Figure 8 at 28.<br><br>*See* Col. 1 at 16-30 ("This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.").<br><br>*See* Col. 3 at 9-17 ("A driver 28 for driving a rotary gear in | Proposed Construction: Same construction as "drive means for driving said rotary gear means in step-wise fashion in response to displacement of said actuator means" in the '627 patent i.e.:<br><br>1) "a transverse hook element … mounted between two arms 52, 53 … the bases of which are conjoined to the boss portion 42 ... [t]he transverse hook element [being] dimensioned and oriented to engage with ratchet teeth 61 formed around the periphery of ratchet wheel 60 to rotate it in a forward direction";<br><br>2) "a transverse hook element 351 mounted between a pair of arms 352, 353 which are joined at their bases by a web … [t]he web [being] connected to the boss portion 342 of the actuator 341";<br><br>3) "the ratchet tooth-engaging element is supported at both ends by a support arm 752, 753";<br><br>4) "drive pawl 451";<br><br>5) "drive pawl hook element 551";<br><br>6) "drive pawl 550";<br><br>7) "drive pawl 650"; and/or<br><br>8) "drive pawl 751".<br><br>Intrinsic Evidence: **'712 patent**<br>(*See, e.g.*, Abstract; Figs. 2-5, 8; col. 1, ll. 16-20; col. 3, ll. 9- |

the form of a ratchet-toothed wheel 30 is integrally moulded [sic] with boss 22 of the actuator 20 and comprises a transverse hook element (not shown) mounted between two arms (only one visible in FIG. 2), the bases of which are conjoined to the boss 22. The transverse hook is dimensioned and oriented to engage with ratchet teeth 32 formed around the periphery of the ratchet toothed wheel 30 to rotate it in a forward direction.").

See Col. 3 at 49-56 ("FIG. 3 shows a preferred embodiment of the invention set out in WO 98/28033. The dose counter 18 comprises an actuator 20 having a boss 22 integrally formed therewith and driver 28 joined to the boss 22. The underside of boss 22 is provided with a blind hole which receives a compression spring 24 that serves to return the actuator 20 to its rest position after depression thereof during actuation of the inhaler apparatus (not shown).").

See Col. 3 at 57-62 ("The driver 28 comprises a transverse hook 52 mounted between a pair of arms 54, 56 which are joined at their bases by a web (not shown). The web is connected to the boss 22 of the actuator 20. A combined actuator and driver assembly may be integrally formed, such as from a plastics material, e.g. as nylon.").

See Col. 4 at 10-18 ("This sliding contact serves to inhibit the natural tendency of the driver 28 to flex radially inwardly towards the axis of rotation of the ratchet-toothed wheel 30. By preventing such radially inward flexure, the control surface 58 restricts the engagement and disengagement of the drive 28 with the ratchet-toothed wheel 30 so that the distance by which the ratchet-toothed wheel 30 rotates is limited to one tooth pitch. This condition is observed regardless of the extent of linear travel, or stroke, of the actuator 20.").

See Col. 4 at 19-29 ("FIG. 4 shows a schematic view of a conventional ratchet gear and drive pawl arrangement which is used in the dose counter described in WO 98/28033. The

16, 49-52, 57-66; col. 4, ll. 8-17, 19-24, 38-54; col. 5, ll. 13-25, 31-38, 55-63; col. 6, ll. 36-40, 53-59, 64-65; col. 7, ll. 57-67; col. 9, ll. 8-18; claims 1, 5, 8, 9, 18, 19.)

**'712 Patent Prosecution History: App. No. 12/532,762**, (See, e.g., Jun. 10, 2011 Office Action [PER(Albu) 033486-89].).

**'627 patent**
(See, e.g., Face of '627 patent, item (86) ("PCT Pub. No.: WO98/28033"); Abstract, Figs. 2-7, col. 4, ll. 60-65; col. 5, ll. 33-41; col. 6, ll. 21-29, 56-67; col. 7, ll. 1-2, 14-24, 57-65; col. 8, ll. 41-48, 61-67; col. 9, ll. 1-3, 6-10, 16-19, 23-48, , 54-55, 62-67; col. 10, ll. 1-46; claims 1, 3, 5, 8, 10, 12, 18, 23, 24, 29, 33.)

arrangement uses a reciprocating driver 28 acting in a pushing sense to rotate a ratchet-toothed wheel 30 in the direction shown by the arrows A. A fixed pawl 60 acts to prevent reverse rotation of the ratchet-toothed wheel 30 by engagement against the trailing edge 62 of a ratchet tooth 32. However, on forward rotation of the ratchet-toothed wheel 30 in the sense of arrows A, the fixed pawl 60 is capable of radially outward deformation, urged by the leading edge 63 of a ratchet-tooth 32.").

*See* Col. 4 at 30-36 ("In this arrangement, if the ratchet-toothed wheel 30 is rotated by more than a single tooth pitch but by less than two tooth pitches for each reciprocating movement of the driver 28, there is a degree of reverse rotation until the pawl 60 becomes engaged by the trailing edge 62 (as opposed to the leading edge 63) of a ratchet tooth 32. Thus, the rotation of the ratchet-toothed wheel 30 may be said to be 'stepped'.).

*See* Col. 4. at 46-54 ("Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery").

*See* Col. 5 at 31-36 ("The dose counter of the present invention is based on that set out in FIGS. 3 and 4 described hereinabove except that the pawl 60 has been modified. Modification of the pawl followed an in-depth study of all of the components of the inhaler. Thus, as shown in FIG. 5, the dose counter 18 of the present invention comprises an actuator 20; a rotary gear (not shown in full in FIG. 5); a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle (not shown), the wheel 30 having a plurality of ratchet teeth 32 around its periphery; a pawl 60 to prevent reverse rotation of the rotary

D-13

gear; and a display (not shown) coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear.").

*See* Col. 5 at 55-63 ("As in the dose counter 18 of WO 98/28033, the dose counter 18 of the present invention preferably further comprises a control surface to regulate the position of engagement and disengagement between the driver 28 and the wheel 30. In addition, the driver 28 comprises a ratchet drive pawl and preferably the ratchet drive pawl is in the form of a straddle drive in which the element that engages the ratchet teeth of the wheel is supported between a pair of spaced apart support arms.").

*See* Col. 6 at 36-40 ("During the movement from the first position to the second position, the actuator 20 causes the driver 28 to engage the trailing edge 62 of the ratchet tooth 32 of the wheel 30. As the actuator 20 and driver 28 move down the ratchet-toothed wheel 30 rotates.").

*See* Col. 6 at 53-59 ("The driver 28 releases the ratchet-toothed wheel 30 after it has engaged with the pawl 60. On reset of the inhaler, the canister 6 is allowed to return to its initial (first) position. The compression spring 24 pushes the actuator 20 to follow the canister. The driver 28 on the actuator 20 flexes to pass over the teeth of the ratchet-toothed wheel 30 as the actuator 20 moves from the first to the second position.").

*See* Col. 7 at 31-39 ("The start gap is the tolerance stack in the vertical direction and includes a first distance between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30 of the rotary gear, and a second distance between the top of the actuator 20 and the canister 6. The tolerance in the vertical direction was found to be ±0.47 mm. The nominal start gap for the EasiBreathe® inhaler is set at 0.85 mm and hence the start gap with tolerances is 0.85±0.47 mm.").

*See* Col. 7 at 57 – Col. 8 at 2 ("FIG. 8 shows a more detailed view of the wheel 30 of the rotary gear, the driver 28 and the pawl 60 to prevent reverse rotation of the rotary gear. In FIG. 8(a) the ratchet tooth 32a of the wheel 30 is engaged with the first ratchet tooth 64 of the pawl. In FIG. 8(b) the same tooth 32a of the wheel 30 is engaged with the second ratchet tooth 66 of the pawl 60. It may be seen that the start gap is reduced in the arrangement shown in FIG. 8(b) in comparison with the same distance in FIG. 8(a). The second tooth 66 of the pawl 60 therefore allows the first distance S of the start gap (the between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30) to be reduced thereby accommodating a greater tolerance in the canister stroke.").

*See* Col. 9 at 8-18 ("In a preferred embodiment the counter comprises an actuator 20; a rotary gear; a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle 36 which wheel 30 having a plurality of ratchet teeth 32 around its periphery; and a display 44 coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear. Preferably, the pawl 60 prevents reverse rotation of the rotary gear.").

*See* Col. 9 at 18-25 ("Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims.").

*See also* 12/532,762 File History – Office Action dated June

| | | |
|---|---|---|
| | 10, 2011 ("Bowman et al: teaches a dose counter for a metered dose inhaler. There is an actuator 20, a rotary gear 32 both shown in figure 2. There is a driver 28 (see figure 4) that drives the gear in a step-wise fashion in response to displacement of the actuator, the rotary gear being a wheel mounted on a spindle and having. a plurality of ratchet teeth around the periphery. There is a pawl 60 to prevent reverse rotation; this is also shown in figure 4. There is a display shown in figure 3, having a visible array of incrementing integers, in response to each step of the step-wise rotary motion of the rotary gear."). | |
| Defendants: "a pawl to prevent reverse rotation of the rotary gear…wherein the pawl comprises at least two ratchet teeth each for engaging with the ratchet teeth of the wheel to prevent reverse rotation of the rotary gear, the at least two ratchet teeth being radially spaced such that one of the at least two ratchet teeth of the pawl engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion  of the rotary gear"<br><br>Plaintiffs: "a pawl [to prevent reverse rotation] ... [wherein] the pawl [comprises at least two ratchet teeth]" [1, 18, 19] | Proposed Construction:<br>"One or more pawls [to prevent reverse rotation] … [wherein] one or more pawls [comprises at least two ratchet teeth]."<br><br>Intrinsic Evidence:<br>*See* Figure 4 at 60.<br><br>*See* Figure 5 at 60, 64, 66.<br><br>*See* Figure 8 at 60, 64, 66.<br><br>*See* Col. 1 at 16-30 ("This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear."). | Proposed Construction:<br>"a pawl" and "the pawl" should be given their ordinary and customary meaning.<br><br>A pawl having at least two ratchet teeth each for engaging with the ratchet teeth of the wheel to prevent reverse rotation of the rotary gear. The at least two ratchet teeth of the pawl are radially spaced less than the radial distance between adjacent teeth on the wheel of the rotary gear such that one and the same tooth of the pawl engages with the ratchet teeth of the wheel of the rotary gear following each step of the step-wise rotary motion of the rotary gear.<br><br>Intrinsic Evidence:<br>'712 patent<br>   (*See, e.g.*, Abstract; Fig. 8; col. 1, ll. 16-30; col. 4, ll. 19-36, 38-48, 55, 60-67; col. 5, ll. 1-7, 13-25, 31-34, 41-42, 64-67; col. 6, ll. 1-5, 45-54, 60-67; col. 7, ll. 1-2, 40-67; col. 8, ll. 1-34; col. 9, ll. 1-7, 17-18; claims 1, 2, 3, 4, 15, 18, 19.)<br><br>'712 Patent Prosecution History:  App. No. 12/532,762,<br>•  *See, e.g.*, Jun. 10, 2011 Office Action [PER(Albu) 033486-89].<br>•  *See, e.g.*, Oct. 11, 2011 Reply to Office Action [PER(Albu)_033491-94].<br>•  *See, e.g.*, Nov. 7, 2011 Reasons for Allowance [PER(Albu) 033507-08]. |

*See* Col. 4 at 19-29 ("FIG. 4 shows a schematic view of a conventional ratchet gear and drive pawl arrangement which is used in the dose counter described in WO 98/28033. The arrangement uses a reciprocating driver 28 acting in a pushing sense to rotate a ratchet-toothed wheel 30 in the direction shown by the arrows A. A fixed pawl 60 acts to prevent reverse rotation of the ratchet-toothed wheel 30 by engagement against the trailing edge 62 of a ratchet tooth 32. However, on forward rotation of the ratchet-toothed wheel 30 in the sense of arrows A, the fixed pawl 60 is capable of radially outward deformation, urged by the leading edge 63 of a ratchet-tooth 32.").

*See* Col. 4 at 30-36 ("In this arrangement, if the ratchet-toothed wheel 30 is rotated by more than a single tooth pitch but by less than two tooth pitches for each reciprocating movement of the driver 28, there is a degree of reverse rotation until the pawl 60 becomes engaged by the trailing edge 62 (as opposed to the leading edge 63) of a ratchet tooth 32. Thus, the rotation of the ratchet-toothed wheel 30 may be said to be 'stepped'.").

*See* Col. 4 at 46-63 ("Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.").

D-17

*See* Col. 4 at 64 – Col. 5 at 9 ("The counter of the present invention thus provides a pawl having at least two teeth in which one and the same tooth engages with successive ratchet teeth of the wheel during the step-wise rotary motion of the wheel to prevent reverse rotation of the wheel (and hence the rotary gear). By providing alternative positions for engaging the ratchet teeth of the wheel, the pawl increases the range of tolerances in the manufacture of the various components of the inhaler which can be accommodated. This in turn significantly reduces the failure rate of the dose counter and, in particular, the likelihood of undercounting. Clearly, undercounting is particularly undesirable as it can lead to a patient believing that there are more doses left within the inhaler than there actually are.").

*See* Col. 5 at 31-46 ("The dose counter of the present invention is based on that set out in FIGS. 3 and 4 described hereinabove except that the pawl 60 has been modified. Modification of the pawl followed an in-depth study of all of the components of the inhaler. Thus, as shown in FIG. 5, the dose counter 18 of the present invention comprises an actuator 20; a rotary gear (not shown in full in FIG. 5); a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle (not shown), the wheel 30 having a plurality of ratchet teeth 32 around its periphery; a pawl 60 to prevent reverse rotation of the rotary gear; and a display (not shown) coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear.").

*See* Col. 5 at 64 – Col. 6 at 5 ("The pawl 60 comprises at least two ratchet teeth 64, 66. Preferably, as shown in FIG. 5, the pawl 60 comprises two ratchet teeth 64, 66 and no more. The at least two ratchet teeth 64, 66 are radially spaced with respect to the ratchet-toothed wheel 30 such that one and the same tooth engages with the ratchet teeth 32 of the wheel

following each step of the stepwise rotary motion of the rotary gear. Typically, one, and only one, of the ratchet teeth 64, 66 on pawl 60 ever engages with the ratchet wheel.").

*See* Col. 6 at 45-52 ("The pawl 60 radially outwardly deforms to allow the wheel 30 to rotate by one tooth 32. The at least two teeth 64, 66 of pawl 60 may be inherently resilient to allow the required radially outward deformation and return. Alternatively or in addition, the pawl 60 may be mounted on a resilient support capable of radially outward deformation, for example the resilient support may be a resilient flange incorporated in to the chassis of the dose counter 18.").

*See* Col. 6 at 53-54 ("The driver 28 releases the ratchet-toothed wheel 30 after it has engaged with the pawl 60.").

*See* Col. 6 at 60-62 ("The tooth of the at least two teeth 64, 66 which has engaged tooth 32 of the wheel 30 prevents the rotary gear from rotating backwards.").

*See* Col. 7 at 40-56 ("Thus, since the start gap is 0.85±0.47 mm the maximum start gap (mean plus 3 standard deviations) is 1.32 mm (0.85±0.47). When such a start gap occurs, a short-stroking canister (for example, 2.79 mm) will not rotate the wheel 30 of the rotary gear by a full tooth spacing. This will lead to failure of the dose counter. However, the provision of a first and second ratchet tooth 64, 66 in the pawl 60 allows the ratchet tooth 32 of the wheel 30 of the rotary gear to rest on the second tooth 66. In the present embodiment, the second tooth 66 is 0.60 mm away from the first tooth 64. Thus, for the next actuation, the start gap is reduced to 0.72 mm (1.32-0.60). The stroke is therefore sufficient to rotate the wheel 30 a full index starting from this point. The step-wise rotation of the wheel 30 then continues with all subsequent actuations starting and finishing with the ratchet teeth 32 of the wheel 30 of the rotary gear engaged with the second tooth 66 of the pawl 60.").

D-19

*See* Col. 7 at 57 – Col. 8 at 2 ("FIG. 8 shows a more detailed view of the wheel 30 of the rotary gear, the driver 28 and the pawl 60 to prevent reverse rotation of the rotary gear. In FIG. 8(a) the ratchet tooth 32a of the wheel 30 is engaged with the first ratchet tooth 64 of the pawl. In FIG. 8(b) the same tooth 32a of the wheel 30 is engaged with the second ratchet tooth 66 of the pawl 60. It may be seen that the start gap is reduced in the arrangement shown in FIG. 8(b) in comparison with the same distance in FIG. 8(a). The second tooth 66 of the pawl 60 therefore allows the first distance S of the start gap (the between the part of the driver 28 which engages the wheel 30 and the appropriate ratchet tooth 32 of the wheel 30) to be reduced thereby accommodating a greater tolerance in the canister stroke.").

*See* Col. 8 at 14-23 ("In the embodiments shown herein, the dose counter 18 of the present invention incorporates a pawl 60 having two teeth 64, 66 and only two teeth, i.e. the pawl 60 consists essentially of two teeth 64, 66. However, additional teeth could be incorporated to provide additional precision to the start position of the wheel 30 and thus additional precision in the first distance S. For example, the pawl may have 2-6, preferably two, three or four teeth, more preferably two or three and most preferably two teeth.").

*See* Col. 9 at 1-7 ("A further aspect of the present invention provides the use of a pawl 60 comprising at least two ratchet teeth 64, 66 for preventing miscounting in a dose counter of a metered dose inhaler 72. A still further aspect of the present invention provides the use of a pawl 60 comprising at least two ratchet teeth 64, 66 for preventing undercounting in a counter of a metered dose inhaler 72.").

*See* Col. 9 at 8-18 ("In a preferred embodiment the counter comprises an actuator 20; a rotary gear; a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle 36 which wheel 30 having a

plurality of ratchet teeth 32 around its periphery; and a display 44 coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear. Preferably, the pawl 60 prevents reverse rotation of the rotary gear.").

*See* Col. 9 at 18-25 ("Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims.").

*See also* 12/532,762 File History – Applicant Arguments/Remarks dated October 11, 2011 ("Claim 1, which has been amended, now recites 'wherein- the pawl comprises, at least two ratchet teeth each for engaging with the ratchet teeth of the wheel to prevent reverse rotation of the rotary gear, the at least two ratchet teeth being radially spaced such that one of that least two ratchet teeth of the pawl engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.' This feature is disclosed, for example, in Figure 5 and at Page 9, Lines 1-7 of the originally-filed specification. Claims 18 and 19 have been amended to incorporate features of claim 1. No new matter has been added.

…

Independent claims 1, 18 and 19 each recites features which are neither disclosed nor suggested by Stradella, Bowman or Parker, considered either alone or in combination, namely: 'wherein the pawl comprises at least two ratchet teeth each for engaging with the ratchet teeth of the wheel to prevent reverse rotation of the rotary gear, the at least two ratchet

teeth being radially spaced such that one of the at least two ratchet teeth of the pawl engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.' Emphasis Added.

Independent claims 1, 18 and 19 have been amended to clarify that each of the at least two ratchet teeth of the pawl (i.e. every one considered individually) is configured for engaging with the ratchet teeth. The Parker reference is relied upon for its teaching of a 'pawl with two teeth' (see page 4 of the Office Action). The Office Action does not contend that either Stradella or Bowman teach a pawl having two teeth.

For the purpose of comparison, Parker's pawl 18 is shown below to the left and the Applicant's pawl 60 is shown below to the right. In Applicant's Figure 8a shown below, the pawl tooth 64 prevents reverse rotation of the gear, whereas in Applicant's Figure 8b shown below, the other pawl tooth 66 prevents reverse rotation of the gear. Thus, both of the Applicant's pawl teeth prevent reverse rotation of the gear. In contrast, as shown, in the annotated figure 1 shown below to the left, Parker's pawl tooth labeled [sic] 'A' cannot prevent reverse rotation of the ratchet wheel 16. Only Parker's pawl tooth labelled [sic] 'B' prevents reverse rotation. Parker's pawl tooth 'A' merely serves to limit the engagement of the pawl teeth with a single tooth of the ratchet wheel 16.

…

Additionally, in the unlikely event that the Examiner-considers Parker's pawl tooth labelled [sic] 'C' as analogous to a claimed ratchet tooth of a pawl, then the Applicant submits that Parker's pawl tooth 'C' permits reverse rotation of the ratchet wheel 16 and prevents forward rotation of the ratchet wheel 16 (see Parker at Column 2, Lines 61-65). Parker's reverse-action tooth 'C' is provided for switching between clockwise and counter-clockwise ratcheting action.

There would be no reason to add Parker's reverse-action tooth 'C' to Bowman's pawl because Bowman's rotary gear is only intended to rotate in a single direction.

…

Page 6 of the Office Action contends that other prior art references disclose plural toothed pawls. Like the Parker reference, each pawl tooth of those reference does not engage with the ratchet teeth of a wheel to prevent reverse rotation of the wheel.")

*See also* 12/532,762 File History – Notice of Allowability dated November 7, 2011 ("Each independent claim has now been amended to include the limitation, 'wherein the pawl comprises at least two ratchet teeth each for engaging with the ratchet teeth of the wheel to prevent reverse rotation of the rotary gear, the at least two ratchet teeth being radially spaced such that one of the at least two ratchet teeth of the pawl engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.' (Underlining by examiner for emphasis).

The examiner agrees with the applicant that these limitations overcome the instant rejection which relies on the pawl of Parker (US 4,445,404). It is noted that these limitations capture several aspects of the pawl that are not seen in various prior art pawls shown by the examiner, specifically: (1) Each of the two ratchet teeth of the pawl can be engaged with the ratchet teeth of the wheel. In Parker, as the applicant convincingly shows especially at page 7 of the recent response, only one of the two teeth engages for preventing reverse rotation. (2) One of the two ratchet teeth of the pawl is be engaged with the ratchet teeth of the wheel in a given step. This limitation distinguishes over such art as Keeton (US 7,252,065), Nicoletti (US 6,175,994), Nakaya et al. (US 5,485,971) and Chiang (US 2011/0220450) all of which teach at least two ratchet teeth on a pawl. In each case, the two ratchet teeth engage the wheel simultaneously, mainly

| | | |
|---|---|---|
| | for strength and redundancy. The contrast with the instant invention is seen in the instant figures as well as column 9, lines 6-7 of the instant specification: 'Typically, one, and only one, of the ratchet teeth 64, 66 on pawl 60 ever engages with the ratchet wheel.' (3) Both ratchet teeth are to prevent reverse rotation. Both Parker and Chang (US 6,070,502) teach pawls that have opposite teeth variously stopping rotation in a first direction and a second direction respectively. The instant claim limitations specifically distinguish away from this arrangement."). | |
| "display coupled to the rotary gear ... having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear" [1, 18, 19] | Proposed Construction: Plain and ordinary meaning.<br><br>Intrinsic Evidence:<br>See Figure 3 at 30, 34, 44, 52, 54, 64.<br><br>See Figure 6 at 18, 30.<br><br>See Col. 1 at 16-30 ("This invention relates to a metered-dose inhaler and in particular to a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator; the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear; wherein the pawl comprises at least two ratchet teeth which are radially spaced such that one of the teeth engages with the ratchet teeth of the wheel following each step of the step-wise rotary motion of the rotary gear.").<br><br>See Col. 3 at 63 – Col. 4 at 2 ("In use, the transverse hook 52 engages with ratchet teeth 32 of a ratchet-toothed wheel 30 which is mounted on a hollow axle 34 serving as a take-up spool for a flexible tape display 44. At the end of the hollow | Proposed Construction: Same construction as "display means coupled to said rotary gear means, said display means having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise motion of the rotary gear means" in the '627 patent, i.e.:<br><br>1) "a flexible tape 68 wound around the second hollow axle 67 which serves as a supply spool and passes to the first hollow axle 63 which serves as a take up spool … [t]he surface of the tape 68 is marked with a progression of descending numbers which denotes the number of doses remaining in the aerosol canister"; and/or<br><br>2) "flexible tape display 368".<br><br>Intrinsic Evidence:<br>'712 patent<br>(See, e.g., Abstract, Figs. 1-3, 5-6, 8, 9; col. 1, 16-30; col. 3, ll. 17-36, 49-50, 63-67; col. 4, ll. 1-2, 56-59; col. 5, ll. 13-27, 31-33, 42-46; col. 6, ll. 6-18, 41-44, 63-65; col. 8, ll. 35-40; col. 9, ll. 8-17; claims 1, 10, 11, 18, 19.)<br><br>'712 Patent Prosecution History:  App. No. 12/532,762, (See, e.g., Jun. 10, 2011 Office Action [PER(Albu) 033486-89].)<br>'627 patent<br>(See, e.g., Face of '627 patent, item (86) ("PCT Pub. No.: WO98/28033"); Abstract, Figs. 1-3, col. 3, ll. 15-17, col. 4, |

| | |
|---|---|
| axle 34 remote from the ratchet toothed wheel 30 is a friction clutch 50 which serves to restrain the axle 34 against reverse rotation and hence prevents reverse travel of the counter tape 44."). | ln. 3; col. 5, ll. 42-54; col. 6, ll. 30-42; col. 7, ll. 5-10; col. 8, ll. 4-17, 47-50, claims 1, 4, 5, 9, 10, 12, 17, 18, 24, 28, 29.) |

*See* Col. 4 at 46-59 ("Accordingly, a first aspect of the present invention provides a dose counter for a metered-dose inhaler, the counter comprising: an actuator; a rotary gear; a driver for driving the rotary gear in a step-wise fashion in response to displacement of the actuator, the rotary gear comprising a wheel mounted on a spindle which wheel having a plurality of ratchet teeth around its periphery; a pawl to prevent reverse rotation of the rotary gear; and a display coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear")

*See* Col. 5 at 31-46 ("The dose counter of the present invention is based on that set out in FIGS. 3 and 4 described hereinabove except that the pawl 60 has been modified. Modification of the pawl followed an in-depth study of all of the components of the inhaler. Thus, as shown in FIG. 5, the dose counter 18 of the present invention comprises an actuator 20; a rotary gear (not shown in full in FIG. 5); a driver 28 for driving the rotary gear in a step-wise fashion in response to displacement of the actuator 20, the rotary gear comprising a wheel 30 mounted on a spindle (not shown), the wheel 30 having a plurality of ratchet teeth 32 around its periphery; a pawl 60 to prevent reverse rotation of the rotary gear; and a display (not shown) coupled to the rotary gear, the display having a visible array of incrementing integers on a surface thereof indexable by a single integer in response to each step of the step-wise rotary motion of the rotary gear.").

*See* Col. 6 at 6-18 ("FIG. 6 shows an exploded view of the dose counter 18 showing in addition to the previously described components, the stock bobbin 68 which is held taut by the action of the split hub 70. The split hub 70 avoids

| | | |
|---|---|---|
| | the need for a clutch spring as set out in WO 98/28033. Although the clutch spring could be used as an alternative or in addition to the split hub 70, in a preferred embodiment, the dose counter of the present invention does not include a clutch spring. The display is preferably an elongate counter tape 44 on which the dose count is printed or written, and more preferably the counter tape 44 is located on an indexing spool and the dose counter further comprises a stock bobbin to receive the counter tape as the indexing spool is advanced in a step-wise fashion.").<br><br>*See* Col. 9 at 18-25 ("Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims.").<br><br>*See also* 12/532,762 File History – Office Action dated June 10, 2011 ("Bowman et al: teaches a dose counter for a metered dose inhaler. There is an actuator 20, a rotary gear 32 both shown in figure 2. There is a driver 28 (see figure 4) that drives the gear in a step-wise fashion in response to displacement of the actuator, the rotary gear being a wheel. mounted on a spindle and having. a plurality of ratchet teeth around the periphery. There is a pawl 60 to prevent reverse rotation; this is also shown in figure 4. There is a display shown in figure 3, having a visible array of incrementing integers, in response to each step of the step-wise rotary motion of the rotary gear."). | |
| "the pawl" [2, 3] | Proposed Construction: "One or more pawls."<br><br>Intrinsic Evidence: *See* intrinsic evidence in support of Plaintiffs' proposed construction of the term "a pawl [to prevent reverse rotation] | Proposed Construction: Ordinary and customary meaning.<br><br>Intrinsic Evidence: **'712 patent** (*See, e.g.*, Abstract; Fig. 8; col. 1, ll. 16-30; col. 4, ll. 19-36, |

| | | |
|---|---|---|
| | … [wherein] the pawl [comprises at least two ratchet teeth]." | 38-48, 55, 60-67; col. 5, ll. 1-7, 13-25, 31-34, 41-42, 64-67; col. 6, ll. 1-5, 45-54, 60-67; col. 7, ll. 1-2, 40-67; col. 8, ll. 1-34; col. 9, ll. 1-7, 17-18; claims 1, 2, 3, 4, 15, 18, 19.)<br><br>**'712 Patent Prosecution History:  App. No. 12/532,762**,<br>• *See, e.g.*, Jun. 10, 2011 Office Action [PER(Albu) 033486-89].<br>• *See, e.g.*, Oct. 11, 2011 Reply to Office Action [PER(Albu)_033491-94].<br>*See, e.g.*, Nov. 7, 2011 Reasons for Allowance [PER(Albu) 033507-08]. |