| | | | | | |
|---|---|---|---|---|---|
| 109:1-109:7 | 105/NAT; 402; 403; 602; 801/802; Vague | | 109:8-19 | CU, IC, LW, R, V[1] | |
| 110:1-110:23 | 105/NAT; 402; 403; 801/802 | | 110:24-111:3 | CU, IC, LW, NR, R, V | |
| 111:4-111:23 | 402; 403; 602; 801/802; Priv | | | | |
| 112:8-112:10 | 105/NAT; 402; 403; 801/802; Vague | | | | |
| 112:12-112:24 | 105/NAT; 402; 403; 801/802; Vague | | | | |
| 113:1-114:11 | 402; 403; 801/802; Vague | | | | |
| 115:10-118:13 | 105/NAT; 402; 403; 602; 801/802; Vague | | 114:21-115:1 | CU, IC, LW, V | |
| | | | 115:3-6 | CU, I, IC, LW, V | |
| 118:19-118:21 | 402; 403; 602; 801/802; Vague | | | | |
| 119:3-119:4 | 402; 403; 602; 801/802; Vague | | | | |
| 119:6-119:7 | 402; 403; 602; 801/802; Vague | | | | |
| 119:16-119:21 | 402; 403; 801/802 | | 119:9-14 | CU, IC, LW, NR, R | |
| 119:23-120:18 | 105/NAT; 402; 403; 801/802 | | | | |
| 121:1-122:4 | 105/NAT; 402; 403; 801/802; Vague | | 120:19-25 | CU, IC, LW, R | |
| 126:14-126:25 | 105/NAT; 402; 403; 801/802 | | | | |
| 127:14-127:15 | 402; 403; 801/802; Counsel | | | | |

---

[1] The defendants' original designation stated in Schedule F-2, which is highlighted in the transcript, should be corrected to 109:**2**-109:7

| | | | | | |
|---|---|---|---|---|---|
| 127:17-129:5 | 105/NAT; 402; 403; 801/802; Vague | | | | |
| 130:10-130:15 | 402; 403; 602; 801/802 | | 130:5-9 | CU, IC, LW, R | |
| 130:17-131:1 | 105/NAT; 402; 403; 602; 801/802 | | | | |
| 131:7-131:20 | 105/NAT; 402; 403; 602; 801/802 | | | | |
| 131:22 | 105/NAT; 402; 403; 602; 801/802 | | | | |
| 131:24-132:6 | 402; 403; 801/802 | | | | |
| 132:13-132:24 | 402; 403; 801/802; Vague | | | | |
| 134:13-135:24 | 402; 403; 801/802; Counsel | | 133:13-134:6 | CU, IC, LW, NR, R, V | |
| 136:10-137:5 | 402; 403; 602; 801/802; Vague | | | | |
| 137:21-138:2 | 402; 403; 801/802 | | | | |
| 138:4-139:1 | 106 (139:1-7); 402; 403; 801/802 | | 139:1-7 | CU, I, LW, NR, R | |
| 139:8-139:14 | 402; 403; 801/802 | | | | |
| 139:20-140:25 | 106 (139:20-21, 141:1); 402; 403; 801/802 | | 139:20-21<br>141:1 | LW<br>LW | |
| 141:2-141:4 | 402; 403; 801/802 | | | | |
| 141:19-142:18 | 402; 403; 801/802; 901 | | 141:5-10<br>141:13-18 | CU, IC, LW, R<br>CU, IC, LW, R | |
| 143:2-143:20 | 402; 403; 602; 801/802; Vague | | | | |
| 143:22-144:10 | 402; 403; 602; 801/802; Vague | | | | |
| 144:12-14:21 | 402; 403; 602; 801/802; 901; Vague | | | | |
| 145:1-146:12 | 402; 403; 602; 801/802 | | 146:13-147:7 | CU, IC, LW, PK, R | |

| | | | | | |
|---|---|---|---|---|---|
| 147:8-147:18 | 402; 403; 602; 801/802; Vague | | 147:24-148:24 | CU, IC, LW, PK, R, SPEC | |
| 150:3-150:10 | 402; 403; 801/802; Vague | | 149:5-150:2 | CU, IC, LW, PK, R, SPEC | |
| | | | 150:11-16 | CU, IC, LW, PK, R, SPEC | |
| 151:17-152:19 | 402; 403; 801/802; Vague | | | | |
| 153:9-155:6 | 105/NAT; 402; 403; 801/802; Vague | | | | |
| 156:7-156:10 | 105/NAT; 402; 403; 801/802 | | 155:24-156:6 | CU, IC, LW, PK, V | |
| | | | 156:11-16 | CU, IC, LW, R | |
| 156:17-156:19 | 105/NAT; 402; 403; 801/802 | | | | |
| 157:8-157:10 | 105/NAT; 402; 403; 801/802 | | | | |
| 157:12-157:14 | 402; 403; 801/802; Counsel | | | | |
| 157:21-157:23 | 402; 403; 801/802; 901; Vague | | | | |
| 158:3-158:13 | 402; 403; 602; 801/802; 901; Vague | | | | |
| 158:15-159:7 | 402; 403; 602; 801/802; 901; Vague | | | | |
| 159:9-159:22 | 402; 403; 602; 801/802; 901; Vague | | | | |
| 160:11-161:9 | 105/NAT; 402; 403; 701/702; 801/802; 901, Counsel | | 160:3-10 | CU, IC, LW, NR, PK, R | |
| 162:7-162:23 | 402; 403; 801/802; Vague | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 165:7-167:19 | 402; 403; 602; 801/802; Counsel; Vague | | | | |
| 168:1-168:13 | 402; 403; 801/802; Vague; Hypothetical | | | | |
| 168:22-169:4 | 402; 403; 801/802; Vague | | | | |
| 169:7-169:25 | 402; 403; 801/802; Vague | | | | |
| 170:6-172:6 | 402; 403; 801/802; Vague | | 172:7-11 | CU, IC, LW, PK, R, SPEC, V, U | |
| 172:12-173:5 | 402; 403; 801/802; Vague | | | | |
| 188:2-189:6 | 402; 403; 602; 801/802; Vague | | | | |
| 189:18-189:23 | 402; 403; 801/802; Vague | | | | |
| 189:25-190:9 | 402; 403; 801/802; Vague | | | | |
| 192:7-192:11 | 402; 403; 801/802; Vague | | | | |
| 192:14-192:23 | 402; 403; 801/802; Vague | | | | |
| 193:4 | 402; 403; 801/802; Vague | | | | |
| 193:12-193:25 | 105/NAT; 402; 403; 701/702; 801/802; Vague | | | | |
| 194:2-194:17 | 402; 403; 801/802 | | 194:24-195:9 | CU, IC, LW, O, R, SPEC, V | |
| 195:10-196:5 | 402; 403; 701/702; 801/802 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 196:8-196:18 | 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 199:24-200:10 | 402; 403; 602; 801/802 | | | | |
| 201:24-202:7 | 402; 403; 602; 801/802 | | 202:8-203:9 | CU, IC, LW, PK, R, SPEC | |
| 203:12-203:15 | 402; 403; 602; 801/802 | | 203:16-19 | CU, IC, LW, | |
| | | | 203:21 | CU, IC, LW, NR, PK, R | |
| 208:13-208:19 | 402; 403; 801/802; Vague | | 208:10-12 | CU, I, IC, LW, R[2] | |
| 210:9-210:12 | 402; 403; 602; 801/802; Vague | | | | |
| 210:14-210:15 | 402; 403; 602; 801/802; Vague | | | | |
| 210:17-210:19 | 402; 403; 602; 801/802; Vague | | | | |
| 210:21 | 402; 403; 602; 801/802; Vague | | | | |
| 211:6-211:20 | 402; 403; 602; 801/802; Vague | | | | |
| 214:10-214:12 | 105/NAT; 402; 403; 602; 701/702; 801/802; Hypothetical; Vague | | | | |
| 214:15-214:22 | 105/NAT; 106 (214:23); 402; 403; 602; 701/702; 801/802; Hypothetical; Vague | | 214:23 | CU, LW, R | |
| 214:24-215:2 | 105/NAT; 402; 403; 701/702; 801/802; Vague | | | | |

---

[2] The defendants' original designation, as stated in Schedule F-2, should be highlighted in the transcript at 208:19.

| 215:5 | 105/NAT; 402; 403; 701/702; 801/802; Vague | | | | |
| 215:19-215:21 | 402; 403; 801/802; Vague | | 215:7-9 | CU, IC, LW | |
| | | | 215:16-18 | CU, IC, LW, NR | |
| 215:25-216:1 | 402; 403; 801/802; Vague | | 215:7-9 | CU, IC, LW, NR | |
| | | | 215:16-18 | CU, IC, LW, NR | |
| 216:4 | 402; 403; 801/802 | | | | |
| 218:1-219:5 | 402; 403; 602; 701/701; 801/802; Vague | | 217:10-14 | CU, IC, LW, NR | |
| | | | 219:6-7 | IC, LW, NR, SPEC,V | |
| | | | 219:9 | IC, LW, NR, SPEC, V | |

3.    Steven M. Viti, Ph.D.

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 1:12 | Not Testimony | | | | |
| 1:20 | Not Testimony | | | | |
| 6:3-5 | | | | | |
| 15:15-15:20 | 402; 403 | | | | |
| 17:19-17:23 | 402; 403 | | | | |
| 19:2-19:12 | 106 (18:8-10, 18:12-23, 19:1); 402; 403; 602 | | 18:8-10 | NR, CU, R, IC | |
| | | | 18:12-23 | NR, CU, R, IC | |
| | | | 19:1 | NR, CU, R, IC | |
| 20:7-20:13 | 402; 403 | | 20:16 | | |
| | | | 20:18 | | |
| | | | 20:19-21 | | |
| | | | 22:7-11 | NR, R, OB | |
| | | | 22:13-18 | NR, R, OB | |
| 20:15 | 402; 403; Counsel | | | | |
| 33:22-34:2 | 402; 403; 701/702; Vague | | 33:10-12 | NR, R, IC | |
| | | | 33:14-19 | NR, R, IC, PK | |

| | | | 33:21 | PK, R | |
|---|---|---|---|---|---|
| 34:4 | 402; 403; 701/702; Vague | | 34:5-8 | | |
| | | | 34:10 | | |
| 34:11-34:12 | 402; 403; 701/702; Vague | | | | |
| 34:14-34:16 | 402; 403; 701/702; Vague | | | | |
| 34:18-34:20 | 402; 403; 701/702; Vague | | | | |
| 34:22 | 402; 403; 701/702; Vague | | | | |
| 44:14-44:23 | 402; 403; 602 | | | | |
| 45:1-45:7 | 402; 403; 602 | | | | |
| 45:19-45:22 | 402; 403; 602 | | 45:8-9 | NR, R, IC | |
| | | | 45:11-18 | NR, R, IC | |
| 52:4-52:13 | 402; 403; 602; 801/802 | | | | |
| 52:15-52:17 | 402; 403; 602; 801/802 | | | | |
| 52:21-53:7 | 402; 403; 602; 701/702; 801/802 | | 53:8-9 | R, PK | |
| | | | 53:11-12 | R, PK, SPEC | |
| | | | 53:14-17 | R, PK, NR | |
| | | | 53:19-21 | R, PK, NR, O, LC, SPEC | |
| | | | 53:23-54:2 | R, NR, O, LC, SPEC | |
| | | | 54:5-10 | R, NR | |
| 54:15-54:19 | 106 (54:11-13); 402; 403; 602; 701/702; 801/802; Leading | | 54:11-13 | | |
| 54:21 | 402; 403; 602; 801/802 | | | | |
| 58:3-58:5 | 402; 403; 602; 801/802 | | | | |
| 58:10-58:17 | 402; 403; 602; 801/802 | | 58:6-9 | R, IC, NR | |
| 59:18-60:11 | 402; 403; 602; 701/702; 801/802 | | 60:12-13 | R, IC, V, PK, SPEC, H | |
| | | | 60:15-23 | R, IC, V, PK, SPEC, H | |

| | | | 61:1-4 | R, IC, PK, SPEC, H | |
|---|---|---|---|---|---|
| | | | 61:6-10 | R, IC, PK, SPEC, H | |
| 61:11-61:12 | 402; 403; 602; 801/802 | | | | |
| 61:14-61:17 | 402; 403; 602; 801/802 | | | | |
| 61:19-61:21 | 402; 403; 602; 801/802 | | | | |
| 61:23-62:2 | 402; 403; 602; 801/802 | | | | |
| 62:4-62:10 | 402; 403; 602; 801/802; Leading | | | | |
| 62:12-62:17 | 402; 403; 602; 801/802; Leading | | | | |
| 62:21-63:6 | 402; 403; 602; 801/802; Leading | | | | |
| 63:8-63:11 | 402; 403; 602; 801/802 | | | | |
| 63:13-63:14 | 402; 403; 602; 801/802 | | 63:15-19 | IC, PK, SPEC, H, R | |
| | | | 63:21-23 | IC, PK, SPEC | |
| | | | 64:1 | IC, PK, SPEC | |
| 67:12-67:13 | 402; 403; 602 | | | | |
| 68:15-68:17 | 402; 403; 602; 801/802; Vague | | | | |
| 68:19-68:22 | 402; 403; 602; 801/802 | | | | |
| 69:7-69:23 | 402; 403; 602; 801/802; Leading | | 68:23-69:6 | | |
| | | | 69:24-70:2 | IC, PK, SPEC, H, R | |
| | | | 70:4-7 | IC, PK, SPEC, H, R | |
| | | | 70:9-10 | IC, PK, SPEC, H, R | |
| 70:14-71:4 | 402; 403; 602; 801/802 | | 71:5-18 | IC, SPEC, PK, H | |
| 71:19-71:23 | 402; 403; 801/802 | | | | |
| 72:20-72:22 | 402; 403; 602; 801/802 | | 72:11-14 | IC, I, R | |
| | | | 72:16-20 | IC, NR, I,R, OB | |
| 74:6-74:7 | 402; 403; 602; 701/702; 801/802; Leading | | 72:23-73:10 | IC, R | |
| | | | 73:12-16 | IC, R, PK | |
| | | | 73:18-22 | IC, R, AA, PK | |

| | | | | | |
|---|---|---|---|---|---|
| | | | 74:1-5 | IC, R, AA | |
| 74:9-74:12 | 402; 403; 602; 701/702; 801/802 | | 74:13-19 | IC, NR, CU, V | |
| 74:20-75:1 | 402; 403; 602; 701/702; 801/802; Leading | | | | |
| 75:23-76:11 | 402; 403; 602; 801/802; Leading | | 75:3-14 | IC, R, NR | |
| | | | 75:16-22 | IC, R, NR | |
| 76:13-76:15 | 402; 403; 602; 801/802 | | 76:16-20 | IC, V, SPEC, PK, R | |
| | | | 76:23-77:5 | IC, V, SPEC, PK, R | |
| 77:6-77:7 | 402; 403; 602; 801/802 | | | | |
| 77:9-77:17 | 402; 403; 602; 801/802 | | 77:18-22 | IC, PK, R, SPEC, NR | |
| | | | 77:24 | IN, PK, R, SPEC, NR | |
| 78:1-78:15 | 402; 403; 602; 801/802 | | | | |
| 78:17-78:18 | 402; 403; 602; 801/802; Vague | | | | |
| 78:20-78:24 | 402; 403; 602; 801/802 | | | | |
| 79:2-79:6 | 402; 403; 602; 801/802 | | 79:7-10 | IC, V, NR, OB | |
| | | | 79:12-17 | IC, V, NR, OB, R, CU | |
| | | | 79:19-21 | IC, V, R, NR, CU | |
| | | | 80:8-11 | IC, R, V, OB, PK | |
| | | | 80:13 | IC, R, V, OB, PK | |
| 81:1-81:14 | 402; 403; 602; 801/802 | | | | |
| 90:16-91:22 | 402; 403; 602; 801/802 | | | | |
| 94:24-95:1 | 402; 403; 602; 801/802 | | 94:1-12 | R, IC, NR, PK, L | |
| | | | 94:14-16 | R, IC, NR, PK, L, SPEC | |
| | | | 94:19-23 | R, IC, NR, PK, SPEC | |
| 95:3-95:23 | 402; 403; 602; 801/802; Leading | | | | |
| 96:1-96:9 | 402; 403; 602; 801/802 | | | | |
| 97:12-97:15 | 402; 403; 602; | | 96:10-14 | IC, NR, R, PK | |

| | | | | | |
|---|---|---|---|---|---|
| | 801/802; Leading | | 96:16-21 | IC, NR, R, PK, CP | |
| | | | 96:23-97:11 | IC, NR, R, CP | |
| 97:18-97:21 | 402; 403; 602; 801/802 | | | | |
| 103:3-103:10 | 402; 403; 602; 801/802 | | 103:11-15 | IC, NR, R | |
| 104:19-105:4 | 402; 403; 602; 801/802 | | | | |
| 105:6-105:14 | 402; 403; 602; 801/802 | | 105:16-16 | IC, R, V, PK | |
| 105:18-105:20 | 402; 403; 602; 801/802; Leading | | | | |
| 105:22-106:6 | 402; 403; 602; 801/802 | | | | |
| 106:21-107:8 | 402; 403; 602; 801/802; Leading | | | | |
| 107:10-107:14 | 402; 403; 602; 801/802 | | | | |
| 107:16-108:1 | 402; 403; 602; 801/802 | | | | |
| 114:17-114:20 | 402; 403; 602; 801/802 | | 114:21-23 | IC, R | |
| 114:24-115:19 | 402; 403; 602; 801/802 | | | | |
| 115:23-116:1 | 402; 403; 602; 801/802 | | 116:2-13 | V, CP, IC, R, PK | |
| | | | 116:15-18 | V, CP, IC, R, PK | |
| | | | 116:20-24 | V, CP, IC, R, PK | |
| 120:23-121:1 | 402; 403; 602; 801/802 | | | | |
| 121:13-121:19 | 402; 403; 602; 801/802 | | | | |
| 126:4-126:18 | 402; 403; 602; 801/802; DC | | 126:19-21 | R, IC, AA, CU | |
| 129:14-130:4 | 402; 403; 602; 801/802; DC | | | | |
| 130:12-130:15 | 402; 403; 602; 801/802; DC; Leading | | 130:5-11 | R, IC, OB | |
| 130:17-131:1 | 402; 403; 602; 801/802; DC | | | | |
| 131:3-131:6 | 402; 403; 602; 801/802; DC | | | | |
| 132:6-132:14 | 402; 403; 602; 801/802; DC | | 131:14-132:5 | R, | |

| | | | | | |
|---|---|---|---|---|---|
| 132:16-132:19 | 402; 403; 602; 801/802; DC | | 132:20-24 | R, IC | |
| 136:11-136:19 | 402; 403; 602; 801/802; DC | | 134:10-17 | R, IC, NR | |
| | | | 134:20-135:1 | R, IC, NR | |
| | | | 135:4-15 | R, IC, NR | |
| | | | 135:17-19 | R, IC | |
| 136:22 | 402; 403; 602; 801/802; DC | | 137:7-10 | R, IC, NR | |
| | | | 137:13-15 | R, IC, NR | |
| 140:6-140:14 | 402; 403; 602; 801/802; DC | | | | |
| 140:18-140:20 | 402; 403; 602; 801/802; DC | | | | |
| 142:6-142:10 | 402; 403; 602; 801/802; DC | | 140:21-141:14 | R, IC, V | |
| | | | 141:16-22 | R, IC, NR | |
| | | | 141:24-142:5 | R, IC, NR | |
| 142:12-142:18 | 402; 403; 602; 801/802; DC; Leading | | 142:19-20 | R, IC | |
| | | | 142:22-23 | R, IC, V | |
| 142:24-143:2 | 402; 403; 602; 801/802; DC; Vague | | | | |
| 143:4-143:7 | 402; 403; 602; 801/802; DC; Vague | | | | |
| 143:15-143:23 | 402; 403; 602; 801/802; DC | | | | |
| 145:17-146:5 | 402; 403; 602; 801/802; DC | | 146:6 | R, V, PK, IC | |
| | | | 146:8 | R, V, PK, IC | |
| 146:9-146:18 | 402; 403; 602; 801/802; DC; Leading | | | | |
| 146:20 | 402; 403; 602; 801/802; DC | | 146:21-22 | R, IC, PK, V | |
| | | | 146:24 | R, IC, PK, V | |
| 147:12-147:15 | 402; 403; 602; 801/802; DC; Leading | | | | |
| 147:18-148:1 | 402; 403; 602; | | 148:2-4 | R, NR | |

| | 801/802; DC | | 148:6-11 | R, NR | |
|---|---|---|---|---|---|
| 149:16-150:9 | 402; 403; 602; 801/802; DC | | | | |
| 155:12-156:3 | 402; 403; 602; 801/802 | | | | |
| 157:15-158:5 | 402; 403; 602; 801/802; Leading | | | | |
| 158:7-158:9 | 402; 403; 602; 801/802 | | 158:10-12 | IC, R | |
| 160:5-160:17 | 402; 403; 602; 801/802 | | | | |
| 161:4-162:10 | 402; 403; 602; 801/802; Leading | | | | |
| 162:12-162:22 | 402; 403; 602; 801/802; Leading | | | | |
| 162:24-163:8 | 402; 403; 602; 801/802; Leading | | | | |
| 163:11-163:13 | 402; 403; 602; 801/802 | | 163:14-16 | IC, PK, SPEC, H | |
| | | | 163:18-164:1 | IC, PK, SPEC, H | |
| 164:2-164:3 | 402; 403; 602; 801/802; Vague | | | | |
| 164:5-164:17 | 402; 403; 602; 801/802; Leading | | | | |
| 164:20-164:24 | 106 (165:1-6); 402; 403; 602; 801/802 | | 165:1-6 | | |

4.    Robert A. Moris

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 2:19-2:20 | Not Testimony; 402; 403; 602 | | 10:12-15 | | |
| 10:8-11 | | | | | |
| 13:19-14:9 | 402; 403; 602; Vague | | | | |
| 19:12-19:23 | 402; 403; 602; 801/802 | | 10:25-11:6 | IC, R, NR | |

| | | | 11:9-10 | IC, R | |
|---|---|---|---|---|---|
| | | | 11:18-12:2 | IC, R | |
| | | | 12:22-24 | IC, R | |
| | | | 13:2-5 | | |
| | | | 13:15-16 | | |
| | | | 14:13-22 | IC, R, V | |
| | | | 15:5-9 | IC, R, V | |
| | | | 19:24-20:6 | NR, R | |
| | | | 20:18-22 | R | |
| | | | 21:3-5 | R | |
| | | | 21:9-12 | R | |
| | | | 21:20-22 | R | |
| | | | 21:25-22:3 | IC | |
| 23:19-24:1 | 402; 403; 602; 801/802 | | 23:10-18 | | |
| | | | 24:2-5 | | |
| | | | 32:4-9 | IC, V | |
| 25:24-26:6 | 402; 403; 801/802; Vague | | | | |
| 26:17-26:22 | 402; 403; 602; Hypothetical | | 27:2-4 | IC, | |
| | | | 27:11-13 | IC, V | |
| 42:18-43:2 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 44:21-45:2 | 402; 403; 403; 602 | | 44:9-20 | IC, R, PK, CP | |
| 46:1-46:14 | 402; 403; 602 | | 46:15-22 | IC, PK | |
| 46:23-47:1 | 402; 403; 602 | | | | |
| 47:3-47:7 | 402; 403; 602 | | | | |
| 47:17-48:2 | 402; 403; 602; 701/702, 801/802; Vague | | | | |
| 48:4 | 402; 403; Vague | | | | |
| 48:17-48:18 | 105/NAT; 402; 403; 701/702; 801/802 | | 48:7-8 | V, IC | |
| | | | 48:10-11 | V, IC | |

|  |  |  | 48:19-49:4 | NR, IC |  |
|---|---|---|---|---|---|
| 49:5-49:11 | 402; 403; 701/702; 801/802 |  |  |  |  |
| 49:25-50:13 | 402; 403; 602; 801/802; Vague |  | 51:7-9 | V, PK, R |  |
|  |  |  | 51:11 | V, PK, R |  |
| 50:15 | 402; 403; 602; 801/802; Vague |  | 51:7-9 | V, PK, R |  |
|  |  |  | 51:11 | V, PK, R |  |
| 52:3-52:4 | 402; 403; 602; Counsel |  | 52:5-18 | IC, R |  |
| 52:19-52:20 | 402; 403; 602; Counsel |  | 52:21-25 | IC, R, OB |  |
| 53:1-53:6 | 402; 403; 602 |  | 52:21-25 | IC, R, OB |  |
| 57:5-57:9 | 402; 403; 602; 801/802 |  | 56:20-57:1 | IC, PK, NR |  |
|  |  |  | 57:3-4 | IC, PK, NR |  |
| 57:17-57:20 | 402; 403; 602; 801/802 |  | 57:10-16 | NR |  |
| 59:7-59:17 | 402; 403; |  |  |  |  |
| 59:20 | 106 (59:21-24); 402; 403; 801/802 |  | 59:21-24 | R, OB |  |
| 59:25-60:5 | 402; 403; 602; 701/702; 801/802 |  | 60:6-9 | IC |  |
| 61:8-61:13 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague |  |  |  |  |
| 61:15-61:19 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague |  |  |  |  |
| 61:21-61:22 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague |  |  |  |  |
| 61:24 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague |  | 61:25-62:4 | IC, V |  |
| 64:13-64:18 | 106 (64:19-20, 64:22-24); 402; 403; 602; 801/802 |  | 63:13-64:12 | R, IC, PK |  |
|  |  |  | 64:19-20 | V, IC, OB |  |
|  |  |  | 64:22-24 | V, IC, OB |  |

| | | | | | |
|---|---|---|---|---|---|
| 64:25-65:11 | 602, 701/702, | | | | |
| 66:7-66:14 | 106 (65:12-65:18); 402; 403; 602; 801/802 | | 65:12-66:1 | NR, IC, PK | |
| | | | 66:3-6 | NR, IC, PK | |
| | | | 66:15-67:24 | IC, PK | |
| 68:1-68:5 | 402; 403; 602; 801/802 | | 68:15-67:20 | IC, PK, OB, R | |
| 68:12-68:17 | 402; 403; 602; 801/802 | | 67:21-24 | IC, PK, OB, R | |
| | | | 68:18-19 | IC, PK, R | |
| 70:4-70:11 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague | | 70:12-15 | IC, PK, R, V | |
| | | | 70:17-19 | IC, PK, R, V | |
| 71:15-71:18 | 402; 403; 602; 801/802; Vague | | 71:10-14 | NR, IC, R, CU | |
| 72:11-72:14 | 106 (72:15-16); 402; 403; 801/802 | | 72:15-16 | R, IC, | |
| 72:17-73:2 | 402; 403; 602, 801/802 | | | | |
| 74:13-74:22 | 402; 403; 602; Vague | | | | |
| 76:11-76:22 | 402; 403; 701/702; 801/802; Strike | | 76:24-77:5 | V, IC, R, PK, NR | |
| | | | 77:7 | V, IC, R, PK, NR | |
| 77:8-77:13 | 402; 403; 801/802; Vague, | | | | |
| 78:7-78:12 | 106 (78:13); 402; 403; 801/802 | | 78:13 | | |
| 78:14-78:21 | 402; 403; 602; 801/802 | | 78:22-24 | IC, R, V | |
| | | | 79:1 | IC, R, V | |
| 79:2-79:3 | 402; 403; 602; 802/803; Vague | | | | |
| 79:5-79:6 | 402; 403; 602; 802/803; Vague | | | | |
| 82:2-83:11 | 105/NAT; 402; 403; 602; 801/802; Counsel, | | 83:12-14 | IC, R, PK, SPEC | |

| | | | | | |
|---|---|---|---|---|---|
| 83:25-84:14 | 105/NAT; 402; 403; 602; 801/802 | | 84:15-18 | R, IC | |
| 85:2-85:11 | 402, 403; 602; 801/802; Vague | | | | |
| 85:13-85:14 | 106 (85:18); 402; 403; 602 | | 85:18 | NR, IC, R | |
| 85:19-85:25 | 106 (86:8-9); 402; 403; 602; 801/802 | | 86:8-9 | NR, NARR, OB, IC, U, L, ARG | |
| | | | 86:11-15 | NR, IC, MIS, U, L | |
| 88:17-88:20 | 106 (88:21-22); 402; 403; 602; 701/702; 801/802 | | 87:12-88:4 | OB, IC, V | |
| | | | 88:6-16 | IC, V, R | |
| | | | 88:21-22 | IC, R, NR, R | |
| | | | 89:11-20 | IC, R, NR, MIS | |
| 90:1-90:17 | 402; 403; 602; 701/701; 801/802 | | 89:23-25 | IC | |
| 92:21-93:5 | 402; 403; 602 | | 93:6-10 | AA, IC, R | |
| 94:11-94:18 | 402; 403; 801/802; Vague | | 94:19-23 | V, CP, IC | |
| 95:4-95:6 | 402; 403; 801/802; Vague | | | | |
| 95:10-95:11 | 402; 403; 801/802; Vague | | | | |
| 95:14-96:1 | 402; 403; 801/802; Vague | | | | |
| 96:8-96:10 | 402; 403; 801/802; Vague | | 96:19-21 | NR, IC, CU | |
| | | | 96:23-97:2 | NR, IC, CU | |
| 100:22-102:14 | 402; 403; 602; 701/702; 801/802 | | | | |
| 103:8-103:9 | 402; 403; Vague | | | | |
| 103:21 | 402; 403; Vague | | | | |
| 103:25 | 402; 403; Counsel | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 104:25-105:13 | 106 (104:1-24); 402; 403; 602; 801/802; Strike | | 104:1-24 | IC, NR, OB, R | |
| 106:6-106:14 | 402; 403; 801/802; Counsel | | | | |
| 106:17:107:2 | 402; 403; 701/702; 801/802 | | | | |
| 114:5:114:6 | 402; 403; Counsel | | | | |
| 114:12-114:14 | 402; 403; 801/802 | | 114:15-17 | IC, R, PK | |
| 114:18-115:5 | 402; 403; 602; 701/702; 801/802 | | 115:6-11 | IC, R, PK | |
| 115:13-116:20 | 402; 403; 602; 801/802 | | | | |
| 121:2-121:18 | 402; 403; 602; 801/802 | | | | |
| 123:6-123:9 | 402; 403; 602; 701/702; 801/802 | | | | |
| 123:12-123:16 | 402; 403; 602; 701/702; 801/802 | | | | |
| 123:24-124:6 | 402; 403; 602; 701/702; 801/802 | | | | |
| 124:9-124:16 | 402; 403; 602; 701/702; 801/802 | | | | |
| 124:18-124:20 | 402; 403; 602; 701/702; 801/802 | | 124:21-22 | IC, R, PK, V | |
| 125:11-125:19 | 402; 403; 801/802 | | 125:20-126:1 | IC | |
| 126:2-126:11 | 402; 403; 801/802 | | | | |
| 127:2-127:5 | 106 (127:9-11); 402; 403; 801/802; Counsel | | 127:9-11 | IC, R | |
| 127:16-127:18 | 106 (127:12-15), 402, 403; 701/702; 801/802 | | 127:12-15 | IC, R | |
| 129:2-129:7 | 402; 403; 602; 801/802; 901 | | | | |
| 144:2-144:8 | 402; 403; 602 | | 142:22-143:1 | IC, U, NR | |
| | | | 143:20-23 | IC, U, NR, L | |

| 146:3-146:7 | 402; 403; 602 | | | | |
| 146:12 | 402; 403; 602 | | | | |

5.    Mark. W. Salyer

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 1:10 | Not Testimony | | | | |
| 1:13 | Not Testimony | | | | |
| 10:25 | | | | | |
| 11:2-11:5 | | | | | |
| 13:2-13:19 | 402; 403; Counsel | | | | |
| 14:12-14:17 | 402; 403 | | | | |
| 19:12-19:17 | 402; 403; Priv | | 15:12-19 | ARG, IC, LW, MIS, OB, NR | |
| | | | 17:9-10 | ARG, IC, LW, MIS, OB, NR | |
| | | | 17:12-25 | IC, LW, MIS, NR | |
| | | | 18:2-7 | IC, LW, MIS, NR | |
| | | | 18:16-18 | IC, LW | |
| | | | 18:21-25 | ARG, IC, LW, MIS, OB, NR | |
| | | | 19:2 | IC, LW, MIS | |
| | | | 19:4-10 | ARG, IC, LW, MIS, OB, NR | |
| 25:24-25:25 | 402; 403; 602; Counsel | | | | |
| 26:5-26:20 | 402; 403; 602; 801/802 | | | | |
| 31:16-31:25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 32:2-32:14 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 32:25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 33:2-33:3 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 33:11-33:13 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 34:24-34:25 | 402; 403; 602; 701/702; 801/802 | | | | |
| 35:2-35:6 | 402; 403; 602; 701/702; 801/802 | | | | |
| 36:15-36:25 | 402; 403; 602; 701/702; 801/802 | | 36:10-14 | CU, F, H, IC, LC, LW, MIS, NR, O, PK, R, SPEC, U, V | |
| | | | 37:18-24 | CU, IC, LC, LW, R, U | |
| | | | 77:17-22 | CU, IC, LW, MIS, PK, R, U | |
| | | | 80:7-10 | CU, IC, LW, R, U | |
| | | | 80:12-17 | CU, IC, LC, LW, MIS, PK, R, U | |
| | | | 85:16-86:4 | CU, I; IC, LC, LW, MIS, PK, R, U | |
| 38:24-38:25 | 402; 403; 602; 701/702; 801/802 | | | | |
| 39:2-39:13 | 402; 403; 602; 701/702; 801/802 | | 40:18-41:12 | F, IC, LC, LW, NARR, NR, PK, R, U, V | |
| 40:5-40:12 | 402; 403; 602; 701/702; 801/802 | | | | |
| 40:18-40:25 | 402; 403; 602; 701/702; 801/802 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 41:2-41:12 | 402; 403; 602; 701/702; 801/802 | | | | |
| 42:6-42:24 | 402; 403; 602; 701/702; 801/802 | | 44:15-20[3] 44:25-45:13 | I, IC, LC, LW, R, U, V | |
| 46:2-46:21 | 402; 403; 602; 701/702; 801/802 | | 47:2-17 48:6-18 | H, IC, LW, MIS, O, PK, R, SPEC, U, V | |
| 46:23-46:25 | 402; 403; 602; 701/702; 801/802 | | | | |
| 49:25-50:11 | 30(b)(6); 106 (49:25); 402; 403; 602; 801/802 | | | | |
| 51:3-51:15 | 402; 403; 602; 801/802 | | 47:2-17 | H, IC, LW, MIS, O, PK, R, SPEC, U, V | |
| 52:13-52:20 | 402; 403; 602; 801/802 | | | | |
| 56:22-56:24 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 57:5-57:25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 58:2-58:3 | 402; 403; 602; 701/702; 801/802 | | | | |
| 58:17-58:20 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 59:25 | 30(b)(6); 402; 403; 602 | | | | |
| 60:2-60:9 | 30(b)(6); 402; 403; 602 | | | | |
| 60:21-60:25 | 402; 403; 602; 701/702; 801/802 | | | | |
| 61:2-61:21 | 402; 403; 602; 701/702; 801/802 | | | | |
| 61:23-61:25 | 402; 403; 602; 801/802 | | | | |
| 62:2-62:12 | 402; 403; 602; 801/802 | | | | |
| 62:14-62:17 | 30(b)(6); 402; 403; 602; 801/802 | | | | |

[3] The defendants' original designation stated in Schedule F-2 should be highlighted in the transcript at 42:23-24.

| | | | | | |
|---|---|---|---|---|---|
| 63:2-63:8 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 63:24-63:25 | 402; 403; 602; 801/802 | | | | |
| 64:2-64:15 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 65:18-65:21 | 402; 403; 602; 701/702; 801/802 | | 65:22-25 | CU, F, H, IC, LC, LW, MIS, O, PK, R, SPEC, U, V | |
| 66:2-66:6 | 402; 403; 602; 701; 702; 801/802 | | | | |
| 69:3-69:25 | 402; 403; 602; 801/802 | | | | |
| 70:2-70:23 | 402; 403; 602; 801/802 | | 70:24-71:6 | CU, LW, MIS, NR, PK, SPEC, U | |
| | | | 71:18-19 | CU, LW, MIS, NR, PK, V | |
| | | | 73:6-9 | CU, LW | |
| | | | 73:11-12 | CU, LW, MIS, NR, PK, SPEC, U | |
| | | | 74:9-16 | CU, LW, MIS, NR, PK, SPEC, U | |
| 71:7-71:11 | | | | | |
| 76:22-76:24 | 30(b)(6); 402; 403; 602 | | | | |
| 77:5-77:7 | 30(b)(6); 106 (77:3); 402; 403; 602 | | 75:22-76:14 | CU, I, LW, NR, SPEC, U | |
| | | | 76:17-20 | CU, LW, NR, SPEC, U | |
| | | | 77:3 | CU, LW | |
| 86:18-86:20 | 402; 403; 602; 801/802 | | | | |
| 87:2 | 30(b)(6); 402; 403; 602 | | | | |
| 87:8-87:10 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 87:12-87:22 | 30(b)(6); 402; 403; 602; 801/802 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 88:4-88:6 | 402; 403; 602; 801/802 | | | | |
| 88:14-88:22 | 30(b)(6); 402; 403; 602; 801/802 | | 88:23-89:10 | CU, I, IC, LW, R | |
| 89:17-89:21 | 402; 403; 602; 801/802 | | | | |
| 90:11-90:25 | 402; 403; 602; 801/802 | | | | |
| 91:2-91:25 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 92:2-92:22 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 94:23-94:25 | 402; 403; 602; 801/802 | | | | |
| 95:2-95:18 | 30(b)(6); 402; 403; 602; 801/802 | | 95:19-20 | CU, LW | |
| | | | 95:23-25 | CU, I, LW, NR, PK | |
| | | | 96:2-5 | CU, I, LW, NR, PK | |
| | | | 96:10-16 | CU, IC, LW, NR, PK | |
| | | | 96:18-21 | CU, IC, LW, NR | |
| 98:5-98:18 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 99:24-99:25 | 402; 403; 602; 801/802 | | | | |
| 100:2-100:18 | 402; 403; 602; 801/802 | | 96:23-97:6 | CU, IC, LW, R | |
| 101:9-101:16 | 402; 403; 602; 801/802 | | 100:19-101:8 | CU, IC, LW, R | |
| | | | 101:17-23 | CU, I, IC, LW, O, PK, R, SPEC, U | |
| | | | 103:10-25 | CU, IC, LW, O, NR, PK, R, SPEC, U | |
| | | | 104:5-8 | CU, IC, LW | |
| | | | 104:12-16 | CU, IC, LW, O, NR, PK, R, SPEC, U | |
| 107:18-107:21 | 402; 403; 602; 701/702; 801/802 | | | | |
| 107:24-107:25 | 402; 403; 602; 701/702 801/802 | | 101:17-23 | CU, I, IC, LW, O, PK, R, SPEC, U | |
| | | | 103:10-25 | CU, LW, O, NR, PK, R, SPEC, U | |

| | | | 104:5-8 | CU, LW | |
|---|---|---|---|---|---|
| | | | 104:12-16 | CU, LW, O, NR, PK, R, SPEC, U | |
| | | | 109:5-14 | CU, LW, MIS, O, NR, PK, R, SPEC, U | |
| 108:2-108:4 | 402; 403; 602; 701/702; 801/802 | | | | |
| 109:23-109:25 | 402; 403; 602; 701/702; 801/802 | | | | |
| 110:2-110:16 | 602 | | | | |
| 112:24-112:25 | 602 | | | | |
| 113:2 | 402; 403; 602; 801/802 | | | | |
| 113:7-113:25 | 402; 403; 602; 801/802 | | | | |
| 114:2-114:23 | 30(b)(6); 402; 403; 602; 801/802 | | 114:24-115:5 | CU, LW, R | |
| | | | 115:7-9 | CU, LW, NR, PK, R | |
| 115:11-115:13 | 402; 403; 602; 801/802 | | | | |
| 115:15-115:21 | 402; 403; 602; 801/802; Vague | | | | |
| 123:16-123:24 | 30(b)(6); 402; 403; 602; 801/802; DC | | 122:16-21 | CU, IC, LW, NR, PK, R | |
| 125:9-125:11 | 402; 403; 602; 801/802; Priv | | | | |
| 125:17-125:23 | 30(b)(6); 402; 403; 602; 801/802; Priv | | | | |
| 126:6-126:11 | 30(b)(6); 402; 403; 602; 801/802; Priv | | | | |
| 126:13-126:25 | 30(b)(6); 402; 403; 602; 801/802; Priv | | | | |
| 127:2-127:7 | 30(b)(6); 402; 403; 602; 801/802; Priv | | | | |
| 127:16-127:20 | 30(b)(6); 402; 403; 602; 801/802; Priv | | | | |
| 127:22-127:25 | 402; 403; 602; 801/802 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 128:2-128:22 | 402; 403; 602; 801/802 | | 129:8-130:22 | F, I, IC, LW, NARR, NR, PK, R, SPEC, U | |
| 131:10-131:15 | 106 (131:8-9); 402; 403; 602; 801/802 | | 131:8-9 | CU, LW | |
| 131:25 | 402; 403; 602; 801/802; DC | | | | |
| 132:2-10 | 402; 403; 602; 801/802; DC | | | | |
| 133:24-133:25 | 30(b)(6); 402; 403; 602; DC | | | | |
| 134:2-134:9 | 30(b)(6); 402; 403; 602; DC | | | | |
| 134:11-134:12 | 30(b)(6); 402; 403; 602; DC | | | | |
| 134:14-134:20 | 30(b)(6); 402; 403; 602; DC | | | | |
| 136:2-136:9 | 30(b)(6); 402; 403; 602; DC | | | | |
| 136:11-136:13 | 30(b)(6); 402; 403; 602; DC | | | | |
| 136:15-136:17 | 30(b)(6); 402; 403; 602; DC | | | | |
| 138:8-138:9 | | | | | |
| 139:7-139:25 | 30(b)(6); 402; 403; 602 | | 122:16-21 | IC, CU, LW, NR, PK, R | |
| 141:23-141:25 | 30(b)(6); 402; 403; 602 | | | | |
| 142:2-142:25 | 30(b)(6); 402; 403; 602 | | | | |
| 143:2-143:5 | 30(b)(6); 402; 403; 602 | | 143:12-15 | IC, CU, LW, R | |
| 144:5-144:6 | 30(b)(6); 402; 403; 602 | | | | |
| 144:10-144:12 | 30(b)(6); 402; 403; 602 | | 143:12-15 | IC, CU, LW, PK, R | |
| 145:2-145:20 | 30(b)(6); 402; 403; 602 | | | | |
| 146:3-146:7 | 30(b)(6); 402; 403; 602 | | | | |
| 148:21-148:22 | 602 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 151:3-151:22 | 30(b)(6); 402; 403; 602; 801/802 | | 150:3-9 | CU, LW, MIS, NR, R | |
| | | | 151:23-152:4 | CU, IC, LW, MIS, NR, PK, R, SPEC, U | |
| 152:5-152:9 | 402; 403; 602 | | | | |
| 159:20-159:22 | 602 | | | | |
| 160:22-160:25 | 602 | | | | |
| 161:2-161:14 | 30(b)(6); 402; 403; 602; 801/802 | | 161:15-21 | CU, IC, LW, MIS, NR, PK, R, SPEC, U | |
| | | | 161:23-24 | CU, IC, LW, MIS, NR, PK, R, SPEC, U | |
| 162:2-162:3 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 162:5-162:9 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 162:11-162:24 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 163:8-163:9 | 602 | | | | |
| 163:13-163:25 | 402; 403; 602; 801/802 | | | | |
| 164:2-164:25 | 402; 403; 602; 801/802 | | | | |
| 165:2-165:8 | 402; 403; 602; 801/802 | | | | |
| 166:10-166:16 | 402; 403; 602; 801/802 | | | | |
| 166:23-166:25 | 402; 403; 602; 801/802 | | | | |
| 167:2-167:25 | 402; 403; 602; 801/802 | | | | |
| 168:2-168:17 | 402; 403; 602; 801/802 | | | | |
| 168:20 | 106 (168:22-23); 402; 403; 602; 801/802 | | 168:22-23 | CU, IC, LW, MIS, NR, PK, R, SPEC, U | |
| 169:2-169:10 | 402; 403; 602; 801/802 | | | | |
| 169:17-169:21 | 402; 403; 602; 801/802 | | | | |
| 170:2-170:14 | 30(b)(6); 402; 403; 602; 801/802 | | 170:15-16 | CU, LW | |
| | | | 170:18-22 | CU, LW, NR, PK, SPEC, R | |
| | | | 170:24-171:11 | CU, LW, NR, PK, SPEC, R | |

| | | | 171:13-21 | CU, LW, MIS, NR, PK, R, SPEC, U | |
|---|---|---|---|---|---|
| 173:22-173:23 | 602 | | | | |
| 174:10-174:25 | 402; 403; 602; 801/802 | | | | |
| 175:2-175:3 | 402; 403; 602; 801/802 | | | | |
| 176:3-176:25 | 30(b)(6); 402; 403; 602; 801/802 | | 175:6-176:2 | CU, I, IC, LW, MIS, NR, PK, SPEC, R | |
| 177:2-177:5 | 402; 403; 602; 801/802 | | | | |
| 179:3-179:4 | 602 | | | | |
| 179:7-179:25 | 402; 403; 602; 801/802 | | | | |
| 180:2-180:25 | 402; 403; 602; 801/802 | | 183:4-7 | IC, LW, PL, R, SPEC, U | |
| 181:2-181:25 | 402; 403; 602; 801/802 | | 182:4-12 | IC, LW, O, PK, R, SPEC, U | |
| 182:2-182:3 | 402; 403; 602; 801/802 | | | | |
| 183:18-183:25 | 402; 403; 602; 801/802 | | | | |
| 184:2-184:25 | 402; 403; 602; 801/802 | | | | |
| 185:2-185:23 | 402; 403; 602; 801/802 | | 185:24-186:6 | CU, I, LW, NR, PK, R, SPEC, V | |
| 186:7-186:25 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 187:2-187:7 | 402; 403; 602; 801/802 | | | | |
| 188:14-188:25 | 402; 403; 602; 801/802 | | | | |
| 189:2-189:16 | 402; 403; 602; 801/802 | | 189:17-24 | CU, IC, LW, MIS, NR, PK, SPEC, R | |
| | | | 191:6-10 | CU, IC, LW | |
| | | | 191:13-17 | CU, IC, LW, MIS, NR, PK, SPEC, R | |
| | | | 191:20-25 | CU, IC, IH, LW, MIS, NR, PK, R, SPEC, U | |
| 191:25 | 402; 403; 602; 801/802 | | | | |
| 192:2-192:25 | 402; 403; 602; 801/802 | | | | |
| 193:11-193:12 | 602 | | | | |

| 193:17-193:22 | 402; 403; 602; 801/802 | | 193:23-195:5 | CU, LW, MIS, NR, PK, R, SPEC, V | |
| 196:6-196:25 | 402; 403; 602; 801/802 | | 194:6-25 | CU, I, LW, MIS, NR, PK, R, SPEC, V | |
| | | | 195:2-5 | CU, I, LW, MIS, NR, PK, R, SPEC, V | |
| 197:2 | 402; 403; 602; 801/802 | | | | |
| 209:6-209:9 | 602 | | | | |
| 209:22-209:25 | 402; 403; 602; 801/802 | | | | |
| 210:17-210:21 | 402; 403; 602; 801/802 | | | | |
| 212:2-212:17 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 212:25 | 602 | | | | |
| 211:17-211:25 | 30(b)(6); 402; 403; 602 | | | | |
| 213:2-213:13 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 214:7-214:18 | 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 215:12-215:16 | 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 215:20-215:25 | 30(b)(6); 402; 403; 602 | | | | |
| 216:2-216:10 | 30(b)(6); 402; 403; 602 | | | | |
| 217:14-217:25 | 30(b)(6); 402; 403; 602; 701/702 | | 216:11-217:13 | BTS, F, IC, LW, NARR, NR, O, PK, R, SPEC, U, V | |
| | | | 218:10-219:6 | BTS, F, IC, LW, NARR, NR, O, PK, SPEC, R, U, V | |
| 218:2-218:9 | 30(b)(6); 402; 403; 602; 701/702 | | | | |

| 219:7-219:25 | 30(b)(6); 402; 403; 602; 701/702 | | | | |
| 220:2-220:9 | 30(b)(6); 402; 403; 602; 701/702 | | | | |

6.    Julian Blair, Ph.D.

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 5:25-6:3 | | | | | |
| 32:12-32:17 | | | | | |
| 33:3-33:24 | | | | | |
| 34:7-34:24 | | | | | |
| 35:5-35:21 | 402; 403; 701/702 | | | | |
| 36:7-38:13 | 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 38:16-38:25 | 402; 403; 602; 801/802 | | 39:1-3 | CU, PK, R, LW | |
| 39:4-39:21 | 402; 403; 602 | | | | |
| 41:9-41:19 | 402; 403; 801/802; Counsel; D | | | | |
| 41:21-41:25 | 402; 403; 602; 801/802; DC | | | | |
| 42:2-42:9 | 402; 403; 602; 701/702; 801/802; DC | | | | |
| 42:11-45:12 | 402; 403; 602; 701/702; 801/802; DC | | | | |
| 45:14-46:14 | 402; 403; 602; 701/702; 801/802; DC | | | | |
| 47:10-47:19 | 402; 403; 602; 701/702; 801/802; DC | | | | |

| | | | | |
|---|---|---|---|---|
| 48:14-48:15 | 402; 403; 602; 701/702; 801/802; DC | | | |
| 48:17-48:23 | 402; 403; 602; 701/702; 801/802; DC | | | |
| 48:25-49:20 | 402; 403; 602; 701/702; 801/802; Counsel; DC; Vague | | | |
| 49:22-52:11 | 402; 403; 602; 701/702; 801/802; DC; Vague | | | |
| 54:17-55:8 | 402; 403; 602; 701/702; 801/802; DC; Vague | | | |
| 57:1-57:3 | 402; 403; 602; 701/702; 801/802; DC; Vague | | | |
| 57:5-57:8 | 402; 403; 602; 701/702; 801/802; DC; Vague | | | |
| 59:14-60:10 | 402; 403; 602; 801/802; DC | | | |
| 60:15-60:18 | 402; 403; DC | | | |
| 62:1-62:7 | 402; 403; 602; 701/702; 801/802; DC | | | |
| 62:10-62:18 | 402; 403; 602; 701/702; 801/802; DC | | 62:21-22 63:24-63:1 | CU, H, LC, MIS, O, R, SPEC, U, V, LW |
| 62:20 | 402; 403 | | 62:21-22 63:24-63:1 | |
| 63:2-63:13 | | | | |
| 64:6-65:1 | | | | |
| 67:13-67:16 | 402; 403; 801/802; Counsel | | | |
| 67:18 | 402; 403; 801/802 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 69:2-71:2 | 402; 403; 602; 801/802; Counsel; DC | | | | |
| 71:4-71:22 | 402; 403; 602; 801/802; DC | | | | |
| 72:8-72:22 | 402; 403; 602; 801/802; DC | | | | |
| 85:12-86:23 | 402; 403; DC | | | | |
| 87:5-87:8 | 402; 403; DC | | | | |
| 88:17-88:22 | 402; 403; 801/802; DC; Vague | | | | |
| 88:24-89:4 | 402; 403; 801/802; DC; Vague | | | | |
| 91:18-92:4 | 402; 403; 602; DC | | | | |
| 92:11-92:13 | 402; 403; DC | | | | |
| 93:1-93:14 | 402; 403; Counsel; DC; Vague | | | | |
| 93:16-93:19 | 402; 403; DC | | | | |
| 98:9-98:14 | 30(b)(6); 402; 403; 801/802; DC | | 97:21-98:2<br>98:8<br>98:15-20 | CU, H, PK, R, V, LW | |
| 99:18-99:25 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 100:21-100:22 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 100:24-101:2 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 102:4-102:6 | 30(b)(6); 402; 403; DC | | | | |
| 102:10-102:12 | 30(b)(6); 402; 403; DC | | | | |
| 102:14-102:15 | 30(b)(6); 402; 403; DC | | | | |
| 102:20-103:2 | 30(b)(6); 402; 403; DC | | | | |
| 106:1-106:18 | 402; 403; 602; DC | | 103:7-12<br>103:19-24 | CU, PK, R, LW | |

| | | | | |
|---|---|---|---|---|
| 108:3-109:11 | 30(b)(6); 402; 403; 602; 801/802; DC | | | |
| 109:16-109:25 | 402; 403; 801/802; DC | | | |
| 111:22-113:8 | 30(b)(6); 402; 403; 602; 801/802; DC; Vague | | | |
| 113:17-113:22 | 402; 403; 801/802; DC | | | |
| 114:1-114:6 | 402; 403; 801/802; DC | | | |
| 114:8-114:11 | 402; 403; 602; 801/802; DC | | | |
| 114:13:114-22 | 402; 403; 602; 801/802; DC | | | |
| 114:25-115:14 | 402; 403; 602; 801/802; DC | | 115:15-16 / 115:18 | CU, PK, R, LW |
| 115:19-115:20 | 402; 403; 602; 801/802; DC | | 115:21-23 | CU, PK, R, LW |
| 115:24-116:2 | 402; 403; 602; 801/802; DC | | | |
| 116:4-116:14 | 402; 403; 602; 801/802; DC | | | |
| 116:20-117:9 | 30(b)(6); 402; 403; 801/802; DC | | | |
| 117:17-118:3 | 30(b)(6); 402; 403; 801/802; DC | | | |
| 118:5-118:7 | 30(b)(6); 402; 403; 602; 901; DC | | | |
| 118:9 | 30(b)(6); 402; 403; 602; 901; DC | | | |
| 119:8-120:3 | 402; 403; 602; Counsel; DC | | | |
| 120:12-120:17 | 402; 403; 602; 801/802; DC | | | |

| | | | | | |
|---|---|---|---|---|---|
| 120:20-120:24 | 402; 403; 602; 801/802; DC | | | | |
| 121:1-121:6 | 402; 403; 602; 801/802; DC | | | | |
| 121:10-121:14 | 402; 403; 602; 801/802; DC | | | | |
| 121:16-121:25 | 402; 403; 602; 801/802; DC | | 123:7-8 123:19-21 | CU, H, PK, R, MIS, SPEC, NR, U, V, LW | |
| 122:2-122:7 | 402; 403; 602; 801/802; DC | | | | |
| 122:9-122:10 | 402; 403; 602; 801/802; DC | | | | |
| 122:12-122:16 | 402; 403; 602; 801/802; DC | | | | |
| 122:18-123:2 | 402; 403; 602; 801/802; DC | | | | |
| 124:13-124:15 | 402; 403; 602; 801/802; DC | | | | |
| 124:17-124:25 | 402; 403; 602; 801/802; DC | | | | |
| 126:2-126:10 | 402; 403; 602; 801/802; DC | | 125:1-6 125:13-19 | CU, H, PK, R, MIS, SPEC, U, V, LW | |
| 127:15-127:19 | 402; 403; 602; 801/802; DC | | | | |
| 127:21 | 402; 403; 602; 801/802; DC | | | | |
| 128:9-128:10 | 402; 403 | | | | |
| 128:13-128:22 | 402; 403; 602; 801/802; Counsel; DC | | | | |
| 128:24-129:4 | 402; 403; 602; 801/802; DC | | | | |
| 129:6-129:23 | 402; 403; 602; 801/802; DC | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 130:1-130:3 | 402; 403; 602; 801/802; DC | | | | |
| 130:5-130:8 | 402; 403; 602; 801/802; DC | | | | |
| 131:1-131:10 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 131:13-133:16 | 402; 403; 602; 801/802; DC | | | | |
| 133:18-134:16 | 402; 403; 602; 801/802; DC | | | | |
| 135:1-135:15 | 30(b)(6); 402; 403; 801/802; Counsel; DC | | | | |
| 135:24-136:10 | 402; 403; 602; 801/802; DC | | | | |
| 136:12-136:19 | 402; 403; 602; 801/802; DC | | | | |
| 136:21-136:23 | 402; 403; 602; 801/802; DC | | | | |
| 137:8-137:12 | 402; 403; 602; 801/802; DC | | | | |
| 138:9-138:21 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 138:25-139:7 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 139:9-140:15 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 145:20-146:8 | 402; 403; 602; 801/802; DC | | 144:1-15 144:17-145:19 | CU, H, MIS, PK, R, SPEC, U, LW | |
| 146:13-146:20 | 402; 403; 602; 801/802; DC | | | | |
| 146:24-147:23 | 402; 403; 602; 801/802; DC; Vague | | | | |

| 147:25-149:4 | 402; 403; 602; 801/802; DC; Vague | | | |
| 149:6 | 402; 403; 602; 801/802; DC | | | |
| 150:20-151:10 | 402; 403; 602; 801/802; 901; DC | | 152:4-8 | CU, PK, R, LW |
| 153:13-155:8 | 402; 403; 602; 901; 801/802; Counsel; DC | | | |
| 155:10-155:24 | 402; 403; 602; 801/802; DC | | | |
| 156:1-156:4 | 402; 403; 602; 801/802; DC | | | |
| 157:23-158:2 | 402; 403; 602; 801/802; DC; Vague | | | |
| 158:4-158:7 | 402; 403; 602; 801/802; DC | | | |
| 158:17-158:22 | 402; 403; 602; 801/802; DC | | | |
| 158:25 | 402; 403; 602; 801/802; DC | | | |
| 161:15-162:2 | 402; 403; 801/802; DC | | | |
| 162:4-163:17 | 402; 403; 602; 801/802; DC | | | |
| 163:19-163:22 | 402; 403; 602; 801/802; DC | | | |
| 163:24 | 30(b)(6); 402; 403; 602; 801/802; DC | | | |
| 166:9-166:15 | 30(b)(6); 402; 403; 801/802; DC; Vague | | | |
| 167:12-167:14 | 30(b)(6); 402; 403; 602; 801/802; DC | | | |
| 167:16-167:17 | 30(b)(6); 402; 403; 602; 801/802; DC | | | |

| | | | | | |
|---|---|---|---|---|---|
| 170:4-170:6 | 402; 403; DC | | | | |
| 170:14-170:23 | 402; 403; DC | | 170:8-11 | CU, R, LW | |
| 171:2-171:7 | 402; 403; DC | | 170:24-171:1 | CU, R, LW | |
| | | | 171:8-15 | CU, R, LW | |
| 171:16-172:1 | 402; 403; DC; Counsel | | | | |
| 174:16-174:25 | 30(b)(6); 402; 403; DC | | | | |
| 175:2-175:14 | 30(b)(6); 402; 403; DC | | | | |
| 175:16-176:6 | 30(b)(6); 402; 403; DC | | | | |
| 176:8 | 30(b)(6); 402; 403; DC | | | | |
| 176:15-177:4 | 30(b)(6); 402; 403; 602; DC | | | | |
| 177:20-178:17 | 30(b)(6); 402; 403; 801/802; DC; Hypothetical; Vague | | | | |
| 178:22-178:24 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 179:1-179:11 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 179:16-180:2 | 402; 403; 901; DC | | | | |
| 180:6-181:9 | 402; 403; 602; DC | | | | |
| 181:17-183:5 | 402; 403; 602; DC | | | | |
| 183:8-183:17 | 402; 403; 602; DC | | | | |
| 183:22-184:14 | 402; 403; 602; DC | | | | |
| 184:16-184:19 | 402; 403; 602; DC | | | | |
| 185:14-186:13 | 30(b)(6); 402; 403; 602; DC | | 185:3-13 | CU, R, LW | |
| | | | 186:14-16 | CU, PK, R, SPEC, LW | |
| 186:17-187:14 | 402; 403; 602; DC | | | | |
| 187:17-188:13 | 402; 403; 801/802; DC | | | | |
| 188:15-188:22 | 402; 403; 901; DC | | | | |
| 189:25-190:24 | 30(b)(6); 402; 403; 602; DC | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 191:24-193:11 | 30(b)(6); 402; 403; 602; DC | | | | |
| 193:21-195:2 | 402; 403; 602; 801/802; DC | | | | |
| 195:8-195:14 | 402; 403; DC | | | | |
| 195:24-196:7 | 402; 403; DC | | 195:15-18 | CU, R, LW | |
| | | | 196:8-197:4 | CU, H, R, SPEC, LW | |
| | | | 198:2-5 | CU, R, SPEC, LW | |
| 198:19-198:22 | 402; 403; 801/802; DC | | | | |
| 199:4-199:12 | 402; 403; 602; 901; DC | | 199:14-25 | CU, H, MIS, R, SPEC, LW | |
| 200:10-201:1 | 402; 403; 801/802; DC | | | | |
| 201:19-202:14 | 402; 403; DC | | 201:12-14 | CU, R, LW | |
| 203:10-203:17 | 402; 403; DC | | | | |
| 203:21-204:2 | 402; 403; 801/802; DC | | | | |
| 207:18-208:21 | 30(b)(6); 402; 403; 602; 701/702; 801/802; Counsel; DC | | | | |
| 209:9-209:12 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | | | |
| 209:15-211:15 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | | | |
| 211:20-212:6 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | | | |
| 219:15-219:17 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | | | |
| 224:15-225:12 | 30(b)(6); 402; 403; 602; Counsel; DC | | 223:18-22 | CU, R, LW | |
| 225:24-226:12 | 30(b)(6); 402; 403; Counsel; DC | | | | |
| 226:17-226:21 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | | | |

| 228:14-228:17 | 30(b)(6); 402; 403; 701/702; 801/802; DC | | 228:1-3 228:9-10 | CU, R, LW | |
| 228:19-228:25 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 229:2-229:17 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 229:19-229:22 | 30(b)(6); 402; 403; 701/702; 801/802; Counsel; DC | | | | |
| 230:4-230:6 | 30(b)(6); 901; DC | | 229:25-230:3 | CU, R, LW | |
| | | | 230:7-22 | BTS, F, H, LC, O, R, SPEC, U, V, LW | |
| | | | 230:24-231:15 | | |
| | | | 231:18-232:6 | | |
| | | | 232:8-25 | | |

7.    Fergal Hennessy

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 6:2-5 | 402; 403 | | | | |
| 6:11-12 | 402; 403; 801/802 | | | | |
| 12:8-11 | 402; 403; 602 | | 11:25 | CU, R | |
| | | | 12:2-5 | | |
| 12:15-19 | 402; 403; 602 | | | | |
| 13:9-11 | 402; 403; Vague | | | | |
| 13:19-23 | 402; 403; 602 | | | | |
| 14:9-17 | 402; 403; 602; 801/802; Counsel; Vague | | | | |
| 14:25 | 402; 403; Vague | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 15:2-6 | 402; 403; Vague | | | | |
| 15:9-13 | 402; 403; 602; Vague | | 15:14-16 | CU, R | |
| | | | 15:22-25 | | |
| | | | 16:3-4 | | |
| | | | 16:20-25 | | |
| | | | 17:2-10 | CU, R, IC, O, BTS, H, LC, MIS, SPEC | |
| | | | 18:20-24 | CU, R | |
| | | | 19:5-13 | | |
| | | | 21:13-23 | | |
| | | | 22:4-8 | | |
| | | | 68:22-24 | CU, R, IC, BTS, H, LC, MIS, SPEC, F, L | |
| | | | 69:2-15 | | |
| | | | 69:22-25 | | |
| | | | 70:2-5 | | |
| | | | 70:14-22 | | |
| 22:17-18 | 30(b)(6); 402; 403; 602; 801/802 | | 23:4-6 | CU, R, IC, O, BTS, H, LC, MIS, SPEC, F, L | |
| | | | 23:8-26:3 | | |
| 22:22-25 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 23:3 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 24:4-25 | 402; 403; 801/802; Vague | | | | |
| 25:2-11 | 402; 403; 801/802; Vague | | 25:24-25 | CU, R | |
| 26:2-25 | 402; 403; 602 | | | | |
| 27:2-10 | 402; 403; 602; 701/702; 801/802 | | | | |
| 27:16-25 | 402; 403; 602; Vague | | | | |
| 28:2-3 | 402; 403; 602; Vague | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 28:9-12 | 30(b)(6); 402; 403; 602; 801/802; Vague | | 28:4-8 | CU, R, IC, BTS, H, LC, F | |
| | | | 28:17-20 | CU, R, IC, BTS, LC, F | |
| | | | 28:22-25 | | |
| | | | 29:2-4 | | |
| | | | 30:21-25 | | |
| | | | 31:2-8 | | |
| | | | 31:21-24 | | |
| 33:3-4 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | 32:2-21 | CU, R, IC, O, LC | |
| 33:6-12 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 33:14-15 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 33:17-19 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 33:21-25 | 402, 403, 30(b)(6), 701/702, 801/802, 602 | | | | |
| 34:2-12 | 30(b)(6); 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 34:17-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802; Vague | | | | |
| 35:2-4 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 36:20-25 | 402; 403; 602 | | | | |
| 37:2-6 | 402; 403; 602; Vague | | | | |
| 37:8-9 | 402; 403; 602; Vague | | | | |
| 37:14-18 | 402; 403; 602; Vague | | | | |
| 40:11-14 | 402; 403; 602; Vague | | 39:20-25 | CU, R, H, F, L, LC, IC, O, BTS, PK, SPEC | |
| | | | 40:15-22 | | |
| | | | 41:11-13 | | |

| | | | 167:22-24 | | |
|---|---|---|---|---|---|
| | | | 168:9-16 | | |
| | | | 170:9-14 | | |
| 44:6-7 | 30b(b)(6); 402; 403; 602; 901 | | | | |
| 44:12-14 | 402; 403; 602; 901 | | 44:15-17 | R, L, CU | |
| 44:18-24 | 30b(b)(6); 402; 403; 602 | | 46:8-10 | R, CU, L, PK | |
| 46:11-25 | 30b(b)(6); 402; 403; 602 | | 47:2-4 | R, IC, PK, V, F | |
| | | | 47:6 | | |
| 47:7-10 | 30b(b)(6); 402; 403; 602 | | 47:11-16 | R, IC, PK, V, F | |
| | | | 47:18 | | |
| 49:8-9 | 402; 403; 901 | | | | |
| 49:17-25 | 402; 403; 602; 901 | | 49:14-16 | R, L, CU | |
| 50:2-5 | 402; 403; 602 | | | | |
| 51:6-18 | 402; 403; 602; 801/802 | | | | |
| 51:20-22 | 402; 403; 602; 801/802 | | | | |
| 51:24-25 | 402; 403; 602; 801/802 | | | | |
| 52:2-13 | 402; 403; 602; 801/802 | | | | |
| 53:4-10 | 402; 403; 602; 801/802 | | 52:22-25 | R, H, SPEC, PK, V, F, IC | |
| | | | 53:2-3 | | |
| 53:12-15 | 402; 403; 602; 801/802 | | | | |
| 53:17-23 | 402; 403; 602; 801/802; 901 | | 54:4-5 | R, L, CU | |
| | | | 54:7 | | |
| 55:3-13 | 402; 403; 602; 801/802 | | | | |
| 55:25 | 402; 403; 602 | | | | |
| 56:2-7 | 402; 403; 602 | | | | |
| 56:9-23 | 402; 403; 602; 801/802 | | 56:24-25 | R, CU, H, SPEC, PK, F, MIS | |
| | | | 57:2-4 | | |
| 57:20-21 | 402; 403; 602; 901 | | 58:2-4 | R, L, CU | |
| 58:10-20 | 30(b)(6); 402; 403 | | 58:21-25 | R, CU, H, SPEC, PK, MIS, V | |
| | | | 59:2-9 | | |

| | | | | | |
|---|---|---|---|---|---|
| 61:24-25 | 402; 403; 602 | | | | |
| 63:4-16 | 402; 403; 602; 801/802 | | 62:11-15 | R, CU, H, SPEC, PK, | |
| | | | 62:21-24 | F, MIS, V | |
| | | | 63:2-3 | | |
| 71:10-11 | 402; 403; 602; 901 | | 71:16-18 | R, L, CU | |
| 71:23-25 | 402; 403; 602; 801/802 | | | | |
| 72:2-9 | 402; 403; 602; 801/802 | | | | |
| 72:11 | 402; 403; 602; 801/802 | | | | |
| 73:2-25 | 402; 403; 602; 801/802; Vague | | 72:19-22 | R, CU, H, PK, L, V | |
| 74:2-15 | 402; 403; 602; 801/802 | | 74:21-25 | R, CU, H, PK, SPEC, | |
| | | | 75:2-20 | O, LC, L, V, MIS | |
| | | | 76:3-6 | | |
| 76:7-21 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 76:23-25 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 77:2-9 | 30(b)(6); 402; 403; 602; 801/802 | | 77:10-13 | R, CU, PK, V | |
| 77:14-23 | 402; 403; 602; 801/802; Vague | | 77:24-25 | R, H, SPEC, BTS, PK, | |
| | | | 78:2 | V | |
| 79:10-11 | 402; 403; 901 | | | | |
| 79:20-24 | 402; 403; 602 | | | | |
| 80:2-14 | 30(b)(6); 402; 403; 801/802; DC | | 81:4-9 | R, H, SPEC, PK, BTS, V, LC, MIS | |
| 83:22-25 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 88:6-11 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 88:24-25 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 89:2 | 30(b)(6); 402; 403; 801/802; DC | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 89:11-12 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 89:14-16 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 89:18-19 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 92:13-15 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 92:17-22 | 30(b)(6); 402; 403; 801/802; DC | | | | |
| 96:12-14 | 402; 403; 602; 901 30(b)(6), 701/702, 801/802; DC | | 93:9-19 95:23-96:4 96:9-11 | R, H, PK, L, BTS, IC, PK, SPEC, IC | |
| 96:19-21 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 98:20-21 | 402; 403; DC | | | | |
| 99:2-5 | 402; 403; DC | | 99:6-9 | R, CU, L, ARG, MIS | |
| 102:17-23 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 103:10-22 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 105:24-25 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 106:2-3 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 106:6-10 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 107:18-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |

| | | | | |
|---|---|---|---|---|
| 108:2-9 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 108:20-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 109:2-9 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 109:11 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | 109:12-13 110:13-16 | R, CU, PK, L, IC | |
| 112:2-6 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 112:11-19 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 112:21-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 113:8-14 | 30(b)(6); 402; 403; 602; 701/702; 801/802; DC | | | | |
| 114:10-13 | 402; 403; 602; 901; DC | | 115:8-12 116:3-6 | R, H, PK, SPEC, V, BTS, IC | |
| 117:5-11 | 30(b)(6); 402; 403; 602; 801/802; DC | | 117:14-15 117:17-20 | R, H, PK, SPEC, BTS, IC, V, LC, O | |
| 117:21-24 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 118:2 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 118:4-5 | 602; 901; DC | | 118:10-12 | R, CU, L | |

| | | | | | |
|---|---|---|---|---|---|
| 118:15-25 | 30(b)(6); 402; 403; 602; Counsel; DC | | | | |
| 119:2-17 | 30(b)(6); 402; 403; 602; DC | | | | |
| 120:3-15 | 30(b)(6); 402; 403; DC | | | | |
| 120:17-25 | 30(b)(6); 402; 403; DC | | | | |
| 121:2-24 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 122:2-6 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 122:8-13 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 122:24-25 | 30(b)(6); 402; 403; 602; DC | | | | |
| 123:2-3 | 30(b)(6); 402; 403; 602; DC | | | | |
| 124:9-16 | 30(b)(6); 402; 403; DC | | 124:17-19 124:21-24 | R, H, SPEC, PK, V, CU, IC | |
| 124:25 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 125:2-7 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 125:13-14 | 901; DC | | 125:19-21 | R, CU, L | |
| 125:22-25 | 30(b)(6); 402; 403; 602; DC | | | | |
| 126:2-11 | 30(b)(6); 402; 403; 602; DC | | | | |
| 131:22-25 | 30(b)(6); 402; 403; DC; Priv | | | | |
| 132:8-23 | 30(b)(6); 402; 403; 602; 901; DC; Priv | | 133:4-6 | R, CU, L | |
| 133:7-18 | 402; 403; 602; DC | | 133:19-21 133:23-24 | R, CU, L, H, SPEC, PK, BTS, IC, F | |

| | | | | | |
|---|---|---|---|---|---|
| 134:25 | 402; 403; 602; DC | | | | |
| 135:2-6 | 402; 403; 602; 901; DC | | 135:11-13 | R, CU, L | |
| 135:14-25 | 402; 403; 602; DC | | | | |
| 136:8-25 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 137:2-10 | 30(b)(6); 402; 403; 602; 801/802; DC | | 137:11-15 | R, H, SPEC, PK, BTS, IC | |
| 137:25 | 402; 403; DC | | | | |
| 138:2-25 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 139:2-8 | 30(b)(6); 402; 403; 602; 801/802; DC; Priv | | | | |
| 139:13-15 | 30(b)(6); 402; 403; 602; 801/802; DC; Priv | | | | |
| 141:3-5 | 402; 403; DC | | | | |
| 141:11-23 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 142:11-14 | 30(b)(6); 402; 403; 602; 801/802; DC | | | | |
| 144:2-3 | 402; 403; 901 | | | | |
| 144:22-23 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 144:25 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 145:2 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 145:4-8 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 145:22-24 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 146:2-4 | 30(b)(6); 402; 403; 602; Vague | | 145:9-11 145:19-21 | R, CU, H, SPEC, PK, NR, IC | |

| | | | 146:5-7 | | |
|---|---|---|---|---|---|
| | | | 146:9-13 | | |
| | | | 146:15-16 | | |
| 147:5-14 | 402; 403; 602; 801/802 | | 147:21-24 | R, PK, BTS, IC, CU | |
| | | | 148:6-10 | | |
| 149:21-25 | 30(b)(6); 402; 403; 602 | | | | |
| 150:2-9 | 30(b)(6); 402; 403; 602 | | 150:14-25 | R, H, IC, SPEC, PK, O | |
| | | | 151:2-11 | | |
| 157:13-14 | 402; 403; 901 | | 158:3-7 | R, CU, L | |
| 158:24-25 | 402; 403; 602 | | | | |
| 159:2-12 | 30(b)(6); 402; 403 | | | | |
| 159:14-25 | 30(b)(6); 402; 403 | | | | |
| 160:2-4 | 30(b)(6); 402; 403; 602; 701/702 | | | | |
| 160:6-11 | 30(b)(6); 402; 403; 602; 701/702 | | | | |
| 160:13-21 | 30(b)(6); 402; 403; 801/802 | | | | |
| 160:23-25 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 161:7-14 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 161:21-24 | 30(b)(6); 602; 801/802 | | 161:25-162:3 | R, PK, SPEC, IC, NR | |
| | | | 162:5-13 | | |
| | | | 162:15-19 | | |
| | | | 162:21-24 | | |
| 163:19-24 | 30(b)(6); 402; 403; 602; 801/802 | | | | |
| 164:8-23 | 30(b)(6); 402; 403; 602; 801/802; Vague | | | | |
| 180:23-24 | | | | | |
| 181:5-25 | 30(b)(6); 402; 403 | | | | |

| 182:2-13 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | 182:14-16 182:18-19 | R, H, SPEC, LC, O, NR, V, IC | |
| 185:19-20 | 402; 403; 901 | | | | |
| 186:23-25 | 402; 403; 602; 701/702; 801/802 | | 186:19-22 | R, SPEC, PK, BTS | |
| 187:2-13 | 402; 403; 602; 701/702; 801/802 | | | | |
| 187:15-18 | 30(b)(6); 402; 403; 602 | | 187:19-188:2 | R, H, SPEC, PK, BTS, O, NR, IC | |
| 188:6-10 | 30(b)(6); 402; 403; 602 | | | | |
| 188:12-16 | 30(b)(6); 402; 403; 602 | | | | |
| 188:18 | 30(b)(6); 402; 403; 602 | | | | |
| 188:24-25 | 30(b)(6); 402; 403; 602; 901 | | 189:6-10 | R, H, SPEC, PK, BTS, NR, IC | |
| 189:11-17 | 30(b)(6); 402; 403; 602; 901 | | | | |
| 189:22-25 | 30(b)(6); 402; 403; 602; 901 | | | | |
| 190:2-23 | 30(b)(6); 402; 403; 701/702; 801/802 | | | | |
| 190:25 | 30(b)(6); 402; 403; 701/702; 801/802 | | | | |
| 191:2-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 192:3-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 193:2-25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 194:2-23 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
| 194:25 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |

| 195:2-5 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | | |
|---------|-------------------------------------------|---|---|---|---|

    8.    Mary Susan Howard

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 9:19-9:21 | Not Testimony | | | | |
| 10:11-10:17 | | | | | |
| 12:11-12:17 | 801/802; 901 | | 12:2-4 | R, IC | |
| 15:3-16:8 | Counsel; Vague | | 13:16-14:12 | R, IC | |
| | | | 14:19-15:2 | R, IC | |
| 16:14-17:3 | 602; Vague | | 16:9-13 | R, IC | |
| 19:13-19:18 | Vague | | 19:19-20:20 | R, IC | |
| 24:16-24:19 | Vague | | 23:19-24:15 | R, IC, CU, PK | |
| 38:1-39:18 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901 | | 32:13-16 | IC, CU | |
| | | | 33:7-8 | IC, CU | |
| | | | 33:11 | IC, CU | |
| | | | 33:13-18 | IC | |
| | | | 34:17-35:1 | R, IC, CU, PK, F | |
| | | | 35:7-10 | R, IC | |
| | | | 35:13 | R, IC | |
| | | | 36:16-22 | R, IC, CU | |
| 39:21-39:22 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 39:25-40:22 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 40:24-41:6 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 41:8-41:20 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 41:23-42:7 | 105/NAT; 402; 403; | | 42:8-13 | R, IC | |

|  | 602; 701/702; 801/802 |  | 42:15 | R, IC |  |
|---|---|---|---|---|---|
| 48:15-48:23 | 105/NAT; 402; 403; 602; 701/702; 801/802 |  |  |  |  |
| 49:4-49:7 | 105/NAT; 402; 403; 602; 701/702; 801/802 |  |  |  |  |
| 49:10-49:18 | 105/NAT; 402; 403; 701/702; 801/802 |  |  |  |  |
| 49:20-49:22 | 105/NAT; 402; 403; 701/702; 801/802 |  |  |  |  |
| 50:3-50:8 | 105/NAT; 402; 403; 701/702; 801/802 |  |  |  |  |
| 50:11-50:13 | 105/NAT; 402; 403; 701/702; 801/802 |  |  |  |  |
| 70:23-71:1 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901; Vague |  | 64:14-65:3 | R, IC |  |
|  |  |  | 65:6-10 | R, IC |  |
|  |  |  | 65:13-18 | R, IC |  |
|  |  |  | 65:21-22 | R, IC, F, PK |  |
| 71:4-71:7 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901; Vague |  |  |  |  |
| 71:9-71:15 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901 |  |  |  |  |
| 71:18-72:5 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901 |  |  |  |  |
| 72:8-72:15 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901 |  |  |  |  |
| 72:18-73:6 | 402; 403; 801/802 |  |  |  |  |
| 73:9 | 402; 403; 801/802 |  |  |  |  |
| 77:22-78:6 | 402; 403; 602; 801/802 |  | 78:7-9 | IC, F, PK |  |
| 78:16-78:20 | 402; 403; 801/802 |  |  |  |  |

| | | | | | |
|---|---|---|---|---|---|
| 78:22-79:3 | 402; 403; 801/802 | | 79:4-8 | IC, F, PK | |
| 80:4-80:18 | 105/NAT; 402; 403; 701/702; 801/802; Counsel | | | | |
| 80:21-81:4 | 105/NAT; 402; 403; 701/702; 801/802 | | | | |
| 81:7-81:14 | 105/NAT; 402; 403; 701/702; 801/802 | | 81:16-17 | R, IC, CU | |
| | | | 81:21-24 | R, IC, CU | |
| 110:14-110:20 | 402; 403; 602; 801/802 | | 93:23-94:18 | R, IC, CU | |
| | | | 95:15-17 | R, IC, CU | |
| | | | 110:21-24 | R, IC, CU | |
| 111:4-111:20 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 111:23-112:3 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 112:6-112:22 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 112:24 | 105/NAT; 402; 403; 602; 701/702; 801/802 | | | | |
| 115:2-115:3 | 105/NAT; 402; 403; 602; 701/702; 801/802; Vague | | 114:17-115:1 | R, IC, CU | |
| 116:5-118:8 | 402; 403; 602; 701/702; 801/802; 901; Counsel | | | | |
| 118:16-119:9 | 402; 403; 602; 701/702; 801/802; 901 | | | | |
| 119:12 | 402; 403; 602; 701/702; 801/802; 901 Counsel; Vague | | | | |
| 119:14 | 402; 403; 602; 701/702; 801/802; 901; Counsel | | | | |

| 120:15-121:3 | 106 (120:4-14); 402; 403; 801/802 | | | | |
| 121:6-121:7 | 402; 403; 602; 701/702; 801/802 | | | | |
| 123:15-123:24 | 402; 403; 602; 801/802 | | | | |
| 127:9-127:13 | 402; 403; 602; 801/802 | | 127:14-18 | R, IC, CU | |
| | | | 127:23 | R, IC, CU | |
| | | | 149:18-24 | R, IC, CU | |

9.    David W. Schultz, Ph.D.

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 1:19-1:20 | Not Testimony; 602 | | 10:5-8 | | |
| 1:22 | Not Testimony; 602 | | | | |
| 10:5-8 | | | | | |
| 11:11-11:16 | 402; 403 | | 11:24-12:15 | | |
| 11:17-23 | | | | | |
| 13:6-13:11 | 402; 403 | | 13:12-21 | IC, R, SPEC | |
| | | | 13:24-15:7 | IC, R, PK, SPEC, H | |
| | | | 15:23-16:15 | IC, R | |
| 18:17-19:6 | 105/NAT; 402; 403 | | 18:6-16 | IC, CP | |
| 20:7-20:10 | 105/NAT; 402; 403 | | 20:2-6 | IC, V | |
| 20:13-20:20 | 105/NAT; 402; 403; 602 | | | | |
| 21:20-22:2 | 105/NAT; 402; 403; 602 | | 20:16-19 | IC, NR, OB, R | |
| 22:5-22:19 | 105/NAT; 106 (20:16-19); 402; 403; 602; 701/702 | | 20:16-19 | IC, NR, OB, R | |
| 23:20-23:23 | 105/NAT; 402; 403; 602; 701/702 | | | | |

| | | | | | |
|---|---|---|---|---|---|
| 24:3-24:8 | 105/NAT; 402; 403; 602; 701/702 , Vague | | | | |
| 24:16-24:18 | 106 (24:21); 402; 403 | | 24:21 | | |
| 25:5-25:6 | 402; 403 | | | | |
| 25:9-25:12 | 106 (25:14-15); 402; 403; Counsel | | 24:14-15 | IC, OB, R | |
| 25:17-25:18 | 105/NAT; 402; 403; 602; 701/702, Vague | | | | |
| 25:20-25:22 | 105/NAT; 402; 403; 602; 701/702, Vague | | | | |
| 25:24 | 105/NAT; 402; 403; 602; 701/702, Vague | | 26:6-7 | IC, O, V | |
| | | | 26:10-15 | IC, O, V | |
| | | | 26:25-27-4 | IC, O, V | |
| 27:15-27:17 | 105/NAT; 402; 403; 701/702 | | | | |
| 29:14-29:15 | 402; 403 | | 29:8-9 | IC, NR | |
| | | | 29:12-13 | IC, NR | |
| 29:17-29:22 | 402; 403 | | | | |
| 29:25-30:3 | 402; 403 | | | | |
| 30:14-30:16 | 402; 403; 602 | | | | |
| 30:19-30:23 | 402; 403; 602 | | | | |
| 32:25-33:3 | 402; 403; Vague | | | | |
| 33:5-33:11 | 402; 403; Vague | | | | |
| 34:10-34:11 | 402; 403; Vague | | | | |
| 34:14-34:17 | 402; 403; Vague | | | | |
| 36:4-36:10 | 402; 403; 602; 901 | | 35:15-36:3 | V, CP, R | |
| 42:6-42:7 | 402; 403; 701/702 | | 41:20-22 | IC, R, V | |
| 42:10-42:23 | 105/NAT; 402; 403; 602; 701/702 | | 42:24-25 | | |
| 47:14-47:15 | 106 (47:11-14); 402; 403; 602; Vague | | 39:11-40:3 | IC | |
| | | | 40:5-6 | IC, V, PK | |
| | | | 47:11-14 | | |

| | | | | | |
|---|---|---|---|---|---|
| 47:17-47:20 | 402; 403; 602; Vague | | 39:11-40:3 | IC | |
| | | | 40:5-6 | IC, V. PK | |
| 48:1-48:2 | 402; 403; 602; Vague | | | | |
| 48:5-48:6 | 402; 403; 602; Vague | | | | |
| 48:8-48:9 | 402; 403; 602; Vague | | | | |
| 49:1-49:5 | 105/NAT; 402; 403; 602; 701/702; Vague | | | | |
| 49:8-49:11 | 105/NAT; 402; 403; 602; 701/702; Vague | | | | |
| 49:14-49:18 | 105/NAT; 402; 403; 602; 701/702; Vague | | 39:11-40:1-3 | IC | |
| | | | 40:5-6 | IC, V. PK | |
| 49:21-50:1 | 105/NAT; 402; 403; 602; 701/702; Vague | | | | |
| 50:8-50:13 | 402; 403; 701/702 | | | | |
| 55:24-56:11 | 402; 403; 602 | | 39:11-40:3 | IC | |
| | | | 40:5-6 | IC, V. PK | |
| 56:13-59:22 | 402; 403; 602 | | | | |
| 60:6-60:20 | 402; 403; 602 | | | | |
| 61:2-61:14 | 402; 403; 602 | | | | |
| 61:23-62:11 | 402; 403; 602 | | | | |
| 63:20-64:6 | 402; 403; 602 | | | | |
| 64:10-64:22 | 402; 403; 602 | | | | |
| 64:24-66:2 | 402; 403; 602 | | | | |
| 66:9-66:20 | 402; 403; 602 | | | | |
| 67:3-67:9 | 402; 403; 602 | | | | |
| 68:1-68:3 | 106 (67:22-25); 402; 403; 602; Vague | | 67:10-11 | IC, O, LC, PK | |
| | | | 67:13-20 | IC, NR, O, LC, PK | |
| | | | 67:22-25 | IC, NR, OB | |
| 68:5 | 402; 403; 602; Vague | | 68:6 | AA, IC | |
| | | | 68:8-12 | IC, NR, OB | |
| 68:18-69:5 | 105/NAT; 402; 403; 602; 701/702; Vague, | | 68:8-12 | IC, NR, OB | |
| | | | 68:16-17 | IC, NR, OB | |

| | | | | | |
|---|---|---|---|---|---|
| 69:18-69:23 | 105/NAT; 402; 403; 602; 701/702; Vague | | | | |
| 71:23-71:24 | 402; 403; 602; 701/702 | | 71:9-11 | IC, NR, SPEC, PK | |
| | | | 71:14-18 | IC, NR, SPEC, PK | |
| | | | 71:20-22 | IC, SPEC, PK | |
| 72:1-72:22 | 402; 403; 602; 701/702 | | | | |
| 72-24-72:25 | 402; 403; 602; 701/702 | | | | |
| 73:2-73:4 | 402; 403; 602; 701/702 | | 73:5-8 | IC, NR, V | |
| | | | 73:17-19 | IC, NR, V | |
| 74:16-74:19 | 402; 403; 602 | | 74:12-15 | IC, PK, V, AA | |
| 75:1 | 402; 403; 602 | | | | |
| 77:4-77:8 | 402; 403; 602; 701/702; 801/802 | | 75:3-10 | IC | |
| | | | 76:14-77:3 | IC, NR | |
| 77:11 | 402; 403; 602; 701/702; 801/802 | | 77:12 | IC, V | |
| | | | 77:14-17 | IC, NR | |
| | | | 77:19-20 | IC, NR | |
| 78:9-78:12 | 402; 403 | | 77:21-23 | IC, V, BTS | |
| | | | 77:1-2 | IC, NR, BTS | |
| | | | 77:4-8 | IC, NR, OB, | |
| 78:14-78:15 | 402; 403 | | | | |
| 79:5-79:6 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 79:9-79:15 | 30(b)(6); 402; 403; 602; Vague | | | | |
| 80:10-80:16 | 402; 403; | | | | |
| 80:18-80:19 | 106 (80:20-23); 402; 403; Counsel | | 80:20-23 | R, OB | |
| 80:24-81:2 | 402; 403; 801/802; 901 | | | | |
| 81:12 | 402; 403; 602; Vague | | | | |
| 81:14-81:19 | 402; 403; 801/802; 901 | | 81:20-22 | | |

| | | | | |
|---|---|---|---|---|
| 81:23-82:1 | 402; 403; 801/802; 901; Counsel | | | |
| 82:22-83:2 | 402; 403; 801/802 | | | |
| 89:22-89:25 | 402; 403; 602; 801/802; Vague | | | |
| 90:5 | 402; 403; 602; 801/802; Vague | | | |
| 91:15-21:21 | 30(b)(6); 402; 403; 602; 701/702; 801/802 | | | |
| 92:15-92:20 | 30(b)(6); 106 (92:21); 402; 403; 602; 701/702; 801/802 | | | |
| 93:3-93:10 | 402; 403; 602; 801/802 | | | |
| 93:12-93:13 | 402; 403; 602; 801/802 | | | |
| 93:22 | 105/NAT; 402; 403; 602; 701/702; Hypothetical | | | |
| 94:2-94:13 | 105/NAT; 402; 403; 602; 701/702; Hypothetical | | | |
| 94:19-94:21 | 106 (94:23); 402; 403; 602; 701/702; Hypothetical | | 94:23 | |
| 95:3-95:4 | 402; 403 | | | |
| 95:7 | 402; 40; | | | |
| 101:21-102:6 | 402; 403; 602 | | | |
| 102-9-102:13 | 402; 403; 602; 801/802 | | 102:14-103:6 | IC, SPEC, R |
| | | | 103:9-12 | IC, SPEC, R, NR, V |
| | | | 103:14-15 | IC, SPEC, R, NR, V |
| 105:2-105:6 | 402; 403 | | | |
| 105:8-105:14 | 402; 403 | | | |
| 105:17-105:24 | 402; 403; 602 | | | |

| | | | | | |
|---|---|---|---|---|---|
| 106:8-107:14 | 402; 403; 602; 801/802; Counsel | | | | |
| 107:17-108:3 | 402; 403; 801/802; Vague | | 108:4-5 | I, IC, PK, SPEC, H | |
| | | | 108:7-9 | I, IC, PK, SPEC, H | |
| 108:12-108:15 | 402; 403; 602; 801/802; Vague, | | | | |
| 108:19-108:21 | 402; 403; 602; 801/802; Vague, | | 109:1-8 | IC, V, OB, R | |
| | | | 109:19-110:8 | IC, V, OB, R | |
| | | | 110:24-111:5 | IC, V, | |
| 112:1-112:9 | 402; 403; 801/802 | | | | |
| 114:17-114:19 | 105/NAT; 402; 403 | | 112:12-14 | V, NR, IC, R, PK | |
| | | | 113:8-17 | V, NR, IC, R, PK | |
| | | | 114:13-16 | V, NR, IC, R, PK | |
| 114:22-114:23 | 105/NAT; 402; 403 | | | | |
| 115:1-115:10 | 105/NAT; 402; 403; 801/802 | | 115:19-116:6 | I, IC, V | |
| 116:7-116:9 | 105/NAT; 402; 403; 701/702 | | | | |
| 116:17-116:19 | 105/NAT; 402; 403; 801/802 | | | | |
| 116:24-116:25 | 105/NAT; 402; 403; 801/802 | | | | |
| 117:2-117:5 | 105/NAT; 402; 403; 801/802 | | | | |
| 117:12-117:18 | 105/NAT; 402; 403; 801/802 | | | | |
| 122-18-123:12 | 105/NAT; 402; 403; 602; 701/702; 801/802; 901 | | 123:13-16 | IC, V | |
| 124:4-124:10 | 105/NAT; 106 (124:2-3), 402; 403; 701/702; 801/802 | | 124:2-3 | | |
| | | | 124:11-12 | IC, PK, R | |
| | | | 124:14 | IC, PK, R | |
| | | | 124:17 | IC, PK, R | |

| | | | | | |
|---|---|---|---|---|---|
| 124:18 | 105/NAT; 402; 403; 701/702 | | | | |
| 124:21-124:25 | 105/NAT; 402; 403; 701/702 | | 125:1-10 | IC, PK, R, V | |
| | | | 125:13-14 | IC, PK, R, V | |
| | | | 125:22-126:1 | IC, R, V, PK | |
| 126:18-126:20 | 105/NAT;402; 403; 602; 701/702 | | 126:21-127:1 | IC, R, NR, NARR | |
| 127:2-127:9 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 127:12-127:16 | 105/NAT; 106 (127:18, 127:20); 402; 403; 602; 701/702 | | 127:18 | | |
| | | | 127:20 | IC, R, V, CU | |
| 127:23-128:6 | 105/NAT, 402; 403; 602; 701/702 | | | | |
| 134:7-134:22 | 105/NAT; 402; 403; 801/802 | | 134:23-135:1 | IC, NR, V, R | |
| | | | 135:4-25 | IC, NR, V, R | |
| | | | 136:2-11 | IC, NR, V, R | |
| | | | 136:22-137:11 | IC, NR, V, R, AA | |
| | | | 137:13-14 | IC, NR, V, R, AA | |
| 137:23-137:25 | 105/NAT; 402; 403; 801/802; Vague | | | | |
| 138:3-138:7 | 30(b)(6); 402; 403; 602 | | | | |
| 138:10-138:11 | 402; 403; 602; 801/802 | | | | |
| 138:14-138:20 | 402; 403; 801/802; 901 | | | | |
| 139:19-139:23 | 105/NAT; 402; 403; 602; 801/802 | | 138:21-139:17 | R, IC,  V | |
| | | | 140:6-13 | IC, O, PK | |
| | | | 142:1-4 | IC, R | |
| 142:7-142:15 | 402; 403; 901 | | | | |
| 143:5-143:10 | 106 (143:11-18); 402; 403; 801/802; Counsel | | 142:16-143:1 | IC, R, OB, I | |
| | | | 143:3-4 | IC, R, OB | |
| | | | 143:11-18 | R, | |

| | | | | | |
|---|---|---|---|---|---|
| 143:19-144:4 | 105/NAT; 402; 403; 801/802 | | | | |
| 144:7-145:1 | 105/NAT; 402; 403; 801/802 | | 146:12-14 | V, I, F, IC, R | |
| 148:1-148:8 | 402; 403; 901 | | 149:5-9 | IC, R | |
| | | | 154:3-5 | F, IC, V | |
| | | | 154:7-14 | F, IC, V | |
| 155:21-155:24 | 105/NAT; 402; 403; 602; 701/702 | | 155:16-17 | V | |
| | | | 155:19-20 | V | |
| 156:1-156:4 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 156:11-156:16 | 402; 403; 602; 801/802; 901 | | 156:17-157:9 | IC, V, R, NR | |
| 157:10-157:19 | 106 (157:21, 157:23); 402; 403 | | 157:21 | R, PK | |
| | | | 157:23 | R, PK | |
| 157:24-158:2 | 402; 403; 602 | | | | |
| 161:17 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 161:19-161:22 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 161:24 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 165:14-166:1 | 105/NAT; 402; 403; 801/802; 901 | | | | |
| 168:1-168:6 | 105/NAT; 402; 403; 602; 801/802; 901 | | | | |
| 168:9-168:15 | 105/NAT; 402; 403; 602; 801/802; 901 | | | | |
| 168:17-169:4 | 105/NAT; 402; 403; 602; 701/702 | | | | |
| 169:10-169:12 | 105/NAT; 402; 403; 602 | | | | |

| 169:14-169:22 | 105/NAT; 402; 403; 602 | | | | |
| 170:3-170:12 | 105/NAT;106 (169:23-170:2); 402; 403; 602 | | 169:23-170:2<br>180:23-25 | | |

10.   David Wilcox (4/17/2014)

| Defendants' Designations (page(s):line(s)) | Plaintiffs' Objections | Ruling | Plaintiffs' Counter-Designations | Defendants' Objections | Ruling |
|---|---|---|---|---|---|
| 3:7 | Not Testimony; 32(a); 602 | | | | |
| 3:15 | Not Testimony; 32(a); 602 | | | | |
| 4:6 | Not Testimony; 32(a); 602 | | | | |
| 7:16-7:17 | 32(a); 106 (7:18-19) | | 7:18-19 | | |
| 7:20-7:21 | 32(a); 106 (7:18-19) | | | | |
| 9:2-9:5 | 32(a) | | 8:14-9:1 | | |
| | | | 9:6-10 | | |
| 11:11-11:21 | 32(a) | | 11:23-12:4 | | |
| 12:8-12:12 | 32(a) | | 12:8-17<br>13:12-9 | OB, U, V | |
| 21:19-22:12 | 32(a) | | 20:19-21:12 | IC, V | |
| 26:7-26:24 | 32(a) | | 28:23-31:5 | BTS, NARR, R, SPEC | |
| | | | 33:5-14 | IC, V | |
| | | | 36:11-37:3 | V | |
| | | | 41:1-12 | IC, R, V | |
| | | | 46:1-8 | IC | |
| | | | 46:13-15 | IC, ARG, CP, R | |
| | | | 46:19-47:3 | IC, R, V | |
| | | | 59:9-23 | IC, R, V | |
| | | | 66:11-24 | IC | |

| | | | 67:8-19 | IC | |
|---|---|---|---|---|---|
| | | | 69:1-2 | IC, ARG, MIS, V | |
| | | | 69:6 | IC, ARG, MIS, V | |
| | | | 69:13-70:8 | IC, AA, ARG, CP, MIS, R, V | |
| | | | 70:11-15 | IC, AA, CP, MIS, R, V | |
| | | | 71:7-9 | IC, AA, CP, MIS, V | |
| | | | 71:13-72:4 | IC, AA, MIS, V | |
| | | | 72:7-24 | IC, AA, CP, MIS, V | |
| | | | 73:2-5 | IC, AA, CP, MIS, V | |
| | | | 73:8 | IC, AA, MIS, V | |
| | | | 73:22-74:5 | IC, AA, ARG, CP, MIS, V | |
| | | | 76:3-77:5 | IC, V | |
| | | | 77:13-78:14 | IC, CP, V | |
| | | | 79:23-80:1 | IC | |
| | | | 80:16-19 | IC, V | |
| | | | 82:5-11 | IC, R | |
| | | | 85:3-6 | IC, R | |
| | | | 86:12-15 | IC, R, V | |
| | | | 86:18-88:3 | IC, SPEC, V | |
| | | | 89:12-90:19 | IC, BTS, R, SPEC, V | |
| | | | 91:13-23 | IC, R, SPEC, V | |
| | | | 94:9-95:3 | IC, V | |
| | | | 95:6-96:7 | IC, V | |
| | | | 98:14-100:14 | IC, ARG, R, V | |
| | | | 100:18-20 | IC, V | |
| | | | 100:23-101:6 | IC, V | |
| | | | 101:9-17 | IC, ARG, V | |
| | | | 101:24-102:4 | IC, V | |
| | | | 106:24-108:14 | IC, AA, CP, V | |
| | | | 108:17-24 | IC, AA, CP, V | |

| | | | 111:11-13 | IC, BTS, O, V | |
|---|---|---|---|---|---|
| | | | 111:16-20 | IC, BTS, O, V | |
| | | | 111:23 | IC, BTS, O, V | |
| | | | 114:10-23 | IC, R | |
| | | | 116:14-117:12 | IC, R | |
| | | | 118:5-119:20 | IC, R | |
| | | | 122:21-123:3 | IC, BTS, V | |
| | | | 123:6-23 | IC, R | |
| | | | 124:7-21 | IC, R, V | |
| | | | 125:9-16 | IC, CU, R | |
| | | | 125:24-127:4 | IC, R | |
| | | | 127:8-128:10 | IC, PK, R, V | |
| | | | 128:16-129:24 | IC, AA, R, SPEC, V | |
| | | | 130:12-132:3 | IC, H, R, V | |
| | | | 133:2-8 | IC | |
| | | | 135:4-6 | IC, BTS, PK, R, SPEC, V | |
| | | | 135:11-13 | IC, BTS, PK, R, SPEC, V | |
| | | | 136:13-16 | IC, R | |
| | | | 137:2-19 | IC, R | |
| 139:16-140:8 | 32(a) | | 140:9-17 | | |
| | | | 141:8-24 | ARG, V | |
| | | | 142:11-21 | ARG, O, V | |
| | | | 143:11-13 | V | |
| | | | 143:20-144:8 | O, V | |
| | | | 146:20-147:7 | IC, V | |
| | | | 148:11-149:7 | IC, CU, R | |
| | | | 151:3-152:7 | IC, CU, R | |
| | | | 153:6-16 | IC, AA, CU, R | |
| | | | 154:9-18 | IC, AA, CU, R | |
| | | | 155:4-156:10 | IC, CU, R | |

| | | | 156:21-157:5 | IC, CU, R | |
|---|---|---|---|---|---|
| | | | 157:16-158:9 | IC, CU, R, V | |
| | | | 158:21-8 | IC, CU, R | |
| | | | 159:16-160:7 | IC, CU, R | |
| | | | 160:15-162:16 | IC, CU, O, R, V | |
| | | | 163:10-166:3 | IC, CU, R | |
| | | | 166:11-169:1 | IC, CU, PK, R, SPEC | |
| | | | 169:19-170:13 | IC, CU, R | |
| | | | 171:2-11 | IC, CU, R | |
| | | | 172:1-22 | IC, CU, O, R, V | |
| | | | 173:11-12 | IC, CU, MIS, R, V | |
| | | | 173:23-174:21 | IC, CU, R | |
| | | | 175:8-177:8 | IC, CU, R | |
| | | | 178:22-181:1 | IC, CU, R, V | |
| | | | 181:15-19 | IC, BTS, CU, IH, R, SPEC | |
| | | | 181:22 | IC, BTS, CU, IH, R, SPEC | |
| | | | 182:4-19 | IC, CU, R, SPEC | |
| | | | 184:18-23 | IC | |
| | | | 185:4-21 | IC | |
| | | | 186:3-187:4 | IC, AA, MIS, V | |
| | | | 188:2-17 | IC, AA, R, V | |
| | | | 188:21-189:3 | IC, AA, R, V | |
| | | | 189:5-12 | IC, AA, R, V | |
| | | | 189:15-190:2 | IC, AA, R, V | |
| 190:4 | 32(a); Counsel | | | | |
| 190:7-190:12 | 32(a); Leading | | | | |
| 190:15-190:16 | 32(a); Vague | | | | |
| 190:19-190:23 | 32(a);602; Leading; Vague | | | | |
| 191:2 | 32(a) | | | | |

| 191:8-191:15 | 32(a) | | | | |
|---|---|---|---|---|---|
| 191:22-191:23 | 32(a); 602; Leading, Vague | | | | |
| 192:2-192:9 | 32(a); 602; Leading; Vague | | | | |
| 192:20-192:21 | 32(a) | | | | |
| 193:5-193:7 | 32(a); 602; Leading; Vague | | | | |
| 193:10 | 32(a) | | | | |

| Defendants' Objection Legend |
| --- |
| AA = Asked and answered; Fed. R. Evid. 611(a) |
| ARG = Argumentative, or attorney argument; Fed. R. Evid. 611(a) |
| BTS = Beyond the scope of examination or of 30(b)(6) topic; Fed. R. Evid. 611, |
| Fed. R. Civ. P. 30(b)(6) |
| CP = Compound question |
| CU = Cumulative/Waste of time; Fed. R. Evid. 403 |
| F = No foundation or assumes facts not in evidence; Fed. R. Evid. 602, 703, 901 |
| H = Hearsay if offered for the truth of the matter asserted; Fed. R. Evid. 801, 803, 805 |
| I = Incomplete designation; Fed. R. Evid. 106, 403 |
| IH = Incomplete Hypothetical |
| L = Leading; Fed. R. Evid. 611(c) |
| LC = Legal Conclusion; Fed. R. Evid. 701 |
| LW = Witness will be testifying live at trial |
| MIS = Mischaracterization of testimony or evidence |
| NARR = Narrative |
| NR = Not responsive; Fed. R. Evid. 611(a) |
| O = Unqualified Opinion; Fed. R. Evid. 701, 702 |
| OB = Attorney Objection improperly designated/Improper designation |
| P = Privileged; Fed. R. Evid. 501, Fed. R. Civ. P. 26(b)(3), (4) |
| PK = Lack of personal knowledge; Fed. R. Evid. 602 |
| R = Not relevant; Fed. R. Evid. 401, 402 |
| SPEC = Speculation; Fed. R. Evid. 602, 701, 702 |
| U = Unfairly prejudicial; Fed. R. Evid. 403 |
| V = Vague or ambiguous; Fed. R. Evid. 611(a) |
| IC – Improper counter-designation |

| Plaintiffs' Objection Legend | |
| --- | --- |
| Code | Objection |
| 26 | Question or response beyond scope of opinions in expert report |
| 30(b)(6) | Question or response beyond scope of the witness' Rule 30(b)(6) designation |
| 32(a) | Improper Designation |
| 105/NAT | Not admissible against Plaintiffs |
| 106 | Incomplete designation (parenthetical identifies testimony necessary for completeness) |
| 402 | Not relevant |
| 403 | Any relevance substantially outweighed by confusion, prejudice or waste of time |
| 408 | Inadmissible evidence of compromise or offers to compromise |
| 602 | No foundation, calls for speculation, or speculative response |
| 701/702 | Improper expert testimony |
| 801/802 | Hearsay |
| 901 | Requires proof of authenticity as a condition precedent to its admissibility |
| Counsel | Inadmissible statement by counsel |
| DC | Relates only to dose counter patents no longer in case |
| Hypothetical | Incomplete or improper hypothetical |
| Leading | Question is leading |
| Priv | Protected material subject to the attorney-client privilege or attorney work product doctrine |
| Strike | Nonresponsive answer |
| Vague | Question is vague |

## SCHEDULE H
## WAIVER OF ANY CLAIMS OR DEFENSES THAT HAVE BEEN ABANDONED

1.    Plaintiffs' waiver of any claims that have been abandoned is included in **<u>Schedule H-1</u>**.

2.    Defendants' waiver of any defenses that have been abandoned is included in **<u>Schedule H-2</u>**.

**SCHEDULE H-1**
**PLAINTIFFS' WAIVER OF ANY CLAIMS THAT HAVE BEEN ABANDONED**

1.      The Parties have stipulated to the dismissal with prejudice of Counts III and VII of Complaint, D.I. 1, C.A. No. 12-1441, with respect to infringement of U.S. Patent No. 6,446,627.  *See* D.I. 144.

2.      While reserving all rights to challenge on appeal the Court's constructions of the claims of U.S. Patent No. 8,132,712, the Parties have stipulated to a judgment of noninfringment under such constructions with respect to Counts IV and VIII of Complaint, D.I. 1, C.A. No. 12-1441.  *See* D.I. 173.

**SCHEDULE H-2**
**DEFENDANTS' STATEMENT OF WAIVER OF ANY CLAIMS OR DEFENSES**

1.      Defendants submit that Plaintiffs have waived their claim of infringement of the 627 patent by their stipulation to the dismissal of the 627 patent from this litigation (D.I. 140), ordered by the Court on March 12, 2014 (D.I. 144).

2.      Defendants submit that Plaintiffs have waived their claims of infringement of the patents-in-suit by failing to disclose any characterization or analytical test results of the ANDA Product according to the requirements of the Court's construction of the terms "no surfactant" and "substantially free of surfactant" (D.I. 164).

3.      Defendants do not waive any of their claims or defenses.

**SCHEDULE I**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.      Plaintiffs' proposed *Findings of Fact and Conclusions of Law* is included in

**Schedule I-1**.

2.      Defendants' proposed *Findings of Fact and Conclusions of Law* is included in

**Schedule I-2**.

**EXTERNAL COUNSEL ONLY**

**SCHEDULE I-1**
**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**TABLE OF CONTENTS**

Introduction ................................................................................................................1

I.      Background of the Case ..................................................................................3

        A.      The Parties ...........................................................................................3

        B.      The Patents-in-Suit..............................................................................4

        C.      Defendants' ANDA No. 203760...........................................................4

        D.      Commencement of Lawsuit ..................................................................5

        E.      Procedural History of the Case and Claim Construction ...................6

II.     The Patents-in-Suit.........................................................................................7

        A.      U.S. Patent No. 7,105,152...................................................................7

                1.      The Specification ......................................................................8

                2.      The Asserted Claims ...............................................................11

        B.      U.S. Patent No. 7,566,445.................................................................12

                1.      The Specification ....................................................................13

                2.      The Asserted Claims ...............................................................15

III.    Background on Asthma and its Clinical Treatment ......................................17

        A.      Asthma, Chronic Obstructive Pulmonary Disease and Exercise-Induced
                Bronchospasm......................................................................................17

        B.      Treatments for Asthma, Chronic Obstructive Pulmonary Disease and
                Exercise-Induced Bronchospasm........................................................19

IV.     Background of Metered-Dose Inhalers .........................................................20

        A.      Fundamentals of Metered Dose Inhalers ...........................................20

        B.      Prior CFC-Based Systems...................................................................23

        C.      Montreal Protocol ...............................................................................24

        D.      Development of CFC-Free Systems ....................................................24

V.      Background on 3M's Work on Albuterol Sulfate HFA Inhalers and ProAir®
        HFA......................................................................................................................25

        A.      3M's Efforts ........................................................................................25

                1.      3M Pharmaceutical Aerosol Business .....................................25

                2.      The Montreal Protocol and the Alternative Propellant Project at 3M ............26

                3.      CFC Formulations as a Basis for Development ......................26

**EXTERNAL COUNSEL ONLY**

4.      Novel Surfactants.................................................................................27

5.      Invention of the Formulation of the '152 Patent.............................27

B.      ProAir® HFA................................................................................................28

VI.      Level of Ordinary Skill in the Art...........................................................30

U.S. Patent No. 7,105,152................................................................................................31

VII.      Defendants' Infringement of the '152 Patent............................................31

A.      Legal Principles Of Infringement ...............................................................31

B.      Findings of Fact Relating to Defendants' Infringement of the '152 Patent.........32

1.      Defendants Infringe Claims 1-4, 8 and 9 of the '152 Patent ...........................33

a.      The Formulation of Defendants' ANDA Includes Each and Every Limitation of Claim 1 of the '152 Patent...................................33

i.      "A pharmaceutical suspension aerosol formulation" consisting essentially of ...............................................................33

ii.      "particulate drug".................................................................35

iii.      "1,1,1,2-tetrafluoroethane as propellant"...............................35

iv.      "ethanol in an amount of 5 to about 15 percent by weight" ...............35

v.      "wherein the formulation is further characterized in that it contains no surfactant"..........................................................36

1.      ██████████████████████ ████████████████████████ ████████.................................36

2.      █████████████████...........................38

3.      ██████████████████.................39

4.      ███████████████████████ ██████████████████████ ████████████████████.................41

5.      ████████████████████████ ████████████████████████ ████████████████████ ██████████████████ ████████████████.....................42

vi.      ████████████████████████ █████████████████.....................44

b.      The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 2 of the '152 Patent.........45

c.      Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 3 of the '152 Patent...................................46

d.    The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 4 of the '152 Patent .........47

e.    The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 8 of the '152 Patent .........47

f.    The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 9 of the '152 Patent .........48

C.    Conclusions of Law Relating to Defendants' Infringement of the '152 Patent ...................................................................................................48

VIII.    The Asserted Claims of the '152 Patent Are Non-Obvious ...........................52

A.    Legal Principles of Obviousness .........................................................53

B.    Findings of Fact ...................................................................................55

1.    Scope and Content of the Prior Art ...........................................55

a.    Selected Art Relating to Suspension Aerosol Formulations .....................55

i.    Proventil And Ventolin .............................................56

ii.    The Purewal '777 application ...................................57

iii.    The Mullins '533 Patent ...........................................58

iv.    Azmacort ...................................................................59

v.    The Marecki '539 Patent ...........................................60

b.    The Art As a Whole .......................................................60

i.    A POSA Would Have Been Aware of Numerous CFC-Based MDI Products ...............................................61

ii.    A POSA Would Have Been Aware of Numerous Alternatives to CFC Based Propellants ....................................61

iii.    A POSA Would Have Thought Surfactants Were Needed For a Stable Pharmaceutical Suspension Aerosol Formulation ...................64

1.    A POSA Would Recognize That Surfactants Were Accepted As a Necessary Ingredient in CFC-Based Inhalers........65

2.    A POSA Would Have Believed That Surfactants Were Necessary in CFC-Free Inhalers .....................................66

iv.    A POSA Would Not Have Selected Ethanol From 5% to About 15% by Weight As a Component of a Suspension Aerosol Formulation ...................................................70

1.    A POSA Would Have Reason to Investigate Various Additives Beyond Ethanol .............................................70

2.    A POSA Would Not Have Expected to Be Able to Successfully Use Larger Concentrations of Solvents Such As Ethanol in a Suspension Aerosol Formulation ........................71

EXTERNAL COUNSEL ONLY

3.    A POSA Would Have Understood That Solvents Such As
Ethanol Were Used to Solubilize Surfactants ...............................73

4.    A POSA Would Not Have Considered Ethanol a Substitute
for CFC-11 ....................................................................73

v.    A POSA Would Not Have a Reasonable Expectation of
Success in Making a Suspension Aerosol Formulation
Containing Albuterol Sulfate, HFA-134a, 5 to About 15%
Ethanol, but Without Surfactant ..........................................74

1.    A POSA Would Recognize That Drug Dissolution in MDI
Propellants Was Difficult to Determine..........................74

2.    A POSA Would Not Have Expected to Be Able to Directly
Substitute HFAs For CFCs ...............................................75

3.    A POSA Would Not Have Expected to Be Able to Use
Concentrations of Ethanol in the Range of 5% to About
15% w/w to Form Suspension Aerosol Formulations .................76

4.    A POSA Would Not Have Expected to Be Able to
Eliminate Surfactant........................................................76

C.    Conclusions of Law .........................................................78

IX.    Objective Indicia of Non-Obviousness Demonstrate the Validity of the '152
Patent............................................................................82

A.    Findings of Fact ..............................................................82

B.    Conclusions of Law .........................................................85

X.    The Asserted Claims of the '152 Patent Are Not Invalid for Obviousness Type
Double Patenting...............................................................85

A.    Legal Principles of Obviousness-Type Double Patenting .....................85

B.    Findings of Fact ..............................................................87

1.    U.S. Patent No. 5,776,432................................................88

2.    U.S. Patent No. 7,101,534................................................91

3.    U.S. Patent No. 6,352,684................................................93

4.    U.S. Patent No. 5,766,573................................................97

5.    U.S. Patent No. 5,695,743...............................................101

C.    Conclusions of Law ........................................................104

1.    Claims 1-4, 8 and 9 of the '152 Patent Are Patentably Distinct From
Claims 1, 2 and 4 of the '432 Patent....................................105

a.    Defendants Improperly Rely on the Specification of the '432
Patent and the '684 Patent......................................105

EXTERNAL COUNSEL ONLY

2.      Claims 1-4, 8 and 9 of the '152 Patent are Patentably Distinct from Claims 1-3, 5 and 9 of the '534 Patent..........................................................106

      a.      Defendants Improperly Rely on the Specification of the '152 Patent........................................................................................107

3.      Claims 1-4, 8 and 9 of the '152 Patent are Patentably Distinct from Claims 1-3, 5-7 and 10 of the '684 Patent ....................................107

4.      Claims 1-4, 8 and 9 of the '152 Patent are Patentably Distinct from Claims 1-3 of the '573 Patent ........................................................108

5.      Claims 1-4, 8 and 9 of the '152 Patent are Patentably Distinct from Claims 1 and 2 of the '743 Patent..............................................110

      a.      Defendants Improperly Rely on Non-Prior Art Statements by 3M and Others ....................................................................111

XI.      The Asserted Claims of the '152 Patent Are Not Invalid Under 35 U.S.C. § 112..........................................................................................................111

    A.      Legal Principles ................................................................................111

      1.      Written Description................................................................111

      2.      Enablement .............................................................................112

    B.      Findings of Fact ...............................................................................114

    C.      Conclusions of Law .........................................................................119

XII.    Defendants' "Prosecution Irregularities" Challenge Fails .........................121

    A.      Background ........................................................................................121

    B.      Findings of Fact ...............................................................................122

      1.      The '039 Application .............................................................122

      2.      The '603 Application .............................................................125

      3.      The '490 Application .............................................................126

    C.      Conclusions of Law .........................................................................133

      1.      The Second Rule 1.129(a) Submission Was Proper and the Examiner Did Not Err in Accepting It ...............................133

      a.      "Prosecution Irregularities" is Not a Defense to Patent Infringement....................................................................133

      b.      The Second Rule 1.129(a) Submission Was Proper and the Examiner Did Not Err in Accepting It....................133

      c.      The Second Rule 1.129(a) Submission Did Not Improperly Switch Inventions.................................................136

      d.      If Any Switch Occurred, the Examiner Reasonably Exercised Discretion and Properly Examined the '490 Application ......................137

EXTERNAL COUNSEL ONLY

2. The '152 Patent Is Not Effectively Expired.................................140

 a. The Claims Added With the Second Rule 1.129(a) Submission Were Not Moved From the Pre-GATT '603 Application .....................140

 b. The Second Rule 1.129(a) Submission Cannot Be Treated As a CPA....................................................................................................141

U.S. Patent No. 7,566,445.................................................................................144

XIII. Defendants' Infringement of the '445 Patent.............................................144

 A. Findings of Fact Relating to Defendants' Infringement of the '445 Patent.........144

  1. Defendants Infringe Claims 1-20 of the '445 Patent .....................................145

   a. The ANDA Product Includes Each and Every Limitation of Claim 1 of the '445 Patent ................................................................145

    i. "A product suitable for delivering a pharmaceutical aerosol formulation comprising".........................................................145

    ii. "an aerosol canister comprising a container closed with a metering valve".....................................................................146

    iii. "said container comprising a pharmaceutical suspension aerosol formulation" ...........................................................146

    iv. "substantially free of surfactant" ........................................147

    v. "and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane" ................................................................149

    vi. "wherein salbutamol sulfate is "substantially completely insoluble" in the 1,1,1,2-tetrafluoroethane"....................................149

    vii. "an actuator with a spray orifice aperture of from 100 to 300 microns"..............................................................................150

   b. The ANDA Product Includes Each and Every Limitation of Claim 2 of the '445 Patent ................................................................150

    i. "A product suitable for delivering a pharmaceutical aerosol formulation comprising".........................................................151

    ii. "an aerosol canister comprising a container closed with a metering valve".....................................................................151

    iii. "said container comprising a pharmaceutical suspension aerosol formulation" ...........................................................151

    iv. "substantially free of surfactant" ........................................151

    v. "and which consists essentially of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane" ................................................................151

EXTERNAL COUNSEL ONLY

vi.    "wherein salbutamol sulfate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane" ..................................152

vii.    "an actuator with a spray orifice aperture of from 100 to 300 microns"..............................................................................152

c.    The ANDA Product Includes Each and Every Limitation of Claim 3 of the '445 Patent ................................................................152

d.    The ANDA Product Includes Each and Every Limitation of Claim 4 of the '445 Patent ................................................................153

e.    The ANDA Product Includes Each and Every Limitation of Claim 5 of the '445 Patent ................................................................155

f.    The ANDA Product Includes Each and Every Limitation of Claim 6 of the '445 Patent ................................................................156

g.    The ANDA Product Includes Each and Every Limitation of Claim 7 of the '445 Patent ................................................................157

h.    The ANDA Product Includes Each and Every Limitation of Claim 8 of the '445 Patent ................................................................157

i.    Defendants' ANDA Product Includes Each and Every Limitation of Claim 9 of the '445 Patent ................................................................158

j.    Defendants' ANDA Product Includes Each and Every Limitation of Claim 10 of the '445 Patent ................................................................158

k.    Defendants' ANDA Product Includes Each and Every Limitation of Claim 11 of the '445 Patent ................................................................159

i.    "A product suitable for delivering a pharmaceutical aerosol formulation comprising"..........................................................159

ii.    "an aerosol canister comprising a container closed with a metering valve"..........................................................................160

iii.    "said container comprising a pharmaceutical suspension aerosol formulation" ....................................................................160

iv.    "substantially free of surfactant" ....................................................160

v.    "and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane" ..........................................................................160

vi.    "wherein salbutamol sulfate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane" ......................................160

vii.    "an actuator with a spray orifice aperture of from 150 to 250 microns"..............................................................................160

l.    The ANDA Product Includes Each and Every Limitation of Claim 12 of the '445 Patent ................................................................161

EXTERNAL COUNSEL ONLY

m.   The ANDA Product Includes Each and Every Limitation of Claim 13 of the '445 Patent ...................................................................161

n.   Defendants' ANDA Product Includes Each and Every Limitation of Claim 14 of the '445 Patent ..............................................162

o.   Defendants' ANDA Product Includes Each and Every Limitation of Claim 15 of the '445 Patent ..............................................162

p.   Defendants' ANDA Product Includes Each and Every Limitation of Claim 16 of the '445 Patent ..............................................163

   i.   "A product suitable for delivering a pharmaceutical aerosol formulation comprising" ...................................................163

   ii.   "an aerosol canister comprising a container closed with a metering valve" ...................................................................163

   iii.   "said container comprising a pharmaceutical suspension aerosol formulation" ...........................................................163

   iv.   "substantially free of surfactant" ...........................................164

   v.   "and which consists essentially of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane" ..................................................................164

   vi.   "wherein salbutamol sulfate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane" ........................164

   vii.   "an actuator with a spray orifice aperture of from 150 to 250 microns" ................................................................................164

q.   Defendants' ANDA Product Includes Each and Every Limitation of Claim 17 of the '445 Patent ..............................................164

r.   The ANDA Product Includes Each and Every Limitation of Claim 18 of the '445 Patent ...................................................................165

s.   The ANDA Product Includes Each and Every Limitation of Claim 19 of the '445 Patent ...................................................................165

t.   The ANDA Product Includes Each and Every Limitation of Claim 20 of the '445 Patent ...................................................................166

B.   Conclusions of Law Relating to Defendants' Infringement of the '445 Patent ...................................................................................................166

XIV.   The Asserted Claims of the '445 Patent Are Non-Obvious ...........................170

A.   Findings of Fact ..........................................................................................170

1.   Scope and Content of the Prior Art ....................................................170

a.   The '152 Patent Discloses the Use of Conventional MDI Components ...............................................................................170

b.   The Formulation of Airomir Contains a Surfactant ................171

c.     The Formulation of Airomir Is Different Than the '152 Patent ..............172

d.     A POSA Would Not Have Been Motivated to Use a Smaller
       Orifice With the Formulations of the '152 Patent with a
       Reasonable Expectation of Success .......................................................173

e.     A POSA Would Not Have Been Motivated By Common
       Knowledge, the Schultz '201 Patent, or the Sioutas '803 Patent to
       Combine the Formulations of the '152 Patent With Airomir With
       Any Reasonable Expectation of Success ................................................175

       i.     "Common Knowledge of Reasonably-Available Minimum Spray
              Orifice Diameter Products".................................................................175

       ii.    The Schultz '201 Patent ................................................................176

       iii.   The Sioutas '803 Patent ................................................................178

B.     Conclusions of Law ....................................................................................179

   1.     Claims 1-20 of the '445 Patent Are Not Obvious...........................179

       a.     The '152 Patent Discloses the Use of Conventional MDI
              Components ...........................................................................179

       b.     The Formulation of Airomir Contains a Surfactant................................180

       c.     The Formulation of Airomir is Different Than the Formulations
              Disclosed in the '152 Patent .........................................................181

       d.     A POSA Would Not Have Been Motivated to Use a Smaller
              Orifice With the Formulations of the '152 Patent With a
              Reasonable Expectation of Success .........................................181

       e.     A POSA Would Not Be Motivated By Common Knowledge, the
              Schultz '201 Patent, or the Sioutas '803 Patent to Combine the
              Formulations of the '152 Patent with Airomir HFA with a
              Reasonable Expectation of Success .........................................182

       i.     "Common Knowledge of Reasonably-Available Minimum Spray
              Orifice Diameter Products".................................................................182

       ii.    The Schultz '201 Patent ................................................................184

       iii.   The Sioutas '803 Patent ................................................................184

   2.     Claims 1-20 of the '445 Patent Are Not Invalid For Obviousness ...............185

XV.    Objective Indicia of Non-Obviousness Demonstrate the Validity of the '445
       Patent..........................................................................................................186

   A.     Findings of Fact ..........................................................................................186

   B.     Conclusions of Law ....................................................................................187

XVI.   The Asserted Claims of the '445 Patent Are Not Invalid Under 35 U.S.C.
       § 112 For Failure to Satisfy the Written Description and Enablement
       Requirements ..............................................................................................187

**EXTERNAL COUNSEL ONLY**

|  |  |  |  |
|---|---|---|---|
| A. | Findings of Fact | ....................... | 187 |
|  | 1. | Written Description | 187 |
|  | 2. | Enablement | 190 |
| B. | Conclusions of Law | ....................... | 191 |
|  | 1. | Written Description | 191 |
|  | 2. | Enablement | 193 |
| XVII. | The Asserted Claims of the '445 Patent Are Not Invalid for Indefiniteness | | 196 |
| A. | Legal Principles – Definiteness | ....................... | 196 |
| B. | Findings of Fact | ....................... | 197 |
| C. | Conclusions of Law | ....................... | 197 |
| Conclusion | ....................... | | 198 |

**EXTERNAL COUNSEL ONLY**

## TABLE OF AUTHORITIES

Page(s)

CASES

*Acumed LLC v. Stryker Corp.*,
    483 F.3d 800 (Fed. Cir. 2007)..........................................................................31

*Ajinomoto Co. v. Archer-Daniels-Midland Co.*,
    228 F.3d 1338 (Fed. Cir. 2000).......................................................................113

*Alza Corp. v. Mylan Labs., Inc.*,
    464 F.3d 1286 (Fed. Cir. 2006).........................................................................53

*Amgen Inc. v. F. Hoffman-La Roche*,
    580 F.3d 1340 (Fed. Cir. 2009).........................................................................87

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
    598 F.3d 1336 (Fed. Cir. 2010) (en banc).........................................112, 119, 191

*Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*,
    543 F.3d 657 (Fed. Cir. 2008), *cert. denied* 129 S. Ct. 1791 (2009) ....................133

*ATD Corp. v. Lydall, Inc.*,
    159 F.3d 534 (Fed. Cir. 1998).........................................................................54

*Bayer AG v. Elan Pharm. Research Corp.*,
    212 F.3d 1241 (Fed. Cir. 2000).........................................................................49

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*,
    320 F.3d 1339 (Fed. Cir. 2003).........................................................................31

*Broadcom Corp. v. Emulex Corp.*,
    732 F.3d 1325 (Fed. Cir. 2013)........................................................50, 52, 169

*Brown & Williamson Tobacco Corp. v. Phillip Morris, Inc.*,
    229 F.3d 1120 (Fed. Cir. 2000)........................................................55, 85, 187

*Budde v. Harley-Davidson, Inc.*,
    250 F.3d 1369 (Fed. Cir. 2001).........................................................................52

*Cephalon, Inc. v. Watson Pharm., Inc.*,
    707 F.3d 1330 (Fed. Cir. 2013).......................................................................193

*Cordis Corp. v. Medtronic AVE, Inc.*,
    339 F.3d 1352 (Fed. Cir. 2003).......................................................................112

*Crown Operations Int'l, Ltd. v. Solutia Inc.*,
    289 F.3d 1367 (Fed. Cir. 2002).......................................................................120

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
    635 F.3d 1373 (Fed. Cir. 2011).......................................................................112

*Custom-Accessories, Inc. v. Jeffrey-Allan Indus., Inc.*,
    807 F.2d 955 (Fed. Cir. 1986).......................................................................114

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
    851 F.3d 1387 (Fed. Cir. 1988).........................................................................55

EXTERNAL COUNSEL ONLY

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*,
   567 F.3d 1314 (Fed. Cir. 2009) ........................................................................54

*Dickinson v. Zurko*,
   527 U.S. 150 (1999) .........................................................................................133

*Diversitech Corp. v. Century Steps, Inc.*,
   850 F.2d 675 (Fed. Cir. 1988) .........................................................................55

*Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*,
   305 F.3d 1303 (Fed. Cir. 2002) ........................................................................31

*Eisai Co. v. Dr. Reddy's Labs. Ltd.*,
   533 F.3d 1353 (Fed. Cir. 2008) ........................................................................53

*Eli Lilly & Co. v. Barr Labs. Inc.*,
   251 F. 3d 955 (Fed. Cir. 2001) .........................................................................86

*Eli Lilly & Co. v. Sicor Pharms., Inc.*,
   705 F. Supp. 2d 971 (S.D. Ind. 2010) .............................................................183

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
   689 F.3d 1368 (Fed. Cir. 2012) .................................................................. 85-87

*Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*,
   471 F.3d 1369 (Fed. Cir. 2006) ........................................................................55

*Enercon GmbH v. U.S. Int'l Trade Comm'n*,
   151 F.3d 1376 (Fed. Cir. 1998) ........................................................................32

*Exxon Chem. Patents, Inc. v. Lubrizol*,
   64 F.3d 1553 (Fed. Cir. 1995) .........................................................................50

*Falko-Gunter Falkner v. Inglis*,
   448 F.3d 1357 (Fed. Cir. 2006) ......................................................................113

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
   234 F.3d 558 (Fed. Cir. 2000) .........................................................................31

*Gen. Foods Corp. v. Studiengesellschaft Kohle mbH*,
   972 F.2d 1272 (Fed. Cir. 1992) ...........................................................86, 87, 106

*Genentech, Inc. v. Novo Nordisk, A/S*,
   108 F.3d 1361 (Fed. Cir. 1997) ......................................................................114

*Gevo, Inc. v. Butamax Advanced Biofuels LLC*,
   Civ. No. 13-576-SLR, 2013 U.S. Dist. LEXIS 104684 (D. Del. July 26, 2013)..................120

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) .............................................................................................53

*Hewlett-Packard Co. v. Bausch & Lomb Inc.*,
   909 F.2d 1464 (Fed. Cir. 1990) ........................................................................53

*Hybritech Inc. v. Monoclonal Antibodies, Inc.*,
   802 F.2d 1367 (Fed. Cir. 1986) ......................................................................113

EXTERNAL COUNSEL ONLY

*In re Angstadt*,
537 F.2d 498 (C.C.P.A. 1976) ..................................................114

*In re Braat*,
937 F.2d 589 (Fed. Cir. 1991)..............................................86, 87

*In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.*,
676 F.3d 1063 (Fed. Cir. 2012)..................................................54

*In re Hubbell*,
709 F.3d 1140 (Fed. Cir. 2013).................................................86

*In re NTP, Inc.*,
654 F.3d 1279 (Fed. Cir. 2011)..................................................54

*In re Shunpei Yamazaki*,
App. No. 08/386,187, Atty. Docket No. 740756-1193,
2009 WL 873542 (Comm'r Pat. Nov. 6, 2007) ....................134

*In re Vogel*,
422 F.2d 438 (C.C.P.A. 1970) ............................................86, 87

*In re Wands*,
858 F.2d 731 (Fed. Cir. 1988)............................... 112-114, 193

*Juicy Whip, Inc. v. Orange Bang, Inc.*,
292 F.3d 728 (Fed. Cir. 2002)..................................................52

*Koito Mfg. Co. v. Turn-Key-Tech, LLC*,
381 F.3d 1142 (Fed. Cir. 2004).....................112, 113, 119, 191

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007).....................................................................3

*Magnivision, Inc. v. Bonneau Co.*,
115 F.3d 956 (Fed. Cir. 1997).................................................133

*Markman v. Westview Instruments, Inc.*,
52 F.3d 967 (Fed. Cir. 1995) (en banc)....................................31

*Meden v. Curtis*,
1905 C.D. 272, 117 O.G. 1795 (Comm'r Pat. 1905)............140

*Microsoft Corp. v. i4i Ltd. P'ship*,
131 S. Ct. 2238 (2011)...............................................................53

*Monsanto Co. v. Scruggs*,
459 F.3d 1328 (Fed. Cir. 2006).......................................112, 113

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
No. 13-269, 572 U.S. __, slip op. (June 2, 2014). ...............196

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013)................................................55

*N.Y. Univ. v. Autodesk, Inc.*,
495 F. Supp. 2d 369 (S.D.N.Y. 2007)...................................133

**EXTERNAL COUNSEL ONLY**

*Otsuka Pharm. Co. v. Sandoz, Inc.*,
 678 F.3d 1280 (Fed. Cir. 2012)........................................................................87

*PPG Indus., Inc. v. Guardian Indus. Corp*.,
 75 F.3d 1558 (Fed. Cir. 1996); ......................................................................193

*Pozen Inc. v. Par Pharm., Inc.*,
 696 F.3d 1151 (Fed. Cir. 2012)..................................................................48, 167

*Sitrick v. Dreamworks, LLC*,
 516 F.3d 993 (Fed. Cir. 2008)........................................................................114

*Spectralytics, Inc. v. Cordis Corp.*,
 649 F.3d 1336 (Fed. Cir. 2011)........................................................................54

*Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*,
 731 F.3d 1271 (Fed. Cir. 2013) ................................................................ passim

*Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*,
 492 F.3d 1350 (Fed. Cir. 2007)........................................................................54

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
 299 F.3d 1313 (Fed. Cir. 2002)........................................................................31

*United States v. Telectronics, Inc.*,
 857 F.2d 778 (Fed. Cir. 1988)........................................................................113

*Winner Int'l Royalty Corp. v. Wang*,
 202 F.3d 1340 (Fed. Cir. 2000)........................................................................53

**STATUTES**

21 U.S.C. § 355...................................................................................................4

35 U.S.C. § 102......................................................................................... passim

35 U.S.C. § 103......................................................................................... passim

35 U.S.C. § 111...........................................................................130, 131, 142

35 U.S.C. § 112......................................................................................... passim

35 U.S.C. § 121.........................................................................................124, 137

35 U.S.C. § 271...............................................................................48, 166, 167

35 U.S.C. § 282.................................................................................................52

**OTHER AUTHORITIES**

21 C.F.R. § 201.57.....................................................................................50, 168

21 C.F.R. § 201.100...................................................................................50, 69

21 C.F.R. § 314.94.....................................................................................50, 168

37 C.F.R. § 1.33.............................................................................................142

37 C.F.R. § 1.129...................................................................................... passim

**EXTERNAL COUNSEL ONLY**

37 C.F.R. § 1.138 ........................................................................................................ 142

37 C.F.R. § 1.142 ........................................................................................................ 139

56 Fed. Reg. 63951 (Dec. 12, 1994) ........................................................................... 134

**EXTERNAL COUNSEL ONLY**

1.     Plaintiffs Teva Branded Pharmaceutical Products R&D, Inc., Teva Respiratory LLC, Norton Healthcare Limited, and Norton (Waterford) Limited (collectively, "Plaintiffs") submit these Proposed Findings of Fact and Conclusions of Law.

2.     Should the Court determine that any proposed conclusion of law is more properly considered an issue of fact, Plaintiffs incorporate such issues by reference into their proposed findings of fact.  Should the Court determine that any proposed finding of fact is more properly considered an issue of law, Plaintiffs incorporate such issues by reference into their proposed conclusions of law.

3.     Plaintiffs' proposed findings of fact and conclusions of law are based on their current understanding of the arguments Defendants are making in attempting to support their invalidity defenses, as to which Defendants bear the burden of proof by clear and convincing evidence, based upon the pleadings and discovery in the action to date.  To the extent Defendants attempt to introduce different or additional facts and/or legal arguments to meet their burden of proof, Plaintiffs reserve the right to object to and/or contest those facts and/or legal arguments, to present any and all rebuttal evidence in response to those facts and/or legal arguments, and/or to present new legal arguments in response to those facts and/or legal arguments.

## INTRODUCTION

4.     This case is about ProAir® HFA, a metered dose inhaler for the treatment or prevention bronchospasm with reversible obstructive airway disease and for the prevention of exercise-induced bronchospasm made and sold by Plaintiffs.  ProAir® HFA is the largest selling short-acting beta-agonist ("SABA") in the United States, with over fifty-percent of the market.

5.     There should be no real dispute that Defendants infringe U.S. Patent Nos. 7,105,152 ("the '152 patent") and 7,566,445 ("the '445 patent"), as Defendants' ANDA product meets each limitation of the asserted claims, and Defendants never offered a non-infringement

**EXTERNAL COUNSEL ONLY**

position on the asserted claims of the '152 patent and the asserted independent claims of the '445 patent until well after the close of fact discovery in this case.

6.      Defendants' belated non-infringement challenge is that Defendants' proposed generic albuterol sulfate inhalation aerosol does not infringe because ████████████ ████████████████████████████████████████████ ████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████ The evidence shows that Defendants will undoubtedly infringe the asserted claims of the patents-in-suit because ███ ███████████████████████████████████████ ██████████████████. Further, ██████████████████████ ████████████████████████████████████████████; a person of ordinary skill in the art ("POSA") would recognize that ██████████████ ███████████████████████████████████████ ██████████████████████████████; and ██████████████ ████████████████████ confirms infringement.

7.      Perhaps realizing the futility of their non-infringement position, Defendants have asserted a plethora of technical defenses, including obviousness, obviousness-type double patenting, written description, enablement, and indefiniteness.  In addition to their defenses, Defendants have also asserted challenges to the validity of the '152 patent based on so-called "prosecution irregularities," which is not even a proper defense to patent infringement.

8.      In sum, Defendants' infringement of the '152 and '445 patents should not really be disputed, and they will fall far short of proving by clear and convincing evidence that

**EXTERNAL COUNSEL ONLY**

Plaintiffs' asserted claims are invalid.  Accordingly, judgment should be entered in favor of Plaintiffs, and an order should be issued directing that Defendants' ANDA not be approved until the expiration of the patents-in-suit.

**I.      Background of the Case**

**A.      The Parties**

9.      Plaintiff Teva Branded Pharmaceutical Products R&D, Inc. is a Delaware corporation with its principal place of business at 425 Privet Road, Horsham, Pennsylvania 19044.

10.      Plaintiff Teva Respiratory, LLC is a Florida limited liability company with its principal place of business at 425 Privet Road, Horsham, Pennsylvania 19044.

11.      Plaintiff Norton (Waterford) Limited is a private limited company trading as Teva Pharmaceuticals Ireland (Company No. 100363) incorporated under the laws of the Republic of Ireland and having its registered office at Unit 301, IDA Industrial Park, Waterford, Republic of Ireland.

12.      Plaintiff Norton Healthcare Limited is a private limited company trading as Ivax Pharmaceuticals Ireland or Teva Pharmaceuticals Ireland (Company No. 0947980) incorporated under the laws of England and having its registered office at Ridings Point, Whistler Drive, Castleford, West Yorkshire, WF10 5HX.

13.      Defendant Perrigo Co. is a Michigan corporation having its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010.

14.      Defendant Perrigo Pharmaceuticals Co. is a Michigan corporation having its principal place of business at 515 Eastern Avenue, Allegan, Michigan 49010.

15.      Defendant Perrigo Pharmaceuticals Co. is a wholly owned subsidiary of Perrigo Co.

**EXTERNAL COUNSEL ONLY**

16.     Defendant Perrigo Pharmaceuticals Co. is registered in Delaware, pursuant to 24 Del. C. § 2540, as a licensed "Pharmacy – Wholesale" (License Nos. A4-0001254 and A4-0001316).

17.     Defendant Catalent Pharma Solutions, LLC is a Delaware limited liability company with its principal place of  business at 14 Schoolhouse Road, Somerset, New Jersey 08873.

**B.      The Patents-in-Suit**

18.     The patents-in-suit are U.S. Patent Nos. 7,105,152 ("the '152 patent") and 7,566,445 ("the '445 patent").

19.     The asserted claims are claims 1-4, 8 and 9 of the '152 patent and claims 1-20 of the '445 patent.

**C.      Defendants' ANDA No. 203760**

20.     ████████████████████, Defendants filed ANDA No. 203760 ("Defendants' ANDA") with the U.S. Food and Drug Administration ("FDA") seeking approval to engage in the commercial manufacture, use, offer for sale or sale within the United States, or importation into the United States, of a generic albuterol sulfate inhalation aerosol, 0.09 mg per actuation ("the ANDA Product").

21.     Defendants' also filed with the FDA a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) (a "Paragraph IV certification") alleging that the claims of the '445 and '152 patents are invalid, unenforceable and/or would not be infringed by the manufacture, use, importation, sale or offer for sale of the ANDA Product.

22.     By letter received by Plaintiffs on or about July 25, 2012, Defendants sent notice to Plaintiffs of ANDA No. 203760.



EXTERNAL COUNSEL ONLY

23.    ██████████████████████████████████

████████████████████████████████████████████████

████    Defendants also notified Plaintiffs of their inclusion in that amendment of a Paragraph

IV certification, alleging again that the claims of the '152 and '445 patents are invalid,

unenforceable, and/or not infringed by the ANDA product.[1]

24.    By letter received by Plaintiffs on or about July 8, 2013, Defendants sent notice to

Plaintiffs of the amendment to ANDA No. 203760 ████████████████████████████

███████████████████████.

25.    The ANDA Product is intended to be a generic version of the ProAir® HFA

product described in NDA No. 21-457.

**D.    Commencement of Lawsuit**

26.    Within forty-five days of receiving Defendants' July 25, 2012 notice letter,

Plaintiffs filed suit against Defendants (Civil Action No. 1:12-cv-01101-GMS, D.I. 1) asserting

infringement of the '152 and '445 patents.

27.    Defendants answered the complaint on November 5, 2012, pleading affirmative

defenses of noninfringement, invalidity and unenforceability and declaratory judgment

counterclaims.

28.    Plaintiffs answered those counterclaims on November 29, 2012.

29.    Within forty-five days of receiving Defendants' July 3, 2013 notice letter,

Plaintiffs filed suit against Defendants (Civil Action No. 1:13-cv-01441-GMS, D.I. 1) asserting

---

[1] Defendants also alleged that two other Orange Book patents, U.S. Patent Nos. 8,132,712 and 6,446,627 were invalid, unenforceable, or would not be infringed.  These patents are no longer subject to this litigation pursuant to stipulation by the parties, described in paragraphs 36 and 40 below.

**EXTERNAL COUNSEL ONLY**

infringement of the '152 patent, the '445 patent, U.S. Patent No. 6,446,627 ("the '627 patent") and U.S. Patent No. 8,132,712 ("the '712 patent").

30.      Defendants answered the complaint on August 21, 2013, pleading affirmative defenses of noninfringement, invalidity and unenforceability and asserting declaratory judgment counterclaims.

31.      Plaintiffs answered those counterclaims on September 16, 2013.

32.      On September 12, 2013, the Court granted Defendants' Motion to Consolidate Civil Action No. 1:12-cv-01101-GMS with Civil Action No. 1:13-cv-01441-GMS.

**E.    Procedural History of the Case and Claim Construction**

33.      Plaintiffs and Defendants submitted claim construction briefing in November and December of 2013.

34.      The parties agreed to a joint proposed construction of the following terms in the '152 patent:

| Term | Joint Proposed Construction |
|------|------------------------------|
| "pharmaceutical suspension aerosol formulation" | "A drug formulation in which the drug is in particulate form and is substantially insoluble in the propellant" |
| "micronized" | "micronized, *i.e.*, about 90 percent or more of the particles have a diameter of less than about 10 microns" |

35.      A claim construction hearing was held on December 12, 2013.

36.      On February 26, 2014, the parties stipulated to the removal of the '627 patent from this litigation. The Court ordered dismissal of all claims and counterclaims regarding the '627 patent, without prejudice, on March 12, 2014.

37.      The Court entered a claim construction order on May 12, 2014.

38.      The Court construed the disputed claim term in the '152 patent as follows: "no surfactant" is given its plain and ordinary meaning.

EXTERNAL COUNSEL ONLY

39.    The Court construed the disputed claim terms in the '445 patent as follows:

| Term | Construction |
|------|-------------|
| "pharmaceutical suspension aerosol formulation" | "[a] drug formulation in which the drug is in particulate form and substantially insoluble in the propellant" |
| "substantially free of surfactant" | "any surface active agent, if present, is not present in an amount sufficient to have an effect on the physical properties of the formulation" |
| "substantially completely insoluble" | plain and ordinary meaning |
| "in the amount of 11.4% w/w" | "in the amount of 11.4% w/w" |
| "in the amount of 0.4% w/w" | "in the amount of 0.4% w/w" |
| "in the amount of 88.2% w/w" | "in the amount of 88.2% w/w" |

40.    On May 28, 2014 the parties stipulated to judgment of noninfringement of the '712 patent under the Court's claim construction, while reserving all rights to challenge such constructions on appeal.  The Court entered the stipulation on June 2, 2014.

II.    **The Patents-in-Suit**

A.    **U.S. Patent No. 7,105,152**

41.    The '152 patent, titled "Suspension Aerosol Formulations," issued on September 12, 2006, from U.S. Patent Application No. 08/445,490 filed on May 31, 1995 and expires on September 12, 2023.

42.    The named inventors of the '152 patent are Robert K. Schulz, David W. Schultz, and Robert A. Moris; the assignee on the face of the patent is 3M Innovative Properties Company ("3M").

43.    The '152 patent is a division of U.S. Patent Application No. 07/878,039, filed on May 4, 1992, now abandoned, which is a continuation-in-part of U.S. Patent Application No. 07/819,401, filed on December 18, 1991, now abandoned, and U.S. Patent Application No. 07/809,791, filed on December 18, 1991, now abandoned.

**EXTERNAL COUNSEL ONLY**

44.     By an agreement dated September 4, 2012, 3M assigned all right, title and interest in the '152 patent to Norton (Waterford) Limited. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████

45.     Plaintiffs Norton (Waterford) Limited, Teva Respiratory, LLC and Teva Branded Pharmaceutical Products R&D, Inc. have standing to bring this suit.

**1.     The Specification**

46.     The '152 patent is directed to suspension aerosol formulations consisting essentially of drug, 1,1,1,2-tetrafluroethane ("HFA-134a" or "HFC 134a") as propellant, and ethanol in amount of 5 to about 15% percent by weight, wherein the formulation is further characterized in that it contains no surfactant. JTX 1 at PER(Albu)012704 (16:15-21).

47.     The patent specification states that the term "suspension aerosol formulation" refers to a "formulation in which the drug is in particulate form and is substantially insoluble in the propellant." JTX 1 at PER(Albu)012698 (3:30-32).

48.     The patent specification describes that the "[t]he formulations of the invention contain a drug in a therapeutically effective amount, that is, an amount such that the drug can be administered as an aerosol (*e.g.*, topically or by oral or nasal inhalation) and cause its desired therapeutic effect with one dose, or less preferably several doses, from a conventional valve, *e.g.*, a metered dose valve." JTX 1 at PER(Albu)012698 (3:44-49).

49.     The patent specification describes that

> [t]he amount of a drug that constitutes a therapeutically effective
> amount varies according to factors such as the potency, efficacy,
> and the like, of the particular drug, on the route of administration
> of the formulation, and on the device used to administer the
> formulation. A therapeutically effective amount of a particular

**EXTERNAL COUNSEL ONLY**

> drug can be selected by those of ordinary skill in the art with due
> consideration of such factors. Particularly in formulations of the
> invention intended for oral inhalation into the lungs, the drug is
> preferably micronized, i.e., about 90 percent or more of the
> particles have a diameter of less than about 10 microns, in order to
> assure that the particles can be inhaled into the lungs.

JTX 1 at PER(Albu)012698 (3:51-63).

50. According to the patent specification the propellant can be "HFC 134a, HFC 227, or a mixture thereof in any proportion." JTX 1 at PER(Albu)012698 (4:45-46). However, "[t]he density of HFC 134a differs from the density of HFC 227." *Id.* at 4:48-49. "Therefore the density of the propellant can be adjusted within limits by using mixtures of HFC 134a and HFC 227 in order to accommodate the density of the drug." *Id.* at 4:49-52. Also, "[i]t is sometimes preferred that the propellant be selected such that the propellant density is as closely matched as possible to the drug density in order to minimize tendencies for the drug to settle or cream, particularly when drug concentration is greater than 0.1 percent or when the drug concentration is between about 0.1 percent and about 0.5 percent." *Id.* at 4:52-58.

51. The patent specification states the following with respect to formulations containing pirbuterol acetate:

> The pirbuterol acetate formulations of the invention contain a
> therapeutically effective amount of pirbuterol acetate. Preferably,
> the pirbuterol acetate constitutes about 0.4 to about 1.0 percent by
> weight, more preferably about 0.45 to about 0.9 percent by weight,
> of the aerosol formulation. Preferably the pirbuterol acetate is
> micronized.
>
> Ethanol can optionally be included in a pirbuterol acetate aerosol
> formulation of the invention. When ethanol is present it
> constitutes from about 0.1 to about 12 percent by weight,
> preferably from about 5 to about 12 percent by weight of the
> aerosol formulation. In another aspect of this invention ethanol
> preferably constitutes from about 2 to about 8 percent by weight of
> the formulation. Oleic acid can optionally be included in a
> pirbuterol acetate formulation of the invention that includes

EXTERNAL COUNSEL ONLY

ethanol.  When oleic acid is present it constitutes about 0.01 to
about 0.5 percent by weight of the formulation.

Typically the propellant constitutes the remainder of the weight of
the formulation once the pirbuterol acetate and the optional ethanol
and oleic acid are accounted for.

. . . .

Preferred pirbuterol acetate formulations of the invention exhibit
substantially no growth in particle size or change in crystal
morphology of the pirbuterol acetate over a prolonged period, are
substantially and readily redispersible, and upon redispersion do
not flocculate so quickly as to prevent reproducible dosing of
pirbuterol acetate.

JTX 1 at PER(Albu)012698-699 (4:59-5:26).

52.    The patent specification states the following with respect to formulations

containing albuterol sulfate:

The albuterol sulfate formulations of the invention contain a
therapeutically effective amount of micronized albuterol sulfate.
Preferably micronized albuterol sulfate constitutes about 0.2 to
about 0.5 percent by weight, more preferably from about 0.35 to
about 0.42 percent by weight of the aerosol formulation.

Ethanol can optionally be included in such an albuterol sulfate
formulation of the invention.  When ethanol is present it
constitutes from about 0.1 to about 20 percent by weight,
preferably from about 5 to about 15 percent by weight of the
formulation.  A surfactant selected from the group consisting of
oleic acid and sorbitan trioleate can also optionally be included in
the formulation when the formulation also includes ethanol.  When
a surfactant is present it constitutes about 0.01 to about 0.5 percent
by weight of the aerosol formulation.  Albuterol sulfate
formulations of the invention that do not contain ethanol are
preferably substantially free of perfluorinated surfactant.

Certain preferred albuterol sulfate suspension aerosol formulations
of the invention comprise HFC 227 as substantially the only
propellant.  Typically the propellant constitutes the remainder of
the weight of the formulation once the albuterol sulfate and the
optional surfactant and/or ethanol are accounted for.  Accordingly
the propellant is generally present in an amount of at least about 75
percent by weight based on the total weight of the formulation.

Preferred albuterol sulfate formulations of the invention exhibit
substantially no growth in particle size or change in crystal

EXTERNAL COUNSEL ONLY

> morphology of the albuterol sulfate over a prolonged period, are substantially and readily redispersible, and upon redispersion do not flocculate so quickly as to prevent reproducible dosing of albuterol sulfate.
>
> . . . .
>
> The albuterol sulfate suspension aerosol formulations of this invention can be prepared by combining the albuterol sulfate and the propellant and dispersing the albuterol sulfate in the propellant using a conventional mixer or homogenizer.  When a surfactant and/or ethanol are included in the formulation, they can be added to the propellant along with the albuterol sulfate.

JTX 1 at PER(Albu)012699 (5:27-6:20).

53.     The patent specification states that "conventional valves, preferably metered dose valves" can be used to deliver the claimed formulations.  JTX 1 at PER(Albu)012699 (6:21-23). The specification notes that while "conventional CFC formulations generally contain a surfactant in part as a lubricant for the valve stem," some formulations of the invention "do not contain a surfactant or lubricant."  *Id*. at 6:33-36.

54.     The patent specification further notes that "conventional aerosol canisters . . . can be used to contain a formulation of the invention."  *Id*. at (6:52-54).

55.     The written description of the '152 patent then proceeds to describe a number of inventive formulations and testing on the same in seventeen examples.  *Id.* at 700-704 (7:1-16:13).

## 2.     The Asserted Claims

56.     Claims 1-4, 8 and 9 of the '152 patent read:

> 1. A pharmaceutical suspension aerosol formulation consisting essentially of:
>     (i) particulate drug;
>     (ii) 1,1,1,2-tetrafluoroethane as propellant; and
>     (iii) ethanol in an amount of 5 to about 15 percent by weight, wherein the formulation is further characterized in that it contains no surfactant.

**EXTERNAL COUNSEL ONLY**

2. The pharmaceutical suspension aerosol formulation of claim 1, wherein the drug is micronized.

3. An aerosol canister equipped with a metering valve, containing a formulation according to claim 1 in an amount sufficient to provide a plurality of therapeutically effective doses of the drug.

4. The pharmaceutical suspension aerosol formulation of claim 1, wherein the particulate drug is selected from the group consisting of formoterol, salmeterol, beclomethasone dipropionate, cromolyn, pirbuterol, albuterol, and pharmaceutically acceptable salts or solvates thereof.

8. The pharmaceutical suspension aerosol formulation of claim 4, wherein the particulate drug is albuterol or a pharmaceutically acceptable salt or solvate thereof.

9. The pharmaceutical suspension aerosol formulation of claim 8, wherein the particulate drug is albuterol sulfate.

JTX 1 at PER(Albu)012704 (16:15-33, 41-46).

**B.     U.S. Patent No. 7,566,445**

57.     The '445 patent is titled "Medicinal Aerosols and Methods of Delivery Thereof" and issued on July 28, 2009 from U.S. Patent Application No. 08/999,752 filed on June 4, 1997 and expires on June 4, 2017.

58.     The inventor of the '445 patent is Fiona Catherine Millar (deceased); the assignee on the face of the patent is Norton Healthcare Limited.

59.     The '445 patent claims priority to U.K. Application No. G.B. 9616237.5 filed, August 1, 1996.

60.     ███████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████

61.     Plaintiffs Norton (Waterford) Limited, Teva Respiratory, LLC and Teva Branded Pharmaceutical Products R&D, Inc. have standing to bring this suit.

I-1-12

EXTERNAL COUNSEL ONLY

1.    **The Specification**

62.    The '445 patent describes a product suitable for delivering a pharmaceutical

aerosol formulation.  JTX 3 at PER(Albu)012711 (3:66-67).

63.    The '445 patent is directed to "a medicinal aerosol formulation comprising a

particulate medicament, a fluorocarbon propellant and 6% to 25% w/w of the total formulation

of a polar co-solvent, such formulation being substantially free of surfactant."  *Id*. at 1:51-55.

64.    The specification reveals that

> [i]t has now been surprisingly found that higher levels of alcohol
> have beneficial results.  Levels of 6% or more of ethanol produce
> satisfactory suspensions, which do not agglomerate on standing,
> and on reshaking produce finely dispersed medicament.  It is
> believed that the higher levels of alcohol reduce the degree of
> deposition on the inside of the can.  This is a very desirable
> feature.  In addition, the use of these larger percentages of ethanol
> enables a much cheaper production process.

*Id*. at (2:3-11).

65.    The specification discusses two manufacturing techniques:  "one dose of liquid

containing all of the ingredients mixed together or by a two dose process where the first dose

contains the medicament and all other ingredients . . . followed by a second dose of pure

propellant."  JTX 3 at PER(Albu)012710 (2:12-18).  The formulations of the '445 patent enable

a "first mix of just medicament suspended in co-solvent . . . followed by a second dose of pure

propellant."  *Id*. at 2:25-28.  "This means that the propellant can be dosed directly from a holding

tank into the can without any need to mix and store with the other ingredients" which "has major

cost advantages."  *Id*. at 2:18-30.

66.    The patent specification states that "[m]edicaments which may be administered in

aerosol formulations according to the invention include any drug useful in inhalation therapy

which may be presented in a form which is substantially completely insoluble in the selected

**EXTERNAL COUNSEL ONLY**

propellant." JTX 3 at PER(Albu)012710 (2:47-51). The specification further states that the preferred drugs are compounds "which are also substantially insoluble in the co-solvent." *Id.* at (3:9-12). The specification then goes on to state that albuterol sulfate is an especially preferred medicament. *Id.* Concerning ethanol, the specification states that "[l]evels of co-solvent will be between 6% and 25% w/w of the total canister content, preferably between 10-15% w/w of canister content." *Id.* at (3:15-17).

67.     The patent specification states that the product may preferentially be produced by "weighing the active medicament and suspending it in the co-solvent," followed by the addition of an "appropriate amount of this suspension" into the canister, and followed by "a second dose of propellant." *Id.* at (3:22-27).

68.     The patent specification states that "normal medicinal product[s] on the market [have] an actuator with spray orifice diameter[s] of about 480 microns." *Id.* at (3:28-29). The specification states, however, "with the larger percentages of ethanol envisaged in this invention, it is desirable that the co-solvent evaporates from the particles as rapidly as possible." *Id.* at 3:29-32. The patent specification discloses that this can be achieved by "reducing the aperture to between 100-300 microns, which for the same dosage of drug, gives more rapid evaporation of the co-solvent." *Id.* at 3:33-35.

69.     The patent specification states that a particularly preferred embodiment "is a combination of a level 10-15% co-solvent (normally ethanol) with a stem aperture of 150-250 microns." *Id.* at PER(Albu)012711 (3:35-38).

70.     The patent specification provides an example formulation containing 0.03 grams albuterol sulfate, 0.97 grams ethanol, and 7.5 grams HFA-134a. JTX 3 at PER(Albu)012711 (3:45-50). The specification describes how the albuterol sulfate is first micronized and then

**EXTERNAL COUNSEL ONLY**

added to the ethanol. *Id.* at 3:51-53. The albuterol sulfate and ethanol is mixed until the mixture is smooth and uniform, and the resulting mixture is filled into the aerosol canisters. *Id.* at 3:53-54. Next the metering valve assembly was crimped on the canister and then the HFA-134a was filled through the valve. *Id.* at 3:55-57. The specification states that the "valve capacity is such as to deliver 100 micrograms of [albuterol], as [albuterol] sulphate per actuation." *Id.* at 3:57-59.

### 2.    The Asserted Claims

71.    Claims 1-20 of the '445 patent read:

> 1. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising a pharmaceutical suspension aerosol formulation substantially free of surfactant, and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein salbutamol sulphate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 100 to 300 microns.

> 2. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising a pharmaceutical suspension aerosol formulation substantially free of surfactant, and which consists essentially of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein the salbutamol sulphate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 100 to 300 microns.

> 3. The product of claim 1, wherein the aerosol formulation contains ethanol in the amount of 11.4% w/w.

> 4. The product of claim 1, wherein the aerosol formulation contains salbutamol sulfate in the amount of 0.4% w/w.

> 5. The product of claim 1, wherein the aerosol formulation contains 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

> 6. The product of claim 1, wherein the aerosol formulation contains salbutamol sulphate in the amount of 0.4% w/w, ethanol in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

**EXTERNAL COUNSEL ONLY**

7. The product of claim 2, wherein the aerosol formulation contains ethanol in the amount of 11.4% w/w.

8. The product of claim 2, wherein the aerosol formulation contains salbutamol sulfate in the amount of 0.4% w/w.

9. The product of claim 2, wherein the aerosol formulation contains 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

10. The product of claim 2, wherein the aerosol formulation contains salbutamol sulphate in the amount of 0.4% w/w, ethanol in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

11. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising a pharmaceutical suspension aerosol formulation substantially free of surfactant, and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein salbutamol sulphate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 150 to 250 microns.

12. The product of claim 11, wherein the aerosol formulation contains ethanol in the amount of 11.4% w/w.

13. The product of claim 11, wherein the aerosol formulation contains salbutamol sulfate in the amount of 0.4% w/w.

14. The product of claim 11, wherein the aerosol formulation contains 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

15. The product of claim 11, wherein the aerosol formulation contains salbutamol sulphate in the amount of 0.4% w/w, ethanol in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

16. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising a pharmaceutical suspension aerosol formulation substantially free of surfactant, and which consists essentially of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein the salbutamol sulphate is substantially completely insoluble in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 150 to 250 microns.

17. The product of claim 16, wherein the aerosol formulation contains ethanol in the amount of 11.4% w/w.

18. The product of claim 16, wherein the aerosol formulation
contains salbutamol sulfate in the amount of 0.4% w/w.

19. The product of claim 16, wherein the aerosol formulation
contains 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w.

20. The product of claim 16, wherein the aerosol formulation
contains salbutamol sulphate in the amount of 0.4% w/w, ethanol
in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the
amount of 88.2% w/w.

JTX 3 at PER(Albu)012711-712 (3:65-6:11).

## III.    Background on Asthma and its Clinical Treatment

### A.    Asthma, Chronic Obstructive Pulmonary Disease and Exercise-Induced Bronchospasm

72.    Asthma, chronic obstructive pulmonary disease ("COPD") and exercise-induced

bronchospasm ("EIB") affect over thirty-eight million Americans today.

73.    Asthma is an inflammatory disease of the bronchi, or airways.  *See* PTX 510 at

TEV_0920025-026.  Asthma is typically considered to be a genetic disease: individuals are born

with an over-sensitivity of their airways and various triggers, such as exercise, cold air, and viral

infections, cause the symptoms of asthma to arise.  *Id.*  Regardless of the trigger, the result is

inflammation of the airways of the lungs.  *Id.* at 028.

74.    Clinically, asthma is primarily characterized by four symptoms: cough, wheezing,

shortness of breath and chest tightness.  *Id.* at 028.  The patient coughs as a result of the

thickened mucus layer; the bronchospasm causes a feeling of chest tightness; and the narrowed

airways causes shortness of breath and wheezing.  *Id.*

75.    Asthma can be a life-threatening disease.  Patients with asthma often have attacks

of various durations that impede their ability to experience normal respiratory function.  Asthma

can be particularly serious for patients who present with co-morbidities such as cardiovascular

disease or other chronic lung disease.  PTX 270 at TEV_0920498.  In severe cases, asthma can

**EXTERNAL COUNSEL ONLY**

have a fatal outcome.  *Id.*  In 2010 alone, more than 3,400 Americans died from asthma.  *Id.* at

TEV_0920488.

76.    While a control medication, often a corticosteroid, is used to manage asthma on a

daily basis, a bronchodilator is required as an emergency or rescue medication to treat symptoms

during an asthma attack.  PTX 510 at TEV_0920026.  Bronchodilators stimulate beta-receptors

in the cells of the smooth muscles of the airways, which relieves the constriction in the smooth

muscles and re-opens the airways.  *Id.* at 071-072.

77.    Successful treatment of asthma remains a challenge.  PTX 441 at TEV_0920895.

Healthcare providers have to teach patients how to self-manage their asthma, but often patients

have difficulties adhering to treatment plans.  Even with this instruction by healthcare providers,

patients and parents of patients continue to experience difficulties administering treatment

properly.

78.    COPD is a preventable and treatable disease, oftentimes characterized by

progressive and persistent airflow limitations associated with an enhanced chronic inflammatory

response in the airways and the lung, triggered by noxious particles or gases such as cigarette

smoke.  PTX 333 at TEV_0920651.  COPD often encompasses two conditions: (1) emphysema,

the destruction of the tissue of the alveoli, which are hollow cavities in the lung; and (2) chronic

bronchitis, inflammation of the airways and mucus production.  *Id.*  The bronchospasm in COPD

is also treated by bronchodilators like those used for the treatment of asthma.  *See id.* at 670.

79.    EIB is a bronchospastic airway reaction triggered by loss of heat, water or both

from the lung during exercise.  PTX 510 at TEV_0920113.  The loss of heat and water is caused

by the hyperventilation of air that is cooler and dryer than the air in the lung.  *Id.*  It is seen in

most patients with asthma, as well as some individuals who do not have persistent asthma.  *Id.*

**EXTERNAL COUNSEL ONLY**

The symptoms that one experiences with EIB include cough, shortness of breath, chest tightness,

wheezing and endurance problems triggered by exercise. *Id.* Bronchodilators are used to

prevent EIB before exercise, or to treat any bronchospasm that may occur during or following

exercise or other strenuous activities. *Id.* at 114.

> **B.    Treatments for Asthma, Chronic Obstructive Pulmonary Disease and
> Exercise-Induced Bronchospasm**

80.    The treatment of asthma, COPD and EIB has evolved significantly over the past

six decades. *See* PTX 258 at TEV_0920416. Early treatment focused on using bronchodilators

exclusively to treat symptoms only as they arose during an exacerbation. Early bronchodilator

treatments included injections of epinephrine, as well as inhaled non-specific beta-adrenergic

agents which resulted in side effects similar to epinephrine. JTX 39 at TEV_0921173. These

treatments were considered complicated and problematic because they commonly had to be

administered by medical professionals, were not very effective, had short duration of action, and

presented substantial side effects. *See id.* at 173-174, 178-179. The side effects of epinephrine

were particularly worrisome because epinephrine activated not just the beta-2 receptor, but also

the beta-1 receptor, which affects the heart and blood pressure. *See id.* Severe cardiovascular

side effects were therefore experienced in patients during and after treatment.

81.    With research leading to a better understanding of the disease process in

respiratory conditions, it was recognized that the inflammatory aspect of asthma and COPD

needed to be addressed. PTX 259 at TEV_0920398. As a result, newer treatment plans focused

not just on treating symptoms during attacks, but also on controller treatments such as inhaled

corticosteroids to be used as daily preventative measures. *Id.* at 398-399. While controller

treatments became the basis of treatment plans, inhaled bronchodilators still remained necessary

EXTERNAL COUNSEL ONLY

for treatment of asthma attacks characterized by acute episodes of bronchospasm.  PTX 510 at TEV_0920026.

82.    While various types of oral and inhaled bronchodilators have been developed over the years, inhaled SABAs were and remain the best treatment for immediate relief of the symptoms of asthma and COPD, and also to prevent EIB.  *Id.* at 071-072.  SABAs are a class of drug that reverse bronchospasm by stimulating the beta-adrenergic receptors on the smooth muscles of the bronchial walls, which relieves bronchospasm of the smooth muscles, thereby opening the airways.  *Id.*  SABAs work within minutes, and relieve bronchospasm for up to four to six hours.  *Id.*

83.    Albuterol is a SABA that became available in the early 1970s.  It specifically targets only the beta-2 receptors of the lungs, and was first approved by the FDA in the United States in 1981.  PTX 259 at TEV_0920398; PTX 277 at TEV_0920536.  Albuterol is now the most widely prescribed SABA.  *See* PTX 277 at TEV_0920535.

84.    The use of metered dose inhalers ("MDIs") revolutionized asthma treatment by allowing patients to receive their treatment from an easy-to-carry portable device.  *See* PTX 425 at TEV_0920878; PTX 272 at TEV_0920505-506.  Prior to MDI usage, patients mainly received treatment in the form of an injection or pill, or from a large nebulizer.  *See* PTX 272 at TEV_0920505-506.

## IV.    Background of Metered-Dose Inhalers

### A.    Fundamentals of Metered Dose Inhalers

85.    Pressurized MDIs are devices that are designed to deliver drugs to the lungs by metering a specific volume of a liquid aerosol formulation when actuated.  *See generally* PTX 449 at TEV_0921086-100.  First developed in the 1950s, MDIs quickly became the inhaler device of choice for oral inhalation therapy.  *Id.* at 086.

I-1-20

EXTERNAL COUNSEL ONLY

86.    Figure 1 contains a diagram of a typical MDI, which consists of an actuator body, and a canister with a dose metering valve.  An MDI is designed to deliver a number or plurality of doses (usually about 200) over time.  *See also id.* at 087.  Because MDIs are often used to deliver rescue medications in small quantities (*e.g*., approximately 100 µg), it is critical that the MDI delivers the same amount of drug in each actuation for the life of the product.  A major challenge in the development of an MDI, therefore, is developing a formulation and actuator that will provide the same concentration of drug for each of the 200 actuations.

87.    The actuator body contains a nozzle, a mount for the valve stem of the metering valve, and an expansion chamber between the nozzle and the valve stem.  The expansion chamber allows the aerosol formulation to expand before it exits as an aerosol from the nozzle. The canister contains the pressurized drug formulation as a liquid, and is sealed at one end with a dose metering valve.



**Figure 1**

88.    In a typical MDI, the dose metering valve dispenses a specific volume of drug-containing formulation each time the inhaler is actuated.  PTX 449 at TEV_0921092.  The drug

**EXTERNAL COUNSEL ONLY**

formulation contains a propellant, drug, and potentially other excipients at a pressure of several atmospheres.  Upon actuating the device, the metering chamber is opened to the atmosphere and closed to the formulation in the container.  *Id.* at 093-094.  The formulation from the metering chamber then exits the nozzle in the form of a spray as the pressure in the chamber, valve stem, and expansion chamber falls to atmospheric pressure.  *Id.*  The propellant, which has a high vapor pressure and low boiling point, propels the formulation from the nozzle, forming a spray consisting of an aerosolized plume of droplets and particles that shrink rapidly as the propellant evaporates.  *Id.*  This plume can then be inhaled by a patient.

89.     Several factors are critical to the performance of MDIs.  *See id.* at 087.  For example, physically, the design of the actuator spray orifice affects the size of the droplets produced, the rate of droplet production, and the exit velocity of the plume, all of which impact where the drug is deposited in the patient's lungs, mouth, and throat.  *See id.* at 098; *see also* PTX 265 at TEV_0920443-445.  If these parameters are not optimal, the drug may fail to reach the lungs rendering the product ineffective.  Additionally, the design of the canister and valve closure system can impact the stability of the formulation and the product's effectiveness.  *See* PTX 265 at TEV_0920451; PTX 449 at TEV_0921091-092.

90.     The liquid formulation in the canister is a complex system that must be chemically and physically stable (*e.g.*, homogenous) in order to be efficacious as a pharmaceutical product.  *See* PTX 265 at TEV_0920460-461.  Pressurized MDI formulations in liquid propellants can be either solutions or suspensions.  PTX 449 at TEV_0921088.  Solution formulations contain dissolved drug and suspension formulations contain a particulate drug suspended in the liquid formulation.  *Id.*  In suspension formulations, the drug should not rapidly flocculate, which is a term used to describe the agglomeration or aggregation of suspended

EXTERNAL COUNSEL ONLY

particles.  Flocculation accelerates creaming (floating of the aggregated particles) or

sedimentation (sinking of aggregated particles), both of which negatively impact the

performance of MDIs.  *See id.* at 088.  While creaming may lead to less drug in the plume, and

sedimentation may lead to more drug in the plume or clogging of the nozzle in the actuator, both

lead to non-reproducible dosing.

### B.    Prior CFC-Based Systems

91.    From the 1950s until the early 1990s, pressurized MDI formulations employed

chlorofluorocarbons ("CFCs"), or blends of CFCs, as propellants.  Suspension CFC-based

formulations typically utilized, among other possible components, a micronized particulate drug,

multiple CFCs and surfactants.  *See* PTX 265 at TEV_0920460-463.  Surfactants, when

successfully used, were dissolved in the propellants and enabled maintenance of drug suspension

as well as valve lubrication.  PTX 449 at TEV_0921088.

92.    During this time period, designing a stable CFC-based suspension MDI

formulation was an empirical process.  Selection of the drug form and concentration, the density

of the formulation and its components, the boiling point and vapor pressure of the constituents in

the formulation, the presence or lack of co-solvents or co-propellants, the solvency of the

constituents in the formulation, and the presence of other adjuvants or excipients, *e.g.*,

surfactants, all impacted the final product and its performance.  *See* PTX 265 at

TEV_0920460-463.  The combination of all of these factors with the physical characteristics of

the actuator body, including the spray orifice aperture, affected the efficacy of the final product.

93.    By the 1970s, there were a series of formulations and constituents that were

known to generally yield satisfactory products.  However, a person of ordinary skill in the art did

not understand the interactions among the constituents, *e.g.*, the way that an effective surfactant

interacted with the suspended drug or canister-closure system, or the reasons those formulations

proved to be successful.

### C.    Montreal Protocol

94.    While CFCs had beneficial properties for developing MDI formulations, they also

had the drawback of depleting stratospheric ozone.  In 1988, the United States signed onto the

Montreal Protocol on Substances that Deplete the Ozone Layer ("Montreal Protocol"), which

instituted a phase-out of CFC use.  *See* PTX 449 at TEV_0921089; PTX 325 at 13, 44, 48.  This

phase out of CFCs created a need for new, non-CFC based MDIs.

### D.    Development of CFC-Free Systems

95.    In the late 1980s and early 1990s, hydrofluoroalkanes (referred to as "HFAs")

were one of a number of alternatives to CFCs that were being investigated, including HFA-134a,

HFA-227 and HFA-152.  PTX 622 at PER(Albu)034922.  Other possible alternatives included

alkanes, perfluorocarbons, hydrofluorochlorocarbons, and dimethylether.  PTX 405 at

PER(Albu)034512; DTX 1088 at PER(Albu)034377.  Compared to CFCs, HFAs have negligible

ozone-depletion capacity.  *See* PTX 408 at PER(Albu)007782.  HFAs also, however, have

significantly different physic-chemical properties, including polarity, density, and vapor

pressure.  *See id.* at 781-782.  The issue of replacing the CFCs was further complicated because

many CFC-based suspension formulations contained different mixtures of two or three CFCs,

each of which contributed its own unique properties to those of the blend.  *See* PTX 449 at

TEV_0921089-091.  Identifying suitable HFAs to replicate the properties of these blends proved

extremely challenging; it was discovered that it was not possible to simply substitute HFAs for

CFCs in the existing CFC-based inhalers.

96.    The changeover from CFC-based inhalers to CFC-free inhalers involved

re-formulating and re-designing these already complex systems.  Because those skilled in the

EXTERNAL COUNSEL ONLY

field did not understand the interactions among the constituents and the reasons that some of the early CFC-based formulations had been successful, researchers were forced to empirically evaluate the characteristics of many different combinations of propellant(s), excipient(s), drug(s), and drug forms.  As a result, researchers were compelled to investigate, over time, the stability and performance of a wide range of options, including, without limitation:  (1) solution formulations, (2) suspension formulations, (3) different propellants, (4) different active pharmaceutical ingredients ("APIs"), (5) different forms of APIs, (6) traditional surfactants, (7) non-traditional surfactants, (8) co-solvents, (9) co-propellants, (10) container closure systems, and (11) dose metering valves, including elastomers.

## V.     Background on 3M's Work on Albuterol Sulfate HFA Inhalers and ProAir® HFA

### A.     3M's Efforts

#### 1.     3M Pharmaceutical Aerosol Business

97.     A pharmaceutical company in Northridge, California known as Riker Laboratories invented, developed, and commercialized the first MDI.  3M acquired Riker Laboratories as a subsidiary in 1970.

98.     ████████████████████████████████████████████████████████████████████████████████████ Through its acquisition of Riker, 3M became a leader in the pharmaceutical aerosol industry.

99.     ████████████████████████████████████████████████████████████████████████

EXTERNAL COUNSEL ONLY

### 2. The Montreal Protocol and the Alternative Propellant Project at 3M

100.    As discussed above (*supra* ¶ 94), the Montreal Protocol banned the use of the CFCs in commercial applications due to their harmful effect on the ozone layer.  3M was concerned about the phase-out of CFCs because 3M was a world leader in aerosol inhalation therapies.  It was critical to provide continuity of life saving bronchodilators to patients and to ensure there was no disruption in the availability of pharmaceutical MDIs.  ████████

████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████

101.    ████████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████

██████████    Some of Dr. Robert Schultz's work was as a bench scientist, though he later supervised more junior scientists and gave them direction.

### 3. CFC Formulations as a Basis for Development

102.    ██████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

██████████    Conventional surfactants that had been used in CFC MDIs and approved by the FDA for use in aerosol formulations were mainly oleic acid, sorbitan trioleate, and lecithin.  Ethanol was generally not used in CFC suspension aerosols, as the inclusion of ethanol contributed to crystal growth and other negative properties in suspension aerosols that led to poor drug delivery.

EXTERNAL COUNSEL ONLY

103. ███████████████████████████████████████████████

███████████████████████████████████████████

### 4. Novel Surfactants

104. ██████████████████████████████████████████

███████████████████████████████ These novel surfactants, which included perfluorinated surfactants, were new compounds that had not previously been approved for use in pharmaceutical products. █████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████

### 5. Invention of the Formulation of the '152 Patent

105. ████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████

106. ███████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

█████████████ Using a higher amount of ethanol was counter-intuitive because in the old CFC formulations ethanol had been known to create larger droplet sizes and decrease the efficiency of the aerosol delivered to the lung.  Using ethanol without surfactant was also counter-intuitive because one function of ethanol in existing formulations was to dissolve the surfactant.

107. ████████████████████████████████████████

█████████████████████████████████████████████████

EXTERNAL COUNSEL ONLY

███████████████████████████████████████████████████

██████████████████████████████████

**B.    ProAir® HFA**

108.    Under the trade name ProAir® HFA, Teva Respiratory, LLC markets and sells pressurized metered-dose inhalers with albuterol sulfate inhalation aerosol in 0.09 mg per actuation formulations.

109.    Teva Branded Pharmaceutical Products R&D, Inc. is the holder of approved NDA No. 21-457 for ProAir® HFA (albuterol sulfate) Inhalation Aerosol ("ProAir® HFA").

110.    FDA approved NDA No. 21-457 on October 29, 2004.

111.    Ivax Corporation's HFA albuterol sulfate product was introduced as "Albuterol Sulfate HFA" in 2005.

112.    Teva Pharmaceutical Industries Ltd. purchased Ivax effective January 2006.

113.    In 2006, "ProAir® HFA" named as such was introduced to the marketplace by another Teva entity, Teva Respiratory LLC.

114.    A modified ProAir® HFA device with a dose counter and smaller spray nozzle was introduced in December 2012.

115.    ProAir® HFA is indicated in patients four years of age and older for the treatment or prevention of bronchospasm with reversible obstructive airway disease and for the prevention of exercise-induced bronchospasm.

116.    ProAir® HFA revenues exceeded $400 million in 2013, and in the 2009-2013 period ProAir® HFA revenues exceeded $2.1 billion.  PTX 617 at TEV_0919520; PTX 53 TEV_0919716.

EXTERNAL COUNSEL ONLY



117.

118.

119.

120.    ProAir® HFA has been the leading product in the SABA market since 2008.

121.

122.

123.    Prior CFC-based systems resulted in a cold, forceful high-speed blast, which was often referred to as the "Freon effect." *See* PTX 277 at TEV_0920537; PTX 326 at TEV_0920623-624; PTX 318 at TEV_0920611; PTX 258 at TEV_0920417.  In addition to the temperature of the CFC-plume, the velocity of the CFC-plume often led to only 10 to 15% of the

medication being delivered into the airways of the lungs.  *See* PTX 272 at TEV_0920506; PTX

425 at TEV_0920878; PTX 451 at TEV_0921078-079.  As a result, a separate tube-like

apparatus called a spacer was often added onto the CFC MDIs by the patient before use to allow

for greater lung deposition.

124.    ProAir® HFA resulted in a warmer and lower velocity plume that eliminated the

disadvantages of the CFC-based MDIs, such as the Freon effect and the need for spacers.  PTX

441 at TEV_0920896; PTX 362 at TEV_0919923.  While common CFC-based MDIs had a

minimum plume temperature in the range of -25° to -30° Celsius, (PTX 326 at TEV_0920625;

PTX 256 at TEV_0920380) ProAir® HFA has been shown to have a mean minimum plume

temperature of approximately 7° Celsius.  PTX 441 at TEV_09208967.  In addition, ProAir®

HFA's plume has been measured to have a mean maximum spray force of approximately 33.6

mN (PTX 441 at TEV_0920897), which is much less forceful than several precursor CFC

products which had maximum forces ranging from approximately 82 to 95 mN.  *See* PTX 326 at

TEV_0920625; PTX 256 at TEV_0920380; PTX 441 at TEV_0920899 (noting that spray

velocity was sensitive to orifice diameter and the velocity increased with increasing orifice

diameters).  ProAir® HFA also resulted in a drug with a smaller median particle size.  PTX 441

TEV_0920897-898.

## VI.    Level of Ordinary Skill in the Art

125.    The "ordinarily skilled artisan" or "person of ordinary skill" ("POSA") in the field

relevant to the claims of the '152 and '445 patents would have at least an undergraduate degree,

preferably a graduate degree, in pharmaceutical sciences and several years of experience

working with MDIs and/or pharmaceutical aerosol formulations.

**EXTERNAL COUNSEL ONLY**

## U.S. PATENT NO. 7,105,152

**VII.    Defendants' Infringement of the '152 Patent**

    **A.    Legal Principles Of Infringement**

126.    Evaluating patent infringement is a two-step process.  First, the claims must be construed by the court as a matter of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996).  The inquiry is an objective one.  A court must determine "what one of ordinary skill in the art at the time of the invention would have understood the term to mean."  *Id.* at 986.  On May 12, 2014, the Court issued its claim construction decision, construing the disputed claim terms.  D.I. 164.  The Court will apply its prior construction of each claim term to determine infringement.

127.    Second, the construed claims must be compared to the accused product to determine whether all of the limitations of at least one claim are present, either literally or by an equivalent.  *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 804 (Fed. Cir. 2007) (citing *Markman*, 52 F.3d at 976); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1323 (Fed. Cir. 2002).

128.    The doctrine of equivalents prevents a party from avoiding infringement by making minor or insubstantial changes to the accused product while retaining the identity of the invention.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 564 (Fed. Cir. 2000), *vacated on other grounds*, 535 U.S. 722 (2002).  An accused product infringes under the doctrine of equivalents if the limitations of the claim are insubstantially different from the accused product.  *See Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1351 (Fed. Cir. 2003); *Eagle Comtronics, Inc. v. Arrow Commc'n Labs., Inc.*, 305 F.3d 1303, 1315 (Fed. Cir. 2002).

129.    If any product within the scope of an ANDA would infringe the asserted patent, then the ANDA product infringes.  *See Sunovion Pharms., Inc. v. Teva Pharms. USA, Inc.*, 731

### EXTERNAL COUNSEL ONLY

F.3d 1271, 1275-80 (Fed. Cir. 2013) ("What [defendant] has asked the FDA to approve as a

regulatory matter is the subject matter that determines whether infringement will occur, and the

fact that [defendant] either tells the court that its manufacturing guidelines will keep it outside

the scope of the claims or has even filed a declaration in the court stating that it will stay outside

the scope of the claims does not overcome the basic fact that it has asked the FDA to approve,

and hopes to receive from the FDA, approval to market a product within the scope of the issued

claims.").

      130.    Infringement must be shown by a preponderance of the evidence, which requires

a showing that it is more likely than not that infringement has occurred. *See Enercon GmbH v.*

*ITC*, 151 F.3d 1376, 1384 (Fed. Cir. 1998).

      **B.**      **Findings of Fact Relating to Defendants' Infringement of the '152 Patent**

      131.    Plaintiffs assert that claims 1-4, 8 and 9 of the '152 patent are infringed by

Defendants' ANDA No. 203760.

      132.    The parties agreed to and the Court adopted the following constructions with

respect to the '152 patent:

| Term | Joint Proposed Construction |
|---|---|
| "pharmaceutical suspension aerosol formulation" | "A drug formulation in which the drug is in particulate form and is substantially insoluble in the propellant" |
| "micronized" | "micronized, *i.e.*, about 90 percent or more of the particles have a diameter of less than about 10 microns" |

      133.    Following the claim construction hearing in this case, the Court construed the

term "no surfactant" as contained in independent claim 1 of the '152 patent as having its plain

and ordinary meaning to mean "no surfactant." D.I. 164 at 1-2. At the claim construction

hearing, Defendants recognized that claim 1 of the '152 patent is a "composition claim, not a

process claim." *Id.*

EXTERNAL COUNSEL ONLY

1.     **Defendants Infringe Claims 1-4, 8 and 9 of the '152 Patent**

    a.     **The Formulation of Defendants' ANDA Includes Each and Every Limitation of Claim 1 of the '152 Patent**

134.     The elements of claim 1 of the '152 patent—"pharmaceutical suspension aerosol formulation consisting essentially of:  (i) particulate drug; (ii) 1,1,1,2-tetrafluoroethane as propellant; and (iii) ethanol in an amount of 5 to about 15 percent by weight, wherein the formulation is further characterized in that it contains no surfactant"—are met by the formulation of the ANDA Product. ████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████     For the reasons set forth below, the formulation of the ANDA Product meets all the limitations of claim 1 of the '152 patent.

    i.     **"A pharmaceutical suspension aerosol formulation" consisting essentially of**

135.     ████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

**EXTERNAL COUNSEL ONLY**

136.

137.    Lastly, the formulation of the ANDA Product contains a drug that "is substantially insoluble in the propellant."

EXTERNAL COUNSEL ONLY

### ii. "particulate drug"

138.     The formulation of the ANDA Product is ███████████████████████ ████, which demonstrates that the drug is a "particulate drug." ████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ Accordingly, the ANDA describes a formulation that contains a "particulate drug" in the ANDA Product.

### iii. "1,1,1,2-tetrafluoroethane as propellant"

139.     The formulation of the ANDA Product contains "1,1,1,2-tetrafluoroethane as propellant." ██████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████ Accordingly, the ANDA  describes a formulation that contains "1,1,1,2-tetrafluoroethane as propellant" in the ANDA Product.

### iv. "ethanol in an amount of 5 to about 15 percent by weight"

140.     The formulation of the ANDA Product contains "ethanol in an amount of 5 to about 15 percent by weight." ██████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████ Accordingly, ANDA  describes a formulation that contains "ethanol in an amount of 5 to about 15 percent by weight" in the ANDA Product.

EXTERNAL COUNSEL ONLY

        v.    **"wherein the formulation is further characterized in that it contains no surfactant"**

           1.   █████████████████████████████

                    █████████████████████████████

                    ████████████████████

141.    The ANDA Product contains a formulation "wherein the formulation is further characterized in that it contains no surfactant." ███████████████████████

███████████████████████████████████████

███████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████

142.   █████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

**EXTERNAL COUNSEL ONLY**

143.

EXTERNAL COUNSEL ONLY

████████████████████████████████████████████████████████

████████████████████████

### 2. Defendant's Non-Infringement Argument Fails

144.     Defendants' ANDA included a Paragraph IV certification alleging, among other things, that the claims of the '152 patent and the '445 patents are invalid, unenforceable and/or not infringed by the ANDA product. ████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

145.     During fact discovery in this litigation, Defendants never contended that the ANDA Product did not meet each and every limitation of claims 1-4, 8 and 9 of the '152 patent.

146.     For the first time in Defendants' reply expert reports on the issue of infringement did Defendants raise a noninfringement position with respect to claims 1-4, 8 and 9 of the '152 patent.

147.     Defendants incorrectly argue that Defendants' ANDA Product does not meet the "no surfactant" limitation because ████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████  Defendants are wrong on both fronts.

148.     None of the claims of the '152 patent require a "product" (although claim 3 of the '152 patent does require a container closure system). *See* JTX 1 at PER(Albu)012704 (16:14-61). Claims 1, 2, 4, 8 and 9 of the '152 patent are directed to formulations. *Id*. at 16:14-23, 28-33, 42-46. ██████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

**EXTERNAL COUNSEL ONLY**

████████████████████████████ For this reason alone, Defendants' noninfringement

argument fails.

**3.** ███████████████████████████
███████████████

149. ████████████████████████████████

█████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

150. █████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

██████

151. ████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████████████████

152. █████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

**EXTERNAL COUNSEL ONLY**



153.

154.

**EXTERNAL COUNSEL ONLY**



**4.**

155.

**EXTERNAL COUNSEL ONLY**



**EXTERNAL COUNSEL ONLY**



159.

160.

161.

162.

163.

**EXTERNAL COUNSEL ONLY**

████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

███████████████

164.   ██████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████

vi.   ███████████████████████████████
        ██████████████████████████████

165.   ███████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

166.   █████████████████████████████████

█████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

████████████████

**EXTERNAL COUNSEL ONLY**

167. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

168. ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████

169.     Thus, each and every limitation of claim 1 of the '152 patent is met by

Defendants' ANDA product.

> **b.     The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 2 of the '152 Patent**

170.     Claim 2 of the '152 patent depends from claim 1, and further specifies that the

drug is "micronized." JTX 1 at PER(Albu)012704 (16:22-23).

171. ████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

Accordingly, under the construction that "micronized" is "micronized, *i.e.*, about 90 percent or

more of the particles have a diameter of less than about 10 microns," the formulation of the

ANDA Product meets each and every limitation of claim 2 of the '152 patent.

### c.    Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 3 of the '152 Patent

172.    Claim 3 of the '152 patent depends from claim 1 and is directed to "[a]n aerosol

canister equipped with a metering valve, containing a formulation according to claim 1 in an

amount sufficient to provide a plurality of therapeutically effective doses of the drug."  JTX 1 at

PER(Albu)012704 (16:24-27).

173.    ██████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████    Accordingly, the ANDA

Product contains an "aerosol canister equipped with a metering valve."

174.    The ANDA Product will also "provide a plurality of therapeutically effective

doses of the drug."  ██████████████████████████

████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████

EXTERNAL COUNSEL ONLY

██████████████████████████████████████████████████████

██████████████████   For these reasons, the ANDA Product meets each and every limitation of

claim 3 of the '152 patent.

> **d.    The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 4 of the '152 Patent**

175.    Claim 4 of the '152 patent depends from claim 1 and further specifies that the

"particulate drug is selected from the group consisting of formoterol, salmeterol, beclomethasone

dipropionate, cromolyn, pirbuterol, albuterol, and pharmaceutically acceptable salts thereof."

JTX 1 at PER(Albu)012704 (16:28-33).

176.    █████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████   Accordingly, the ANDA Product meets each and every limitation of claim 4

of the '152 patent.

> **e.    The Formulation of Defendants' Proposed Generic Product Includes Each and Every Limitation of Claim 8 of the '152 Patent**

177.    Claim 8 of the '152 patent depends from claim 4 and further specifies that "the

particulate drug is albuterol or a pharmaceutically acceptable salt thereof."  JTX 1 at

PER(Albu)012704 (16:41-43).

178.    For the same reasons as set forth for claim 4 of the '152 patent (*supra* ¶¶ 175-

176), the formulation of the ANDA Product has all of the elements of claim 8 of the '152 patent.

### EXTERNAL COUNSEL ONLY

> **f.    The Formulation of Defendants' Proposed Generic Product
> Includes Each and Every Limitation of Claim 9 of the '152
> Patent**

179.    Claim 9 of the '152 patent depends from claim 8 and further specifies that "the

particulate drug is albuterol sulfate." JTX 1 at PER(Albu)012704 (16:44-46).

180.     For the same reasons as set forth for claim 8 of the '152 patent (*supra* ¶¶ 177-

178), the formulation of the ANDA Product has all of the elements of claim 9 of the '152 patent.

**C.    Conclusions of Law Relating to Defendants' Infringement of the '152 Patent**

181.    Defendants have infringed claims 1-4, 8 and 9 of the '152 patent by submitting

Defendants' ANDA seeking approval to make, use, and sell the ANDA Product prior to the

expiration of the '152 patent. *See* 35 U.S.C. § 271(e)(4)(A).

182.    The ANDA Product meets each and every element of claims 1-4, 8 and 9 of the

'152 patent, and Defendants will thus literally infringe these claims if it makes, uses, sells, offers

to sell, or imports into the United States the ANDA Product prior to the expiration of the '152

patent. *See id.* at § 271(a)-(c).

183.    Perrigo Co. and Catalent have, under 35 U.S.C. § 271(b), acted in concert,

actively supported, participated in, encouraged, and/or induced Perrigo Pharmaceutical Co.'s

filing of Defendants' ANDA for the proposed ANDA Product, and in the preparation to sell, in

the United States, generic albuterol sulfate HFA inhalation aerosol.

184.    In the context of infringement under 35 U.S.C. § 271, which is premised on the

filing of an abbreviated new drug application ("ANDA") with the FDA, the infringement inquiry

is hypothetical and requires the court to compare the claims with the product described in the

ANDA. *See Pozen Inc. v. Par Pharm., Inc.,* 696 F.3d 1151, 1157 (Fed. Cir. 2012). The Court in

an ANDA case must determine whether the patentee has proven by a preponderance of the

evidence that the alleged infringer will likely market an infringing product. *See id.* at 1167-68.

**EXTERNAL COUNSEL ONLY**

185.    This hypothetical inquiry is grounded in the ANDA application and the materials submitted in its support.  *See Sunovion Pharms.*, 731 F.3d at 1279-80.

186.    The ANDA itself answers the question of infringement where the ANDA includes a specification that requires the ANDA applicant to produce a product that falls within the scope of the asserted claims.  *See, e.g.*, *Bayer AG v. Elan Pharm. Research Corp.*, 212 F.3d 1241, 1248-50 (Fed. Cir. 2000).  Thus, the court relies on the specifications in the ANDA and any amendments to the ANDA to determine whether the ANDA filer's proposed generic product will infringe.  *Id.* at 1248.

187.    The formulation of the ANDA Product meets each and every limitation of claims 1-4, 8 and 9 of the '152 patent. ██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

188.    ████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

189.    Second, as discussed above, none of the claims of the '152 patent require a "product."  Claims 1, 2, 4, 8, and 9 of the '152 patent are directed to "formulations." ████████████

████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

EXTERNAL COUNSEL ONLY

███████████████████████████ *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1333 (Fed. Cir. 2013) ("It is well settled that an accused device that sometimes, but not always, embodies a claim nonetheless infringes." (internal quotations and alterations omitted)); *Exxon Chem. Patents, Inc. v. Lubrizol*, 64 F.3d 1553, 1558 (Fed. Cir. 1995) (rejecting argument that composition claims "read only on end product compositions" as "claims are to a composition that contains the specified ingredients ***at any time***" and "read[] on any product ***at any time*** that contains the claimed proportions of ingredients" (emphasis added)).  Thus, Defendants will make an infringing formulation.

190.    Third, as discussed above, the formulation of a drug product contained in a MDI is limited to those components which have been intentionally added and have a demonstrated pharmaceutical purpose in the formulation.  *See supra* ¶¶ 149-154.  FDA regulations require ANDA applicants to provide "information to show that the active ingredient is the same as that of the reference . . . listed drug." 21 C.F.R. § 314.94(a)(5)(i).  Drug products that are inhalation aerosols should "contain the same inactive ingredients as the reference listed drug identified by the applicant," but "may include different inactive ingredients provided that the applicant identifies and characterizes the differences and provides information demonstrating that the differences do not affect the safety or efficacy of the proposed drug product."  *Id.* at § 314.94(a)(9)(v).  In addition, FDA regulations require that the description of the drug product in the prescribing information contain "[t]he same qualitative and/or quantitative ingredient information as required . . . for drug labels." 21 C.F.R. § 201.57(c)(12)(i)(C).  Prescription drug labels must contain the "quantity or proportion of each active ingredient," and for drugs administered other than orally, "the names of all inactive ingredients." 21 C.F.R. § 201.100(b)(4)-(5). ████████████████████

**EXTERNAL COUNSEL ONLY**

████████████████████████████████████████████████████████

██████████

     191.   ██████████████████████████████████████████

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████ Just as in *Sunovion*, here Defendants are seeking approval

for a product that literally falls within the scope of the claims of the '152 patent.

     192.   ███████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

EXTERNAL COUNSEL ONLY



. *Broadcom*, 732 F.3d at 1333 ("It is well

settled that an accused device that sometimes, but not always, embodies a claim nonetheless

infringes." (internal quotations and alterations omitted)).

193.    Sixth, as discussed above, Defendants reliance on testing is misplaced. *See supra*

¶¶ 163-164. ████████████████████████████████████████

████████████████████ Moreover, the testing performed by Defendants was flawed for the

reasons discussed above.

194.    Accordingly, the formulation of the ANDA Product literally infringes claims 1-4,

8 and 9 of the '152 patent.  If not literal, the formulation of the ANDA Product infringes claims

1-4, 8 and 9 of the '152 patent under the doctrine of equivalents because the formulation is

insubstantially different from the claimed invention.

## VIII.  The Asserted Claims of the '152 Patent Are Non-Obvious

195.    Every issued patent claim is presumed valid.  35 U.S.C. § 282(a).  A challenger

bears the burden of establishing the invalidity of each asserted claim.  *Id*.  Invalidity must be

proven by clear and convincing evidence.  *Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1376

(Fed. Cir. 2001) ("[O]vercoming the presumption of validity requires that any facts supporting a

holding of invalidity must be proved by clear and convincing evidence."); *Juicy Whip, Inc. v.*

*Orange Bang, Inc.*, 292 F.3d 728, 736 (Fed. Cir. 2002) ("Because a patent is presumed valid, the

quantum of proof required at trial was clear and convincing evidence.").  Accordingly, each

**EXTERNAL COUNSEL ONLY**

claim of the '152 patent is presumed to be valid unless Defendants prove by clear and convincing evidence that it is invalid.

> ### A.    Legal Principles of Obviousness

196.    To succeed on their obviousness claims, Defendants must prove by clear and convincing evidence that "the claimed invention as a whole would have been obvious before the effective filing date of the claimed invention to a person having ordinary skill in the art to which the claimed invention pertains."  35 U.S.C. § 103; *see also Alza Corp. v. Mylan Labs., Inc.*, 464 F.3d 1286, 1289 (Fed. Cir. 2006).  The clear and convincing standard is a heightened standard of proof, and a defendant raising an invalidity defense bears "a heavy burden of persuasion." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2246-47 (2011).  "This burden is especially difficult when the prior art was before the PTO examiner during prosecution of the application." *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1467 (Fed. Cir. 1990).

197.    To determine whether a claim is obvious, the Court must consider:  "(1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and (4) evidence of secondary factors, also known as objective indicia of nonobviousness."  *Eisai Co. v. Dr. Reddy's Labs. Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008) (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).  The first three factors comprise the so-called *prima facie* case of obviousness.  *See Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1350 (Fed. Cir. 2000).

198.    The obviousness analysis requires an examination of the subject matter as a whole to ascertain if the claimed invention would have been obvious at the time that invention was made.  35 U.S.C. § 103; *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 401, 406 (2007).  To the extent the claimed invention contains elements described in the prior art, the patent challenger must "identify[] 'a reason that would have prompted a person of ordinary skill in the relevant

EXTERNAL COUNSEL ONLY

field to combine the elements in the way the claimed new invention does.'" *Takeda Chem.*

*Indus., Ltd. v. Alphapharm Pty., Ltd.*, 492 F.3d 1350, 1356-57 (Fed. Cir. 2007) (quoting *KSR*,

550 U.S. at 401).

199.    It is improper to use hindsight in determining whether an invention is obvious;

courts must "resist the temptation to read into the prior art the teachings of the invention in

issue." *Graham*, 383 U.S. at 36; *see also In re Cyclobenzaprine Hydrochloride Extended-

Release Capsule Patent Litig.*, 676 F.3d 1063, 1079 (Fed. Cir. 2012); *ATD Corp. v. Lydall, Inc.*,

159 F.3d 534, 546 (Fed. Cir. 1998). "Care must be taken to avoid hindsight reconstruction by

using 'the patent in suit as a guide through the maze of prior art references, combining the right

references in the right way so as to achieve the result of the claims in suit.'" *In re NTP, Inc.*, 654

F.3d 1279, 1299 (Fed. Cir. 2011) (quoting *Grain Processing Corp. v. American-Maize Prods.*

*Co.*, 840 F.2d 902, 907 (Fed. Cir. 1988)).

200.    Where the prior art discredits, disparages or somehow leads a person of skill in

the art away from the claimed invention, that prior art is said to "teach away" from the invention

and, thus, establish nonobviousness. *E.g.*, *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336,

1343 (Fed. Cir. 2011); *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314,

1327 (Fed. Cir. 2009). What a reference teaches, and whether it teaches toward or away from

the claimed invention, is a question of fact addressed to a person of skill in the art. *Spectralytics*,

649 F.3d at 1343-44.

201.    All objective evidence of obviousness and nonobviousness must be considered

before reaching a determination, including any secondary considerations of nonobviousness. *In*

*re Cyclobenzaprine*, 676 F.3d at 1076-77. Such evidence, when present, must be considered and

includes the extent of commercial success of the patented invention, unexpected properties of the

EXTERNAL COUNSEL ONLY

invention, whether the invention satisfies a long-felt need, whether others have failed to find a solution to a problem addressed by the patent, and any copying of the invention by others.  *See id. at 1304-05; Eli Lilly & Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1380 (Fed. Cir. 2006).  The ultimate burden of proof on obviousness is always with the patent challenger and "never shifts to the patentee during the course of a district court obviousness challenge."  *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1352 (Fed. Cir. 2013).

202.    "[I]f the marketed product embodies the claimed features, and is coextensive with them, then a nexus is presumed and the burden shifts to the party asserting obviousness to present evidence to rebut the presumed nexus."  *Brown & Williamson Tobacco Corp. v. Phillip Morris, Inc.*, 229 F.3d 1120, 1130 (Fed. Cir. 2000).

203.    "When the patentee has presented a prima facie case of nexus, the burden of coming forward with evidence in rebuttal shifts to the challenger . . . ."  *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.3d 1387, 1393 (Fed. Cir. 1988).  Defendants have made no such showing.  *See Brown & Williamson*, 229 F.3d at 1130 ("The presumed nexus cannot be rebutted with mere argument; evidence must be put forth."); *Diversitech Corp. v. Century Steps, Inc.*, 850 F.2d 675, 679 (Fed. Cir. 1988) (lower court's finding of no nexus was "clearly erroneous" where challenger offered "no evidence" to rebut the *prima facie* case of nexus).

### B.    Findings of Fact

#### 1.    Scope and Content of the Prior Art

##### a.    Selected Art Relating to Suspension Aerosol Formulations

204.    Defendants have not identified a single prior art reference that discloses the invention claimed in claims 1-4, 8 and 9 of the '152 patent. Instead, using hindsight, Defendants cobble together at least six different references and contend that, using those references, a POSA

**EXTERNAL COUNSEL ONLY**

would have arrived at a pharmaceutical suspension aerosol formulation consisting of albuterol

sulfate, HFA-134a and ethanol in an amount of 5-15% w/w, without surfactant.

### i.    Proventil And Ventolin

205.    First, Defendants point to two MDI products that used CFC-based propellants.

Proventil was a CFC-based suspension aerosol product, approved by the FDA in the United

States that was available commercially in the mid 1991- late 1992 time period.  Proventil is not

the same product as Proventil HFA.  Proventil contained albuterol free base (drug), CFC-11 and

CFC-12 (propellants), and oleic acid (surfactant).  PTX 831 at TEV_0920312-313.  Albuterol

sulfate is a salt of albuterol free base, each of which has different chemical properties.  CFC-11

and CFC-12 each has different chemical properties than HFA-134a.  Also, Proventil did not

contain ethanol.[2]

206.    Ventolin was a CFC-based suspension aerosol product, approved by the FDA in

the United States that was available commercially in the mid 1991- late 1992 time period.

Ventolin is not the same product as Ventolin HFA.  Ventolin contained albuterol free base

(drug), CFC-11 and CFC-12 (propellants), and oleic acid (surfactant).  PTX 831 at

TEV_0920295.  Albuterol sulfate is a salt of albuterol free base, each of which has different

chemical properties.  CFC-11 and CFC-12 each has different chemical properties than HFA-

134a.  Also, Ventolin did not contain ethanol.[3]  Ventolin is disclosed in the specification of the

'152 patent.  JTX 1 at PER(Albu) 012697 (2:18-25).

---

[2] The formulation of Proventil CFC comprised the same components as Ventolin CFC, which
was before the Examiner during prosecution of the application that led to '152 patent.

[3] In 1991, Ventolin Rotocaps were also approved by the FDA in the United States and available
commercially.  Ventolin Rotocaps were a dry-powder formulation of albuterol that did not
contain a propellant.  Ventolin Rotocaps included a formulation that was "particularly useful in
patients who are unable to properly use the pressurized aerosol form of albuterol."  PTX 831 at
TEV_0929295.

EXTERNAL COUNSEL ONLY

207.    Thus, both CFC-based formulations that Defendants point to contained surfactants and did not contain ethanol.

### ii.    The Purewal '777 application

208.    EP 0 372 777 A2 ("the Purewal '777 application"), which according to the face of the document published in June 1990, is directed to aerosol formulations that contain HFA-134a, a variety of drugs (including albuterol), a "higher polarity"  compound (including ethanol) and surfactant.  DTX 736 at PER(Albu)034358.  The Purewal '777 application was in front of the examiner during the prosecution of the '152 patent.  *See* JTX 1 at PER(Albu)012694.  The Purewal '777 application does not disclose a suspension aerosol formulation that contains albuterol sulfate, HFA-134a and 5-15% w/w ethanol with no surfactant, as claimed in the '152 patent, and in fact teaches away from such a formulation.

209.    The Purewal '777 application teaches the use of a surfactant in a suspension aerosol formulation.  There are twenty-four examples disclosed in the Purewal '777 application, all of which contain surfactant.  DTX 736 at PER(Albu)034363-366 (6:17-9:31).  Furthermore, the Purewal '777 application teaches that known surfactants, such as oleic acid, were considered "particularly advantageous since the toxicity and use of such compounds in metered dose inhalers for drug delivery to the human lung is well established."  *Id*. at 2:48-29.  Accordingly, the Purewal '777 application is consistent with a POSA's view at the time that surfactants were considered to be a necessary component of stable suspension aerosol formulations.

210.    The invention of the Purewal '777 application, which is described as the combination of the higher polarity adjuvant with HFA-134a, specifically contemplates the addition of surfactant:

(a)    "The combination of one or more such adjuvants with [HFA-134a] provides a propellant system which has comparable properties to those of propellant systems based on CFC's [sic], allowing use of known surfactants and additives in the

EXTERNAL COUNSEL ONLY

pharmaceutical formulations and conventional valve components."  DTX 736 at
PER(Albu)034359 (2:45-50).

(b)     "It has been found that the use of [HFA-134a] and drug as a binary mixture or in
        combination with a conventional surfactant . . . does not provide formulations
        having suitable properties."  *Id.* at 360 (3:7-8).

(c)     "The addition of a compound of higher polarity than [HFA-134a] to [HFA-134a]
        provides a mixture in which increased amounts of surfactant may be dissolved
        compared to their solubility in [HFA-134a] alone.  The presence of increased
        amounts of solubilized surfactant allow the preparation of stable, homogeneous
        suspensions of drug particles."  *Id.* at 3:13-16.

Moreover, to the extent that the Purewal '777 application describes the use of a polar adjuvant in

a suspension formulation, it states that the purpose of that component is to *dissolve surfactant*.

*Id.*

211.    The Purewal '777 application discloses at least forty different medicaments and at

least fifty different salts that may be used with these medicaments.  *Id.* at 362 (5:12-35).  The

examples of the Purewal '777 application use albuterol sulfate, beclomethasone dipropionate,

and disodium chromoglycate.

212.    The Purewal '777 application discloses at least seventeen different adjuvants

having a higher polarity than HFA-134a, of which ethanol is just one.  *Id.* at 459 (2:41-45).  The

examples of the Purewal '777 application contain at least five different higher polarity adjuvants.

*Id.* at 363-366 (6:17-9:31).

### iii.    The Mullins '533 Patent

213.    U.S. Patent No. 3,219,533 ("the Mullins '533 patent"), which issued in 1965 and

is expired, is directed to formulations that contain drugs, CFCs and ethanol from 0.5 to 5% by

weight.  DTX 805 at PER(Albu)007407 (7:64-75).  The Mullins '533 patent was in front of the

examiner during the prosecution of the '152 patent.  *See* JTX 1 at PER(Albu)012694.  The

Mullins '533 patent does not disclose a suspension formulation that contains albuterol sulfate,

EXTERNAL COUNSEL ONLY

HFA-134a, and 5-15% w/w ethanol with no surfactant, as claimed in the '152 patent. The Mullins '533 patent does not disclose the use of albuterol or albuterol sulfate. DTX 805 at PER(Albu)007404-408.

214.    The ten examples in the Mullins '533 patent all contain a blend of CFC-12 and CFC-114, where there is approximately twice as much CFC-114 as CFC-12. DTX 805 at PER(Albu)007406-407 (5:1-7:62). The Mullins '533 patent does not disclose the use of HFAs. *Id*. at 404-08. Additionally, a POSA would understand that the large concentration of CFC-114 would impact the properties of the formulations and that the formulations disclosed in the Mullins '533 patent are not directly comparable to later CFC-based MDI formulations, at least because the density and vapor pressure of the CFC blend, among other properties, would be different than CFC-based pharmaceutical suspension aerosol formulations from the early 1990s. *See, e.g.*, PTX 265 at TEV_0920468, Table 2.

### iv.    Azmacort

215.    Azmacort was a metered dose inhaler that contained a formulation of triamcinolone acetonide (a corticosteroid), 1% by weight ethanol and CFC-12. *See* PTX 834 at PER(Albu)012758-759. CFC-12 is significantly different from HFA-134a. Triamcinolone acetonide, the steroid in Azmacort, is chemically quite different to the adrenergic receptor agonist albuterol sulfate.. Azmacort is not comparable to later CFC-based, non-steroid MDI formulations such as Proventil and Ventolin because a POSA would understand that the formulation was an atypical suspension in CFC-12 and was likely only possible because of the drug's unique physicochemical properties. Additionally, the Azmacort carton was in front of the Examiner during the prosecution of the '152 patent.[4]

---

[4] To the extent the Azmacort package insert and prescribing information are not considered part of the carton, they are cumulative art.

EXTERNAL COUNSEL ONLY

### v.   The Marecki '539 Patent

216.   U.S. Patent No. 5,290,539 ("the Marecki '539 patent"), which issued in 1994, is directed to devices for delivering aerosol formulations and improvements in MDI sealing components.  DTX 804 at PER(Albu)008031 (3:21-24) ("[T]his invention provides thermoplastic elastomeric sealing members comprising a copolymer of about 80 to about 95 mole percent ethylene . . . .").  The Marecki '539 patent was in front of the examiner during the prosecution of the '152 patent.  *See* JTX 1 at PER(Albu)012694.  The Marecki '539 patent discloses formulations that were used for testing the improved MDI sealing components.  DTX 804 at PER(Albu)008030 (2:38-44).  A POSA would recognize that the formulations disclosed in the Marecki '539 patent were not tested to determine if they were suitable pharmaceutical suspension aerosol formulations, but rather were used to determine the performance of the improved seals of the Marecki '539 patent.  Of the formulations disclosed in the Marecki '539 patent, all of the formulations that contain albuterol sulfate and HFA-134a also contain surfactant.  *Id.* at 033-034.  Accordingly, the Marecki '539 patent does not disclose a suspension aerosol formulation that contains albuterol sulfate, HFA-134a, and 5-15% w/w ethanol with no surfactant, as claimed in the '152 patent, and in fact teaches away from the claimed formulation.

### b.   The Art As a Whole

217.   In their arguments, Defendants rely on selections from the art that do not fully represent the teachings of the art, as a whole.  The art, as a whole, shows the following:

(a)   a POSA would have been aware of numerous CFC-based MDI products;

(b)   a POSA would have been aware of numerous alternatives to CFC based propellants;

(c)   a POSA would have thought surfactants were needed for a stable pharmaceutical suspension aerosol formulation;

**EXTERNAL COUNSEL ONLY**

(d)    a POSA would have been aware that solution aerosols, nasal aerosols and dry powder inhalers were also being investigated; and

(e)    a POSA would not have had a reasonable expectation of success in making a suspension aerosol formulation containing albuterol sulfate, HFA-134a and 5 to about 15% ethanol, with no surfactant.

### i.    A POSA Would Have Been Aware of Numerous CFC-Based MDI Products

218.    While the Montreal Protocol, which entered into force in 1989, may have provided a POSA a reason to attempt to reformulate existing CFC-based inhalers, a POSA would have had numerous choices of CFC-based drugs to reformulate. *See* PTX 831 (1991 Physician's Desk Reference, containing at least twenty-three CFC-based drug formulations). Even among beta adrenergic agonists, of which albuterol is just one, there were ten approved CFC-based inhalation products in 1991 with such compounds. *See id.* at TEV_0920291, 296, 304, 311-312, 319, 323-324. Thus, the choice of albuterol sulfate was not an obvious starting point.

### ii.    A POSA Would Have Been Aware of Numerous Alternatives to CFC Based Propellants

219.    A POSA would have been aware that there were several non-CFC propellants being developed in the late-1991 to mid-1992 time frame. Numerous alternatives to CFCs were being investigated in this time period. For example, several literature references show that researchers were seriously and actively investigating HFA-227, another candidate for the replacement of CFCs:

(a)    Graepel et al., *CFC Replacements: Safety Testing, Approval for Use in Metered Dose Inhalers*, J. Aerosol Med. 4(3):193-200 (1991), PTX 337 at PER(Albu)034494 ("HFA-134a and HFA-227 (chlorine free hydrofluoro-alkanes) are at present in extensive nonclinical safety testing . . . .");

(b)    WO 91/11495, PTX 724 at PER(Albu)049896 ("As a partially fluorinated lower alkanes according to the invention is mainly [HFA] 227, [HFA] 125, [HFA] 134a and [HFA] 152a [ ]. . . .");