EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1801.  Even further evidence that the Applicants switched inventions in the November 4, 1998 submission is present in the Applicants' request for an interference itself—if the new claims were equivalent to the originally-filed claims, an interference could have been requested without amendment. (JTX 2_432).

### e.  The 490 Application and the 152 Patent

1802.  Prosecution of the 490 Application continued following the Applicants' November 4, 1998 submission, including office actions, interviews, Applicants responses and claim amendments, and an appeal. (*See, e.g.*, *id.* at 453-9, 488-502, 653-669, 1155-63, 1283-5, 1299-1307).

1803.  The 152 Patent issued on September 12, 2006. (JTX 1_2).

1804.  Dr. Greenspan prepared a table illustrating the switch of invention from the claims elected by original presentation in the 490 Application with the claims that issued in the 152 Patent, as depicted below.

**Comparison of the 490 Application Elected Claims and the Issued 152 Patent Claims**

| 490 Application Elected Claims (Group III) | | | |
|---|---|---|---|
| **Drug(s)** | **Propellant** | **Ethanol** | **Surfactant** |
| Pirbuterol | HFA_227 | Ranges from unspecified, to substantially free to 5-12% | Ranges from unspecified to substantially free |
| **Allowed Claims** | | | |
| **Drug(s)** | **Propellant** | **Ethanol** | **Surfactant** |
| not specified, formoterol, salmeterol, beclomethasone dipropionate, cromolyn, pirbuterol, albuterol and salts thereof | HFA-134a | 5-15% | No surfactant |
| *Group from the 039 Application Restriction Requirement* | | | |
| Group I; dependent claims include Groups III and V | Group I | Groups I, III and V | Groups I, III and V |

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

### iii. Conclusion

1805.  The Court is required to determine the expiration date of an asserted patent.  *See generally Abbott 1; Abbott 2*.

1806.  Under 35 U.S.C. § 154(a)(2), the term of a patent is 20 years from the date on which the earliest related application was filed.

1807.  Patents in force or resulting from a patent application filed before June 8, 1995 are entitled to a patent term of the greater of the 20 year term or 17 years from grant.  35 U.S.C. § 154(c)(1).

1808.  The November 4, 1998 submission in the 490 Application violated the submission requirements of 37 C.F.R. § 1.129.  (DTX 1196_619, 1592; DTX 1189_303; DTX 1198_531-4; DTX 1207; DTX 654).

1809.  The Applicants' November 4, 1998 submission claim amendments were only permissible as if they were made through a voluntary divisional application or a continuing prosecution application ("CPA").  (*See, e.g.*, DTX 1196_1561-4 (37 C.F.R. §§ 1.53(b), (d)); *see also* DTX 1207; DTX 654).

1810.  The 152 Patent therefore does not "result[] from an application filed before [June 8, 1995]" and does not satisfy the date requirements of 35 U.S.C. § 154(c)(1).  (*See, e.g.*, DTX 186_1 (the R. Schultz 534 Patent "issued on a continued prosecution application…and is subject to the twenty year patent term provisions of 35 U.S.C. 154(a)(2)")).

1811.  Accordingly, the Court finds, by clear and convincing evidence, that 35 U.S.C. § 154(a)(2) mandates the 152 Patent expiration date is December 18, 2011—20 years from December 18, 1991.  *See, e.g.*, *Abbott 2*, 104 F.3d at 1308-9.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

### G. Written Description and Enablement

1812. Defendants contend that the asserted claims of the 152 Patent lack sufficient written description support in the specification and claims 1 and 4 are not enabled by the specification of the 152 Patent.

1813. Defendants also contend that claims 3-10, 12-15 and 17-20 of the 445 Patent lack sufficient written description support in, and are not enabled by, the specification of the 445 Patent.

1814. For at least the following reasons, the Court agrees and finds by clear and convincing evidence that the asserted claims of the 152 Patent and claims 3-10, 12-15 and 17-20 of the 445 Patent are invalid under 35 U.S.C. § 112.

### i. The Legal Standard

1815. The enablement requirement under § 112 ¶ 1 "has the deepest historical roots, and it lies at the heart of the patent bargain (full disclosure in exchange for a limited term of exclusive rights)." 3 Donald S. Chisum, Chisum on Patents § 7.01 (2007).

1816. This doctrine ensures that the person of ordinary skill in the art learns enough from the specification to practice the full scope of the claimed invention without undue experimentation. *See ALZA Corp. v. Andrx Pharm., LLC*, 603 F.3d 935, 940 (Fed. Cir. 2010); *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1988) ("[I]t is well established that enablement requires that the specification teach those in the art to make and use the invention without undue experimentation.").

1817. Compliance with the enablement requirement is a question of law and is determined as of the effective filing date of the application. *ALZA*, 603 F.3d at 940; *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1070 (Fed. Cir. 2005).

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1818.   Lack of enablement must be proven by clear and convincing evidence.  *Auto. Techs. Int'l, Inc. v. BMW of N. Am., Inc.*, 501 F.3d 1274, 1281 (Fed. Cir. 2007); *AK Steel*, 344 F.3d at 1238-39.

1819.   "To be enabling, the specification of a patent must teach those skilled in the art how to make and use the *full scope of the claimed invention* without 'undue experimentation.'" *ALZA*, 603 F.3d at 940 (quoting *Genentech Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)); *see also Nat'l Recovery Techs. v. Magnetic Separation Sys. Inc.*, 166 F.3d 1190, 1196 (Fed. Cir. 1999) (holding that "[t]he scope of the claims must be less than or equal to the scope of the enablement.  The scope of enablement, in turn, is that which is disclosed in the specification plus the scope of what would be known to one of ordinary skill in the art without undue experimentation."); *In re Goodman*, 11 F.3d 1046, 1049 (Fed. Cir. 1993) (holding that "'[t]he specification must teach those of skill in the art how to make and how to use the invention as broadly as it is claimed'").

1820.   Enablement is determined from the perspective of a person of ordinary skill in the art as of the filing date of the specification.  *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1371-72 (Fed. Cir. 1999).

1821.   The Court must make an enablement determination "*retrospectively, i.e.*, by looking back to the filing date of the patent application and determining whether undue experimentation would have been required to make and use the claimed invention at that time."  *Id*.

1822.   Although the enablement inquiry is viewed from the perspective of a person of ordinary skill in the art, that person's knowledge is not a "substitute for a basic enabling disclosure."  *Genentech*, 108 F.3d at 1366 (recognizing that specification, not knowledge of

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

person of ordinary skill in the art, must supply novel aspects of an invention to constitute adequate enablement).

1823.   Further, a patent's disclosure must enable a person of ordinary skill in the art to make and use the full scope of claimed subject matter without undue experimentation.  *AK Steel*, 344 F.3d at 1244.  "Whether undue experimentation would have been required … is a question of law" that is "based on underlying factual inquiries." *Enzo Biochem*, 188 F.3d at 1369.

1824.   "[T]he question of undue experimentation is a matter of degree." *PPG Indus., Inc. v. Guardian Indus. Corp.*, 75 F.3d 1558, 1564 (Fed. Cir. 1996).   As the Federal Circuit has explained, "[w]hether undue experimentation is needed is not a single, simple factual determination, but rather is a conclusion reached by weighing many factual considerations." *In re Wands*, 858 F.2d at 737.

1825.   The Federal Circuit has set forth the following factors to guide the inquiry into whether the necessary experimentation would be "undue":

> (1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working examples, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability or unpredictability of the art, and (8) the breadth of the claims.

*Wands*, 858 F.2d at 737.

1826.   These "*Wands*" factors, "when applied from the proper temporal perspective … are a useful methodology for determining enablement in either the *ex parte* prosecution or *inter partes* litigation context." *Enzo Biochem*, 188 F.3d at 1372.

1827.   A court does not have to review all of the *Wands* factors to determine whether a disclosure is enabling.  *See Amgen, Inc. v. Chugai Pharm. Co.,* 927 F.2d 1200, 1213 (Fed. Cir.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1991) (noting that the *Wands* factors "are illustrative, not mandatory" and that "[w]hat is relevant depends on the facts").

1828.  Since Section 112 obligates a patentee to describe how to both "make and use" the claimed invention, a specification must adequately enable each of these prongs.  *Rasmusson v. SmithKline Beecham Corp.*, 413 F.3d 1318, 1322-23 (Fed. Cir. 2005); *In re '318 Patent Infringement Litig.*, 583 F.3d 1317, 1321-22 (Fed. Cir. 2009).

1829.  When it comes to the "how to use" prong, a patent claiming a pharmaceutical compound or treatment method need not show readiness for FDA approval, but **must** have at least a disclosure that ties each claimed compound to a specific, meaningful use.  *In re '318*, 583 F.3d at 1327; *In re Fisher* (*Fisher I*), 421 F.3d 1365, 1377 (Fed. Cir. 2005); *see also Durel Corp. v. Osram Sylvania Inc.*, 256 F.3d 1298, 1307 (Fed. Cir. 2001) (finding that a claim covering various types of oxide coatings would be invalid for lack of enablement if the specification does not enable one of ordinary skill in the art to make all of the oxide coatings "within the full scope of the claims"); *ALZA*, 603 F.3d at 937, 940-43 (construing the asserted claim broadly to include both osmotic and non-osmotic dosage forms, finding that although the specification "mentions" non-osmotic dosage forms, it "does not enable the full scope of the claims, namely non-osmotic oral dosage forms[,]" and, accordingly, finding the claim invalid for lack of enablement).

1830.  The more predictable the art and proposed uses, the lesser the need for actual experimental testing in the specification.  *See Scott v. Finney*, 34 F.3d 1058, 1061-62 (Fed. Cir. 1994).

1831.  Thus, when "an invention pertains to an art where the results are predictable, e.g., mechanical as opposed to chemical arts, a broad claim can be enabled by disclosure of a single embodiment … because it reads on another embodiment of the invention which is inadequately

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

disclosed." *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987); *see also In re Cook*, 439 F.2d 730, 735 (C.C.P.A. 1971); *In re Vickers*, 141 F.2d 522, 527 (C.C.P.A. 1944).

1832.  By contrast, for the "unpredictable arts," a broad claim is usually not enabled by, for example, the disclosure of a single species.  *See In re Soll*, 97 F.2d 623, 624-25 (C.C.P.A. 1938) (holding that in applications directed to inventions in arts where the results are unpredictable, the disclosure of a single species usually does not provide an adequate basis to support generic claims); *In re Fisher* (*Fisher II*), 427 F.2d 833, 839 (C.C.P.A. 1970) (contrasting mechanical and electrical elements with chemical reactions and physiological activity).

1833.  Thus, in cases involving unpredictable factors, the specification must have sufficient detail regarding how to make and use the invention in order to be enabling.  *See Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1254 (Fed. Cir. 2004).

1834.  The degree of detail required will depend on the breadth of the claims.  *See In re Wright*, 999 F.2d 1557, 1562 (Fed. Cir. 1993); *In re Vaeck*, 947 F.2d 488, 496 (Fed. Cir. 1991) (holding that "it is well settled that patent applicants are not required to disclose every species encompassed by their claims, even in an unpredictable art.  However, there must be sufficient disclosure, either through illustrative examples or terminology, to teach those of ordinary skill how to make and use the invention as broadly as it is claimed." (internal citations omitted)).

1835.  Patentees who claim too broadly to cover inoperable subject matter run afoul of the enablement requirement:  "When you claim [broadly] you can't simply disavow the invalid portion and keep the valid portion of the claim.  If [part of a claim] is admittedly not enabled, then the entire claim is invalid."  *Alcon*, 687 F.3d at 1368.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1836.  Under 35 U.S.C. § 112, ¶ 1 (2006) (amended 2011), the specification also must contain "a written description of the invention…."

1837.  This requirement prevents inventors from later asserting their invention encompasses subject matter they did not possess.  *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319 (Fed. Cir. 2003).

1838.  Under 35 U.S.C. § 112, ¶ 1, an inventor is obligated to set forth in the specification "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention."

1839.  To satisfy this written description requirement, "the patent specification must clearly allow persons of ordinary skill in the art to recognize that [the inventor] invented what is claimed."  *Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1479 (Fed. Cir. 1998) (alteration in original) (internal quotations and citation omitted).

1840.  This means that "the disclosure must … convey with reasonable clarity to those skilled in the art that … [the inventor] was in possession of the invention."  *Purdue Pharma L.P. v. Faulding Inc.*, 230 F.3d 1320, 1323 (Fed. Cir. 2000) (alteration in original) (citation omitted) (affirming district court's finding that the patent claims were invalid); *see also In re Curtis*, 354 F.3d 1347, 1350-52 (Fed. Cir. 2004) (affirming Board of Patent Appeals and Interferences' finding that a prior application "did not provide an adequate written description of the later-claimed genus of friction enhancing coatings").

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1841.   "Put another way, one skilled in the art, reading the original disclosure, must immediately discern the limitation at issue in the claims."  *Purdue Pharma*, 230 F.3d at 1323 (internal citation omitted).

### ii.   The 152 Patent: The Parties' Contentions and Discussion

1842.   Defendants contend that the 152 Patent does not specifically disclose, enable or describe a suspension aerosol formulation of albuterol or albuterol sulphate in propellant HFA-134a, 5-15% ethanol and no surfactant.

1843.   Defendants' expert, Dr. Dalby, has credibly and persuasively testified that there are no examples in the 152 Patent specification specifically disclosing or describing the use of albuterol in a manner that falls within the scope of claims 1-4, 8 and 9, *i.e.*, there are no examples of albuterol formulations with HFA-134a and ethanol in the absence of surfactant.

1844.   There are only two examples of albuterol with HFA-134a, and these did not include ethanol.  (*See, e.g.*, Examples 1 and 13; JTX 1_8 & 11).

1845.   Dr. Dalby further convincingly testified that the only other examples utilizing albuterol are those that utilize propellant HFA-227, ethanol and surfactant.  (*See, e.g.*, Examples 14 and 15; JTX 1_11-12).

1846.   In fact, the examples do not disclose a single formulation employing HFA-134a with ethanol in the absence of surfactant

1847.   The only formulations employing ethanol are those containing pirbuterol and propellant HFA-227.  (*See, e.g.*, Examples 8, 12 and 16-17 (JTX 1_10-12).

1848.   Plaintiffs have admitted that, of the 17 examples provided in the 152 Patent specification, none disclose albuterol, HFA-134a, ethanol and no surfactant.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1849.   Rather, plaintiffs contend that written description support may be found in Examples 14 and 15, which employ propellant HFA-227 with albuterol sulfate, ethanol and surfactants or in examples 8, 12 and 17, which employ propellant HFA-227 with pirbuterol.

1850.   Plaintiffs also contend that written description support may be found in example 1, which employs propellant HFA-134a with albuterol, but no ethanol.

1851.   Plaintiffs also contend that support may be found in the broad and general disclosures provided in the description portion of the specification.

1852.   Defendants, on the other hand, contend that the descriptions in those sections are very broad and that many of the passages identified by plaintiffs' experts actually pertain to propellant HFA-227 and/or drugs other than albuterol.

1853.   The Court also notes that plaintiffs' expert, Dr. Byron, in attempting to rebut defendants' double patenting defense over the R. Schultz 534 Patent, testified that the propellants HFA-134a and HFA-227 were different compounds with different physical properties.

1854.   Dr. Byron further testified that, in going from HFA-227 to HFA-134a, a person of ordinary skill in the art would not have had a reasonable expectation of success of obtaining stable pharmaceutical suspension aerosol formulations.

1855.   Dr. Byron pointed to the propellants' different densities and different vapor pressures in support of his conclusion.

1856.   Defendants contend that a person of ordinary skill in the art, operating under Dr. Byron's standard, would not have believed that the patentees were in possession of each limitation of the asserted claims of the 152 Patent.

1857.   The Court agrees with defendants.

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

1858.  As Dr. Dalby testified for the defendants, the specification of the 152 Patent does not contain a single specific example describing formulations with propellant HFA-134a, ethanol and no surfactant.

1859.  The only examples employing ethanol are those with propellant HFA-227.

1860.  Additionally, the specification's broad descriptions are vague and not sufficient to convey to one of ordinary skill in the art that the inventors were in possession of the invention, particularly since the specification states that HFA-227 is the preferred propellant for use in albuterol suspension formulations.  (JTX 1_7 (5:46-51)).

1861.  As Dr. Byron has testified, propellants HFA-227 and HFA-134a are different compounds with different properties and one of ordinary skill in the art would not have had a reasonable expectation of success in simply exchanging HFA-134a for HFA-227.

1862.  The Court thus concludes that defendants have shown by clear and convincing evidence that claims 1-4, 8 and 9 of the 152 Patent are not described sufficiently in the specification to convey to those of ordinary skill in the art that the applicants were in possession of the entire claimed invention.

1863.  Defendants also contend that claims 1 and 4 of the 152 Patent are not sufficiently enabled to allow one of ordinary skill in the art to practice the full scope of the claimed invention without the need for undue experimentation.

1864.  Defendants contend that claims 1 and 4 of the 152 Patent are not enabled by the specification because the applicants have not sufficiently described how to make suspension formulations with one or more of the drugs listed in claim 4.

1865.   Defendants contend, and plaintiffs have agreed, that the R. Schultz 432 Patent, discussed above with respect to double patenting, is drawn to solution formulations with HFA-134a, ethanol and beclomethasone.

1866.   Defendants further contend that plaintiffs have failed to explain how beclomethasone, when mixed with the same components, at roughly the same concentrations, could also simultaneously be in a suspension formulation, as claimed in claim 4 of the 152 Patent.

1867.   Defendants thus contend that the presence of beclomethasone in claims 1 and 4 of the 152 Patent render those claims invalid as being drawn to inoperative embodiments.

1868.   The Court agrees with defendants.

1869.   Beclomethasone was clearly contemplated by 3M as being fit for use only in *solution* formulations, as evidenced by the disclosures of the R. Schultz 432 Patent.

1870.   As Dr. Dalby testified, it would be very difficult, if not impossible, to prepare a beclomethasone *suspension* under the conditions disclosed in the 152 Patent (*i.e.*, in HFA-134a, ethanol and no surfactant).

1871.   Thus, the Court concludes that the inclusion of inoperative embodiments within the scope of claims 1 and 4 of the 152 Patent means those claims have not been enabled.

1872.   In conclusion, the Court finds that defendants have shown by clear and convincing evidence that claims 1-4, 8 and 9 of the 152 Patent are invalid for lack of written description because the specification of the 152 Patent does not sufficiently describe the claimed subject matter in a manner that would convey to a person of ordinary skill in the art that applicants were in full possession of the invention.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1873.  The Court also finds that defendants have shown by clear and convincing evidence that claims 1 and 4 of the 152 Patent have not been enabled because the inclusion of beclomethasone within the scope of those claims renders those embodiments inoperative and therefore invalid.

### iii.  The 445 Patent: The Parties' Contentions and Discussion

1874.  Defendants contend that the 445 specification does not provide written description support or enablement for claims 3-10, 12-15 and 17-20.

1875.  The Court agrees.

1876.  The 445 Patent is directed to "a medicinal aerosol formulation comprising a particulate medicament, a fluorocarbon propellant and 6% to 25% w/w of the total formulation of a polar co-solvent, such formulation being substantially free of surfactant."  (JTX 3_3 (1:51-55)).

1877.  In addition, according to the specification, a preferred "polar co-solvent" is ethanol, which is present in the formulation in an amount preferably between 10-15% w/w.  (JTX 3_5 (3:15-17)).

1878.  Defendants contend that the specification provides no description of the preferred amounts of active agent present in the composition or preferred amounts of propellant.

1879.  Furthermore, defendants contend, there is no disclosure in the specification or claims of the 445 Patent of the claim terms "ethanol in the amount of 11.4% w/w," "salbutamol sulfate in the amount of 0.4% w/w," or "1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w."

1880.  The Court agrees.

1881.  There is only a single example provided in the specification of the 445 Patent, and this example only describes a composition comprising: 0.35% albuterol sulphate (0.03g/8.5g=0.35% albuterol sulphate); 11.41% ethanol (0.97g/8.5g=11.41% ethanol); and 88.24% 1,1,1,2-tetrafluoroethane (7.5g/8.5g=88.24% 1,1,1,2-tetrafluoroethane).  (JTX 3_5 (3:39-50)).

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1882.  Therefore, the Court finds, that the 445 Patent provides written description support, at most, for only (1) a pharmaceutical suspension aerosol formulation consisting of, or consisting essentially of, 6-25% w/w of a polar co-solvent, an active agent, and a propellant (and optionally additional components, if the composition "consists essentially of" a co-solvent, an active agent, and a propellant); and (2) a pharmaceutical suspension aerosol formulation consisting of 0.35% albuterol sulphate, 11.41% ethanol, and 88.24% 1,1,1,2-tetrafluoroethane.

1883.  In addition, defendants contend, and the Court agrees, that the 445 Patent specification does not provide written description or enablement support for *all* compositions comprising 0.4% salbutamol sulphate, as required by Claims 4, 8, 13, and 18; for *all* compositions comprising 11.4% ethanol, as required by Claims 3, 7, 12, and 17; or for *all* compositions comprising 88.2% 1,1,1,2-tetrafluoroethane, as required by Claims 5, 9, 14, and 19.

1884.  Plaintiffs contend that a specification must not disclose in numerical terms every single concentration and possible combinations of concentrations and further contend that the disclosures are adequate enough for a person of ordinary skill in the art to be able to practice the invention without undue experimentation.

1885.  The Court agrees with defendants.

1886.  The single example presented in the specification only provides written description support for the concentrations of components disclosed in that example, *i.e.*, 0.35% albuterol sulphate, 11.41% ethanol and 88.24% 1,1,1,2-tetrafluoroethane.

1887.  In addition, for those claims of the 445 Patent that recite a specific numerical value for one of the components, *e.g.*, 0.4 % salbutamol sulphate, but is silent as to the concentrations for the others, a person of ordinary skill in the art is left to ponder the concentrations of the other two components.

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

1888.  The Court finds that it would require undue experimentation on the part of a person of ordinary skill in the art to make and use the full scope of the invention, and the minimal disclosures of the specification are insufficient to convey to one of ordinary skill in the art that the inventors were in possession of each aspect of the invention.

1889.  Lastly, defendants contend that claims 6, 10, 15, and 20, which each recite that "the aerosol formulation contains salbutamol sulphate in the amount of 0.4% w/w, ethanol in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w," lack written description support in the 445 Patent specification.

1890.  Defendants contend that the applicants only provided a single example in the 445 Patent specification, which is directed to a formulation consisting of 0.35% w/w albuterol sulphate, 11.41% w/w ethanol, and 88.24% w/w 1,1,1,2-tetrafluoroethane.

1891.  Plaintiffs, on the other hand, contend that the differences between the numerical values claimed and the numerical values derived from the single example, are due to the applicants having rounded the values to the nearest tenth prior to including them in the claim.

1892.  Plaintiffs further contend that, despite the differences between the claimed values and the values derived from the example, a person of ordinary skill in the art would nonetheless be capable of slightly adjusting the concentrations to arrive at the claimed invention without undue experimentation.

1893.  Defendants counter that the description provided in the specification is still too narrow to support the full scope of the claims, particularly in light of what plaintiffs' expert, Dr. Byron, has referred to as the "complexity" of the metered dose inhaler dosage form.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1894.  Dr. Byron has taken the position that the MDI has been described as the most complex dosage form, and has testified that a large number of formulation variables impact the stability and usefulness of an MDI product.

1895.  He further testified that because of their complexity, development of these systems was largely an empirical process.

1896.  The Court agrees with defendants.

1897.  The specification of the 445 Patent only disclosed a single example, which provided for a formulation with 0.35% albuterol sulphate, 11.41% ethanol and 88.24% 1,1,1,2-tetrafluoroethane.

1898.  In light of the complexity of the MDI dosage form and the need for empirical analysis in MDI formulation development as described in the testimony of Dr. Byron, the Court finds this narrow disclosure insufficient to provide written description support for claims to "salbutamol sulphate in the amount of 0.4% w/w, ethanol in the amount of 11.4% w/w, and 1,1,1,2-tetrafluoroethane in the amount of 88.2% w/w."  (JTX 3_5-6 (claims 6, 10, 15 and 20).

1899.  The Court thus concludes that defendants have shown by clear and convincing evidence that claims 3-10, 12-15, and 17-20 of the 445 Patent lack written description support and enablement based upon the insufficiency of the disclosures in the specification of the 445 Patent, and thus are invalid under 35 U.S.C. § 112.

### H.  Indefiniteness

1900.  The parties contest the whether the term "substantially completely insoluble," which appears in asserted independent claims 1, 2, 11, and 16 of the 445 Patent, is indefinite.

1901.  Defendants contend that the asserted claims of the 445 Patent are rendered invalid based on the inclusion of this term, which has no plain and ordinary meaning to a person of ordinary

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

skill in the art and is not found in any non-patent literature considered by a person of ordinary skill in the art.

1902.   Defendants further contend that the inclusion of the term "substantially completely soluble" renders certain claim elements redundant/superfluous or inconsistent, and thus, renders the claims themselves indefinite.

1903.   Plaintiffs contend that Court correctly construed of the term "substantially completely insoluble" as having a "plain and ordinary meaning" (*see* D.I. 164 at 6), although plaintiffs did not suggest any meaning of the term that is not redundant, inconsistent, and/or ambiguous.

1904.   For the reasons that follow, the Court concludes that the asserted claims of the 445 Patent are indefinite.

### i. The Legal Standard

1905.   35 U.S.C. § 112, ¶ 2, requires that the claims of a patent "particularly point[ ] out and distinctly claim[ ] the subject matter which the applicant regards as his invention."

1906.   As set forth by the Supreme Court, "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, -- U.S. --, 134 S. Ct. 2120, 2124 (2014); *see also In re Packard*, No. 2013-1204, 2014 WL 1775996, at *6 (Fed. Cir. May 6, 2014).

1907.   Under this standard, definiteness is to be evaluated from the perspective of a person skilled in the relevant art, reading the claims in light of the patent's specification and prosecution history, at the time of the patent application." *Nautilus*, 134 S. Ct. at 2128.

1908.   The purpose of 35 U.S.C. § 112, ¶ 2, is to provide clear warning to others as to what constitutes infringement of the patent. *See Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1332, 1338 (Fed. Cir. 2003) (recognizing that the definiteness requirement focuses on "notifying the public of the [scope of the] patentee's right to exclude").

1909.  When a claim is incapable of construction, or fails to give adequate notice of the boundaries between infringing and non-infringing activities, it is invalid. *See Athletic Alternatives, Inc. v. Prince Mfg., Inc*., 73 F.3d 1573, 1581 (Fed. Cir. 1996) (citing *Rengo Co. v. Molins Mach. Co*., 657 F.2d 535, 551 (3d Cir. 1981)).

1910.  The question of indefiniteness is determined based on how person of ordinary skill in the art would read and understand the term. *Microprocessor Enhancement Corp. v. Texas Instruments Inc*., 520 F.3d 1367, 1374 (Fed. Cir. 2008) ("'A claim is considered indefinite if it does not reasonably apprise those skilled in the art of its scope.'") (quoting *IPXL Holdings, L.L.C. v. Amazon.com, Inc*., 430 F.3d 1377, 1383-84 (Fed. Cir. 2005)).

1911.  In *Nautilus*, the Supreme Court found the Federal Circuit's previous standards for determining invalidity based on indefiniteness—"amenable to construction" or "insolubly ambiguous"—were deficient in that they "breed lower court confusion, for they lack the precision § 112, ¶ 2 demands." 134 S. Ct. at 2130.

1912.  According to the Supreme Court, "imprecision just short of that rendering a claim 'insolubly ambiguous' would diminish the definiteness requirement's public-notice function and foster the innovation-discouraging 'zone of uncertainty,' against which this Court has warned." *Id*. (internal citations omitted).

1913.  Moreover, it is not enough for a court to "ascribe *some* meaning to a patent's claims," because "the definiteness inquiry trains on the understanding of a skilled artisan at the time of the patent application, not that of a court viewing matters *post hoc*." *Id*.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1914.  Instead, § 112, ¶ 2 requires that a patent's claims, viewed in light of the specification and prosecution history, inform a skilled artisan about the scope of the invention with reasonable certainty—which "mandates clarity, while recognizing that absolute precision is unattainable." *See id.* at 2128.

### ii.  The Parties' Contentions and Discussion

#### 1.  The Claim Term "Substantially Completely Insoluble" Cannot Be Understood by a Person of Ordinary Skill in the Art

1915.  Defendants contend that the term "substantially completely insoluble" is indefinite.

1916.  Each asserted independent claim of the 445 Patent—claims 1, 2, 11, and 16—contains the term "substantially completely insoluble."  (JTX 3_4-5).

1917.  Defendants contend, as they asserted during claim construction, that a person of ordinary skill in the art of the 445 Patent would not understand the term "substantially completely insoluble" either within the context of the claims, or based on the specification or prosecution history.  (*See* D.I. 106, at 23; D.I. 106-3, at 4-5 ¶ 12).

1918.  Defendants also contend that the term "substantially completely insoluble" did not have an ordinary and customary meaning at the time of the claimed invention in August 1996.  (D.I. 106, at 23; D.I. 106-3, at 4-5 ¶ 12).

1919.  In addition, Defendants contend that nothing in the claims, specification, or prosecution history of the 445 Patent clearly provides any special definition for the term "substantially completely insoluble."  (D.I. 106, at 23; D.I. 106-3, at 4-5 ¶ 12).

#### 2.  Defendants Previously Reserved Their Right to Make an Indefiniteness Argument at Trial

1920.  In the parties' Amended Joint Claim Construction Chart, dated November 8, 2013, defendants indicated that their proposed construction for the term "substantially completely insoluble" was "No plain, ordinary or customary meaning/Indefinite."  (D.I. 97, at 18 n.2).

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

1921.   Defendants further explained that they were reserving indefiniteness for a later time, pursuant to this Court's preference:

> Claims 1, 2, 11, and 16 of U.S. Patent No. 7,566,445 ("the '445 patent") include the term "substantially completely insoluble." Because this term does not have a plain, ordinary or customary meaning to those skilled in the art, Defendants maintain that it is indefinite, and renders the asserted claims invalid. ***It is Defendants' understanding that the Court typically does not consider the ultimate question of indefiniteness and resulting invalidity during the claim construction phase.*** Accordingly, ***Defendants respectfully reserve their rights*** to demonstrate, at the appropriate time, that the term "substantially completely insoluble" is indefinite, and renders the claims invalid as a matter of law.

(D.I. 97, at 18 n.2 (emphases added)).

1922.   Furthermore, in their Opening Claim Construction Brief, defendants reiterated their understanding that the Court reserves the question of indefiniteness/invalidity for trial:

> As noted on page 5 of Exhibit A, Defendants respectfully reserve their rights to demonstrate at the appropriate time that the term substantially completely insoluble is indefinite and thus renders all four of the asserted independent claims invalid as matter of law.

(D.I. 106, at 23-24 n.5).

1923.   Similarly, during the *Markman* hearing, held on December 13, 2013, defendants re-stated their understanding that the Court would reserve the question indefiniteness for trial.

> THE COURT:  So both parties are clear, I think you probably are, I reserve indefiniteness for another time, not at claim construction.
> …
> MR. JAROS:    Yes, Your Honor …. [Defendants' local counsel] advised that is your practice.  If we don't offer a contrary introduction, we simply are reserving our right on indefiniteness, and we will proceed in that manner.

(D.I. 126, at 54-56).

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

### 3. Plaintiffs' Construction Is Based on Attorney Argument Rather Than Evidence of How a Person of Ordinary Skill in the Art Would Read the Term

1924.  Plaintiffs rely on the same reasoning with respect to indefiniteness that they set forth in their claim construction submissions in this case.  (*See, e.g.*, D.I. 105; D.I. 120).

1925.  Plaintiffs' contention that the term "substantially completely insoluble" had a plain and ordinary meaning as of August 1996, is based solely on mere attorney argument.  (D.I. 121, at 8 n.5).

1926.  Plaintiffs' position, which references several extrinsic patent applications that do not use the term in their proposed claims, merely indicates how a lawyer might explain the term "substantially completely insoluble," rather than how a person of ordinary skill in the art would explain the term.  (D.I. 121, at 8).  *See, e.g.*, *Medtronic, Inc. v. Edwards Lifesciences Corp.*, No. CIV. 11-1650 JNE/JSM, 2013 WL 2147909, at *29 (D. Minn. May 16, 2013) (noting that plaintiffs' assertion regarding a disputed claim term "may very well be a true statement" but concluding that "[w]ith no evidence to support it however, the Court is hard-pressed to make any conclusions … based solely on attorney argument" during claim construction).

1927.  Plaintiffs did not provide any support for their statement that person of ordinary skill in the art would understand the cited patents are using the term "substantially completely insoluble" in accordance with its plain and ordinary meaning.  (*See, e.g.*, D.I. 105, at 12-13).

1928.  The 445 Patent and the patents cited by plaintiffs—two of which are for Glaxo Group Limited—do not represent the plain and ordinary usage of this term at the time of these patent documents or even today.  (D.I. 121-1, at 2-3 ¶¶8-9).

1929.  Plaintiffs have not rebutted defendants' position regarding how a person of ordinary skill in the art would read the claim language of the 445 Patent.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1930.  Defendants' contention that the term "substantially completely insoluble" is indefinite is supported by evidence of how a person of ordinary skill in the art would read this language—*i.e.*, the two Declarations of Richard N. Dalby, Ph.D.  (*See, e.g.*, D.I. 106-3, at 4-5 ¶ 12; D.I. 121-1, at 2-9 ¶¶ 7-16).  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("The inquiry into how a person of ordinary skill in the art understands a claim term provides an objective baseline from which to begin claim [construction].").

1931.  At the direction of Dr. Dalby, defendants conducted an extensive search of non-patent literature which yielded no search results for the term "substantially completely insoluble." (D.I. 164, at 6 n.6; *see, e.g.*, D.I. 121-1, at 3-8 ¶¶ 10-16).

1932.  Specifically, Dr. Dalby submitted a Declaration with Exhibits 1-24, on December 3, 2013, showing that the term "substantially completely insoluble" did not appear in a search of non-patent literature in effect as of August 1996 or in any current versions of these texts or databases.  (D.I. 121-1, at 3-8 ¶¶ 10-14).

1933.  The exhibits to Dr. Dalby's Declaration also contained the results of searches conducted by two professional search firms.  (D.I. 121-1, at 8-9 ¶ 15; DTX 1557; DTX 1558).

1934.  There were no results found in any of the searches conducted by either professional search firm.  (D.I. 121-1, at 8-9 ¶ 15).

1935.  Furthermore, the searches of references that would be considered by someone of ordinary skill in the art included the *United States Pharmacopeia:  The National Formulary* from 1995, 2000, and 2002.  (DTX 1538; DTX 1178; DTX 1179).

1936.  The term "substantially completely insoluble" does not appear in any of these volumes with regard to solubility.  (*See* DTX 1538; DTX 1178; DTX 1179).

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

1937.  Instead, the text of these volumes contains a table listing several descriptive terms including the phrases "practically insoluble" or "insoluble." (*See, e.g.*, DTX 1538_3).

1938.  The Court concludes that while defendants have pointed to evidence, including the non-patent literature searches directed by Dr. Dalby, of how a person of ordinary skill in the art would evaluate the term "substantially completely insoluble," plaintiffs merely have pointed to attorney argument. *See Phillips*, 415 F.3d at 1313.

### 4. Ascribing a Plain and Ordinary Meaning to the Term "Substantially Completely Insoluble" Would Render the Claim Language Internally Inconsistent

1939.  The Court construed "substantially completely insoluble" as having a "plain and ordinary" meaning. (D.I. 164, at 6).

1940.  This construction, however, renders the claims internally inconsistent, as exemplified below in Claim 1:

| Claim 1 (original language) | Claim 1 (with the Court's constructions) |
|---|---|
| 1. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising a <u>pharmaceutical suspension aerosol formulation</u> substantially free of surfactant, and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein salbutamol sulphate is <u>substantially completely insoluble</u> in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 100 to 300 microns. | 1. A product suitable for delivering a pharmaceutical aerosol formulation comprising, (a) an aerosol canister comprising a container closed with a metering valve, said container comprising <u>[a] drug formulation in which the drug is in particulate form and *substantially insoluble* in the propellant</u> substantially free of surfactant and which consists of salbutamol sulphate, ethanol in an amount of 10% w/w to 15% w/w, and 1,1,1,2-tetrafluoroethane, wherein salbutamol sulphate is <u>*substantially completely insoluble* [plain and ordinary meaning]</u> in the 1,1,1,2-tetrafluoroethane, and (b) an actuator with a spray orifice aperture of from 100 to 300 microns. |

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1941.  The Court's the construction of the term "pharmaceutical suspension aerosol formulation" includes language specifying that the drug is "substantially insoluble" in the propellant.

1942.  The claim already indicates that drug (salbutamol sulfate) is "substantially completely insoluble" in the propellant (1,1,1,2-tetrafluoroethane).

1943.  The Court's construction does not reconcile how the drug could be both "completely insoluble" in propellant (language in the construction of "substantially insoluble") and "substantially completely insoluble" in propellant (actual claim language).  (D.I. 126, at 44-45).

1944.  Furthermore, the *Markman* Order suggests that the term "substantially complete insoluble" can be understood by a person of ordinary skill in the art, because specification and file history provide for a "suspension not a solution."  (D.I. 164 at 6-7 ("[B]oth the specification and the file history of the 445 Patent make clear to person of ordinary skill in the art that substantially completely insoluble means that the solubility of the drug must be such that the drug forms suspension not solution.") (citing JTX 3 (4:1-8, 13-20, 47-54; 5:3-10))).

1945.  As shown in Claim 1 above, the claim already contains an element specifying that it is a "pharmaceutical *suspension* aerosol formulation" and the construction does not add clarity as to whether the suspension relates to the solubility of the drug in the propellant, or the drug in the formulation.  (*See* JTX 3 (emphasis added)).

1946.  Therefore, these internal inconsistencies render the claims indefinite.  *See, e.g.*, *Competitive Techs., Inc. v. Fujitsu Ltd.*, 185 F. App'x 958, 965-66 (Fed. Cir. 2006) (concluding that internal inconsistency rendered claim indefinite).

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

     **5.**  **Ascribing a Plain and Ordinary Meaning to the Term "Substantially Completely Insoluble" Would Render the Claim Element Redundant/Superfluous**

1947.  Claims are interpreted to give an effect to all of the terms in a claim, but it is well-settled that claim terms must be construed "such that words in a claim are not rendered superfluous." *Digital-Vending Servs. Int'l, LLC v. Univ. of Phoenix, Inc.*, 672 F.3d 1270, 1275 (Fed. Cir. 2012); *Becton, Dickinson & Co. v. Tyco Healthcare Grp., LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010); *Novartis Pharm. Corp. v. Actavis, Inc.*, No. CV 12-366-RGA-CJB, 2013 WL 6142747, at *10 (D. Del. Nov. 21, 2013) (Burke, Mag. J.).

1948.  In *Phillips,* the Federal Circuit reinforced the importance of construing claim terms in light of the surrounding claim language, such that words in a claim are not rendered superfluous. 415 F.3d at 1314 (stating that when a claim refers to "steel baffles," this "strongly implies that the term 'baffles' does not inherently mean objects made of steel"); *see also Digital*, 672 F.3d at 1275 ("If 'registration server' were construed to inherently contain the 'free of content managed by the architecture' characteristic, the additional … language in many of the asserted claims would be superfluous … [which] is thus contrary to the well-established rule that 'claims are interpreted with an eye toward giving effect to all terms in the claim.'"); *Stumbo v. Eastman Outdoors, Inc.*, 508 F.3d 1358, 1362 (Fed. Cir. 2007) (construing "closable vertical opening" limitation to mean a slit-like shape instead of any shape that is longer than it is wider, in order to avoid rendering another claim limitation redundant and superfluous).

1949.  There is no plain and ordinary and customary meaning to the phrase "substantially completely insoluble," and thus, the term is indefinite under 35 U.S.C. § 112.

1950.  Under the Court's *Markman* Order, the claim describes the "insolubility" of the drug in the propellant ***twice***—as "substantially insoluble" and "substantially completely insoluble."

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1951.   Where a claim directed can be read to include the same element twice, the claim may be indefinite.  *See Ex Parte Kristensen*, 10 U.S.P.Q.2d 1701 (Bd. Pat. App. & Interf. 1989) (holding that claim was "rendered indefinite by the double inclusion of the same element or elements")); *Cyber Acoustics, LLC v. Belkin Int'l, Inc.*, No. 3:13-CV-01144-SI, 2014 WL 1225198, at *12 (D. Or. Mar. 24, 2014) ("If the Court were to adopt Belkin's construction, Claim 1(b) redundantly would read:  'a ***four-legged frame secured*** to the inside of said outside portion of the folio ***to which each of the legs of the four-legged frame is secured***.'  Belkin's proposed construction thus would make the subsequent limitation in Claim 1(b) superfluous … '[s]uch a construction is disfavored.'" (emphases added)).

### 6.  The Court May Revisit Its Claim Construction Ruling at Any Time Before the Entry of Judgment

1952.   The Court has authority to revisit claim construction at any time before a final judgment is entered in the litigation.

1953.   Although claim construction is a matter of law, it is interlocutory and therefore can be revised at any time before the judgment is final.  *Cordis Corp. v. Boston Scientific Corp.*, No. CIV.03-027-SLR, 2007 WL 2775087, at *2 (D. Del. Sept. 24, 2007) (Robinson, J.), *aff'd*, 561 F.3d 1319 (Fed. Cir. 2009) ("The court agrees … that courts are free to revise their interlocutory rulings on claim construction at any time prior to the entry of judgment."); *see also Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 997 F. Supp. 93, 96 (D. Mass. 1997), *aff'd*, 200 F.3d 795 (Fed. Cir. 1999).

1954.   In light of defendants' timely assertion of indefiniteness under 35 U.S.C. § 112, and other arguments set forth by Defendants, the Court is free to revisit its claim construction and has authority to do so now.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

### iii.  Conclusion

1955.  In view of the foregoing, the Court revisits its construction of the claim term "substantially completely insoluble," particularly with respect to defendants' assertion of indefiniteness, which defendants reserved for trial.

1956.  The Court concludes that the term "substantially completely insoluble," which is found in each of the four independent claims of the 445 Patent, is indefinite and does not have a plain an ordinary meaning to a person of ordinary skill in the art.

1957.  Plaintiffs have relied on their claim construction reasoning which is improperly limited to how a lawyer would understand that term.

1958.  Defendants, in contrast, have emphasized the distinction between how a person of skill in the art would read language, including searches showing the absence of the term in the non-patent literature, which plaintiffs have not rebutted.

1959.  Furthermore, the "plain and ordinary" meaning of "substantially completely insoluble" would render elements of the claims redundant/superfluous and/or inconsistent.

1960.  The Court concludes that that the claims of the 445 Patent, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention and, therefore, are indefinite.

### I.  Remedies

1961.  The Hatch-Waxman Act authorizes, in certain circumstances, when appropriate, injunctive relief "against an infringer to prevent the commercial manufacture, use, offer to sell, or sale within the United States or importation into the United States of an approved drug." *See* 35 U.S.C. § 271(e)(4)(A), (B).

1962.  In order to obtain the remedy of an injunction, however, a plaintiff must demonstrate (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as  monetary

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by an injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

1963.  Therefore, even when plaintiffs prevail on infringement, the Court will not automatically grant injunctive relief; rather, plaintiffs bear the burden to make a showing that they are entitled to the injunctive relief they seek.

### i.  Plaintiffs Have Not Met Their Burden of Showing That They Are Entitled to Injunctive Relief

1964.  Plaintiffs in the present litigation may not invoke the remedy provisions of 35 U.S.C. § 271(e)(4) against defendants with respect to their claims of infringement of the 152 Patent and the 445 Patent, because plaintiffs have not demonstrated that they are entitled to the injunctive relief they seek.

1965.  In *eBay*, the Supreme Court reversed the Federal Circuit's prior practice of automatically granting injunctive relief after a finding of patent infringement. *See* 547 U.S. at 393-94.

1966.  Instead, the Supreme Court confirmed that a patentee seeking a permanent injunction must satisfy each of four factors:  (1) that [the patentee] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Id.* at 391.

1967.  Prior to *eBay*, the Federal Circuit had treated the question of whether a permanent injunction should issue under the theory that the "statutory right to exclude alone" sufficiently justified the injunctive relief. *eBay*, 547 U.S. at 392.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1968.  But the Supreme Court recognized that the problem with that analysis was that the "creation of a right is distinct from the provision of remedies for violations of that right." *Id.*; *see also id.* at 392 n.2 (recognizing that the patent statute stated an injunction "may" issue in accordance with principles of equity).

1969.  Indeed, as one of the *eBay* concurring opinions observed, "[w]hen the patented invention is but a small component of the product the companies seek to produce and the threat of an injunction is employed simply for undue leverage in negotiations, legal damages may well be sufficient to compensate for the infringement and an injunction may not serve the public interest." *Id.* at 396-97 (Kennedy, J., concurring).

1970.  Since *eBay*, the Federal Circuit has acknowledged that "there is no presumption of irreparable harm upon a finding of patent infringement." *Apple Inc. v. Samsung Elecs. Co.* (*Apple III*), 735 F.3d 1352, 1359 (Fed. Cir. 2013); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011).

1971.  On the question of remedy, patentees have the burden to make a showing that extends beyond mere proof that the right to exclude was infringed (proof of infringement liability), but also that establishes the "remedies for violations of that right" the Supreme Court mentioned in *eBay* can be and are actually tied to an irreparable harm itself resulting from the infringing acts.

1972.  This requires an affirmative showing of nexus between the remedy sought and the alleged harm from the infringing acts.  *See Apple III*, 735 F.3d at 1360 ("Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature…. [I]rreparable harm cannot be shown if sales would be lost regardless of the infringing conduct." (quoting *Apple Inc. v. Samsung Elecs. Co.* (*Apple I*), 678 F.3d 1314, 1324 (Fed. Cir. 2012))).

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1973.  For a product that has multiple desirable features, the patentee must show that the "*infringing feature* drives consumer demand for the accused product," and cannot just rely on the fact that an accused product possesses an "infringing feature." *Apple Inc. v. Samsung Elecs. Co.* (*Apple II*), 695 F.3d 1370, 1375 (Fed. Cir. 2012) (emphasis added).

1974.  An award of injunctive relief also should only issue to protect against real-world harms that are irreparable because they cannot be addressed through money damages that can be quantified.  *See Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1578 (Fed. Cir. 1996) (refusing to enjoin a party where money damages were calculable); *Graceway Pharm., LLC v. Perrigo Co.* (*Graceway I*), 722 F. Supp. 2d 566, 577 (D.N.J. 2010) (denying injunction where "money damages can be calculated relatively easily and such a calculation undermines the position that harm is irreparable"); *SmithKline Beecham Corp. v. Apotex Corp.*, 247 F. Supp. 2d 1011, 1045 (N.D. Ill. 2003) ("An injunction is a substitute for an award of damages in situations in which damages are difficult to calculate or are otherwise inadequate as a remedy for the wrong done by the defendant to the plaintiff.  It is not to provide relief when damages are known to be zero." (internal citations omitted)), *vacated on other grounds*, 403 F.3d 1331 (Fed. Cir. 2005).

### ii.  Plaintiffs Have Failed to Analyze the *eBay* Factors Directly and Have Not Established That Any of Them Were Met

1975.  Plaintiffs have not met their burden to show that they are entitled to receive an injunction against defendants under the 152 Patent or the 445 Patent.

1976.  In fact, plaintiffs did not meet their burden of proof on any factor/element of the analysis set forth in *eBay*, given that plaintiffs' experts did not address any of the injunctive relief factors directly or indirectly.

1977.  First, plaintiffs have not demonstrated that they have suffered an irreparable injury and have alleged no nexus between any alleged harms and any activities by defendants.

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1978.  In *Apple Inc. v. Samsung Electronics Co.*, the Federal Circuit held that a patent owner must establish a causal nexus between the infringement and the irreparable harm as part of the first *eBay* factor.  *Apple II*, 678 F.3d at 1317.

1979.  According to the court, the patent owner can establish the causal nexus by showing "some connection" between the patented feature and consumer demand.  *Id.*

1980.  With no established nexus to the asserted patents, it may be determined that "the accused product would sell almost as well without incorporating the patented feature." *Apple III*, 735 F.3d at 1360 (quoting *Apple II*, 695 F.3d at 1374).

1981.  In that instance, "even if the competitive injury that results from selling the accused device is substantial, the harm that flows from the alleged infringement (the only harm that should count) is not." *Id.* at 1360-61 (quoting *Apple II*, 695 F.3d at 1374-75).

1982.  The causal nexus inquiry thus plays the crucial role of confirming whether or not "the patentee's allegations of irreparable harm are pertinent to the injunctive relief analysis, or whether the patentee seeks to leverage its patent for competitive gain beyond that which the inventive contribution and value of the patent warrant." *Apple III*, 735 F.3d at 1361 (quoting *Apple II*, 695 F.3d at 1374-75).

1983.  Plaintiffs bear the burden to demonstrate that sales of ProAir are tied to the patents they assert.

1984.  "Sales lost to an infringing product cannot irreparably harm a patentee if consumers buy that product for reasons other than the patented feature." *Apple III*, 735 F.3d at 1360 (quoting *Apple I*, 678 F.3d at 1324).

1985.  Irreparable harm "cannot be shown if sales would be lost regardless of the infringing conduct." *Id.*

EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER

1986.   Plaintiffs did not demonstrate that sales of ProAir HFA are tied to the patents they assert. (*See* Sections III(D)(iv)(1), (6) and III(D)(vii)(1), (6)).

1987.   Although plaintiffs point to an alleged "soft, warm plume" of ProAir HFA, they provide no explanation as to how the alleged plume characteristics are linked to the purported innovation of the 152 Patent or the 445 Patent.

1988.   In addition, plaintiffs provide no evidence from which to conclude that the alleged plume characteristics of ProAir HFA are distinguishable from other HFA MDI products, such as Proventil HFA.

1989.   Furthermore, plaintiffs provide no evidence that the alleged plume properties of ProAir HFA—or any promotion of those alleged properties—had any impact on market share.  (*See* Sections III(D)(iv)(1), (6) and III(D)(vii)(1), (6)).

1990.   Therefore, plaintiffs have failed to meet their burden of proof on the threshold question of nexus.  *See SmithKline*, 247 F. Supp. 2d at 1046 (harm due to competition does not equate harm from infringement).

1991.   Moreover, plaintiffs have not made a showing that the other *eBay* factors were met, because they have failed to allege (1) that remedies available at law, such as monetary damages, are inadequate to compensate for any alleged injury; (2) that a remedy is warranted in light of the balance of hardships between the plaintiff and defendant; or (3) that an injunction would not disserve the public interest.  *See eBay*, 547 U.S. at 393-94.

1992.   In conclusion, plaintiffs have failed meet their burden of establishing that they are entitled to the remedy of injunctive relief.

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

## IV.    CONCLUSION

1993.    For the reasons stated above, the Court concludes that:  (1) defendants will not infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid or enforceable claim of the 152 Patent; (2) defendants will not infringe (either literally or under the doctrine of equivalents), directly or indirectly, any valid or enforceable claim of the 445 Patent; (3) the asserted claims of the 152 Patent are invalid due to anticipation; (4) the asserted claims of the 152 Patent are invalid due to obviousness; (5) the asserted claims of the 445 Patent are invalid due to obviousness; (6) the asserted claims of the 152 Patent are invalid due to obviousness-type double patenting; (7) the asserted claims of the 152 Patent are expired/unenforceable; (8) the asserted claims of the 152 Patent are invalid due to lack of written description and enablement;  (9) the asserted claims of the 445 Patent are invalid due to lack of written description and enablement; (10) the asserted claims of the 445 Patent invalid due to indefiniteness.  An appropriate order will follow.

\*          \*          \*

### *ORDER*

At Wilmington, this ___ day of July, 2014, IT IS HEREBY ORDERED THAT:

1.        The asserted claims of the 152 Patent are invalid;

2.        The asserted claims of the 445 Patent are invalid;

3.        The asserted claims of the 152 Patent are expired/unenforceable;

4.        The manufacture, sale, offer for sale, use, or importation of the Albuterol Sulfate Inhalation Aerosol (0.09 mg base per actuation) product described in Perrigo Pharmaceuticals Co.'s ANDA does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contribution), any valid or enforceable claim of the 152 Patent;

**EXTERNAL COUNSEL ONLY – SUBJECT TO PROTECTIVE ORDER**

5.      The manufacture, sale, offer for sale, use, or importation of the Albuterol Sulfate Inhalation Aerosol (0.09 mg base per actuation) product described in Perrigo Pharmaceuticals Co.'s ANDA does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contribution), any valid or enforceable claim of the 445 Patent;

6.      The Complaints are dismissed with prejudice;

7.      The Clerk of Court is directed to enter a final judgment in favor of defendants and against plaintiffs;

8.      The Court declares that this is an exceptional case under 35 U.S.C. § 285, and awards defendants attorney fees, costs, and expenses in this action.

SO ORDERED

**SCHEDULE L**
**LISTS OF EVIDENTIARY ISSUES THE PARTIES INTEND TO RAISE**

1.      Plaintiffs' list of evidentiary issues they intend to raise is included in **<u>Schedule L-1</u>**.

2.      Defendants' list of evidentiary issues they intend to raise is included in **<u>Schedule L-2</u>**.

**SCHEDULE L-1**
**PLAINTIFFS' LIST OF EVIDENTIARY ISSUES THEY INTEND TO RAISE**

**I.      Defendants' Untimely Disclosed Third and Fourth Invalidity Contentions**

1.      Whether Defendants can raise new invalidity defenses that were first disclosed, without seeking leave of Court, after the Court ordered deadline for serving expert reports upon which a party has the burden of proof.  *See* D.I. 130 (Opening expert reports were due on February 7, 2014).

**II.     Defendants' Prosecution History Irregularities "Defense"**

2.      Whether testimony and documentary evidence about the filings in the prosecution history of the '152 patent and actions taken by patent examiners during that prosecution complied with applicable rules and regulations is relevant to any claim or defense properly raised by Defendants.

3.      Whether expert testimony about patent prosecution practice and procedure, including the expected testimony from Stephen G. Kunin and Bernard J. Greenspan, Ph.D., is admissible.

4.      Whether expert testimony of Bernard J. Greenspan regarding United States patent prosecution and procedure should be precluded pursuant to the Federal Rules of Evidence 702.

**III.    Defendants' Identification of Their Own Employees to Testify by Deposition**

5.      Whether Defendants may call their own employees, including Brian Schuster, Elizabeth Lowney Bickler, Henry James Booydegraaff, David Wilcox, Craig Davies-Cutting, Kurt R. Nielsen and Mushtaq Fruitwala, as witnesses to testify at trial by deposition.

**SCHEDULE L-2**
**DEFENDANTS' LIST OF EVIDENTIARY ISSUES IT INTENDS TO RAISE**

Defendants would like to raise the issues listed below at the pretrial conference. Defendants reserve their rights to raise additional issues as may be required.

1.     To the extent that Plaintiffs object to either Mr. Kunin or Dr. Greenspan, whether the Court should preclude testimony by Plaintiffs' patent lawyer expert, Mr. Carmichael?

2.     To the extent that Plaintiffs object to Defendants' supplemental expert reports, whether the Court should preclude the April 30, 2014 supplemental infringement opinions by Dr. Poochikian, Dr. Smyth and/or Dr. Myrdal?

3.     Whether the Court should preclude Dr. Poochikian, a former FDA regulatory person who was not previously disclosed, from testifying to how he believes the FDA would interpret the term "formulation" from a "regulatory perspective," without reference to the patents-in-suit?

4.     Whether the Court should preclude Dr. Smyth, who was not previously disclosed, from testifying regarding the contents of the ANDA Product and ProAir HFA despite the fact that he did not disclose any analytical test results?

5.     Whether the Court should preclude Dr. Myrdal from providing claim construction opinions regarding the terms "surfactant," "no surfactant," and "substantially free of surfactant"?

6.     To the extent that Plaintiffs object to Defendants' supplemental document productions, whether the Court should preclude Plaintiffs from using PTX 924-944 as untimely?

## CERTIFICATE OF SERVICE

I, Stephanie E. O'Byrne, hereby certify that on June 11, 2014, this document was

served on the persons listed below in the manner indicated:

**BY E-MAIL**

John C. Phillips, Jr.
Megan C. Haney
PHILIPS, GOLDMAN & SPENCE, P.A.
1200 North Broom Street
Wilmington, DE 19806
(302) 655-4200
jcp@pgslaw.com
mch@pgslaw.com

William A. Rakoczy
Joseph T. Jaros
William F. Ward
Yixin H. Tang
Matthew T. Lord
Brian P. Murray
Jeffrey A. Marx
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 222-6304
wrakoczy@rmmslegal.com
jjaros@rmmslegal.com
wward@rmmslegal.com
ytang@rmmslegal.com
mlord@rmmslegal.com
bmurray@rmmslegal.com
jmarx@rmmslegal.com

*/s/ Stephanie E. O'Byrne*
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Stephanie E. O'Byrne (No. 4446)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
sobyrne@shawkeller.com
*Attorneys for Plaintiffs*